Mark N. Todzo, State Bar No. 168389
Abigail Blodgett, State Bar No. 278813
LEXINGTON LAW GROUP
503 Divisadero Street
San Francisco, CA 94117
Telephone: (415) 913-7800
Facsimile: (415) 759-4112
mtodzo@lexlawgroup.com
ablodgett@lexlawgroup.com

Melissa W. Wolchansky, (*pro hac vice pending*)
Charles D. Moore (*pro hac vice pending*)
HALUNEN LAW
80 South Eighth Street, Suite 1650
Minneapolis, MN 55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099
wolchansky@halunenlaw.com
moore@halunenlaw.com

*Attorneys for Plaintiffs and the Putative Classes*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| REBEKAH BAHARESTAN and JENA MCINTYRE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VENUS LABORATORIES, INC., dba EARTH FRIENDLY PRODUCTS, INC.,<br><br>Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT** |

-1-

DOCUMENT PREPARED ON RECYCLED PAPER

Plaintiffs REBEKAH BAHARESTAN and JENA MCINTYRE ("Plaintiffs"), individually and on behalf of other similarly situated individuals, allege the following Class Action Complaint against defendant Venus Laboratories, Inc., dba Earth Friendly Products, Inc., and its affiliates known and unknown involved in making, marketing, and distributing the Earth Friendly and products identified below ("Defendant" or "Earth Friendly"), upon personal knowledge as to themselves and their own acts and upon information and belief – based upon, *inter alia*, the investigation made by their attorneys – as to all other matters, as follows:

## INTRODUCTION

1.      In recent years, consumers have become significantly more aware and sensitive to the toxicity and impact of household products on their health, the health of their children, and the general environment.  As a result, demand has increased for so-called "green" products that are naturally derived, environmentally sound, non-toxic, and non-injurious to consumers and their health.

2.      Defendant Earth Friendly Products manufactures, markets and sells "Earth Friendly®" household cleaners and products that it misleadingly labels as "natural," despite containing non-natural ingredients.  These products all contain multiple highly processed, synthetic, or non-natural ingredients, including:

Baby Laundry Detergent Chamomile & Lavender

ECOS 4X Concentrated Laundry Detergent

Liquid Laundry Detergent Magnolia & Lily

Liquid Laundry Detergent Lavender

Liquid Laundry Detergent Lemongrass

Liquid Laundry Detergent Free & Clear

Spray Starch

Everyday Stain & Odor Remover

Uni-Fresh Air Freshener Citrus

Uni-Fresh Air Freshener Vanilla

DOCUMENT PREPARED
ON RECYCLED PAPER

| | |
|---|---|
| 1 | Uni-Fresh Air Freshener Cinnamon |
| 2 | Uni-Fresh Air Freshener Lavender |
| 3 | Uni-Fresh Air Freshener Parsley |
| 4 | Creamy Cleanser |
| 5 | Countertop Cleaner |
| 6 | Dishmate Natural Almond |
| 7 | Dishmate Organic Lavender |
| 8 | Dishmate Organic Grapefruit |
| 9 | Dishmate Natural Pear |
| 10 | Dishmate Fragrance Free |
| 11 | Dishmate Apricot |
| 12 | Dishmate Grapefruit |
| 13 | Hand Dishwash Pear |
| 14 | Hand Dishwash Grapefruit |
| 15 | Floor Cleaner |
| 16 | Fruit & Veggie Wash |
| 17 | Orange Plus |
| 18 | Orange Plus Complete |
| 19 | Parsley Plus All Surface Cleaner |
| 20 | Silver Polish |
| 21 | Stainless Steel Cleaner |
| 22 | Wave |
| 23 | Furniture Polish |
| 24 | Window Cleaner Lavender |
| 25 | Window Cleaner Vinegar |
| 26 | Shower Cleaner |
| 27 | Toilet Cleaner |
| 28 | |

DOCUMENT PREPARED
ON RECYCLED PAPER

CLASS ACTION COMPLAINT

(the "Products").

3.      Earth Friendly represents the Products to be natural, naturally derived, made from plaints, and safer alternatives to traditional detergents.  Additionally, Earth Friendly represents the Products as pure and free from harmful chemicals found in traditional detergents.

4.      To the detriment of the consumer, the Products are not, in fact, natural.  All of the Products contain at least one or more of the following non-natural ingredients: Alcohol Denat; Caprylic/Myristyl Glucoside; Cocamidopropyl Betaine; Cocamidoprpylamine oxide; Lauryl glucoside; Methylisothiazolinone; Phenoxyethanol; Potassium cocoate; Potassium sorbate; and Sodium Coco-Sulfate.

5.      In fact, the Products contain a chemical, Methylisothiazolinone ("MI"), which is so potent an allergen that between 2% and 10% of the population may have developed an allergic response to it, with more becoming sensitized every day.  This number has grown exponentially over the past few years as use of MI has become more widespread.  Notwithstanding the often severe reactions suffered by the significant percentage of individuals who have developed allergic responses to MI, Earth Friendly fails to include any type of warning informing users that the Products contain a known skin allergen.

6.      To label the Products as "natural" creates consumer deception and confusion.  A reasonable consumer purchases the Products believing they are natural based on the Products' labeling.  However, a reasonable consumer would not deem the Products natural if he/she knew that the ingredients contained in the Products are highly processed and/or non-natural.

7.      This is a proposed class action brought by Plaintiffs, on behalf of a class of similarly situated individuals, against Earth Friendly seeking redress for Defendant's unjust, unfair, and deceptive practices in misrepresenting the natural quality and other benefits of the Products and failing to warn for known hazards of the Products in violation of Illinois, Washington, and California law.

## JURISDICTION AND VENUE

8.      This Court has personal jurisdiction over the parties in this case. Plaintiff Baharestan is a citizen of California within the County of Marin. Defendant maintains its Western

DOCUMENT PREPARED
ON RECYCLED PAPER

Division Office in Garden Grove, California, purposefully avails itself to the California consumer market, and distributes the Products to at least hundreds of locations within this County and thousands of retail locations throughout California, where the Products are purchased by thousands of consumers every day.

9. Plaintiff Jena McIntyre is a citizen of Washington, residing in Sedro Woolley, Washington.

10. This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiffs allege that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

11. Venue is proper in this District under 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Products, occurred within this District.

## Intradistrict Assignment

12. Assignment to the San Francisco Division is appropriate under Civil L.R. 3-2(c) and (d) because a substantial part of the events or omissions that give rise to the claim – including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Products – occurred within the Counties of Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Napa, San Francisco, San Mateo, and Sonoma.

## PARTIES

### Individual and Representative Plaintiff

13. Plaintiff Baharestan is an individual consumer who, at all times material hereto, was a citizen of Marin County, California. Plaintiff Baharestan purchased Ultra Dishmate in 2014 from a Mollie Stone's market at Bon Air Shopping Center in Greenbrae, Marin

-5-

County, and from a Whole Foods Market in San Rafael. Plaintiff Baharestan purchased ECOS Natural Laundry in 2014 from a Costco store located in Vintage Oaks Plaza in Novato, Marin County.

14.     Plaintiff Baharestan relied on Defendant's false, misleading, and deceptive representations that Ultra Dishmate and ECOS Natural Laundry would provide natural, relatively safe, environmentally sound, and non-injurious, non-abrasive alternatives to traditional detergent offerings. Had Plaintiff Baharestan known the truth that the statements she relied on were false, misleading, deceptive, and unfair, she would have not purchased Ultra Dishmate or ECOS Natural Laundry.

15.     Plaintiff Baharestan is allergic to MI. Although she now knows and understands that even the slightest exposure to MI will result in a serious allergic reaction, she came to that realization only in September 2014, after numerous visits to doctors and a significant amount of testing. At the time Plaintiff Baharestan purchased the Products, she was unaware of her allergy to MI.

16.     If Plaintiff Baharestan knew that the Product labels were truthful and not misleading, she would consider purchasing the Products in the future. At present, however, Plaintiff Baharestan cannot be confident that the labeling of the Products is, and will be, truthful and non-misleading.

17.     Plaintiff McIntyre purchased Liquid Laundry Detergent Magnolia & Lily from 2012 to 2014, Liquid Laundry Detergent Free & Clear from the Walmart Supercenter in Mount Vernon, Washington from 2013 to 2014, as well as Parsley Plus All Surface Cleaner from the Fred Meyer in Burlington, Washington in 2014.

18.     Plaintiff McIntyre relied on Defendant's false, misleading, and deceptive representations that the products would provide natural, relatively safe, environmentally sound, and non-injurious, non-abrasive alternatives to traditional detergent offerings. Had Plaintiff McIntyre known the truth that the statements she relied on were false, misleading, deceptive, and unfair, she would have not purchased the Products.

19.     If Plaintiff McIntyre knew that the Product labels were truthful and not misleading, she would consider purchasing the Products in the future. At present, however,

-6-

DOCUMENT PREPARED
ON RECYCLED PAPER

Plaintiff McIntyre cannot be confident that the labeling of the Products is, and will be, truthful and non-misleading.

**Defendant**

20.    Defendant Earth Friendly is a Delaware corporation with its principal place of business in Addison, Illinois.

21.    According to the packaging for the Products, they are distributed by Earth Friendly Products, "For Love of the Planet, Addison, IL 60101" and "Made in the USA in CA, FL, IL, NJ & WA."

22.    Plaintiff does not know the names and locations of the other defendants listed under fictitious names as "DOES 1-5," who, along with the identified Defendant, are believed to be responsible for the manufacture, marketing, and/or distribution of the Products and who will be identified specifically upon further discovery.

23.    Plaintiff refers herein to each and all of the defendants identified above as "Defendant" or "Earth Friendly."

24.    Defendant manufactures, markets, and distributes the Products throughout California and the United States.

**COMMON FACTUAL ALLEGATIONS**

**A.  Defendant Deceives Consumers By Falsely Labeling the Products as "Natural."**

25.    Each year, consumers purchase billions of dollars' worth of "natural" products.  In 2010, U.S. consumers purchased $10.9 billion worth of natural/organic personal care and household products; up from $10.4 billion in 2009.[1]  Given this strong demand for "natural" products, it is not surprising that Defendant labels its Products as "natural."

26.    Seeking to profit on consumers' desire to locate and use natural, environmentally sound, non-abrasive, and non-injurious detergent alternatives to standard offerings, Defendant markets the Products as "natural," derived from plants, and free from harmful chemicals, providing environmental and safety benefits that traditional detergents do not.

---

[1] Natural Products Association, http://www.npainfo.org/NPA/About_NPA/NPA/AboutNPA/AbouttheNaturalProductsAssociation.aspx?hkey=8d3a15ab-f44f-4473-aa6e-ba27ccebcbb8 (last visited June 30, 2014).

CLASS ACTION COMPLAINT

DOCUMENT PREPARED ON RECYCLED PAPER

27.     The Products are sold in a variety of outlets, including Wal-Mart, Safeway, Target, and other health food, grocery, and drug stores.

28.     The packaging for the Products misrepresent that the Products will benefit the environment and consumers alike in a variety of ways.

29.     Each of the Products prominently professes that it is "natural" on the front label.

30.     For example, with regard to Ultra Dishmate, Earth Friendly markets the detergent as "naturally derived," "natural," "made from plants," and free from various chemicals, including 1,4-Dioxane, formaldehyde, and petrochemicals.  These representations are made prominently on the front of the product packaging and are designed to lure consumers who are concerned about the use of chemicals and harmful substances.  Indeed, as seen in the representative image below, these claims fill most of the front label, along with the Earth Friendly fruit logo and a picture of clouds in a blue sky.



-8-

DOCUMENT PREPARED
ON RECYCLED PAPER

31.    Additionally, with regard to ECOS Natural Laundry, Earth Friendly also markets the detergent as "natural" and free from various chemicals, including 1,4-Dioxane, formaldehyde, and petrochemicals. These representations are made prominently on the front of the product packaging and are designed to lure consumers who are concerned about the use of chemicals and harmful substances.  Indeed, as seen in the representative image below, these claims are made, among other locations, in an eye-catching yellow band atop the label.



32.    Thus, the Products are deceptively marketed as uniquely positioned, in contrast to conventional detergent offerings, to provide consumers with natural, plant-derived, pure, environmentally sound alternatives that are free from harmful chemicals.

DOCUMENT PREPARED
ON RECYCLED PAPER

**B. The Products Are Not Natural Because They Contain Synthetic and/or Highly Processed Ingredients, and a Reasonable Consumer Would Not Deem the Products to Be Natural.**

33.    Despite Defendant's labels and its representations regarding the natural quality of the Products, the truth is the Products are not natural.  Defendant uses many ingredients in its Products, including: Alcohol Denat; Caprylyl/Myristyl Glucoside; Cocamidopropyl Betaine; Cocamidoprpylamine oxide; Lauryl glucoside; Methylisothiazolinone; Phenoxyethanol; Potassium cocoate; Potassium sorbate; and Sodium Coco-Sulfate, that do not meet a reasonable consumer's definition of "natural."

34.    A reasonable consumer would not deem any of the Products containing the following ingredients to be "natural":

a.  Alcohol Denat is "prepared by adding one or more denaturing agents to potable Alcohol, making it unfit for beverage or internal human medicinal use."[2]  Common denaturing agents include: quassin, brucine sulfate, and denatonium benzoate.[3]  Quasinn is prepared by allowing quassia chips to stand in hot water.[4]  The extract is treated with lead acetate and carbon.  The carbon is removed and mixed with chloroform. The mixture is reduced and dissolved in methanol and hot water.[5]  Brucin is prepated by reacting 2-hydroxystrychnine in acetyl alcohol.[6]  Following the reaction, 2 N $HClO_4$ and $Na_2S_2O_4$ is added.[7]  The mixture is then dissolved in $CHCL_3$/Methyl Alcohol and treated with ethereal diazometheane.[8,9]

---

[2] Final Report on the Safety Assessment of Alcohol Denat, 1 Int. J. Toxicology 1, 2 (2008), *available at* http://online.personalcarecouncil.org/ctfa-static/online/lists/cir-pdfs/PR273.PDF.
[3] *Id.*
[4] *Id.* at 5.
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] The following products contain Alcohol Denat: Baby Laundry Detergent Chamomile & Lavender, Everyday Stain & Odor Remover, Uni-Fresh Air Freshener Vanilla, Uni-Fresh Air Freshener Cinnamon, Uni-Fresh Air Freshener Lavender, Uni-Fresh Air Freshener Parsley, Countertop Cleaner, Floor Cleaner, Fruit & Veggie Wash, Orange Plus, Orange Plus Complete,

DOCUMENT PREPARED ON RECYCLED PAPER

b.  Caprylyl/Myristyl Glucoside is produced by reacting glucose with anhydrous ethanol under acidic conditions to produce ethyl glucoside.[10,11]

c.  Cocamidopropyl Betaine (CAPB) is produced by coconut oil fatty acides with 3,3-dimethylaminopropylamine (DMAPA), which forms cocamidopropyl dimethlamine.[12]  The cocamidopropyl dimethlamine is then reacted with sodium monochloroacetate which produces CAPB.[13]  The NPA prohibits products containing CAPB from being certified as "natural."[14,15]

d.  Cocamidoprpylamine oxide is manufactured by reacting hydrogenated coconut oil with DMAPA, which is further reacted with a food grade hydrogen peroxide.[16,17]

Parsley Plus All Surface Cleaner, Window Cleaner Lavender, Window Cleaner Vinegar, and Shower Cleaner.

[10] Monice M. Fiume at 26S.

[11] The following products contain Capryly/Myristyl Glucoside: Everyday Stain & Odor Remover, Uni-Fresh Air Freshener Cinnamon, Uni-Fresh Air Freshener Parsley, Countertop Cleaner, Floor Cleaner, Fruit & Veggie Wash, Orange Plus, Orange Plus Complete, Parsley Plus All Surface Cleaner, Wave, Furniture Polish, Window Cleaner Lavender, Shower Cleaner, Toilet Cleaner.

[12] Cosmetic Ingredient Review: Expert Panel Meeting, at 35-36 (Dec. 13, 2010), *available at* http://www.cir-safety.org/sites/default/files/117_final_capb.pdf.

[13] *Id.*

[14] Nat'l Prods. Ass'n, NPA Standard and Certification for Personal Care Products (2010), *available at* http://www.npainfo.org/App_Themes/NPA/docs/naturalseal/The%20Natural%20Standard%2004 1112%20final.pdf (last visited June 10, 2014).

[15] The following products contain CAPB: Baby Laundry Detergent Chamomile & Lavender, ECOS 4X Concentrated Laundry Detergent, Liquid Laundry Detergent Magnolia & Lily, Liquid Laundry Detergent Lavender, Liiquid Laundry Detergent Lemongrass, Liquid Laundry Detergent Free & Clear, Creamy Cleanser, Dishmate Natural Almond, Dishmate Organic Lavender, Dishmate Organic Grapefruit, Dishmate Natural Pear, Dishmate Fragrance Free, Dishmate Apricot, Desmate Grapefruit, Hand Dishwash Pear, Hand Dishwash Grapefruit, and Silver Polish.

[16] Amended Final Report of the Saftey Assessment of Cocamidopropylamine Oxide, 27 Int. J. of Toxicology, 55, 56 (2008).

[17] The following products contain Cocamidoprpylamine oxide: Baby Laundry Detergent Chamomile & Lavender, ECOS 4X Concentrated Laundry Detergent, Liquid Laundry Detergent Magnolia & Lily, Liquid Laundry Detergent Lavender, Liquid Laundry Detergent Lemongrass, Liquid Laundry Detergent Free & Clear, Spray Starch, Uni-Fresh Air Freshener Vanilla, Uni-Fresh Air Freshener Cinnamon, Uni-Fresh Air Freshener Lavender, Uni-Fresh Air Freshener Parsley, Dishmate Natural Almond, Dishmate Organic Lavender, Dishmate Organic Grapefruit,

DOCUMENT PREPARED ON RECYCLED PAPER

     e.  Lauryl glucoside is produced by reacting glucose with anhydrous ethanol under acidic conditions to produce ethyl glucoside.[18,19]

     f.  MI is produced by reacting ethylene dichloride with sulfurly chloride.[20] The material is then filtered, dissolved in water, diluted with chloroform, and then dried over magnesium sulfate.[21] MI is an EPA registered pesticide.[22] It is used to control slime-forming bacteria, fungi, and algae.[23] MI is a known neurotoxin and is prohibited by the NPA from being included in products that are certified as "natural."[24, 25]

     g.  Phenoxyethanol is manufactured by reacting phenol with ethylene oxide in the presence of a basic catalyst under pressure and with heating until 4-8% of the Phenoxyethanol is converted to the diethoxylate; the resulting product is

---

Dishmate Natural Pear, Dishmate Fragrance Free, Dishmate Apricot, Desmate Grapefuit, Hand Dishwash Pear, Hand Dishwash Grapefuit, and Window Cleaner Lavender.

[18] Monice M. Fiume, et al., *Safety Assessment of Decyl Glucoside and Other Alkyl Glucosides as Used in Cosmetics*, 32 Int. J. of Toxicology 22S, 26S (2013), *available at* http://online.personalcarecouncil.org/ctfa-static/online/lists/cir-pdfs/PR586.pdf.

[19] The following products contain Lauryl Glucoside: Baby Laundry Detergent Chamomile & Lavender, ECOS 4X Concentrated Laundry Detergent, Liquid Laundry Detergent Lavender, Liquid Laundry Detergent Lemongrass, Liquid Laundry Detergent Free & Clear.

[20] Sheldon N. Lewis et al., *Isothiazoles I; 4-Isothiazolin-3-ones. A General Synthesis from 3,3'-Dithiodipropionamides*, 8 J. Heterocyclic Chemistry 571, 579 (1971).

[21] *Id.*

[22] EPA, R.E.D. Facts: Methylisothiazolinone (1998), *available at* http://www.epa.gov/oppsrrd1/REDs/factsheets/3092fact.pdf (last visited June 10, 2014).

[23] *Id.*

[24] Nat'l Prods. Ass'n, NPA Standard and Certification for Personal Care Products (2010), *available at* http://www.npainfo.org/App_Themes/NPA/docs/naturalseal/The%20Natural%20Standard%2004 1112%20final.pdf (last visited June 10, 2014).

[25] The following products contain MI: Baby Laundry Detergent Chamomile & Lavender, ECOS 4X Concentrated Laundry Detergent, Liquid Laundry Detergent Magnolia & Lily, Liquid Laundry Detergent Lavender, Liquid Laundry Detergent Lemongrass, Liquid Laundry Detergent Free & Clear, Spray Starch, Creamy Cleanser, Dishmate Natural Almond, Dishmate Organic Lavender, Dishmate Organic Grapefruit, Dishmate Natural Pear, Dishmate Fragrance Free, Dishmate Apricot, Desmate Grapefuit, Hand Dishwash Pear, Hand Dishwash Grapefruit, Silver Polish, Stainless Steel Cleaner, and Furniture Polish.

1    neutralized and purified.[26,27]

2    h.   Potassium cocoate is manufactured "by combining the fatty acids of coconut

3         oil with potassium hydroxide."[28,29]

4    i.   Potassium sorbate is manufactured "by reacting sorbic acid with an equimolar

5         portion of potassium hydroxide.  The resulting potassium sorbate may be

6         crystallized from aqueous ethanol."[30,31]

7    j.   Sodium Coco-Sulfate ("SCS") is manufactured in a multi-step, non-natural

8         process that is nearly the same as making Sodium Lauryl Sulfate ("SLS"), but

9         instead of starting from a single fatty acid from coconut oil it begins with a

10        broad cut of saturated fatty acids.[32]  The process begins by reducing the fatty

11

12

13   [26] Final Report on the Safety Assessment of Phenoxyethanol, 9 J. Am. Coll. of Toxicology 259, 260 (1999), *available at* http://online.personalcarecouncil.org/ctfa-static/online/lists/cir-pdfs/pr139.pdf.

14
     [27] The following products contain Phenoxyethanol: Baby Laundry Detergent Chamomile &
15   Lavender, ECOS 4X Concentrated Laundry Detergent, Liquid Laundry Detergent Magnolia & Lily, Liquid Laundry Detergent Lavender, Liquid Laundry Detergent Lemongrass, Liquid
16   Laundry Detergent Free & Clear, Spray Starch, Creamy Cleanser, Dishmate Natural Almond, Dishmate Organic Lavender, Dishmate Organic Grapefruit, Dishmate Natural Pear, Dishmate
17   Fragrance Free, Dishmate Apricot, Desmate Grapefruit, Hand Dishwash Pear, Hand Dishwash Grapefruit, Silver Polish, Stainless Steel Cleaner, and Furniture Polish.
18
     [28] Christina L. Burnett et al., *Final Report on the Safety Assessment of Cocos nucifera (Coconut)*
19   *Oil and Related Ingredients*, 30 Int. J. of Toxicology 5S, 6S (2011), *available at* http://online.personalcarecouncil.org/ctfa-static/online/lists/cir-pdfs/pr507.pdf.
20   [29] The following products contain Lauryl Glucoside: ECOS 4X Concentrated Laundry Detergent, Liquid Laundry Detergent Magnolia & Lily, Liquid Laundry Detergent Lavender, Liquid
21   Laundry Detergent Lemongrass, Liquid Laundry Detergent Free & Clear.

22   [30] *Final Report on the Safety Assessment of Sorbic Acid and Potassium Sorbate*, 7 J. Am. Coll. of Toxicology 837, 839 (1988), *available at* http://online.personalcarecouncil.org/ctfa-
23   static/online/lists/cir-pdfs/pr152.pdf.
     [31] The following products contain Everyday Stain & Odor Remover, Uni-Fresh Air Freshener
24   Parsley, Countertop Cleaner, Floor Cleaner, Fruit & Veggie Wash, Orange Plus, Orange Plus Complete, Parsley Plus All Surface Cleaner, Wave, Window Cleaner Vinegar, Shower Cleaner,
25   Toilet Cleaner.

26   [32] Hebe Botanicals, Sodium Coco Sulfate – Another Synthetic Detergent, http://www.hebebotanicals.co.nz/sodium-coco-sulfate-another-synthetic-detergent/ (last visited
27   Sept. 19, 2014).

28

acids into lauryl alcohol.[33] Sulfur trioxide or chlorosulfonic acid is added to the lauryl alcohol by a sulfation process.[34] The mixture is then neutralized, often using sodium hydroxide, sodium carbonate, or sodium bicarbonate to form SCS.[35] The SCS is then purified with one or more solvents, such as n-butanol, diethyl ether, or ethanol.[36] Given that the USDA and FDA consider SLS to be a synthetic substance, and SCS is produced using the same process, SCS is not natural.[37, 38]

35. Accordingly, a reasonable consumer would not deem the Products containing any of the above ingredients to be natural.

36. Thus, by labeling the Products as "natural," Defendant deceives and misleads reasonable consumers.

37. Furthermore, the Products contain Methylisothiszolinone (2-methyl-4-isothiazolin-3-one, or "MI"), a biocide used for controlling microbial growth in water-containing solutions.

38. MI is neither "natural" nor "made from plants" in the traditional use of those words. MI is produced by the controlled chlorination of dimethyldithiodipropionamide (DPAM) in solvent, followed by neutralization and extraction into water.

---

[33] ICF Consulting for the USDA Nat'l Organic Program, *Technical Evaluation Report: Sodium Lauryl Sulfate* (2006), *available at* http://www.pharmsolutionsinc.com/docs/NationalOrganicProgramReportonSodiumLaurylSulfate.pdf (last visited June 10, 2014).
[34] *Id.*
[35] *Id.*
[36] *Id.*
[37] *Id.*; *see also* Oral Health Care Drug Product for Over-the-Counter Human Use; Antigingivitis/Antiplaque Drug Products; Establishment of a Monograph; Proposed Rules, 68 Fed. Reg. 32232, 32263 (May 29, 2003).
[38] The following products contain SCS: Baby Laundry Detergent Chamomile & Lavender, ECOS 4X Concentrated Laundry Detergent, Liquid Laundry Detergent Magnolia & Lily, Liquid Laundry Detergent Lavender, Liquid Laundry Detergent Lemongrass, Liquid Laundry Detergent Free & Clear, Spray Starch, Uni-Fresh Air Freshener Citrus, Uni-Fresh Air Freshener Vanilla, Uni-Fresh Air Freshener Cinnamon, Uni-Fresh Air Freshener Lavender, Uni-Fresh Air Freshener Parsley, Dishmate Natural Almond, Dishmate Organic Lavender, Dishmate Organic Grapefruit, Dishmate Natural Pear, Dishmate Fragrance Free, Dishmate Apricot, Desmate Grapefuit, Hand Dishwash Pear, Hand Dishwash Grapefruit, and Window Cleaner Lavender.

DOCUMENT PREPARED ON RECYCLED PAPER

39.     MI is known to have allergenic and cytotoxic properties and has been associated with skin toxicity, immune system toxicity, and allergic reactions.[39]  Evidence also exists that it may be neurotoxic.[40]  In Canada and Japan, this substance is restricted in cosmetics.[41]  The European Commission's Scientific Committee on Consumer Safety has stated that MI is unsafe above 15 ppm in rinse-off cosmetic products, and that *no* amount of MI is safe in products designed for prolonged contact with the skin.[42]

40.     Indeed, MI has been linked to what is called an "epidemic" of painful skin allergies, including rashes, blistering, swelling, redness, and hives.[43]  MI contact allergies are rising dramatically.[44]  The rapidly increasing rates of allergic reactions to MI resulted in the American Contact Dermatitis Society naming MI as the contact allergen of the year in 2013. Numerous studies from all over the world quantify the "epidemic" of allergic reactions to MI as being so serious as to occur within 2% to 10% of exposed individuals.

41.     No consumer would reasonably expect a "pure" offering that is free from harmful chemicals to contain a chemical preservative known to cause severe allergic reactions such as MI.

42.     The front of Ultra Dishmate's packaging, which touts its "natural" composition free from various chemicals, makes no mention of this harmful chemical.  The back of Ultra Dishmate's packaging asserts that "Dishmate's™ balanced pH makes it extremely gentle on hands."  The packaging does not reveal anywhere that the MI it contains is linked to severe allergic reactions and considered unsafe for prolonged contact with skin.  Nor does the packaging

---

[39] *See* EWG, EWG's Skin Deep Cosmetics Database, Entry for METHYLISOTHIAZOLINONE,"
http://www.ewg.org/skindeep/ingredient/703935/METHYLISOTHIAZOLINONE/.
[40] *Id.*
[41] GoodGuide.com, Methylisothiazolinone Information,
http://www.goodguide.com/ingredients/53090-methylisothiazolinone.
[42] *See* Scientific Committee on Consumer Safety, Opinion on MI, Submission II (2014), http://ec.europa.eu/health/scientific_committees/consumer_safety/docs/sccs_o_145.pdf.
[43] *See, e.g.*, http://www.telegraph.co.uk/news/health/10517988/The-epidemic-in-the-bathroom-manufacturers-told-to-remove-chemical-linked-to-skin-allergies.html; *and*
http://www.webmd.com/skin-problems-and-treatments/news/20140323/rashes-from-wipes-liquid-soaps-on-the-rise.
[44] *See, e.g.*, http://www.ncbi.nlm.nih.gov/pubmed/24819287.

-15-

DOCUMENT PREPARED
ON RECYCLED PAPER

include any warning whatsoever that the contact with the Products may result in some type of contact dermatitis or other skin malady.

43.     The front of ECOS Natural Laundry's packaging, which touts its "natural" composition free from various chemicals, makes no mention of this harmful chemical.  The back of ECOS Natural Laundry's packaging asserts that "ECOS® cleans to the most exacting standards, yet is extremely gentle on fabrics."  Nowhere does the packaging reveal that the MI it contains is linked to severe allergic reactions and considered unsafe for prolonged contact with skin.

44.     By including MI, Defendant provides the opposite of the Products' advertised attributes of being "natural" and "gentle."  Moreover, Defendant misleads consumers by marketing the Products as free from various chemicals, while the Products at the same time contain the toxic and allergenic chemical MI.

45.     Therefore, Defendant's representations that the Products are pure, natural, environmentally sound, gentler than traditional detergents, and free from harmful chemicals are false, deceptive, and misleading.

46.      The presence of MI in Ultra Dishmate is not disclosed on the front label of the packaging, where Defendant makes unqualified claims of "naturally derived," "natural," and "made from plants."

47.     The presence of MI in ECOS Natural Laundry is not disclosed on the front label of the packaging, where Defendant makes multiple unqualified claims of a "natural" product.

48.     Because the Products contain MI, an unnatural ingredient, Defendant's claim that the Products are "natural" is false, misleading, and designed to deceive consumers into purchasing the Products. This fact alone, that the Products are not natural, yet marketed and distinguished primarily upon this characteristic, is sufficiently deceiving to the consumer.  The fact that MI is likely hazardous, provoking allergic and other reactions, only highlights Defendant's deception.

DOCUMENT PREPARED
ON RECYCLED PAPER

### C. Reasonable Consumers Purchase the Products Because They Have Been Deceived to Believe They Are "Natural."

49. Defendant's labeling of the Products as "natural" unequivocally demonstrates its intent to persuade the consumer that the Products are "natural" because they contain only natural ingredients. However, the Products do not contain only natural ingredients. As described above, many of the ingredients contained in the Products are the result of complex, multi-step processes that involve the use of toxic chemicals. The end products are substances which do not exist in nature, and which could not exist without the complex chemical processes detailed in Section B of the Substantive Allegations above.

50. Despite the inclusion of highly processed and/or non-natural ingredients, Defendant labeled and marketed the Products as "natural."

51. Reasonable consumers, including Plaintiffs, purchased the Products based upon a belief that they are "natural." However, a reasonable consumer would not deem the Products natural if he/she knew that they contained highly processed and/or non-natural ingredients.

52. Hence, Defendant's claims that the Products are "natural" are false and misleading.

### D. Certain Products Which Are Sold, Labeled, and Represented as Organic, Are Not Organic.

53. As with the demand for and premium paid for natural products, the demand for and premium paid for organic products has spurned profiteering companies such as Defendant to sell, label and represent products as organic when in fact such products are not organic.

54. Defendant sells and markets cosmetic products such as its liquid hand soaps as organic. For example, such products prominently state "Organic Lemongrass" and/or "Organic Lavender" on the principle display panel. Nevertheless, such products are comprised almost entirely from ingredients that are not organic.

55. Organic products are made with organically grown plants. As such, organic ingredients are produced without the use of pesticides and other harmful or potentially harmful chemicals. Organic products have gained popularity such that over 70% of households in the United States now use some organic products each year, even though such products typically cost more than their non-organic counterparts. Growing concerns over the use of harmful chemicals

-17-

DOCUMENT PREPARED ON RECYCLED PAPER

in the production of non-organic products, together with a desire for more healthy lifestyles, have spurred the popularity of organic products. The personal care product market is one of the fastest growing markets for organic products. Consumers such as Plaintiff and the other members of the Classes are willing to pay more for organic personal care products such as skin care, hair care, and body care in order to avoid harmful chemicals in favor of more natural ingredients. Defendant takes advantage of this segment of consumers by marketing, advertising, selling, labeling, and representing the Cosmetic Products as organic, when in fact such Cosmetic Products contain significant amounts of non-organic ingredients. In fact, the vast majority of the ingredients in the Cosmetic Products are not organic.

56.    California law expressly prohibits companies such as Defendant from engaging in this type of misleading labeling. The California Organic Products Act of 2003, Cal. Health & Safety Code § 110810, *et seq.* (hereinafter "COPA"), requires that any cosmetic product sold, labeled and/or represented as "organic" must be comprised of at least 70% organically produced ingredients by weight or fluid volume, excluding water and salt. Cal. Health & Safety Code §110838. The Cosmetic Products are cosmetics that contain far less than 70% organically produced ingredients, excluding water and salt. Nevertheless, Defendant labels, sells, and represents the Cosmetic Products as organic.

57.    Defendant's conduct of advertising, marketing, selling, labeling, and representing the Cosmetic Products as organic, when in fact such Cosmetic Products are comprised mainly of non-organic ingredients, constitutes unlawful, unfair, and deceptive conduct, is likely to deceive members of the public, is unethical, oppressive, unscrupulous, and substantially injurious to consumers, and violates California's legislatively-declared policies against misrepresenting the organic content of cosmetics and against misrepresenting the characteristics of goods and services. As such, Defendant's marketing, labeling, and advertising practices violate California's COPA.

### The Nature of the Illegality of Defendant's Conduct

58.    Defendant has profited enormously from its false advertising of the Products. According to its website, Defendant is a family-owned company that now "has international

-18-

DOCUMENT PREPARED ON RECYCLED PAPER

1    distribution, in more than 60 countries, of a retail line of over 60 household products," and its

2    products "may be purchased at a variety of retail outlets and on [its own] web site."[45]

3         59.    The Federal Trade Commission (FTC), whose mission is, in part, "[t]o prevent

4    business practices that are anticompetitive or deceptive or unfair to consumers," has issued

5    marketing standards, known as the "FTC Green Guides,"[46] that apply to the unfair and deceptive

6    nature of Defendant's environmental marketing claims.

7         60.    Environmental marketing claims that violate the standards of the Green Guides are

8    *per se* unlawful under California's Environmental Marketing Claims Act ("EMCA"), Cal. Bus. &

9    Prof. Code §§ 17580-17581.

10        61.    The acts and omissions alleged herein are in contravention of the FTC Green

11   Guides and in violation of the EMCA in several respects. For example, Defendant makes

12   unqualified representations about the "natural" qualities of the Products, whereas the FTC Green

13   Guides advise that, to prevent deceptive claims, any "qualifications and disclosures should be

14   clear, prominent and understandable."[47]  Furthermore, the FTC Green Guides advise that, "[t]o

15   make disclosures clear and prominent, marketers . . . should place disclosures in close proximity

16   to the qualified claim."[48]  Defendant has not placed any clear, prominent disclosures in close

17   proximity to its unqualified "natural," "naturally derived," and "made from plants" claims on the

18   packaging for Ultra Dishmate or in close proximity to its "Natural" claim on the packaging for

19   ECOS Natural Laundry.

20        62.    Similarly, Defendant makes unqualified representations that the Products offer

21   general environmental benefits, whereas the Green Guides advise that "marketers should not

---

[45] Earth Friendly Products, About Us, http://www.ecos.com/about.html (viewed Jan. 31, 2015).
[46] *See* FTC, *GUIDES FOR THE USE OF ENVIRONMENTAL MARKETING CLAIMS*, 16 C.F.R. Part 260, *available at* http://www.ftc.gov/os/2012/10/greenguides.pdf.
[47] 16 C.F.R. § 260.3(a) (2012); *see also* 16 C.F.R. § 260.6(a) (2003) ("*Qualifications and disclosures*. The Commission traditionally has held that in order to be effective, any qualifications or disclosures such as those described in these guides should be sufficiently clear, prominent and understandable to prevent deception.").
[48] 16 C.F.R. § 260.3(a) (2012); *see also* 16 C.F.R. § 260.6(a) (2003) ("Clarity of language, relative type size and proximity to the claim being qualified, and an absence of contrary claims that could undercut effectiveness, will maximize the likelihood that the qualifications and disclosures are appropriately clear and prominent.").

DOCUMENT PREPARED
ON RECYCLED PAPER

CLASS ACTION COMPLAINT

make unqualified general environmental benefit claims."[49]  By way of illustration and not

limitation, Defendant's representations "natural," "naturally derived," and "made from plants,"

Defendant's use of the "Earth Friendly" logo with orange and lemon fruits, and (on many of the

packages) illustrations such as clean blue skies or falling water drops, are all such unqualified

representations of general environmental benefit.[50]  Moreover, should any consumer research

further, Defendant's own website asserts that it "respond[s] to new research and customer

preferences immediately."[51]

63.    Furthermore, although the FTC Green Guides do not specifically address the term

"natural," "naturally derived," and "made from plants," the FTC has made clear that the general

principles of the Guides apply– i.e., use of such terms must not be misleading to reasonable

consumers, and marketers must have substantiation for such claims if they evoke environmental

benefits.[52]  Defendant's use of these terms is misleading and unsubstantiated, as described herein.

64.    In sum, Defendant's prominent representations on the packaging for the Products

deceptively mislead consumers into believing that Earth Friendly Products offers two natural,

---

[49] 16 C.F.R. § 260.4(b) (2012); see also 16 C.F.R. § 260.7(a) (2003) ("It is deceptive to misrepresent, directly or by implication, that a product, package or service offers a general environmental benefit. . . . [E]very express and material implied claim that the general assertion conveys to reasonable consumers about an objective quality, feature or attribute of a product or service must be substantiated. Unless this substantiation duty can be met, broad environmental claims should either be avoided or qualified, as necessary, to prevent deception about the specific nature of the environmental benefit being asserted.").
[50] See 16 C.F.R. § 260.4("Example 3") (2012) ("A marketer's advertisement features a picture of a laser printer in a bird's nest balancing on a tree branch, surrounded by a dense forest. In green type, the marketer states, 'Buy our printer. Make a change.' Although the advertisement does not expressly claim that the product has environmental benefits, the featured images, in combination with the text, likely convey that the product has far-reaching environmental benefits and may convey that the product has no negative environmental impact. Because it is highly unlikely that the marketer can substantiate these claims, this advertisement is deceptive.").
[51] Earth Friendly Products, About Us, http://www.ecos.com/about.html (viewed Jan. 31, 2015).
[52] See FTC, THE GREEN GUIDES: STATEMENT OF BASIS AND PURPOSE, http://www.ftc.gov/os/fedreg/2012/10/greenguidesstatement.pdf 259 (citing 75 Fed. Reg. 63,552, 63,585-63,586 (Oct. 15, 2010)). The FTC did not propose specific guidelines regarding the term "natural" because it "lacked consumer perception evidence indicating how consumers understand 'natural.'"  Id.

DOCUMENT PREPARED ON RECYCLED PAPER

1  environmentally sound, and relatively safer product alternatives to traditional offerings in the

2  detergent categories.

3       65.    Defendant has engaged in additional unlawful conduct by and through its failure to

4  warn regarding the significant and known hazards of exposure to the MI contained in the

5  Products. Where, as here, a significant proportion of the population suffers from allergic

6  reactions to a chemical contained in a consumer product, the manufacturer of that product has a

7  legal duty to warn regarding the allergic properties of that chemical. This is especially true

8  where, as here, the consumer may have no other means of knowing that the use of the Products

   may result in serious skin allergies.

9       66.    Defendant has profited enormously from false and misleading representations that

10 the Products are natural, safe, organic, and environmentally sound, as well as its failure to include

11 warnings regarding the skin allergies caused by the chemical compounds within the Products.

12 The purpose of this action is to put an end to Earth Friendly Products' deceptive marketing of the

13 Products and to provide consumers with warnings regarding the allergenic properties of the MI

14 contained within the Products and monetary relief for Defendant's unjust enrichment stemming

15 from its deceptive and misleading product claims.

16                              **CLASS ALLEGATIONS**

17      67.    Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil

18 Procedure on behalf of themselves and all others similarly situated individuals within the United

19 States (the "Class"), defined as follows:

20           All United States residents who purchased the Products within the United
             States during the period from January 23, 2011 through the date of the
21           Preliminary Approval Order. Excluded from the Nationwide Class are any
             of Defendant's officers, directors, or employees; officers, directors, or
22           employees of any entity in which Defendant currently has or has had a
             controlling interest; and Defendant's legal representatives, heirs,
23           successors, and assigns.

24

25      68.    Additionally, Plaintiff Baharestan brings this action pursuant to Rule 23 of the

26 Federal Rules of Civil Procedure on behalf of herself and all other similarly situated Californians

27 (the "California Sub-Class"), defined as follows:

28

1
2
3
4

> All persons who purchased the Products within the state of California during the period from January 23, 2011 through the date of the Preliminary Approval Order. Excluded from the Nationwide Class are any of Defendant's officers, directors, or employees; officers, directors, or employees of any entity in which Defendant currently has or has had a controlling interest; and Defendant's legal representatives, heirs, successors, and assigns.

5
6
7

69.     Additionally, Plaintiff McIntyre brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all other similarly situated Washington residents (the "Washington Sub-Class"), defined as follows:

8
9
10
11
12

> All persons who purchased the Products within the state of Washington during the period from January 23, 2011 through the date of the Preliminary Approval Order. Excluded from the Nationwide Class are any of Defendant's officers, directors, or employees; officers, directors, or employees of any entity in which Defendant currently has or has had a controlling interest; and Defendant's legal representatives, heirs, successors, and assigns.

13     70.     The requirements of Federal Rule of Civil Procedure 23 are satisfied because:

14     (a)     Numerosity: The members of each class are so numerous that joinder of all
15 members is impracticable.  While the exact number of class members is presently unknown to
16 Plaintiff, based on Defendant's volume of sales, Plaintiff estimates that each class numbers in the
17 thousands.

18     (b)     Commonality: There are questions of law and fact that are common to the
19 class members and that predominate over individual questions.  These include the following:

20          i.   Whether Defendant materially misrepresented to the class members
21               that the Products are natural;

22          ii.  Whether Defendant's misrepresentations and omissions were material
               to reasonable consumers;
23
24          iii. Whether Defendant's labeling, marketing, and sale of the Products
               constitutes an unfair, unlawful, or fraudulent business practice;
25
26          iv.  Whether Defendant's conduct described above constitutes a breach of
               warranty;
27
28

DOCUMENT PREPARED ON RECYCLED PAPER

v.   Whether Defendant's conduct injured consumers and, if so, the extent of the injury; and

vi.   The appropriate remedies for Defendant's conduct.

(c)   <u>Typicality</u>: Plaintiff's claims are typical of the claims of the class members because Plaintiff suffered the same injury as the class members—*i.e.*, Plaintiff purchased the Products based on Defendant's misleading representations that the Products are "natural."

(d)   <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests of the members of each class.  Plaintiff does not have any interests that are adverse to those of the class members.  Plaintiff has retained competent counsel experienced in class action litigation and intends to prosecute this action vigorously.

(e)   <u>Superiority</u>: A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender.  Since the damages suffered by individual class members are relatively small, the expense and burden of individual litigation make it virtually impossible for the class members to seek redress for the wrongful conduct alleged, while an important public interest will be served by addressing the matter as a class action.

71.   The prerequisites for maintaining a class action for injunctive or equitable relief under Federal Rule of Civil Procedure 23(b)(2) are met because Defendant has acted or refused to act on grounds generally applicable to each class member, thereby making appropriate final injunctive or equitable relief with respect to each class as a whole.

## CAUSES OF ACTION
## COUNT I

**(Breach of Express Warranty)**
***On Behalf of the Class***

72.   Plaintiffs incorporate by reference the allegations set forth above.

73.   Plaintiffs and the Class members formed a contract with Defendant at the time

-23-

DOCUMENT PREPARED ON RECYCLED PAPER

they purchased the Products.  As part of that contract, Defendant represented that the Products were "natural," as described above.  These representations constitute express warranties and became part of the basis of the bargain between Plaintiff and the Class members, on the one hand, and Defendant, on the other.

74.  Defendant made the above-described representations to induce Plaintiffs and the Class members to purchase the Products, and Plaintiffs and the Class members relied on the representations in purchasing the Products.

75.  All conditions precedent to Defendant's liability under the above-referenced contract have been performed by Plaintiffs and the other Class members.

76.  Defendant breached its express warranties about the Products because, as alleged above, the Products are not "natural."  Defendant breached the following state warranty laws:

    A.      Alaska Stat. section 45.02.313;

    B.      Ariz. Rev. Stat. section 47-2313;

    C.      Ark. Code Ann. section 4-2-313;

    D.      Cal. Com. Code section 2313;

    E.      Colo. Rev. Stat. section 4-2-313;

    F.      Conn. Gen. Stat. section 42a-2-313;

    G.      6 Del. Code section 2-313;

    H.      D.C. Code section 28:2-313;

    I.      Ga. Code Ann. section 11-2-313;

    J.      Haw. Rev. Stat. section 490:2-313;

    K.      Idaho Code Ann. section 28-2-313;

    L.      810 Ill. Comp. Stat. 5/2-313;

    M.      Ind. Code section 26-1-2-313;

    N.      Kan. Stat. Ann. section 84-2-313;

    O.      Ky. Rev. Stat. section 355.2-313;

    P.      11 Me. Rev. Stat. Ann. section 2-313;

DOCUMENT PREPARED ON RECYCLED PAPER

| | | |
|---|---|---|
| 1 | Q. | Mass. Gen. Laws Ann. ch. 106 section 2-313; |
| 2 | R. | Minn. Stat. section 336.2-313; |
| 3 | S. | Miss. Code Ann. section 75-2-313; |
| 4 | T. | Mo. Rev. Stat. Section 400.2-313; |
| 5 | U. | Mont. Code Ann. Section 30-2-313; |
| 6 | V. | Neb. Rev. Stat. section 2-313; |
| 7 | W. | Nev. Rev. Stat. Ann. section 104.2313; |
| 8 | X. | N.H. Rev. Stat. Ann. 382-A:2-313; |
| 9 | Y. | N.J. Stat. Ann. section 12A:2-313; |
| 10 | Z. | N.M. Stat. Ann. section 55-2-313; |
| 11 | AA. | N.Y. U.C.C. Law section 2-313; |
| 12 | AB. | N.C. Gen. Stat. section 25-2-313; |
| 13 | AC. | N.D. Cent. Code section 41-02-30; |
| 14 | AD. | Ohio Rev. Code Ann. section 1302.26; |
| 15 | AE. | 12A Okla. Stat. section 2-313; |
| 16 | AF. | Or. Rev. Stat. section 72-3130; |
| 17 | AG. | 13 Pa. Cons. Stat. section 2313; |
| 18 | AH. | R.I. Gen. Laws section 6A-2-313; |
| 19 | AI. | S.C. Code Ann. section 36-2-313; |
| 20 | AJ. | S.D. Codified Laws, section 57A-2-313; |
| 21 | AK. | Tenn. Code Ann. section 47-2-313; |
| 22 | AL. | Tex. Bus. & Com. Code section 2.313; |
| 23 | AM. | Utah Code Ann. section 70A-2-313; |
| 24 | AN. | 9A Vt. Stat. Ann. section 2-313; |
| 25 | AO. | Va. Code Ann. section 59.1-504.2; |
| 26 | AP. | Wash. Rev. Code Ann. section 62A.2-313; |
| 27 | AQ. | W. Va. Code section 46-2-313; |
| 28 | | |

DOCUMENT PREPARED ON RECYCLED PAPER

1        AR.    Wyo. Stat. Ann. section 34.1-2-313.

2        77.    As a result of Defendant's breaches of express warranty, Plaintiffs and the other members of the Class were damaged in the amount of the purchase price they paid for the Products, in amounts to be proven at trial.

78.    Within a reasonable time after they knew or should have known of such breach, Plaintiffs, on behalf of herself and the other members of the Class, placed Defendant on notice thereof.

79.    THEREFORE, Plaintiff prays for relief as set forth below.

## COUNT II

**(Unfair and Deceptive Acts and Practices**
**In Violation of the California Consumers Legal Remedies Act)**
***On Behalf of the California Sub-Class***

80.    Plaintiffs incorporate by reference and reallege herein all paragraphs alleged above.

81.    This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 ("CLRA").

82.    Plaintiff Baharestan and the other members of the California Sub-Class are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought the Products for personal, family, or household purposes.

83.    Plaintiff Baharestan, the other members of the California Sub-Class, and Defendant have engaged in "transactions," as that term is defined by California Civil Code §1761(e).

84.    The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

85.    As alleged more fully above, Defendant has violated the CLRA by falsely representing to Plaintiff Baharestan and the other members of the California Sub-Class that the

DOCUMENT PREPARED
ON RECYCLED PAPER

Products (a) are unqualifiedly "natural", (b) unqualifiedly naturally derived, (c) unqualifiedly made from plants, and (d) safer product alternatives made without harsh chemicals.

86.     As a result of engaging in such conduct, Defendant has violated California Civil Code § 1770(a)(5), (a)(7), and (a)(9).

87.     Pursuant to California Civil Code § 1780(a)(2) and (a)(5), Plaintiff Baharestan seeks an order of this Court that includes, but is not limited to, an order requiring Defendant to:

    a.  remove and/or refrain from making representations on the Products' packaging representing that the Products provide an unqualified level of "natural" benefits; and

    b.  remove and/or refrain from making representations on the Products' packaging representing that the Products are unqualifiedly naturally derived and unqualifiedly made from plants.

88.     Plaintiff Baharestan and the other California Sub-Class members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

89.     The unfair and deceptive acts and practices of Defendant, as described above, present a serious threat to Plaintiff Baharestan and the other members of the California Sub-Class.

90.     CLRA § 1782 NOTICE.  On March 25, 2015, a CLRA demand letter was sent to Defendant via certified mail that provided notice of Defendant's violation of the CLRA and demanded that within thirty (30) days from that date, Defendant correct, repair, replace or other rectify the unlawful, unfair, false and/or deceptive practices complained of herein.  The letter also stated that if Defendant refused to do so, a complaint seeking damages in accordance with the CLRA would be filed. Defendant has failed to comply with the letter.  Accordingly, pursuant to California Civil Code § 1780(a)(3), Plaintiff Baharestan, on behalf of herself and all other members of the California Sub-Class, seeks compensatory damages, punitive damages, and restitution of any ill-gotten gains due to Defendant's acts and practices.

DOCUMENT PREPARED ON RECYCLED PAPER

## COUNT III

**(Violations of California's False Advertising Law)**
***On Behalf of the California Sub-Class***

91.     Plaintiffs incorporate by reference and reallege herein all paragraphs alleged above.

92.     As alleged more fully above, Defendant has falsely advertised the Products by falsely claiming that the Products are unqualifiedly naturally derived and environmentally sound.

93.      Plaintiff Baharestan and the other members of the California Sub-Class have suffered injury in fact and have lost money or property as a result of Defendant's violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*

94.      Pursuant to California Business and Professions Code §§ 17203 and 17535, Plaintiff Baharestan and the California Sub-Class seek an order of this Court that includes, but is not limited to, an order requiring Defendant to:

> a.   remove and/or refrain from making representations on the Products' packaging representing that the Products provide an unqualified level of "natural" benefits; and

> b.   remove and/or refrain from making representations on the Products' packaging representing that the Products are unqualifiedly naturally derived and unqualifiedly made from plants.

## COUNT IV

**(Violations of California's Environmental Marketing Claims Act)**
***On Behalf of the California Sub-Class***

95.     Plaintiffs incorporate by reference and reallege herein all paragraphs alleged above.

96.      As alleged more fully above, Defendant has falsely advertised the Products by falsely claiming that the Products are unqualifiedly natural, unqualifiedly naturally derived, and unqualifiedly made from plants.

97.      Plaintiff Baharestan and the other members of the California Sub-Class have suffered injury in fact and have lost money or property as a result of Defendant's violations of

DOCUMENT PREPARED
ON RECYCLED PAPER

California's Environmental Marketing Claims Act ("EMCA"), Cal. Bus. & Prof. Code §§ 17580-17581.

98.     In particular, Defendant has violated and continues to violate California Business and Professions Code § 17580.5, which makes it "unlawful for any person to make any untruthful, deceptive, or misleading environmental marketing claim, whether explicit or implied" and which defines an environmental marketing claim to include "any claim contained in the [the FTC's Green Guides]."

99.     Pursuant to California Business and Professions Code §§ 17203 and 17535, Plaintiff Baharestan and the California Sub-Class seek an order of this Court that includes, but is not limited to, an order requiring Defendant to:

      a.   remove and/or refrain from making representations on the Products' packaging representing that the Products provide an unqualified level of "natural" benefits; and

      b.   remove and/or refrain from making representations on the Products' packaging representing that the Products are unqualifiedly naturally derived and unqualifiedly made from plants.

## COUNT V

### (Violation of California Organic Products Act)
### *On Behalf of the California Sub-Class*

100.     Plaintiff McBride incorporates by reference the allegations set forth above.

101.     Plaintiff Baharestan is a "person" within the meaning of Cal. Health & Safety Code § 111910(a).

102.     Defendant has violated and continues to violate the provisions of COPA, Cal. Health & Safety Code § 110838, as described above.

103.     Cal. Health & Safety Code § 111910(a) provides for injunctive relief for any violation of COPA and affords standing to "any person" to enforce such violations. That Section provides, in part:

> any person may bring an action in superior court pursuant to this section and the court shall have jurisdiction upon hearing and for cause shown, to grant a temporary or permanent injunction restraining any person from

DOCUMENT PREPARED
ON RECYCLED PAPER

1    violating any provision of Article 7 (commencing with Section 110810) of
     Chapter 5.

2    *Id.* That Section further provides that actions for injunctive relief to remedy violations of COPA

3    are not subject to all of the same restrictions as other actions for injunctive relief. Specifically,

4         the person shall not be required to allege facts necessary to show, or
          tending to show, lack of adequate remedy at law, or to show, or tending to
5         show, irreparable damage or loss, or to show, or tending to show, unique or
          special individual injury or damages.
6
     *Id.*
7
          104.    Plaintiff is thus entitled to both preliminary and permanent injunctive relief to
8
     restrain Defendant's violations of COPA. Cal. Health & Safety Code § 111910(a).
9
          105.    Specifically, Plaintiff Baharestan and the California Sub-Class seek an order of
10
     this Court that includes, but is not limited to, an order requiring Defendant to:
11
               a.   Stop using the word "organic" on the principal display panel of any product
12
                    that does not contain a minimum of 70% organic ingredients.
13
               b.   pay Plaintiff Baharestan's and the California Sub-Class's attorneys' fees and
14
                    costs.
15
                                        **COUNT VI**
16
                    **(Violation of California's Unfair Competition Law)**
                    **On Behalf of the California Sub-Class**
17
          106.    Plaintiffs incorporate by reference and reallege herein all paragraphs alleged
18
     above.
19
          107.    By committing the acts and practices alleged herein, Defendant has violated
20
     California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, as to the
21
     California Sub-Class as a whole, by engaging in unlawful, fraudulent, and unfair conduct.
22
          108.    Defendant has violated the UCL's proscription against engaging in *unlawful*
23
     conduct as a result of:
24
               a.   its violations of the CLRA, Cal. Civ. Code § 1770(a)(5), (a)(7), and (a)(9), as
25
                    alleged above;
26
               b.   its violations of the FAL, Cal. Bus. & Prof. Code § 17500 *et seq.*, as alleged
27
                    above;
28
                                            -30-

DOCUMENT PREPARED
ON RECYCLED PAPER

c.  its violations of COPA, Cal. Health and Safety Code §110838, as alleged above;

d.  its violations of the EMCA, Cal. Bus. & Prof. Code §§ 17580-17581, as alleged above; and

e.  Its material omissions resulting from its failure to warn regarding the known allergenic hazards of MI as described above.

109.    Defendant's acts and practices described above also violate the UCL's proscription against engaging in fraudulent conduct.

110.    As more fully described above, Defendant's misleading marketing, advertising, packaging, and labeling of Products is likely to deceive reasonable consumers. Indeed, Plaintiff Baharestan and the other members of the California Sub-Class were unquestionably deceived regarding the environmental and natural benefits of Products, as Defendant's marketing, advertising, packaging, and labeling of the Products misrepresents and/or omit the true facts concerning the benefits of the Products. Plaintiff Baharestan and the California subclass were further deceived by Defendant's omission of any warnings regarding the known allergenic hazards of the MI in the Products.  Said acts are fraudulent business practices.

111.    Defendant's acts and practices described above also violate the UCL's proscription against engaging in *unfair* conduct.

112.    Plaintiff Baharestan and the other California Sub-Class members suffered a substantial injury by virtue of buying the Products that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and labeling or by virtue of paying an excessive premium price for the unlawfully, fraudulently, and unfairly marketed, advertised, packaged, and labeled Products.

113.    There is no benefit to consumers or competition from deceptively marketing and labeling products, which purport to be natural, naturally derived, made from plants, and safer alternatives to traditional offerings when these claims are false.  There is also no benefit to consumers from failing to provide warnings regarding a skin allergen that is known to cause allergic reactions in two to ten percent of the population.

DOCUMENT PREPARED
ON RECYCLED PAPER

114.    Plaintiff Baharestan and the other California Sub-Class members had no way of reasonably knowing that the Products they purchased were not as marketed, advertised, packaged, or labeled.  Thus, they could not have reasonably avoided the injury each of them suffered.

115.    The gravity of the consequences of Defendant's conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff Baharestan and the other members of the California Sub-Class.

116.    Defendant's violations of the UCL continue to this day.

117.    Pursuant to California Business and Professional Code § 17203, Plaintiff Baharestan and the California Sub-Class seek an order of this Court that includes, but is not limited to, an order requiring Defendant to:

      a.  remove and/or refrain from making representations on the Products' packaging representing that the Products provide an unqualified level of "natural" benefits;

      b.  remove and/or refrain from making representations on the Products' packaging representing that the Products are unqualifiedly naturally derived and unqualifiedly made from plants;

      c.  require prominent warnings on the principle display panel of the Products that such Products contain methylisothiazolinone, a chemical known to cause severe contact dermatitis;

      d.  provide restitution to Plaintiff Baharestan and the other California Sub-Class members;

      e.  disgorge all revenues obtained as a result of violations of the UCL; and

      f.  pay Plaintiff Baharestan's and the California Sub-Class's attorneys' fees and costs.

DOCUMENT PREPARED
ON RECYCLED PAPER

1

2

## COUNT VII

(**Violation of the Washington Consumer Protection Act – RCW §§ 19.86,** *et seq.*)
*On Behalf of the Washington Sub-Class*

3

4

118.    Plaintiffs incorporate by reference and reallege herein all paragraphs alleged above.

5

6

119.    This claim arises under the Washington Consumer Protection Act, Wash. Rev. Code ("RCW") §§ 19.86, *et seq.* ("CPA").

7

8

120.    At all relevant times, Defendant engaged in "trade" and/or "commerce" within the meaning of RCW § 19.86.010.

9

10

121.    The CPA broadly prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or business. RCW § 19.86.020

11

12

13

14

15

16

122.    Defendant made uniform representations that the Products were of a particular standard, quality, or grade when they were not, and, as set forth above, made false and/or misleading statements regarding the "natural" quality and characteristics of the Products that, as set forth above, were unfair and deceptive, had and continue to have the capacity to deceive the public, cause injury to Plaintiff McIntyre and the Washington Class, and were made in violation of the CPA.

17

18

123.    As alleged above, Defendant has violated the CPA by making false representations on the Products' packaging and in marketing (as detailed herein) that the Products are "natural," when in fact they contain highly processed and/or non-natural ingredients.

19

20

124.    This type of information is relied upon by consumers in making purchasing decisions and is fundamental to the decision to purchase the Products.

21

22

23

24

25

125.    Defendant has represented and continues to represent its Products in a deceptive and misleading manner as described herein.  These representations were important to reasonable consumers, such as Plaintiff and members of the Washington Class, in deciding whether to purchase the Products.  Defendant knew or should have known these representations were patently false and/or misleading.

26

27

126.    Plaintiff McIntyre and members of the Washington Class have each been directly and proximately injured by the conduct of Defendant, and such injuries include economic injury

28

-33-

DOCUMENT PREPARED
ON RECYCLED PAPER

for the loss of sums which constituted payment for the Products they purchased. Indeed, Plaintiff McIntyre and the Washington Class lost money or property when they purchased and/or paid a premium price for the Products. Plaintiff McIntyre and the Washington Class would not have paid as much or purchased the Products at all had they known they were not "natural" as promised.

127.    At all times material, Defendant engaged in a scheme of making false representations on the Products' packaging and in marketing (as detailed above) by misrepresenting the "natural" quality.  In fact, Defendant knew that these representations were false and misleading.  In engaging in this conduct, Defendant misrepresented important characteristics of its Products– i.e., the "natural" quality.  Defendant intended that Plaintiff McIntyre and members of the Washington Class rely on its deceptive acts and misrepresentations, and Plaintiff and the members of the Washington Class were actually deceived by Defendant's representations regarding the "natural" quality of the Products.

128.    The representations made by Defendant detrimentally affect the public interest. There is an inherent public interest in the truthful marketing and sales of products that operate as advertised.  The Products were not of the "natural" quality as advertised and thus negatively affected the public interest.

129.    By the conduct described herein, Defendant engaged in unfair methods of competition and/or unfair or deceptive acts or practices in the conduct of business, trade, or commerce.

130.    The Plaintiff McIntyre has already provided any required notice to appropriate entities regarding Defendant's unfair and deceptive trade practices.

131.    THEREFORE, Plaintiffs prays for relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment on behalf of themselves and the Class and the California Sub-Class as follows:

A.      An order certifying the proposed Class and the California and Washington Sub-Classes; appointing Plaintiffs as representatives of the Class and the Sub-Classes; and appointing Plaintiffs' undersigned counsel as Class counsel;

DOCUMENT PREPARED
ON RECYCLED PAPER

B.      A declaration that Defendant is financially responsible for notifying Class members of the pendency of this suit;

C.      An award of restitution;

D.      An award of restitutionary disgorgement pursuant to California Business and Professions Code §§ 17203 and 17535 for members of the California Sub-Class;

E.      An order enjoining Defendant's unlawful and deceptive acts and practices, pursuant to California Business and Professions Code §§ 17203 and 17535, to remove and/or refrain from using representations on Defendant's Products that the Products provide an unqualified level of "natural" benefits and are unqualifiedly naturally derived and made from plants;

F.      An order enjoining Defendant's violations of COPA;

G.      An order requiring prominent warnings on the principal display panel of the Products that such Products contain methylisothiazolinone, a chemical known to cause severe contact dermatitis;

H.      Monetary damages and injunctive relief for members of the California Sub-Class pursuant to California Civil Code § 1780;

I.      Statutory damages in the maximum amount provided by law;

J.      Punitive damages in accordance with proof and in an amount consistent with applicable precedent;

K.      An order awarding Plaintiffs and the other Class members the reasonable costs and expenses of suit, including their attorneys' fees; and

L.      Any further relief that the Court may deem appropriate.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury for all claims so triable.

DOCUMENT PREPARED
ON RECYCLED PAPER

CLASS ACTION COMPLAINT

1    DATED: August 4, 2015                    Respectfully submitted,

2

3                                              /s/ Mark N. Todzo

4                                             Mark N. Todzo, State Bar No. 168389
                                              Abigail Blodgett, State Bar No. 278813
5                                             LEXINGTON LAW GROUP
                                              503 Divisadero Street
6                                             San Francisco, CA  94117
                                              Telephone: (415) 913-7800
7                                             Facsimile: (415) 759-4112
                                              *mtodzo@lexlawgroup.com*
8                                             *ablodgett@lexlawgroup.com*

9
                                              Melissa Wolchansky (*pro hac vice pending*)
10                                            Charles D. Moore (*pro hac vice pending*)
                                              HALUNEN LAW
11                                            1650 IDS Center
                                              80 S 8th Street
12                                            Minneapolis, MN 55402
                                              Telephone: 612.605.4098
13                                            Facsimile: 612.605.4099
                                              *wolchansky@halunenlaw.com*
14                                            *moore@halunenlaw.com*

15
                                              **ATTORNEYS FOR PLAINTIFFS**
16

17

18

19

20

21

22

23

24

25

26

27

28
DOCUMENT PREPARED
ON RECYCLED PAPER
CLASS ACTION COMPLAINT