LEXINGTON LAW GROUP
Mark N. Todzo, State Bar No. 168389
Abigail Blodgett, State Bar No. 278813
503 Divisadero Street
San Francisco, CA  94117
Telephone: (415) 913-7800
Facsimile: (415) 759-4112
mtodzo@lexlawgroup.com
ablodgett@lexlawgroup.com

HALUNEN LAW
Melissa W. Wolchansky (*pro hac vice pending*)
Charles D. Moore (*pro hac vice pending*)
80 South Eighth Street, Suite 1650
Minneapolis, MN 55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099
wolchansky@halunenlaw.com
moore@halunenlaw.com

*Attorneys for Plaintiffs and the Putative Classes*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| REBEKAH BAHARESTAN and JENA MCINTYRE, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>VENUS LABORATORIES, INC., dba EARTH FRIENDLY PRODUCTS, INC.,<br><br>        Defendant. | Case No. 3:15-cv-03578-EDL<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**<br><br>Date:  November 3, 2015<br>Time:  10:00 a.m.<br>Location: Courtroom E<br>Judge:     Hon. Elizabeth D. Laporte |

Case No. 3:15-cv-03578-EDL

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ...................................................................................... vi

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................1

INTRODUCTION .........................................................................................................................1

STATEMENT OF FACTS .............................................................................................................2

I.      PROCEDURAL AND FACTUAL BACKGROUND............................................................2

II.     THE PROPOSED SETTLEMENT ......................................................................................5

        A.      Venus Must Change the Labeling and Marketing
                of the Earth  Friendly Products ..............................................................................5

        B.      Venus Must Remove MIT from the Dishmate Products
                and Strive to Remove MIT from All the Products....................................................6

        C.      Venus must Contribute a Substantial Sum to a Settlement
                Fund to Compensate Those Persons Allegedly Harmed by
                Its Allegedly Deceptive Labeling, Advertising, And Marketing
                Practices ...................................................................................................................7

        D.      The Parties Stipulate To Class Certification For Settlement Purposes...................8

        E.      Plaintiffs will Submit an Application to the Court For
                Payment of Plaintiffs' Reasonable Attorneys' Fees and
                Litigation Costs, and Service Incentive Awards to the Plaintiffs
                From the Claim Fund ...............................................................................................8

ARGUMENT ..................................................................................................................................9

I.      THE COURT SHOULD GRANT PRELIMINARY APPROVAL
        OF THE SETTLEMENT .......................................................................................................9

        A.      The Applicable Legal Standard ..............................................................................9

        B.      The Settlement is the Product of Serious, Informed, and
                Arm's-Length Negotiations ...................................................................................10

        C.      The Settlement has No "Obvious Deficiencies," and Treats No
                Members of the Class Preferentially......................................................................11

        D.      The Settlement Is Reasonable and Falls Within The Range
                Of Possible Approval .............................................................................................12

II.     PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS IS
        APPROPRIATE....................................................................................................................13

A.    The Criteria For Class Certification Under Rule 23(a) Are Satisfied...................14

    1.    Joinder Of All Members Is Impracticable ...................................................14

    2.    Common Issues Of Law And Fact Exist ...................................................14

    3.    The Named Plaintiffs' Claims are Typical of the Settlement Class Claims ...................................................15

    4.    The Named Plaintiffs And Their Counsel Will Adequately Represent The Proposed Class ...................................................16

B.    The Proposed Settlement Class Meets The Requirements Of Rule 23(b)(2) and 23(b)(3)...................................................17

III.    THE PROPOSED CLASS NOTICE SATISFIES THE REQUIREMENTS OF DUE PROCESS ...................................................19

A.    The Proposed Method of Notice is Appropriate ...................................................19

B.    The Contents of the Proposed Notice are Adequate ...................................................20

IV.    SCHEDULING A FINAL APPROVAL HEARING IS APPROPRIATE......................21

CONCLUSION...................................................21

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT

**TABLE OF AUTHORITIES**

**CASES**

*Alberto v. GMRI, Inc.,*
    252 F.R.D. 652 (E.D. Cal. 2008). ...................................................................10, 11, 12

*Alvarado Partners, L.P. v. Mehta,*
    723 F. Supp. 540 (D.C. Colo. 1989). ............................................................................13

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997) .......................................................................................................18

*Beck-Ellman v. Kaz USA, Inc.,*
    No. 3:10-CV-02134-H-DHB, 2013 WL 1748729 (S.D. Cal. January 7, 2013) ...............20

*Bjustrom v. Trust One Mgmt. Corp.,*
    199 F.R.D. 346 (W.D. Wash. 2001) ...............................................................................15

*Blackie v. Barrack,*
    524 F.2d 891 (9th Cir. 1975) .........................................................................................18

*Bruno v. Quten Research Inst., LLC*,
    280 F.R.D. 524 (C.D. Cal. 2011) ...................................................................................18

*Chavez v. Blue Sky Natural Beverage Co.,*
    268 F.R.D. 365 (N.D. Cal. 2010).............................................................................15, 16

*Churchill Village, L.L.C. v. General Elec.*,
    361 F.3d 566 (9th Cir. 2004) .......................................................................................9, 20

*Cicero v. DirecTV, Inc.,*
    No. EDCV 07-1182, 2010 WL 2991486 (C.D. Cal. July 27, 2010)................................10

*Delarosa v. Boiron, Inc*.,
    275 F.R.D. 582 (C.D. Cal. 2011) .......................................................................... *passim*

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ............................................................................. *passim*

*Immigrant Assistance Project of Los Angeles County Fed'n of Labor v. I.N.S.,*
    306 F.3d 842 (9th Cir. 2002) .........................................................................................14

*In re Mego Fin. Corp. Sec. Litig.,*
    213 F.3d 454 (9th Cir. 2000) .......................................................................................9, 11

*In re Wells Fargo Home Mortg. Overtime Pay Litig.,*
    527 F. Supp. 2d 1053 (N.D. Cal. 2007) .........................................................................18

*In re Wells Fargo Loan Processor Overtime Pay Litig.,*
    No. C-07-1841, 2011 WL 3352460 (N.D. Cal. Aug. 2, 2011) .............................21

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

*In re Wireless Facilities, Inc. Securities Litig. II,*
    253 F.R.D. 607 (S.D. Cal. 2008) ....................................................................13

*Jordan v. County of Los Angeles,*
    669 F.2d 1311 (9th Cir. 1982) ..............................................................14, 16

*Lozano v. AT & T Wireless Servs., Inc.,*
    504 F.3d 718 (9th Cir. 2007) ...........................................................................16

*Miller v. Ghirardelli Chocolate Co.,*
    C 12-04936 LB, 2014 WL 4978433 (N.D. Cal. Oct. 2, 2014) ..........................14

*Nigh v. Humphreys Pharmacal, Inc.,*
    No. 12-CV-2714-MMA DHB, 2013 WL 399179 (S.D. Cal. January 29, 2013)..............20

*O'Donovan v. CashCall, Inc.,*
    278 F.R.D. 479 (N.D. Cal. 2011).........................................................16, 17, 18

*Rodriguez v. West Publ'g Corp.,*
    563 F.3d 948 (9th Cir. 2009) .....................................................................20, 21

*Van Bronkhorst v. Safeco Corp.,*
    529 F.2d 943 (9th Cir. 1976) .............................................................................9

*Villanueva v. Morpho Detection, Inc.,*
    No. 13-CV-05390-HSG, 2015 WL 4760464 (N.D. Cal. Aug. 12, 2015) ..........................10

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S.Ct. 2541 (2011).............................................................................15, 19

*Williams v. Costco Wholesale Corp.,*
    No. 02-cv-2003 IEG (AJB), 2010 WL 761122 (S.D. Cal. Mar. 4, 2010).....................9, 11

*Wright v. Lucas Enters.,*
    259 F.R.D. 468 (E.D. Cal. 2009) ....................................................................10

*Zeisel v. Diamond Foods, Inc.,*
    2011 WL 2221113 (N.D. Cal. June 7, 2011) ..............................................15, 16

**RULES**

Fed. R. Civ. P. 23(a) ............................................................................................14

Fed. R. Civ. P. 23(a)(3) ........................................................................................15

Fed. R. Civ. P. 23(c)(2)(B) ....................................................................................19

Fed. R. Civ. P. 23(h) ............................................................................................13

Cal. Bus. & Prof. Code § 17200 .............................................................................4

Cal. Bus. & Prof. Code § 17580 .............................................................................4

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

Cal. Bus. & Prof. Code § 17581 ........................................................................................4

Cal. Health & Safety Code § 110810........................................................................................5

Cal. Civil Code § 1750...........................................................................................................4

Wash. Rev. Code § 19.86.......................................................................................................4

**OTHER AUTHORITIES**

Federal Judicial Center,
    Manual for Complex Litigation (4th ed. 2004).........................................................13, 19

The Rutter Group,
    CAL. PRAC. GUIDE: FED. CIV. PRO. BEFORE TRIAL (2012) .................................................13

William B. Rubenstein, et al.,
    NEWBERG ON CLASS ACTIONS (4th ed. 2002) ....................................................................9

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on November 3, 2015 at 10:00 a.m., or as soon thereafter as this matter may be heard in the Courtroom of the Honorable Elizabeth D. Laporte, located at the United States District Court for the Northern District of California, San Francisco Courthouse, Courtroom 3, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs Rebekah Baharestan and Jena McIntyre ("Plaintiffs"), on behalf of the proposed Class as defined herein, will respectfully apply to this Court for entry of an order: (i) granting preliminary approval of the proposed settlement set forth in the Class Settlement Agreement (attached as Exhibit 1 to the accompanying Declaration of Mark N. Todzo ("Todzo Decl.")); (ii) conditionally certifying the Class for purposes of such settlement by way of the accompanying [Proposed] Order Granting Preliminary Approval; (iii) approving Plaintiffs' selection of Class Counsel; (iv) approving the proposed notice plan; and (v) setting a hearing date for final approval of the Settlement.

This motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Mark N. Todzo and accompanying exhibits, the other papers on file in this action, and such other submissions or arguments that may be presented before or at the hearing on this Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Plaintiffs Rebekah Baharestan and Jena McIntyre ("Plaintiffs") on behalf of the proposed Class as defined herein, respectfully apply to this Court for entry of an order (i) granting preliminary approval of the proposed settlement set forth in the Class Settlement Agreement[1] (the "Settlement") (Todzo Decl. Ex. 1); (ii) conditionally certifying the Class for purposes of such settlement by way of the accompanying [Proposed] Order Granting Preliminary Approval (the "Preliminary Approval Order"); (iii) approving Plaintiffs' selection of Class Counsel; (iv) approving the proposed notice plan; and (v) setting a hearing date for the final approval of the Settlement (the "Fairness Hearing").

The Settlement resolves the claims in Plaintiffs' Class Action Complaint, which concern Venus Laboratories, Inc., d/b/a Earth Friendly Products, Inc.'s, ("Venus") allegedly false and misleading marketing, advertising, and labeling of its Earth Friendly brand household cleaning products ("Earth Friendly Products" or "Products") as "natural." Specifically, Plaintiffs allege that Venus misleadingly and deceptively used the word "natural" on the labeling, marketing, and advertising of the Earth Friendly Products. Plaintiffs allege that despite Venus' representations, all of the Earth Friendly Products are in fact composed of certain ingredients that are highly processed, synthetic, and not natural. For example, many of the Earth Friendly Products include Methylisothiazolinone ("MIT") – a chemical that Plaintiffs allege is both synthetic and a severe allergen for between 2 and 10 percent of the population, with more people becoming sensitized every day. The Settlement remedies Plaintiffs' concerns on behalf of purchasers of the Earth Friendly Products nationwide, who allegedly paid a premium for these Products over comparable products that did not purport to be natural.

The Settlement is fair, reasonable, and adequate; falling well within the range of class

---

[1] Herein after, all capitalized terms have the same meaning as used in the Settlement Agreement. (Todzo Decl. Ex. 1.)

action settlements that merit preliminary approval. First, the Settlement will prevent future alleged violations of state consumer protection and false advertising laws by prohibiting Venus from using the word "natural" on the labels of its Earth Friendly Products unless the statement is clearly and accurately explained on the Product. To promote further transparency, the Settlement requires Venus to list all ingredients on its Earth Friendly Products with explanatory parentheticals after each ingredient, and further describe the ingredients on its website. Second, the Settlement requires Venus to reformulate certain products to remove MIT as an ingredient. Finally, the Settlement will compensate Settlement Class Members who purchased the Earth Friendly Products under the belief that the products are natural. Venus will be required to pay at least $850,000, and up to $925,000, into a settlement fund ("Settlement Fund") for the benefit of Settlement Class Members. The Settlement Fund will primarily be used to compensate Settlement Class Members who submit valid claims, but will also be used to fund the notice and administration costs and Plaintiffs' attorneys' fees and costs. In turn, Venus will receive a release of all claims relating to the challenged marketing, advertising, and labeling practices.

The Settlement was reached after substantial discovery, and rigorous and informed negotiations between Plaintiffs and Venus (collectively, the "Parties"); while overseen by a seasoned, neutral mediator. Because the Settlement is fair to all Parties and adequately addresses the grievances of Plaintiffs and the Class, it should be preliminarily approved.

## STATEMENT OF FACTS

### I.    PROCEDURAL AND FACTUAL BACKGROUND

Defendant Venus manufactures, sells, and distributes the Earth Friendly line of household cleaning products, including dozens of laundry detergents, odor removers, dishwashing fluids, and other home cleaning products. Todzo Decl. ¶ 3. These Products are sold through third party retailers to consumers in all 50 states and the District of Columbia. *Id.* Plaintiffs allege they were induced to purchase the Earth Friendly Products by Venus' false and misleading representations that the Products were natural, derived from plants, free from harmful chemicals, and/or gentle. However, each Earth Friendly Product contains at least one chemical that is, in fact, highly

processed, synthetic, and/or not natural. These chemicals include: MIT, Alcohol Denat, Caprylyl/Myristyl Glucoside, Cocamidopropyl Betaine, Cocamidoprpylamine Oxide, Lauryl Glucoside, Phenoxyethanol, Potassium Cocoate, Potassium Sorbate, or Sodium Coco-Sulfate. *Id.*

In particular, MIT, a biocide used for controlling microbial growth in water-containing solutions, is neither natural nor made from plants since it is produced by the controlled chlorination of dimethyldithiodipropionamide (DPAM) in solvent, followed by neutralization and extraction into water. *Id.* ¶ 4. MIT has been linked to what is called an "epidemic" of painful skin allergies, including rashes, blistering, swelling, redness, and hives. *Id.* The rapidly increasing rates of allergic reactions to MIT resulted in the American Contact Dermatitis Society naming MIT as the contact allergen of the year in 2013. *Id.* Numerous studies from countries all over the world quantify the epidemic of allergic reactions to MIT as being so serious as to occur in 2 to 10 percent of individuals exposed to the chemical. *Id.*

Plaintiffs further allege that some of the Earth Friendly Products are labeled as "organic," yet are predominantly comprised of non-organic ingredients. Plaintiffs contend that such labeling violates the standards for organic labeling and is false and misleading.

Plaintiffs seek to represent a class of persons throughout the United States who, like themselves, purchased the Products under the erroneous belief that the Products were natural or organic based on Venus' representations. The primary goals of Plaintiffs' case is to: (i) halt Venus' allegedly deceptive marketing, advertising, and labeling of the Products as natural or organic, thereby protecting future consumers; and (2) disgorge any premiums Venus obtained as a result of its alleged misrepresentations, thereby compensating consumers for past wrongdoings. The Settlement accomplishes both of these objectives.

Before commencing this action, Class Counsel conducted an examination and evaluation of the relevant laws and facts to assess the merits of the claims and to determine how to best serve the interests of the members of the Class. *Id.* ¶ 5.

On November 3, 2014, Plaintiff Jena McIntyre sent a letter notifying Venus of her intent to pursue consumer protection claims on behalf of herself and a nationwide class of purchasers

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

of the Earth Friendly Products throughout the United States based on allegations that Venus misrepresented the nature of the Products. *Id.* ¶ 6. After receiving this letter, Venus began discussing a possible resolution of Plaintiff McIntyre's claims. *Id.*

On March 25, 2015, independently of Plaintiff McIntyre, Plaintiff Rebekah Baharestan sent a letter to Venus alleging that Venus' marketing, advertising, and labeling of the Products false and misleading. *Id.* ¶ 7. This letter informed Venus of Plaintiff Baharestan's intent to represent a nationwide class of purchasers of the Earth Friendly Products in a class action lawsuit. *Id.*

The Parties engaged in lengthy and comprehensive settlement discussions. *Id.* ¶ 8. These discussions culminated in an all-day, in person, mediation before the Honorable Morton Denlow (Ret.) in Chicago, Illinois on June 1, 2015. *Id.* ¶ 9. Through the settlement discussions, Venus provided Plaintiffs with information about the facts at issue. *Id.* ¶ 8. Based upon Plaintiffs' investigation and evaluation of the facts and law relating to the matters alleged in this case, the Parties agreed to settle this action pursuant to the provisions of the Settlement. *Id.* ¶ 9. Such agreement was reached after considering, among other things: (1) the substantial benefits available to the Class under the terms of the Settlement; (2) the attendant risks and uncertainty of litigation—especially in complex actions such as this—as well as the difficulties and delays inherent in such litigation; and (3) the desirability of promptly completing the Settlement to provide effective relief to Plaintiffs and the Class. *Id.*

On August 4, 2015, Plaintiffs Rebekah Baharestan and Jena McIntyre, on behalf of themselves and all other similarly situated persons, filed their Class Action Complaint in the Northern District of the United States District Court, *Baharestan v. Venus Laboratories, Inc.*, Case No. 3:15-cv-03578-EDL. (ECF No. 1). Plaintiffs' Complaint seeks relief on behalf of a proposed nationwide Class of purchasers of the Products pursuant to the express warranty laws of all states and the District of Columbia.  The Complaint also seeks relief on behalf of two proposed Sub-Classes: one of California purchasers, and one of Washington purchasers, pursuant to the consumer protection and false advertising laws of those states. *See* Cal. Civil Code § 1750,

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

*et seq.*; Cal. Bus. & Prof. Code § 17200, *et seq.*; Cal. Bus. & Prof. Code §§ 17580-17581; and Wash. Rev. Code § 19.86, *et seq*. Finally, the Complaint seeks relief on behalf of the California Sub-Class for Venus' alleged violations of the California Organic Products Act ("COPA's") restrictions on selling, labeling, or representing cosmetic products as organic or made with organic ingredients unless the products contain a minimum of 70 percent organically produced ingredients. Cal. Health & Safety Code § 110810, *et seq.*[2]

Venus has denied and continues to deny each and all of the claims and contentions alleged by Plaintiffs in the Complaint. Venus contends that its advertising, marketing, and labeling of the Earth Friendly Products is not false, deceptive, or misleading, and Settlement Class Members did not suffer any damages as a result of the conduct at issue.

## II.   THE PROPOSED SETTLEMENT

The Settlement remedies Venus' alleged misconduct and compensates the Class for a significant portion of their alleged damages. In exchange for a release of Plaintiffs' and the Class' claims, Venus has agreed to undertake several important remedial measures, including modifying its labels, ingredients, and website. Venus will also provide monetary compensation to the Class pursuant to the Settlement's terms.

### A.   Venus Must Change the Labeling and Marketing of the Earth Friendly Products.

In consideration for settlement of Plaintiffs' and the Class's claims, Venus has agreed to make the following changes to the labels for the Earth Friendly Products, as well as the manner in which it describes the Product's ingredients.

First, Venus must refrain from using the term "natural" to refer to the Earth Friendly Products, unless the word is accompanied by an accurate description of the particular characteristic of the Product it describes (*e.g.* "natural detergent" or "natural cleaning agent").

---

[2] California is the only state that regulates organic labeling of cosmetic products, which includes the Products at issue in this case.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

Todzo Decl. Ex. 1, ¶ 4.6(b).Venus is also prohibited from placing the phrases "100% Natural" or "All-Natural" on the labels of the Products, unless such claims are certified by a reputable third-party, in the natural products industry. *Id.* ¶ 4.6(a).

Second, the Settlement requires Venus to remove the term "organic" from the Earth Friendly Products' labels, unless the Product meets the United States Department of Agriculture's standard for "organic," the California Organic Product Act's standard for "organic," or another states' equivalent standard for "organic." *Id.* ¶ 4.6(c).

Third, Venus must continue to list all ingredients on the Products, while including explanatory parentheticals after each ingredient (*e.g.* "derived from coconut oil" or ".0095% preservative"). *Id.* ¶ 4.6(d)-(e).

Fourth, the Earth Friendly Product labels must include the statement "See www.ECOS.com/ingredients for more information on our ingredients," or a substantially similar statement, on the back panel of the Products. *Id.* ¶ 4.6(f). This website shall include a glossary that generally describes the manufacturing process for each ingredient used in the Products. *Id.* ¶ 4.6(g).

### B.    Venus Must Remove MIT from the Dishmate Products and Strive to Remove MIT from All the Products.

In addition to the changes described above, the Settlement requires Venus to stop using MIT as an ingredient in all the Dishmate Products, which are products come into direct contact with skin.  *Id.* ¶ 4.7(a).  The Settlement also requires Venus to make good faith efforts to study alternatives to MIT, and provide reports to Class Counsel regarding these efforts. *Id.* ¶ 4.7(b)-(c). If Venus continues to use MIT in any of the Products, Venus must disclosure on its website that "hypoallergenic" does not mean that a Product or ingredient will not cause any allergic reactions in any person and that a small percentage of individuals may have some form of allergic reaction to MIT. *Id.* ¶ 4.7(d).

1
2

      C.      **Venus must Contribute a Substantial Sum to a Settlement Fund to Compensate Those Persons Allegedly Harmed by Its Allegedly Deceptive Labeling, Advertising, And Marketing Practices.**

3        Venus will contribute no less than $850,000, and no more than $925,000, into an

4  independently-administered Settlement Fund, which will mainly be used to compensate

5  Settlement Class Members. *Id.* ¶ 4.1(d). Settlement Class Members who submit valid claims are

6  eligible to recover $1.50 for each ECOS® Laundry Detergent Product they purchased, or $1 for

7  each other Earth Friendly Product purchased; up to $25 per Settlement Class Member. *Id.* ¶

8  4.3(c). In addition, up to $230,000 of the Settlement Fund will be used to administer the

9  Settlement and to disseminate notice to the Class, such that affected persons may avail

10  themselves of this remedial monetary payment. *Id.* ¶ 4.1(a)(iii). Finally, the Settlement Fund

11  will pay for attorneys' fees and costs of up to $277,500, and to pay modest service awards to the

12  class representatives for their time and efforts on behalf of the Class. *Id.* ¶¶ 8.1, 8.5.

13        If the total of the Class claims, notice and administrative costs and attorneys' fees and

14  costs exceeds $850,000, Venus is required to contribute an additional $75,000 to the Settlement

15  Fund to cover the claims. *Id.* ¶ 4.5(b). Following the additional cash contribution, if the total

16  amount of claims submitted by Settlement Class Members exceeds the available relief, each

17  eligible Claim shall be proportionately reduced on a *pro rata* basis so the aggregate value of the

18  cash payments do not exceed the Settlement Fund balance. *Id.*

19        In the event that there are excess Settlement Funds, the Settlement allows no possibility

20  of any Settlement Fund to revert back to Venus. If the amounts ultimately paid for claims, notice

21  and administration expenses, class representative incentive awards, and attorneys' fees and costs

22  do not equal or exceed the Settlement Fund, the remainder of the Settlement Fund shall be

23  distributed to eligible Settlement Class Members on a *pro rata* basis, up to 100% of the

24  Settlement Class Member's Initial Claim Amount. *Id.* ¶ 4.5(a). If there are additional Settlement

25  Funds following the *pro rata* adjustment, these Residual Funds shall be distributed to a non-

26  profit organization that serve the interest and needs of the Class. *Id.* ¶ 4.5(c).

27
28

The Settlement Fund will be administered by Dahl Administration, an independent and highly qualified company selected by the Parties (the "Settlement Administrator"). *Id.* ¶ 5.1. The Settlement Administrator shall approve claims submitted by affected Settlement Class Members in accordance with a specified procedure and subject to verification. *Id.* ¶ 4.2.

Notice to the Class will be provided—shortly after the Court's preliminary approval of the Settlement—through the most effective means of reaching the proposed Settlement Class Members. *Id.*, Ex.1-C. Specifically, notice will be provided through publication and via the internet, including website banners, social media campaigns, and a Settlement website. *Id.*

**D.    The Parties Stipulate To Class Certification For Settlement Purposes.**

Plaintiffs seek class certification pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), and Venus has agreed to stipulate to class certification solely for purposes of achieving settlement. *Id.* ¶ 3.1. The putative Settlement Class will comprise all individuals in the United States who purchased at least one of the Earth Friendly Products from January 23, 2011 through the date the Settlement is preliminarily approved by the Court. *Id.*, Ex. 1-B.

Settlement Class Members will have until thirty days prior to the Fairness Hearing to file any objections to the Settlement. *Id.*, Ex. 1 ¶ 6.2(b). The Parties have the right to obtain reasonable discovery from any objecting Settlement Class Member and to respond to any objection no later than seven days prior to the Fairness Hearing. *Id.* ¶ 6.2(e).

**E.    Plaintiffs will Submit an Application to the Court For Payment of Plaintiffs' Reasonable Attorneys' Fees and Litigation Costs, and Service Incentive Awards to the Plaintiffs From the Claim Fund.**

Pursuant to the Settlement Agreement and following the Court's preliminary approval of the Settlement, Class Counsel will submit an application to the Court for an award of attorneys' fees and expenses not to exceed $277,500.  *Id.* ¶ 8.2.  Additionally, Plaintiffs will also seek modest incentive awards to compensate the named Plaintiffs for their service as Class representatives.  *Id.* ¶ 8.5.  The amount of these awards is not to exceed $2,000 each for Plaintiff. *Id.*

1

**ARGUMENT**

2

I.  **THE COURT SHOULD GRANT PRELIMINARY APPROVAL
      OF THE SETTLEMENT.**

3

4        The Settlement is fair, adequate, and reasonable, as it requires changes in Venus' labeling

5   and marketing practices, and secures just compensation the Settlement Class Members. The

6   Settlement accomplishes this while avoiding both the uncertainty and the delay that would be

7   associated with further litigation. It represents a fair compromise of the Parties' respective

8   positions in the litigation, and enables each Party to end to the litigation, thus avoiding its costs

9   and risks. Finally, the Settlement was reached through arm's-length negotiations as part of a

10  supervised mediation process. Class Counsel, whom have significant experience in litigating

11  class actions, support the Settlement as fair and providing reasonable relief to the Settlement

12  Class Members.

13       A.       **The Applicable Legal Standard.**

14       A proposed settlement may be approved by the trial court if it is determined to be

15  "fundamentally fair, adequate, and reasonable." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454,

16  458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

17  There is "an overriding public interest in settling and quieting litigation . . . particularly . . . in

18  class action suits which are now an ever increasing burden to so many federal courts and which

19  frequently present serious problems of management and expense." *Van Bronkhorst v. Safeco

20  Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Churchill Village, L.L.C. v. General Elec.*,

21  361 F.3d 566, 576 (9th Cir. 2004).

22       The full fairness and adequacy of a class settlement can only be assessed at the fairness

23  hearing, therefore at the preliminary approval stage the Court "need only review the parties'

24  proposed settlement to determine whether it is within the permissible 'range of possible judicial

25  approval' and thus, whether the notice to the class and the scheduling of the formal fairness

26  hearing is appropriate." *Williams v. Costco Wholesale Corp.*, No. 02-cv-2003, 2010 WL 761122,

27  at *5 (S.D. Cal. Mar. 4, 2010) (citing William B. Rubenstein, et al., NEWBERG ON CLASS

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

ACTIONS § 11:25 (4th ed. 2002)); *see also Wright v. Lucas Enters.*, 259 F.R.D. 468, 472 (E.D. Cal. 2009); *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 666 (E.D. Cal. 2008).

Specifically, preliminary approval is appropriate if "(1) the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, (2) has no obvious deficiencies, (3) does not improperly grant preferential treatment to class representatives or segments of the class, and (4) falls within the range of possible approval." *Villanueva v. Morpho Detection, Inc.*, No. 13-CV-05390-HSG, 2015 WL 4760464, at *5 (N.D. Cal. Aug. 12, 2015). The Court's role is to consider "the settlement as a whole, rather than its components, and lacks the authority to 'delete, modify or substitute certain provision[s].'" *Id.* For the reasons set forth below, the Settlement meets all of these criteria.

### B. The Settlement is the Product of Serious, Informed, and Arm's-Length Negotiations.

Arm's-length negotiations conducted by competent counsel, after meaningful discovery, constitute prima facie evidence of a settlement's fairness. *See Cicero v. DirecTV, Inc.*, No. EDCV 07-1182, 2010 WL 2991486, at *3 (C.D. Cal. July 27, 2010) ("where a class settlement has been reached after meaningful discovery, after arm's length negotiation, conducted by capable counsel, it is presumptively fair.") (internal quotations omitted).

Here, the Parties' negotiations were conducted at arm's length over several months; including a mediation with the Honorable Morton Denlow, a well-respected mediator in Illinois. *See id.. See* Todzo Decl. ¶¶ 8-9. Counsel for Plaintiffs have considerable experience in class action litigation in general, and with the legal and factual issues of this case in particular.  *See id.* ¶¶ 14-16.  Through the Parties' lengthy and comprehensive settlement discussions, and through substantial informal discovery, Venus provided Plaintiffs with vital information pertaining to the legitimacy and scope of Plaintiffs' claims—including information regarding the Products' labeling and ingredients. *See id.* ¶ 8. This exchange of information ensured sophisticated and meaningful settlement negotiations, conducted with the assistance of a well-respected neutral

mediator. *Id.* In short, the Parties were fully informed of all relevant facts at the time they reached the Settlement.

### C.   The Settlement has No "Obvious Deficiencies," and Treats No Members of the Class Preferentially.

The Settlement is fair and treats all Settlement Class Members equally.[3] All potential future purchasers of the Products, including Settlement Class Members, will receive the benefit of the injunctive relief provided by the Settlement. In addition, all Settlement Class Members who purchased the Products during the Class Period will receive the benefit of the monetary relief provided by the Settlement Fund. The Settlement's notice provisions, which are detailed and comprehensive, and which will be administered by a qualified third party, will help to ensure that such purchasers will actually recoup their monetary losses. *See Alberto*, 252 F.R.D. 652, 666-667 (satisfactory notice provisions weigh in favor of preliminary approval). Moreover, the substantial injunctive and monetary relief secured by the Settlement is fundamentally fair in light of the significant hurdles faced by Plaintiffs and the Settlement Class Members if they were to go forward with litigation. Although Plaintiffs believe that they could establish liability if the case went to trial, this is hardly an easy win. Also, Venus strongly disputes that the Class would be able to prove liability, be certified, or be entitled to injunctive relief or monetary damages.

By settling now, Settlement Class Members secure meaningful monetary compensation, plus the certainty of knowing Venus' alleged deceptive labeling and marketing practices will cease on a nationwide basis after the Settlement is approved. These benefits will equally accrue to all Settlement Class Members. Given the vagaries of pressing forward with litigation, the Settlement has no "obvious deficiencies" and treats all Settlement Class Members fairly. *See*

---

[3]  The monetary amounts provided to the two Class Representatives are far less than incentive awards approved by other courts.   *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir.2000) (approving $5,000 incentive awards to each of the two class representatives); *and Williams*, 2010 WL 761122, at **2, 6 ($5,000 incentive award to single named plaintiff "does not appear facially unreasonable"); *see also* Todzo Decl. ¶ 13 (detailing the services provided).

Todzo Decl. ¶ 11.

**D.     The Settlement Is Reasonable and Falls Within The Range Of Possible Approval.**

The Settlement easily falls within the bounds of reasonableness. Plaintiffs secured a commitment from Venus to implement meaningful injunctive relief that fully cures the alleged misrepresentations at the heart of this case, including a commitment to fully qualify the use of the term "natural" on its Products. Additionally, the $850,000 Settlement Fund represents a substantial portion of the damages Plaintiffs believe they could establish at trial. *Id.* ¶12. Plaintiffs contend that they could use a damages model to recover reasonable Class-wide damages at trial that would exceed the amount of the Settlement Fund. *Id.* However, Venus disputes that it charged any premium for its allegedly "natural" or "organic" Earth Friendly Products, and claims that its Products are actually sold at a discount price compared to other national brands. *Id.*

The reasonableness of the Settlement is further emphasized by the fact that it was reached only after participation in a formal mediation before a qualified, neutral mediator. *See Alberto*, 252 F.R.D. at 666 (brokering of settlement by qualified mediator weighs in favor of preliminary approval of settlement by court). Here, the Parties employed the Honorable Morton Denlow as a mediator, who is a former Magistrate Judge for the United States District Court, Northern District of Illinois, with decades of experience in the resolution of complex commercial litigation, including class actions and product liability cases. *See* Todzo Decl. ¶ 9 & Ex. 2.

Moreover, the fee award sought by Plaintiffs, which will be subject to further review by this Court at the Fairness Hearing, is well within the range of possible approval. *See* Todzo Decl. ¶ 14. Indeed, the fee award sought by Plaintiffs in the Settlement is less than the lodestar incurred by Class Counsel.[4] *Id.* Additionally, because the Settlement includes meaningful and

---

[4] The fee award only slightly above the Ninth Circuit's benchmark for attorneys' fees, which is 25 percent of a common fund. *See Hanlon*, 150 F.3d at 1029.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

expansive injunctive relief, the fee award is especially appropriate. *See generally* Comm. Notes, 2003 Amends. Fed. R. Civ. P. 23(h) ("[I]t is important to recognize that in some class actions the monetary relief obtained is not the sole determinant of an appropriate attorney fees award.") For all of these reasons, preliminary approval of the Settlement should be granted.

## II.   PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE.

For settlement purposes only, Plaintiffs request that the Court provisionally certify the Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure. Provisional class certification is appropriate, in part, because Venus consents to class certification for purposes of this Settlement. *See* Todzo Decl. Ex. 1 ¶ 3.1; *see also generally* The Rutter Group, CALIFORNIA PRACTICE GUIDE: FEDERAL CIVIL PROCEDURE BEFORE TRIAL (2012), Ch. 10-C § 10:787 (noting that courts generally permit parties to stipulate that a defined class be conditionally certified for settlement purposes because it facilitates settlement).

Since the Parties reached an agreement regarding class certification in the context of the Settlement, the Court may enter an order provisionally certifying the Class for settlement purposes. *See In re Wireless Facilities, Inc. Securities Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008); *see also Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 546 (D.C. Colo. 1989) (holding that conditional class certification for settlement purposes may be ordered in appropriate cases to foster such benefits as early settlement and reduced attorneys' fees and costs). This will allow notice of the proposed Settlement to be issued to inform Settlement Class Members of: the existence and terms of the proposed Settlement; their right to be heard on its fairness; their right to opt out; and the date, time, and place of the Fairness Hearing. *See* Federal Judicial Center, *Manual for Complex Litigation* (4th ed. 2004) §§ 21.632, 21.633.

Plaintiffs seek certification of a settlement Class defined as follows: all persons who, during the Class Period, both resided in the United States and purchased in the United States any of the Earth Friendly Products for their household use or personal consumption and not for resale.

**A.    The Criteria For Class Certification Under Rule 23(a) Are Satisfied.**

To justify class certification under Rule 23(a), Plaintiffs must show: (1) the class is so numerous that joinder is impracticable; (2) questions of law or fact are common to the class; (3) the claims of the representative plaintiffs are typical of the claims of the class; and (4) the class representatives will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Each of these criteria is met here.

**1.    Joinder Of All Members Is Impracticable.**

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Often, a large number of class members by itself establishes the impracticability of joining them as plaintiffs. *See Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982); *Miller v. Ghirardelli Chocolate Co.*, No. C 12-04936 LB, 2014 U.S. Dist. LEXIS 14111, at *6-7 (N.D. Cal. Oct. 2, 2014) (where sales were in the millions, numerosity was satisfied to provisionally certify the class). Impracticability does not mean impossibility. *See, e.g.*, *Immigrant Assistance Project of Los Angeles County Fed'n of Labor v. I.N.S.*, 306 F.3d 842, 869 (9th Cir. 2002) (noting that classes numbering 39, 64, and 71 met the numerosity criterion); *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 587 (C.D. Cal. 2011) ("as a general rule, classes of forty or more are considered sufficiently numerous.") (citation omitted).

Extrapolating from sales information provided by Venus in settlement discussions, the number of persons who purchased the Products is in the thousands.  *See* Todzo Decl. ¶ 11. As such, joinder of all of these individuals is impractical, if not entirely impossible, and thus the numerosity requirement is satisfied.

**2.    Common Issues Of Law And Fact Exist.**

The Ninth Circuit construes Rule 23(a)(2)'s commonality requirement permissively. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). The commonality requirement is less rigorous than the "companion requirements" of Rule 23(b)(3). *Id.* "All questions of fact and law need not be common to satisfy the [commonality] rule. The existence of shared legal issues

1   with divergent factual predicates is sufficient . . . ." *Id.* Indeed, "even a single common question

2   will do," so long as that question has the capacity to generate a common answer "apt to drive the

3   resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 2551 (2011)

4   (citations and internal quotations omitted).

5           Plaintiffs' claims involve common questions applicable to every Settlement Class

6   Member. Plaintiffs challenge the labeling, advertising, and marketing of the Earth Friendly

7   Products, which uniformly claimed to be "natural" or "organic" yet contained at least one

8   ingredient that was highly processed, synthetic, non-natural, and/or not organic. Todzo Decl. ¶ 3.

9   Determining whether these material representations were violations of several state consumer

10  protection laws is common to Plaintiffs and Settlement Class Members. Thus, the commonality

11  requirement is satisfied. *See, e.g., Zeisel v. Diamond Foods, Inc*., 2011 WL 2221113, at *7 (N.D.

12  Cal. June 7, 2011) (commonality requirement was met where "class was exposed to the same

13  misleading and misbranded labels"); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365,

14  377 (N.D. Cal. 2010) (commonality requirement was met where common issue was "whether the

15  [product] packaging and marketing materials are unlawful, unfair, deceptive or misleading to a

16  reasonable consumer"); *Delarosa*, 275 F.R.D. at 589 (commonality requirement was met where

17  "Plaintiff alleges a single misrepresentation [on a product's packaging] that was made identically

18  to all potential class members"); *Bjustrom v. Trust One Mgmt. Corp.*, 199 F.R.D. 346, 348 (W.D.

19  Wash. 2001) (commonality requirement was met where the claims arose from "a standard course

20  of conduct which adversely affects a group of individuals and gives rise to a claim for relief").

21              **3.      The Named Plaintiffs' Claims are Typical of the Settlement
                            Class Claims.**

22          Rule 23(a)(3) requires "the claims and defenses of the representative parties [to be]

23  typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Representative claims are

24  typical if they are "reasonably coextensive with those of the absent class members; they need not

25  be substantially identical." *Hanlon*, 150 F.3d at 1020. Where the class representatives' interests

26  align with the interests of the class, then the pursuit of the class representatives' individual

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

1    interests necessarily advances those interests of the class. "[A] named plaintiff's claim is typical

2    if it stems from the same event, practice or course of conduct . . . and is based upon the same

3    legal or remedial theory." *Jordan*, 669 F.2d at 1321; *see also Hanlon*, 150 F.3d at 1019-20

4    ("[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a

5    common core of salient facts coupled with disparate legal remedies within the class"); *Lozano v.*

6    *AT & T Wireless Servs., Inc.*, 504 F.3d 718, 734 (9th Cir. 2007) ("Under Rule 23(a)(3), it is not

7    necessary that all class members suffer the same injury as the class representative.").

8        The requirements for typicality are met in this case as Plaintiffs and the Settlement Class

9    Members assert claims which arise from the same course of conduct—Venus' alleged deceptive

10   and misleading labeling, marketing, and advertising of the Products as "natural" or "organic."

11   Additionally, typical of all members of the proposed Settlement Class, Plaintiffs purchased one

12   of more of the Earth Friendly Products. Further, for each putative class member to recover under

13   the consumer protection and breach of warranty claims, each must prove the same elements as

14   Plaintiffs. *See Chavez*, 268 F.R.D. at 378 (typicality met where defendant made "substantially

15   the same misrepresentation" on several different beverage products, even where allegedly false

16   statements were "worded in several variations."). Thus, there is a "sufficient nexus" between

17   Plaintiffs' claims and those of the Settlement Class Members to satisfy the typicality

18   requirement. *See O'Donovan v. CashCall, Inc.*, 278 F.R.D. 479, 491-92 (N.D. Cal. 2011); *Zeisel*,

19   2011 WL 2221113, at *8 (typicality met where plaintiff's claims relating to allegedly false

20   health-related statements on product labels were "reasonably co-extensive with those of absent

21   class members," notwithstanding particularities of class representative's "specific medical

22   condition").

23                    **4.    The Named Plaintiffs And Their Counsel Will Adequately**
                             **Represent The Proposed Class.**
24
         The adequacy requirement is satisfied if (1) the proposed representative plaintiffs do not

25   have conflicts with the proposed class, and (2) the plaintiffs are represented by qualified and

26   competent counsel who will vigorously prosecute the action on behalf of the class. *See Hanlon,*

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

1  150 F.3d at 1020.

2       There is no conflict between Plaintiffs and the members of the Class. All proposed

3  Settlement Class Members purchased the Products, as did Plaintiffs. Since Plaintiffs and

4  Settlement Class Members were allegedly injured in the same manner and seek relief for the

5  same claims, their interests are coextensive. *See O'Donovan*, 278 F.R.D. at 492 (class

6  representative fairly and adequately represents class where "their claims are reflective of those of

7  the putative class members' and the relief they seek is identical to that sought for the Classes.").

8       Plaintiffs' counsel are qualified and experienced in litigating, certifying, settling, and

9  administering nationwide class actions like the one at bar. *See* Todzo Decl. ¶ 15, Ex. 3, and ¶ 16,

10  Ex. 4. Class Counsel are committed to the vigorous prosecution of this action. To date, Class

11  Counsel have demonstrated an understanding of the issues in this case and competence to

12  conduct this litigation. In addition to Class Counsel's experience, the Lexington Law Group and

13  Halunen Law possess the resources to efficiently prosecute this class action lawsuit to its final

14  conclusion. *See id.* For all of these reasons, Plaintiffs and their counsel readily satisfy the

15  requirements of Rule 23(a)(4).

16       **B.      The Proposed Settlement Class Meets The Requirements Of Rule**
             **23(b)(2) and 23(b)(3).**

17

18       Class certification is appropriate under Rule 23(b)(2). Venus acted on grounds which

19  apply generally to the Settlement Class, such that final injunctive relief is appropriate respecting

20  the Class as a whole. Plaintiffs allege Venus utilized product packaging, marketing, and

21  advertising campaigns to allegedly mislead Plaintiffs and Settlement Class Members to believe

22  the Products were "natural" or "organic." Plaintiffs seek to enjoin Venus' alleged

23  misrepresentations; injunctive relief which will benefit Plaintiffs, the Settlement Class Members,

24  and future purchasers of the Products. *See Delarosa*, 275 F.R.D. at 592 (certification under Rule

25  23(b)(2) is appropriate where "an injunction prohibiting Defendant from selling [product] with

26  the misleading information would 'provide relief to each member of the class.'").

27       In addition, class certification is appropriate under Rule 23(b)(3) because common

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

1   questions of law and fact predominate over any questions that may affect only individual

2   Settlement Class Members. Predominance is often readily met in cases alleging consumer fraud.

3   *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *Bruno v. Quten Research Inst.,*

4   *LLC,* 280 F.R.D. 524, 537 (C.D. Cal. 2011). The common issues need not be identical, so long as

5   there is an essential common factual link between all class members and the defendant for which

6   the law provides a remedy. *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F. Supp. 2d

7   1053, 1065 (N.D. Cal. 2007). Questions common to the class predominate over individual

8   questions where a plaintiff alleges a common course of conduct of misrepresentations that

9   affected all the class members in the same or similar manner. *See Blackie v. Barrack*, 524 F.2d

10  891, 905-908 (9th Cir. 1975).

11         For example, the overarching legal and factual questions in this case—which do not vary

12  among Settlement Class Members and which may be determined without reference to the

13  individual circumstances of any Settlement Class Member—include, but are not limited to:

14
- whether Venus labels, advertises, markets and sells the Products by representing the Products are natural;

15

16
- whether Plaintiffs and the other members of the Class are likely to be misled by Venus' use of the natural claims on the Products' labels;

17
- whether the Products are composed of natural ingredients;

18
- whether Venus' conduct of selling the Products as natural when such Products are not composed entirely of natural ingredients is likely to deceive the members of the Class;

19

20
- whether Venus' conduct in advertising and marketing the Products constitutes an unfair or deceptive act or practice in the conduct of trade or commerce;

21

22
- whether Plaintiffs and the other members of the Class are entitled to injunctive and other equitable relief based on Venus' violations of state and District of Columbia consumer protection laws;

23

24
- whether Venus' representations concerning the Products constitute express warranties with regard to the Products pursuant to the laws of almost every state and the District of Columbia;

25

26
- whether Venus breached the express warranties it has made with regard to the Products;

27
- whether Plaintiffs and the other members of the Class are entitled to damages

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

resulting from Venus' breach of the express warranties made regarding the Products in almost every state and the District of Columbia;

As this list demonstrates, each of Plaintiffs' contentions can be proven with "generalized evidence . . . on a class-wide basis." *O'Donovan*, 278 F.R.D. at 493. In other words, a determination that Venus misrepresented the Products as natural to Plaintiffs will necessarily determine whether Venus misrepresented the Products as natural to all Settlement Class Members. *See Delarosa*, 275 F.R.D. at 594. Indeed, each of these "common question[s]" has the capacity to generate a common answer "apt to drive the resolution of the litigation." *Dukes,* 131 S.Ct. 2541, 2551 (2011) (citations and internal quotations omitted). Since "[a] common nucleus of facts and potential legal remedies dominates this litigation," Rule 23(b)(3) is satisfied here. *Hanlon*, 150 F.3d at 1022.

## III.   THE PROPOSED CLASS NOTICE SATISFIES THE REQUIREMENTS OF DUE PROCESS.

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Complex Litig.* § 21.312. The Settlement Agreement provides for notice that easily satisfies Rule 23 and due process considerations.

### A.      The Proposed Method of Notice is Appropriate.

Rule 23 requires that notice of a settlement be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In this case, the Settlement Administrator will provide notice to the Class shortly after entry of the Preliminary Approval Order using at least six methods:

- mailing a long-form notice and a claim form or emailing a summary notice to potential Settlement Class Members;

- using a web-based notice campaign with banner-style notices on targeted websites with a link to a Settlement Website;

- employing social media to target Settlement Class Members, including placing

banner advertisements on Facebook pages that are likely to appeal to Settlement Class Members;

- creating a national press release for the Settlement via PR Newswire that will be distributed to 5,815 newspapers, television stations, radio stations, and magazines, as well as websites and online databases;

- establishing a toll-free Settlement helpline to assist potential Settlement Class Members and any other persons seeking information about the Settlement prior to launching the print and web-based media campaigns; and

- creating a Settlement website that will provide potential Settlement Class Members with general information about the Settlement, answers to frequently asked questions, a means to download or submit an electronic Claim Form, important dates and deadlines, a summary of Settlement benefits, a means for reviewing and printing copies of certain Settlement documents, and a link to contact the Settlement Administrator.

Todzo Decl. Ex. 1-C.

Courts routinely find that similarly comprehensive notice programs meet the requirements of due process and Rule 23. *See, e.g.*, *Beck-Ellman v. Kaz USA, Inc.*, No. 3:10-CV-02134-H-DHB, 2013 WL 1748729, at *3-4 (S.D. Cal. January 7, 2013) (approving notice plan involving publication in magazines targeting product users and internet advertisements directing class members to settlement website); *Nigh v. Humphreys Pharmacal, Inc.*, No. 12-CV-2714-MMA DHB, 2013 WL 399179 (S.D. Cal. January 29, 2013) (approving notice plan involving publication in magazines targeting product users and newspapers directing class members to settlement website). Therefore, the method proposed for providing notice to Settlement Class Members is reasonable and practicable under the circumstances, and should be approved.

### B.      The Contents of the Proposed Notice are Adequate.

The content of the notice to class members "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009) (quoting *Churchill Vill., LLC v. General Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). Here, the proposed notice forms provide this "sufficient detail." *See* Todzo Decl. Exs. 1-B, 1-D.

Together, the proposed notices define the Settlement Class, explain all Settlement Class Member rights, releases, and applicable deadlines, and describe in detail the injunctive and

1  monetary terms of the settlement, including the procedures for allocating and distributing

2  Settlement Funds. They plainly indicate the time and place of the hearing to consider approval of

3  the Settlement, and the method for objecting to or opting out of the Settlement. The notices detail

4  the provisions for payment of attorneys' fees and incentive awards to the class representatives, as

5  well as provide contact information for Class Counsel.

6       This content comports with settlement notices upheld in other cases. *See, e.g.*, *In re Wells*

7  *Fargo Loan Processor Overtime Pay Litig.*, No. C-07-1841, 2011 WL 3352460, at *4 (N.D. Cal.

8  Aug. 2, 2011) (notice adequate where "[i]t disclosed all material elements of the settlement,

9  including class members' release of claims, their ability to opt out or object to the settlement, the

10 amount of incentive awards and attorneys' fees sought, and estimates of the award members

11 could expect to receive."); *see also Rodriguez*, 563 F.3d at 962-963 (because "[s]ettlement

12 notices are supposed to present information about a proposed settlement neutrally, simply, and

13 understandably," they need not "detail the content of objections, or analyze the expected value"

14 of fully litigating the case). As such, the Proposed Notice Plan is adequate.

15       **IV.**    **SCHEDULING A FAIRNESS HEARING IS APPROPRIATE.**

16      The last step in the settlement approval process is a final fairness hearing at which the

17 Court may hear all evidence and argument necessary to evaluate the Settlement. Proponents of

18 the Settlement may explain the terms and conditions of the Settlement and offer argument in

19 support of final approval. In addition, Settlement Class Members, or their counsel, may be heard

20 in support of or in opposition to the Settlement. The Court will determine, after the Fairness

21 Hearing, whether the Settlement should be approved, and whether to enter a final order and

22 judgment under Rule 23(e). Plaintiffs request that the Court set a date for the final fairness

23 hearing approximately one hundred (100) days after entry of the Preliminary Approval Order.

24                                **<u>CONCLUSION</u>**

25      For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant

26 preliminary approval of the Settlement, provisionally certify the Settlement Class, appoint

27 Lexington Law Group and Halunen Law as "Class Counsel," approve the proposed notice plan,

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

and schedule a formal fairness hearing on final settlement approval approximately one hundred and forty (140) days after entry of the Preliminary Approval Order.

DATED: September  29, 2015

Respectfully submitted,

LEXINGTON LAW GROUP

By:   /s/ Mark N. Todzo
Attorneys for Plaintiff REBEKAH BAHARESTAN on behalf of herself and all others similarly situated.

HALUNEN LAW
Melissa W. Wolchansky (*pro hac vice pending*)
Charles D. Moore (*pro hac vice pending*)
80 South Eighth Street, Suite 1650
Minneapolis, MN 55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099
wolchansky@halunenlaw.com
moore@halunenlaw.com

Attorneys for Plaintiff JENA MCINTYRE, on behalf of herself and all others similarly situated.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**