1  LEXINGTON LAW GROUP
   Mark N. Todzo, State Bar No. 168389
2  Abigail Blodgett, State Bar No. 278813
   503 Divisadero Street
3  San Francisco, CA  94117
   Telephone: (415) 913-7800
4  Facsimile: (415) 759-4112
   mtodzo@lexlawgroup.com
5  ablodgett@lexlawgroup.com

6  HALUNEN LAW
   Melissa W. Wolchansky (*pro hac vice pending*)
7  Charles D. Moore (*pro hac vice pending*)
   80 South Eighth Street, Suite 1650
8  Minneapolis, MN 55402
   Telephone: (612) 605-4098
9  Facsimile: (612) 605-4099
   wolchansky@halunenlaw.com
10 moore@halunenlaw.com

11 *Attorneys for Plaintiffs and the Putative Classes*

12
                     **UNITED STATES DISTRICT COURT**
13
                     **NORTHERN DISTRICT OF CALIFORNIA**
14
                     **SAN FRANCISCO DIVISION**
15

| | |
|---|---|
| 16 REBEKAH BAHARESTAN and JENA MCINTYRE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VENUS LABORATORIES, INC., dba EARTH FRIENDLY PRODUCTS, INC.,<br><br>Defendant. | Case No. 3:15-cv-03578-EDL<br><br>**DECLARATION OF MARK N. TODZO IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**<br><br>Date:  November 3, 2015<br>Time:  10:00 a.m.<br>Location: Courtroom E<br>Judge:    Hon. Elizabeth D. Laporte |

Case No. 3:15-cv-03578-EDL

**DECL. OF MARK N. TODZO IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

I, Mark N. Todzo, declare:

1. I am an attorney with the Lexington Law Group ("LLG"), and I represent Plaintiff Rebekah Baharestan in the above-captioned action. I have been working together with Melissa Wolchansky with Halunen Law, which represents plaintiff Jena McIntyre in this action. I have personal knowledge of the matters set forth below and, if called upon, I could and would competently testify thereto.

2. I am one of the attorneys who has been principally involved in the prosecution of this litigation and the negotiations that culminated in the Stipulation of Settlement (the "Settlement Agreement" or "Settlement") which is before the Court for preliminary approval. A true and correct copy of the Settlement Agreement, signed by the Parties to this case, is attached as Exhibit 1. The Settlement Agreement itself appends and incorporates seven exhibits, entitled "Exhibit A" through "Exhibit G," which I have included as part of Exhibit 1.

3. Defendant Venus Laboratories, Inc., d/b/a Earth Friendly Products, Inc.'s, ("Venus") manufactures, sells, and distributes the Earth Friendly line of household cleaning products, including dozens of laundry detergents, odor removers, dishwashing fluids, and other home cleaning products. These Products are sold through third party retailers to consumers in all 50 states and the District of Columbia. Plaintiffs allege they were induced to purchase the Earth Friendly Products by Venus' false and misleading representations that the Products were natural, derived from plants, free from harmful chemicals, "organic," and/or gentle. However, each Earth Friendly Product contains at least one chemical that is, in fact, highly processed, synthetic, and/or not organic or natural. These chemicals include: MIT, Alcohol Denat, Caprylyl/Myristyl Glucoside, Cocamidopropyl Betaine, Cocamidoprpylamine Oxide, Lauryl Glucoside, Phenoxyethanol, Potassium Cocoate, Potassium Sorbate, or Sodium Coco-Sulfate.

4. In particular, MIT, a biocide used for controlling microbial growth in water-containing solutions, is neither natural nor made from plants since it is produced by the controlled chlorination of dimethyldithiodipropionamide (DPAM) in solvent, followed by neutralization and extraction into water. MIT has been linked to what is called an "epidemic" of painful skin

1  allergies, including rashes, blistering, swelling, redness, and hives. The rapidly increasing rates of
2  allergic reactions to MIT resulted in the American Contact Dermatitis Society naming MIT as the
3  contact allergen of the year in 2013. Numerous studies from countries all over the world quantify
4  the epidemic of allergic reactions to MIT as being so serious as to occur in 2 to 10 percent of
5  individuals exposed to the chemical

6        5.      Before commencing this action, Class Counsel conducted an examination and
7  evaluation of the relevant laws and facts to assess the merits of the claims and to determine how to
8  best serve the interests of the members of the Class.

9        6.      On November 3, 2014, Plaintiff Jena McIntyre sent a letter notifying Venus of her
10  intent to pursue consumer protection claims on behalf of herself and a nationwide class of
11  purchasers of the Earth Friendly Products throughout the United States based on allegations that
12  Venus misrepresented the nature of the Products. After receiving this letter, Venus began
13  discussing a possible resolution of Plaintiff McIntyre's claims.

14        7.      On March 25, 2015, independently of Plaintiff McIntyre, Plaintiff Rebekah
15  Baharestan sent a letter to Venus alleging that Venus' marketing, advertising, and labeling of the
16  Products false and misleading. This letter informed Venus of Plaintiff Baharestan's intent to
17  represent a nationwide class of purchasers of the Earth Friendly Products in a class action lawsuit.

18        8.      The Parties subsequently engaged in lengthy, comprehensive, and arm's-length
19  settlement discussions over several months. During the Parties' lengthy and comprehensive
20  settlement discussions, the Parties engaged in substantial informal discovery. Through this
21  discovery, Venus provided Plaintiffs with vital information pertaining to the legitimacy and scope
22  of Plaintiffs' claims—including information regarding the Products' labeling and ingredients. This
23  exchange of information ensured sophisticated and meaningful settlement negotiations.

24        9.      These settlement discussions culminated in an all-day, in person, mediation before
25  the Honorable Morton Denlow (Ret.) in Chicago, Illinois on June 1, 2015. The Honorable Morton
26  Denlow, who is a former Magistrate Judge for the United States District Court, Northern District
27  of Illinois, has decades of experience in the resolution of complex commercial litigation, including

28

class actions and product liability cases. A true and correct copy of the Honorable Morton Denlow's general biography is attached hereto as Exhibit 2. Based upon Plaintiffs' investigation and evaluation of the facts and law relating to the matters alleged in this case, the Parties agreed to settle this action pursuant to the provisions of the Settlement. Such agreement was reached after considering, among other things: (1) the substantial benefits available to the Class under the terms of the Settlement; (2) the attendant risks and uncertainty of litigation—especially in complex actions such as this—as well as the difficulties and delays inherent in such litigation; and (3) the desirability of promptly completing the Settlement to provide effective relief to Plaintiffs and the Class.

10. In my firm's capacity as Class Counsel, we considered a number of factors in reaching the proposed Settlement Agreement with Defendant. For example, among other issues, we considered the risk that Defendant's use of the word "natural" on the Products would not be found to be misleading to a reasonable consumer.

11. By settling now, Settlement Class Members secure meaningful monetary compensation, plus the certainty of knowing Venus' alleged deceptive labeling and marketing practices will cease on a nationwide basis after the Settlement is approved. Extrapolating from sales information provided by Venus in settlement discussions, Class counsel has determined that the number of persons who purchased the Products and were affected by these practices is in the thousands. These benefits will equally accrue to all Settlement Class Members. Given the vagaries of pressing forward with litigation, the Settlement has no "obvious deficiencies" and treats all Settlement Class Members fairly.

12. In agreeing to a Settlement Fund in the minimum amount of $850,000, and up to $950,000, Class Counsel also considered the difficulties the Class will face in proving damages at trial. Plaintiffs contend that they could use a damages model to recover reasonable Class-wide damages at trial that would exceed the amount of the Settlement Fund. However, Venus disputes that it charged any premium for its allegedly "natural" or "organic" Earth Friendly Products, and claims that its Products are actually sold at a discount price compared to other national brands.

1   While Plaintiffs believe their damages calculation is viable, in agreeing to the Settlement Plaintiffs
2   took into account the additional risk (beyond class certification and liability risks) that Class
3   members would not be able to prove their damages at trial. Given this litigation risk, the $850,000
4   monetary recovery represents a substantial percentage of what Plaintiffs believe to be their best
5   case scenario for recovery at trial.

6           13.     Plaintiffs McIntyre and Baharestan have performed a number of tasks that greatly
7   assisted in the preparation, prosecution and settlement of the case. Among other things, these
8   Plaintiffs have consulted with me and other Class Counsel on a number of occasions, made
9   themselves available as needed, provided factual background to assist in the development of the
10  case and the pre-suit letters notifying Defendant of their intent to bring a suit for violations of
11  consumer protection statutes, and reviewed pleadings and correspondence in the case and
12  evaluated the Settlement papers. To date, neither Plaintiff has received any compensation
13  whatsoever for their efforts on behalf of the Class.

14          14.     Ms. Wolchansky and I, as well as others at our firms, spent numerous hours
15  investigating and researching the facts of this case, conferring with Plaintiffs, researching
16  applicable law, drafting pleadings, reviewing and analyzing documents and data produced by
17  Venus and negotiating the Settlement Agreement. Class Counsel will submit support for the
18  attorneys' fee and costs award called for by the Settlement in connection with the hearing for final
19  approval of the Settlement. The proposed Settlement provides that Class Counsel may be awarded
20  up to $277,500 as partial compensation for Class Counsel's reasonable attorneys' fees and costs,
21  which is less than the lodestar incurred by Class Counsel and well within the range of possible
22  approval.

23          15.     LLG is a private law firm that has been successfully pursuing cases on behalf of
24  consumers and public interest groups for over a decade. LLG has represented numerous parties in
25  civil actions of various types and degrees of complexity, including many cases brought as class
26  actions. The attorneys of LLG have substantial experience in false advertising and unfair
27  competition matters. The following is a representative sampling of some of the cases LLG has
28

successfully litigated or is currently involved in:

    a)    *Golloher, et al. v. Todd Christopher International, Inc.*, Case No. CV-12-06002 (N.D. Cal.): Class counsel in case involving misrepresentation of non-organic cosmetic products as organic;

    b)    *Stephenson, et al. v. Neutrogena Corporation*, Case No. C 12-00426 PJH (N.D. Cal.): Named Class Counsel in case involving misrepresentation of cosmetic products as "natural";

    c)    *In re Comcast Peer to Peer (P2P) Transmission Contract Litigation*, Case No. 2:08-md-01992 (E.D. Pa.): Named Class Counsel in class action against Comcast for alleged breach of contract and false advertising arising from interference with subscribers' use of peer to peer file sharing applications; obtained $16 million settlement for the class;

    d)    *Dervaes v. California Physicians' Service*, Case No. RG-06262733 (Alameda County Super. Ct.): Counsel for plaintiff in class case challenging health insurer's unilateral mid-year increase to calendar-year costs.

Attached hereto as Exhibit 3 is a true and correct copy of LLG's firm resume.

16. Halunen Law has the requisite expertise as they have qualified as lead counsel in other class actions, and have a proven track record of successful prosecution of significant class actions. Halunen Law's extensive experience and qualifications are further detailed in Halunen Law's firm resume, attached hereto as Exhibit 4.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on September 29, 2015, at San Francisco, California.

                                    /s/ Mark N. Todzo
                                    MARK N. TODZO