# Exhibit 1

EXECUTION COPY

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| REBEKAH BAHARESTAN and JENA MCINTYRE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VENUS LABORATORIES, INC., dba EARTH FRIENDLY PRODUCTS, INC.,<br><br>Defendant. | Case No. 3:15-cv-03578-EDL |

## CLASS SETTLEMENT AGREEMENT

EXECUTION COPY

# TABLE OF CONTENTS

I.     RECITALS ................................................................................. 1

II.    DEFINITIONS ........................................................................ 4

III.   CERTIFICATION OF THE SETTLEMENT CLASS AND
       PRELIMINARYAPPROVAL ......................................................... 12

IV.    SETTLEMENT CONSIDERATION AND BENEFITS ................................ 8

       4.1 Settlement Fund ................................................................. 13
       4.2 Eligibility and Process for Obtaining a Cash Payment ............................ 15
       4.3 Monetary Relief to Settlement Class Members: Payments of
           Cash Settlement ................................................................. 19
       4.4 Distribution to Authorized Settlement Class Members ............................ 20
       4.5 Excess or Insufficient Funds in the Settlement Fund .............................. 20
       4.6 Injunctive Relief: Modification of Earth Friendly Products' Labels ........ 23
       4.7 Injunctive Relief Related to Methylisothianzolinone .............................. 24
       4.8 Other Injunctive Relief Terms and Conditions ......................................... 25

V.     NOTICE TO CLASS AND ADMINISTRATION OF PROPOSED
       SETTLEMENT ........................................................................ 26

       5.1 Duties and Responsibilities of the Settlement Administrator .................. 26

VI.    OBJECTIONS AND REQUESTS FOR EXCLUSION ................................ 32

VII.   RELEASES ........................................................................ 35

VIII.  ATTORNEYS' FEES AND EXPENSES AND CLASS
       REPRESENTATIVE INCENTIVE AWARDS ................................ 36

IX.    NO ADMISSION OF LIABILITY ................................................ 37

X.     ADDITIONAL PROVISIONS ........................................................ 39

EXECUTION COPY

## **<u>TABLE OF EXHIBITS</u>**

Exhibit A:      Claim Form

Exhibit B:      Class Notice or Long Form Notice

Exhibit C:      Notice Plan, Affidavit of Jeffrey D. Dahl With Respect to Settlement Notice Plan

Exhibit D:      Summary Notice or Short Form Notice

EXECUTION COPY

<u>**CLASS SETTLEMENT AGREEMENT**</u>

This Class Settlement Agreement is entered into this 25 day of September, 2015 by and between Plaintiffs Jena McIntyre and Rebekah Baharestan ("Plaintiffs"), on behalf of themselves and each of the Settlement Class Members, on the one hand, and Defendant Venus Laboratories, Inc. ("Venus" or "Defendant"), an Illinois corporation, on the other hand (collectively, Plaintiffs and Defendant are the "Parties"). The Parties intend for the Class Settlement Agreement to fully, finally, and forever resolve, discharge, and settle all released rights and claims, subject to the terms and conditions set forth herein.

**I.    RECITALS**

1.1.    On November 3, 2014, Jena McIntyre sent Venus a notice of violation of the Washington consumer law statutes and a draft class action complaint challenging the labeling, marketing, and advertising of Venus's Earth Friendly Products. Plaintiff McIntyre alleged that the Earth Friendly Products are not "natural," and are inaccurately and deceptively labeled as "natural." Ms. McIntyre sought to represent a proposed nationwide class of purchasers of the Earth Friendly Products, or alternatively, a class of Washington purchasers of the Earth Friendly Products. Ms. McIntyre alleged violations of the Washington Consumer Protect Act – RCS §§ 19.86, *et seq*. and breach of warranty.

1.2.    Independently of Plaintiff McIntyre, on March 25, 2015, Rebekah Baharestan sent a letter and a draft class-action complaint to Venus alleging Venus was in violation of the California Consumers Legal Remedies Act, Cal. Civ. Code § 1782 *et seq*. (the "CLRA"), in its labeling and marketing of the Earth Friendly Products. Plaintiff Baharestan sought to represent both a California and a nationwide class of Earth Friendly Products purchasers. The complaint alleged that Venus's labeling of its ECOS® and Dishmate products was misleadingly labeled as

1

EXECUTION COPY

natural and made from plants. Furthermore, the complaint alleged that Venus failed to inform consumers that the Products contain Methylisothiazolinone ("MIT"), which it alleged is a known and significant allergen.

    1.3.    Plaintiffs McIntyre and Baharestan filed a consolidated complaint in the United States District Court for the Northern District of California on August 4, 2015, seeking to represent a nationwide class of purchasers of Earth Friendly Products.

    1.4.    Following numerous settlement discussions between the parties' counsel and an exchange of informal pre-litigation discovery, Venus and Counsel for Plaintiffs McIntyre and Baharestan mediated the claims raised in their putative class action complaints on June 1, 2015, before Hon. Morton Denlow (Ret.) of JAMS, in Chicago, Illinois. As part of the mediation process, Counsel for Plaintiffs McIntyre and Baharestan obtained additional information and documents from Venus through confidential discovery for the mediation, including information concerning label design and sales for Venus's Earth Friendly Products.

    1.5.    Before entering into this Settlement Agreement, Plaintiffs' Counsel conducted an extensive and thorough examination, investigation, and evaluation of the relevant law, facts, and allegations to assess the merits of the claims, potential claims, and potential defenses asserted in this Action. As part of that investigation, Plaintiffs' Counsel obtained information and documents from Venus through confidential, informal discovery.

    1.6.    This Agreement is the product of extensive, arms-length settlement negotiations and exchange of information.

    1.7.    The Action has not been certified as a class action. Subject to the approval of the Court, the Parties agree that a class may be conditionally certified only for purposes of this Settlement. Venus agrees to class-action treatment of the claims alleged in this Action solely for

2

EXECUTION COPY

the purpose of compromising and settling those claims on a class basis as set forth herein.  If the Court does not grant approval to this Settlement, Venus reserves all rights to contest class certification for any other purpose.

1.8.     Plaintiffs, as proposed Settlement Class representatives, believe the claims settled herein have merit. Plaintiffs and their counsel recognize, however, the litigation risk involved, including the expense and length of continued proceedings necessary to prosecute the claims through trial and appeal, and have taken into account those factors, as well as the litigation's inherent difficulties and delays. They believe the settlement set forth in this Agreement confers substantial benefits upon the Settlement Class Members. They have evaluated the settlement set forth in this Agreement and have determined it is fair, reasonable, adequate to resolve their grievances, and in the best interest of the Settlement Class.

1.9.     Venus has denied, and continues to deny, that its marketing, advertising, and/or labeling of its Earth Friendly Products is false, deceptive, or misleading to consumers, breached any warranty, or violates any legal requirement. Venus's willingness to resolve the Action on the terms and conditions embodied in this Agreement is based on, *inter alia*: (i) the time and expense associated with litigating this Action through trial and any appeals; (ii) the benefits of resolving the Action, including limiting further expense, inconvenience, and distraction, disposing of burdensome litigation, and permitting Venus to conduct its business unhampered by the distractions of continued litigation; and (iii) the uncertainty and risk inherent in any litigation, regardless of legal merit.

1.10.    This Agreement, any negotiations, proceedings, or documents related to this Agreement, its implementation, or its judicial approval cannot be asserted or used by any person to support a contention that class certification is proper or that liability does or does not exist, or

EXECUTION COPY

for any other reason, in the above-captioned action or in any other proceedings, *provided, however*, that Settlement Class Members, Class Counsel, Venus, other related persons, and any person or entity that is a beneficiary of a release set forth herein, may reference and file this Agreement, and any resulting Order or Judgment, with the Court, or any other tribunal or proceeding, in connection with the implementation or enforcement of its terms (including but not limited to the releases granted therein or any dispute related thereto).

**THEREFORE**, in consideration of the mutual promises and covenants contained herein and of the releases and dismissals of claims described below, the Parties agree to this Settlement, subject to the Final Approval of the Court, upon the following terms and conditions set forth in this Class Settlement Agreement.

## II.   DEFINITIONS

2.1     "Action" means the lawsuit, styled *McIntyre and Baharestan v. Venus Laboratories, Inc.* The complaint filed in *McIntyre, et al. v. Venus Laboratories, Inc.* is referred to herein as the "Complaint."

2.2     "Agreement" or "Settlement" or "Settlement Agreement" means this Class Settlement Agreement and its exhibits, attached hereto or incorporated herein, including any subsequent amendments agreed to by the Parties and any exhibits to such amendments.

2.3     "Attorneys' Fees and Expenses" means such funds as the Court may award to Class Counsel to compensate Class Counsel for the fees and expenses they have incurred or will incur in connection with this Action and Settlement, as described in Section VIII of this Agreement. Attorneys' Fees and Expenses do not include any costs or expenses associated with the Class Notice or administration of the Settlement incurred by the Class Action Settlement Administrator.

4

EXECUTION COPY

2.4    "Claim Form" means the document to be submitted by Claimants seeking payment pursuant to Section 4.2 of this Class Settlement Agreement. The Claim Form will accompany the mailed Class Notice and will be available online at the Settlement Website, substantially in the form of Exhibit A to this Class Settlement Agreement.

2.5    "Claim Period" means the time period during which Settlement Class Members may submit a Claim Form to the Settlement Administrator for review. The Claim Period shall run for a period of time ordered by the Court, and last at least one-hundred and twenty (120) calendar days from the date of the first publication of the Summary Settlement Notice or Class Notice, whether online, via print publication, or via press release, whichever is earlier.

2.6    "Claimant" means a Settlement Class Member who submits a claim for payment as described in Section 4.2 of this Class Settlement Agreement.

2.7    "Class Action Settlement Administrator," "Settlement Administrator," or "Notice Administrator" means Dahl Administration, the company jointly selected by Class Counsel and Venus's Counsel and approved by the Court to provide Class Notice and to administer the claims process.

2.8    "Class Counsel" means Melissa Wolchansky, Halunen Law, 80 South Eighth Street, Suite 1650, Minneapolis, MN 55402, and Mark Todzo, The Lexington Law Group, 503 Divisadero Street, San Francisco, CA 94117.

2.9    "Class Notice" or "Long-Form Notice" means the legal notice of the proposed Settlement terms, as approved by Venus's Counsel and Class Counsel, subject to approval by the Court, to be provided to potential members of the Settlement Class pursuant to Section 5.1 below. The Class Notice shall be substantially in the form attached hereto as Exhibit B. Any

5

EXECUTION COPY

changes to the Class Notice from Exhibit B must be jointly approved by Class Counsel and

Venus's Counsel.

2.10    "Class Period" means the period from January 23, 2011, up to and including the

date of the Court's Preliminary Approval Order.

2.11    "Court" means the United States District Court for the Northern District of

California.

2.12    "Dishmate Products" means all Venus or Earth Friendly Products sold under the

Dishmate brand including, but not limited to those labeled as:

    a.    Dishmate Almond;

    b.    Dishmate Lavender;

    c.    Dishmate Pear;

    d.    Dishmate Free and Clear;

    e.    Dishmate Apricot;

    f.    Dishmate Grapefruit; and

    g.    Any other Dishmate dish soap product sold by Venus during the Class Period.

2.13    "Earth Friendly Products" means Venus's Earth Friendly line of products that had

a label containing the words "All-Natural," "100% Natural," "Naturally-derived," "Plant-based,"

"Plant-derived," or "Natural."

2.14    "ECOS® Laundry Detergent Product(s)" means any Venus or Earth Friendly

Products sold under the Ecos brand including:

        a.      ECOS® 4X Concentrated Laundry Detergent Lavender;

        b.      ECOS® 4X Concentrated Laundry Detergent Magnolia & Lily;

        c.      ECOS® 4X Concentrated Laundry Detergent Free & Clear;

6

EXECUTION COPY

      d.      ECOS® 4X Concentrated Laundry Detergent Lemongrass;

      e.      ECOS® 2X Laundry Detergent Lavender;

      f.      ECOS® 2X Laundry Detergent Magnolia & Lily;

      g.      ECOS® 2X Laundry Detergent Free & Clear;

      h.      ECOS® 2X Laundry Detergent Lemongrass; and

      i.      Any other Ecos Laundry Detergent product sold by Venus during the Class Period.

      2.15    "Effective Date" means:

      a.      if no appeal is taken from the Order and Final Judgment, thirty-five (35) days after the Court enters the Order and Final Judgment of this Class Settlement Agreement; or

      b.      if an appeal is taken from the Order and Final Judgment, the date on which all appellate rights (including petitions for rehearing or re-argument, petitions for rehearing en banc, petitions for certiorari or any other form of review, and proceedings in the United States Supreme Court or any other appellate court) have expired, been exhausted, or been finally disposed of in a manner that affirms the Order and Final Judgment.

      2.16    "Final Approval" of this Class Settlement Agreement means the date that Judgment is entered in this Action approving this Class Settlement Agreement.

      2.17    "Fund Institution" means a third-party banking institution where the cash funds Venus will pay under the terms of this Agreement will be deposited into an interest-bearing Qualified Settlement Fund account, specifically, the Settlement Fund, as defined herein. Pursuant to Section 4.1, Class Counsel will select the Fund Institution, subject to the approval of Venus, which will not be unreasonably withheld.

7

EXECUTION COPY

2.18    "Incentive Award" means the amount the Court may award to compensate the named plaintiffs serving as class representatives, Plaintiffs McIntyre and Baharestan, pursuant to Section 8.5.

2.19    "Initial Claim Amount" means the amount a Settlement Class Member claims as a cash payment on a Claim Form that is timely, valid, and approved by the Settlement Administrator. The value basis of the Initial Claim Amount is described in Section 4.4. The Initial Claim Amount is subject to *pro rata* increase or decrease, depending on the value of all approved Claims submitted, pursuant to Section 4.5.

2.20    "Notice Plan" means the plan for publication of Class Notice developed by the Settlement Claim Administrator, attached hereto as Exhibit C, Affidavit of Jeffrey D. Dahl.  The implementation of the Notice Plan must begin no later than 21 days after the Court issues the Preliminary Approval Order.

2.21    "Order and Final Judgment" means the final order to be entered by the Court approving the Settlement pursuant to the terms and conditions of this Agreement, dismissing the Action with prejudice, releasing claims, and otherwise directing as the Court or the Parties deem necessary and appropriate to effectuate the terms and conditions of this Agreement.

2.22    "Other Earth Friendly Product(s)" means any and all Earth Friendly Products excluding the ECOS® Laundry Detergent Products.

2.23    "Preliminary Approval" means the order preliminarily approving the Class Settlement Agreement, preliminarily certifying the Settlement Class, approving the Notice of Proposed Settlement, and issuing any necessary related orders.

8

EXECUTION COPY

2.24    "Qualified Settlement Fund" means the type of fund, account, or trust, created

pursuant to 26 C.F.R. § 1.468B-1, that the Fund Institution will establish to receive payments

under this Agreement.

2.25    "Released Claims" means any claim, cross-claim, liability, right, demand, suit,

matter, obligation, damage, restitution, disgorgement, loss or cost, attorney's fee or expense,

action, or cause of every kind and description that Plaintiffs and each member of the Settlement

Class had or have, including assigned claims, whether in arbitration, administrative, or judicial

proceedings, whether as individual claims asserted on a class basis or on behalf of the general

public, whether known or unknown, asserted or unasserted, suspected or unsuspected, latent or

patent, that is, has been, could reasonably have been asserted by Plaintiffs or members of the

Settlement Class in the Action, against any of the Released Persons, arising out of or relating to

the allegations in the Complaint and the labels or advertising of any Earth Friendly Products

purchased by Plaintiffs and any members of the Settlement Class.

2.26    "Released Persons" means and includes Venus and each of its affiliated entities,

subsidiaries, predecessors, and successors, distributors, retailers, customers, and assigns,

including the present and former directors, officers, employees, shareholders, agents, insurers,

partners, privies, representatives, attorneys, accountants, and all persons acting by, through,

under the direction of, or in concert with them.

2.27    "Residual Fund" means the value of funds remaining in the Settlement Fund, less

all Claimants' Initial Claim Amounts; less Class Notice and administration costs; and less all

Attorneys' Fees and Expenses and Incentive Awards pursuant to Court Order or otherwise

specified in this Agreement.

9

EXECUTION COPY

2.28    "Settlement Class" or "Settlement Class Member" means all persons who, during the Class Period, both resided in the United States and purchased in the United States any of the Earth Friendly Products for their household use or personal consumption and not for resale. Excluded from the Settlement Class are: (a) Venus's board members or executive-level officers, including its attorneys; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes himself or herself from the Settlement Class in accordance with the procedures approved by the Court.

2.29    "Settlement Fund" means the fund valued at Eight Hundred Fifty Thousand Dollars and No Cents ($850,000.00) that Venus will pay in cash for the benefit of Settlement Class Members who submit valid and timely Claim Forms, pursuant to Section 4.2. The Settlement Fund will also be used to pay for any award of Attorneys' Fees and Expenses that the Court orders, any Class Notice and administration costs, Incentive Awards, and other costs pursuant to the terms of Section 4.1(a) of this Agreement.

2.30    "Settlement Hearing" means the hearings the Court will hold to consider and determine whether it should approve the proposed settlement contained in this Class Settlement Agreement as fair, reasonable, and adequate, and whether it should enter Judgment approving the terms of the Class Settlement Agreement. These Settlement Hearings include both a "Preliminary Approval Hearing" and a "Final Approval Hearing" or "Fairness Hearing," to be held after preliminary approval is granted, as the Court so orders.

2.31    "Settlement Website" means the website to be created for this settlement that will include information about the Actions and the Settlement, relevant documents, and electronic and printable forms relating to the Settlement, including the Claim Form. The Settlement Website shall be activated by the date of the first publication of the Summary Settlement Notice

10

EXECUTION COPY

or Class Notice, whichever is earlier, and shall remain active until one hundred twenty (120)

calendar days after the Court enters the Order and Final Judgment.

2.32    "Summary Settlement Notice" or "Short Form Notice" means the Summary Class

Notice of proposed class action settlement, to be disseminated by publication substantially in the

form of Exhibit D attached to this Agreement. Any changes to the Summary Settlement Notice

or Short Form Notice from the form set forth in Exhibit D must be jointly approved by Class

Counsel and Venus's Counsel.

2.33    "Supplemental Settlement Payment" means an amount up to Seventy-Five

Thousand Dollars ($75,000.00) that Venus will pay into the Settlement Fund if the number of

timely, valid, and approved claims before any *pro rata*  or decrease is made exceeds the

Settlement Fund after all claims, class notice and administration costs, and Attorneys' Fees and

Expenses are paid. Venus shall only be required to pay into the Settlement Fund as much as is

necessary to compensate Settlement Class Members for their Initial Claim Amounts. Under no

circumstance shall Venus be required to pay any more than Nine Hundred Twenty-Five

Thousand Dollars ($925,000.00) into the Settlement Fund.

2.34    "Tally" or "Final Tally" means the calculation and report the Settlement

Administrator shall provide to the Parties, which shall include the value and number of timely,

valid, and approved Claims. The Final Tally shall also include the amount due to the Settlement

Fund in cash that Settlement Class Members timely and validly claimed. The Settlement

Administrator shall give the Final Tally to the Parties no later than seven (7) calendar days after

the close of the Claim Period.

2.35    "Venus" means Venus Laboratories, Incorporated, an Illinois corporation with its

principal place of business in Addison, Illinois, and its predecessors, subsidiaries, shareholders,

EXECUTION COPY

affiliates, officers, directors, partners, employees, agents, servants, assignees, successors, and/or other transferees or representatives.

2.36    "Venus's Counsel" means Drinker Biddle & Reath, LLP, 191 N. Wacker Dr. Suite 3700, Chicago, Illinois 60606-1698.

## III.   CERTIFICATION OF THE SETTLEMENT CLASS AND PRELIMINARY APPROVAL

3.1    Solely for the purposes of settlement and the proceedings contemplated herein, the parties stipulate and agree that a nationwide Settlement Class should be certified. Class certification shall be for settlement purposes only and shall have no effect for any other purpose.

3.2    The certification of the Settlement Class shall be binding only with respect to this Class Settlement Agreement. In the event that Final Approval does not occur for any reason, the Preliminary Approval, and all of its provisions, shall be vacated by its own terms, and this Action shall revert to its status that existed prior to the date of this Class Settlement Agreement.

3.3    As part of the settlement process, Venus consents to Plaintiffs' application to the Court for entry of an order which, among other things: (a) preliminarily certifies the Settlement Class in accordance with the definition set forth in Section 2.28 of this Class Settlement Agreement; (b) preliminarily approves this Agreement for purposes of issuing Class Notice; (c) approves the timing, content, and manner of the Class Notice and Summary Settlement Notice or Short Form Notice; (d) appoints the Settlement Administrator; (e) appoints Halunen Law and The Lexington Law Group as Class Counsel and Plaintiffs McIntyre and Baharestan as named Class Representatives; and (f) makes such orders as are necessary and appropriate to effectuate the terms and conditions of this Agreement.

12

EXECUTION COPY

## IV.   SETTLEMENT CONSIDERATION AND BENEFITS

The settlement relief includes four components to benefit the Settlement Class: (a) a Settlement Fund from which Settlement Class Members who submit timely, valid, and approved claims will obtain partial refunds; (b) modifications to the Earth Friendly Products labeling; (c) modifications to the Earth Friendly Products website; and (d) modifications to the formulation of one or more Earth Friendly Products.

4.1   **Settlement Fund**

a.   **Settlement Fund**. Venus shall establish a Settlement Fund with a value of Eight Hundred Fifty Thousand Dollars and No Cents ($850,000.00). The value of the Settlement Fund shall be composed of cash. Venus shall pay all cash payments due per Section 4.1(b) by paying this amount into a Qualified Settlement Fund at the Fund Institution. The Settlement Fund shall be applied to pay in full and in the following order:

i.   any necessary taxes and tax expenses;

ii.   all costs and expenses associated with disseminating notice to the Settlement Class, including but not limited to, the Class Notice and Summary Settlement Notice;

iii.   all costs and expenses associated with the administration of the Settlement, including but not limited to, processing claims and fees of the Class Action Settlement Administrator.  The costs and expenses set forth in 4.1(a) ii and iii shall not exceed $230,000.00.

iv.   any Attorneys' Fees and Expenses award made by the Court to Class Counsel pursuant to Section VIII of this Class Settlement Agreement;

v.   any Incentive Award made by the Court to the two named Plaintiffs serving as class representatives under Section 8.5 of this Class Settlement Agreement;

13

EXECUTION COPY

vi.        cash payments distributed to Settlement Class Members who have

submitted timely, valid, and approved Claims pursuant to the Claims Process outlined in Section

4.2 and the Monetary Relief outlined in Section 4.3 of this Agreement; and

vii.        the Residual Funds, if any, pursuant to Section 4.5 of this

Agreement.

b.        Venus's Funding of the Settlement Fund.

i.        Initial Deposit. Within fourteen (14) calendar days after the entry

of the Preliminary Approval Order, Venus shall fund the Settlement Fund by depositing Two

Hundred Thirty Thousand Dollars and No Cents ($230,000.00) into the Settlement Fund account.

This seven-day deadline may be extended by mutual consent of the Parties.

ii.        Attorneys' Fees and Costs and Incentive Payment. Within five (5)

days after the Effective Date, Venus shall fund the amount ordered by the Court in its Final

Approval Order for Attorneys' Fees and Expenses and Incentive Awards to the Plaintiffs.

iii.        Balance Payment to the Settlement Fund. No later than seven (7)

calendar days after the close of the Claim Period, the Settlement Administrator shall provide the

Parties a Final Tally, which includes the value, number, and type of timely, valid, and approved

Claims. The Tally shall include the amount due to the Settlement Fund in cash to be distributed.

No later than fourteen (14) days after receipt of the Final Tally or no later than fourteen (14) days

after the Effective Date, whichever is later, Venus shall deposit the remaining cash balance into

the Settlement Fund.  If the number of timely, valid, and approved claims before any pro rata

increase is made exceeds the Settlement Fund after all claims, class notice and administration

costs, and Attorneys' Fees and Expenses are paid, Venus shall make a Supplemental Settlement

Payment into the Settlement Fund in accordance with Section 2.33.

EXECUTION COPY

        c.      Class Counsel and Venus Counsel must approve any payment of costs or expenses under Sections 4.1(a)(i), 4.1 (a)(ii), and 4.1(a)(iii).

        d.      In no circumstances shall Venus's contribution to the Settlement Fund be less than Eight Hundred Fifty Thousand Dollars and No Cents ($850,000.00) or greater than Nine Hundred Twenty-Five Thousand Dollars and No Cents ($925,000.00). These payments, pursuant to the terms and conditions of this Agreement, and any other non-monetary obligations of and considerations due from Venus set forth in this Agreement, will be in full satisfaction of all individual and class claims asserted or that could have been asserted in this Action by any Settlement Class Member.

        e.      Venus and the Released Parties are not obligated (and will not be obligated) to compute, estimate, or pay any taxes on behalf of Plaintiffs, Plaintiffs' Counsel, Class Counsel, any Settlement Class Member, the Notice Administrator, or the Settlement Administrator.

        f.      In the event the Effective Date does not occur, all amounts paid into the Settlement Fund, less amounts incurred for claims administration and notice, shall be returned to Venus.

    4.2    **Eligibility and Process for Obtaining a Cash Payment**

    To be eligible for a cash payment, a Settlement Class Member must submit a timely and valid Claim Form, which will be evaluated by the Settlement Administrator.

        a.      **Claim Form Availability**. The Claim Form shall be in a substantially similar form to that attached as Exhibit A. The Claim Form will be: (i) included on the Settlement Website to be designed and administered by the Settlement Administrator; (ii) made readily available from the Settlement Administrator, including by requesting a Claim Form from

15

EXECUTION COPY

the Settlement Administrator by mail, e-mail, or calling a toll-free number provided by the

Settlement Administrator; and (iii) mailed or emailed to (1) those individuals who have directly

bought Earth Friendly Products from www.ECOS.com (to the extent Venus has a current valid

physical or email address for such individual) and (2) such other individuals who purchased

Earth Friendly Products and for whom Venus has obtained current valid physical or email

addresses not otherwise protected by a protective order entered by a court of competent

jurisdiction. The Claim Form will be available for downloading on Class Counsel's website, at

Class Counsel's option.

      b.     **Timely Claim Forms**. Settlement Class Members must submit a timely

Claim Form, which is one postmarked or submitted online before or on the last day of the Claim

Period, the specific date of which will be prominently displayed on the Claim Form and Class

Notice. For a non-online Claim Form, the Claim Form will be deemed to have been submitted on

the date of the postmark on the envelope or mailer. For an online Claim Form and in all other

cases, the Claim Form will be deemed to have been submitted on the date it is received by the

Settlement Administrator.

      c.     **Validity of Claim Forms**. Settlement Class Members must submit a valid

Claim Form, which must contain the Settlement Class Member's name and mailing address,

attestation of purchase(s) as described in Section 4.2(d), product names and type(s) of Earth

Friendly Products purchased, the month(s) and year(s) of each such purchase, and location(s) of

such purchase(s). On the Claim Form, Settlement Class Members must include the number of

ECOS® Laundry Detergent Products purchased and/or the number of Other Earth Friendly

Products purchased. Subject to Section 4.2(g) herein, Claim Forms that do not meet the

requirements set forth in this Agreement and in the Claim Form instructions may be rejected.

EXECUTION COPY

The Settlement Administrator will determine a Claim Form's validity. Where a good faith basis exists, the Settlement Administrator may reject a Settlement Class Member's Claim Form for, among other reasons, the following:

i.      Failure to attest to the purchase of the Earth Friendly Products during the Class Period, or the submission of claim(s) for purchase of products outside the Class Period or that are otherwise not covered by the terms of this Class Settlement Agreement;

ii.      Failure to provide adequate verification or additional information of the Claim pursuant to a request of the Settlement Administrator;

iii.      Failure to fully complete and/or sign the Claim Form;

iv.      Failure to submit a legible Claim Form;

v.      Submission of a fraudulent Claim Form;

vi.      Submission of Claim Form that is duplicative of another Claim Form or the purchase(s) described for a particular household on another Claim Form;

vii.      Submission of Claim Form by a person who is not a Settlement Class Member;

viii.      Request by person submitting the Claim Form to pay funds to a person or entity that is not the Settlement Class Member for whom the Claim Form is submitted;

ix.      Failure to submit a Claim Form by the end of the Claim Period; or

x.      Failure to otherwise meet the requirements of this Agreement.

d.      **Attestation of Purchase Under Penalty of Perjury Required**. Because the claims process will not require proof of purchase, each Settlement Class Member shall sign and submit a Claim Form that states to the best of his or her knowledge the total number and product name and type of purchased Earth Friendly Products, the month(s) and year(s) of each

17

EXECUTION COPY

such purchase, and location of his or her purchase(s). The Claim Form shall be signed under an

affirmation stating the following or substantially similar language: "I declare, under penalty of

perjury, that the information in this Claim Form is true and correct to the best of my knowledge,

and that I purchased the Earth Friendly Product(s) claimed above during the Class Period for

personal or household use and not for resale. I understand that my Claim Form may be subject to

audit, verification, and Court review."

> e.        **Verification of Purchase May be Required.** The Claim Form shall
advise Settlement Class Members that while proof of purchase is not required to submit a Claim,

the Settlement Administrator has the right to request verification or more information regarding

the purchase of the Earth Friendly Products for the purpose of preventing fraud.

> f.        **Claim Form Submission and Review.** Claimants may submit a Claim
Form either by mail or electronically. The Settlement Administrator shall review and process the

Claim Forms pursuant to the process described in this Agreement to determine each Claim

Form's validity. Adequate and customary procedures and standards will be used by the

Settlement Administrator to prevent the payment of fraudulent claims and to pay only legitimate

claims. The Parties shall take all reasonable steps, and direct the Settlement Administrator to take

all reasonable steps, to ensure that Claim Forms completed and signed electronically by

Settlement Class Members conform to the requirements of the federal Electronic Signatures Act,

15 U.S.C. § 7001, *et seq*.

> g.        **Claim Form Deficiencies**. Failure to provide all information requested on
the Claim Form will not result in immediate denial or nonpayment of a claim. Instead, the

Settlement Administrator will take all adequate and customary steps to attempt to cure the defect

and to determine the Settlement Class Member's eligibility for payment and the amount of

EXECUTION COPY

payment based on the information contained in the Claim Form or otherwise submitted,

including but not limited to attempting to follow up with the Claimant to gather additional

information if necessary. If the Claim Form defect cannot be cured, the Claim will be rejected.

      h.    **Failure to Submit Claim Form**. Unless a Settlement Class Member opts

out pursuant to Section VI, any Settlement Class Member who fails to submit a timely and valid

Claim Form shall be forever barred from receiving any payment pursuant to this Agreement, and

shall in all other respects be bound by all of the terms of this Agreement and the terms of the

Order and Final Judgment to be entered in the Action. Based on the Release contained in the

Agreement, any Settlement Class Member who does not opt out will be barred from bringing any

action in any forum (state or federal) against any of the Released Parties concerning any of the

matters subject to the Release.

      4.3.    <u>**Monetary Relief to Settlement Class Members: Payments of Cash Settlement.**</u>

      a.    The relief to be provided to each Settlement Class Member who submits a

timely and valid Claim Form pursuant to the terms and conditions of this Agreement shall be a

Payment in the form of a cash settlement amount. The amount or value of the payment will vary

based on: (i) the type and number of the Earth Friendly Products that the Settlement Class

Member purchased; (ii) whether the Settlement Class Member submits a valid Claim Form for

all qualifying purchases; and (iii) the total amount of valid claims submitted.

      b.    Cash settlement amounts will be paid by the Settlement Administrator

pursuant to Section 4.4, via check.

      c.    Subject to *pro rata* upward or downward adjustment pursuant to Section

4.5, a Settlement Class Member will receive One Dollar and Fifty Cents ($1.50) for each

ECOS® Laundry Detergent Product purchased, and One Dollar and No Cents ($1.00) for each

19

EXECUTION COPY

Other Earth Friendly Product purchased; up to a combined total cash refund of no more than Twenty-Five Dollars and No Cents ($25.00) per Settlement Class Member, subject to a *pro rata* upward or downward adjustment pursuant to Section 4.5.

    d.  For the purposes of this Class Settlement Agreement only, the parties agree that if litigation continued, Plaintiffs would contend that the damages available to Plaintiffs, if any (since Venus would dispute Plaintiffs' claim), would be based in part on a "price premium" theory, whereby Plaintiffs would have attempted to recover the premium paid for the Earth Friendly Products due to the complained-of labeling as opposed to the price paid without the complained-of labeling.

    4.4.  **Distribution to Authorized Settlement Class Members.**

    a.  The Settlement Administrator shall begin paying timely, valid, and approved Claims via first-class mail no later than thirty (30) calendar days after the Effective Date. The Settlement Administrator may begin to pay timely, valid, and approved Claims sooner upon Venus and Class Counsel's joint direction, but not before the Effective Date.

    b.  The Settlement Administrator shall have completed the payment to Settlement Class Members who have submitted timely, valid, and approved Claims pursuant to the Claim Process no later than sixty (60) calendar days after the Effective Date.

    4.5.  **Excess or Insufficient Funds in the Settlement Fund.**

EXECUTION COPY

        a.      **Excess Funds.** If, after the payment of all valid Claims, Notice and Administration costs, Attorneys' Fees and Expenses, Incentive Awards, and any other claim, cost, or fee specified by this Agreement, value remains in the Settlement Fund, it shall be called the Residual Fund. Any value remaining in the Residual Fund shall increase eligible Settlement Class Members' relief on a *pro rata* basis such that Settlement Class Members are entitled to receive an increased payment constituting up to one hundred percent (100%) of the Eligible Settlement Class Member's Initial Claim Amount. However, the Supplemental Settlement Payment shall not be used for the purposes of funding a *pro rata* increase for Settlement Class Members. The Settlement Administrator shall determine each authorized Settlement Class member's *pro rata* share based upon each Settlement Class Member's Claim Form and the total number of valid Claims. Accordingly, the actual amount recovered by each Settlement Class Member will not be determined until after the Claim Period has ended and all Claims have been calculated. Examples include, but are not limited to:

        i.      If enough remained in the Settlement Fund to pay each Eligible Settlement Class Member seventy-five percent (75%) more than his or her Initial Claim Amount and a Claimant was eligible for a cash award of Fifteen Dollars and No Cents ($15.00), that Claimant would be entitled to an additional Eleven Dollars and Twenty-Five Cents ($11.25), for a total cash award of Twenty-Six Dollars and Twenty-Five Cents ($26.25).

        ii.      If enough remained in the Settlement Fund to pay each Eligible Settlement Class Member twenty-five percent (25%) more than his or her Initial Claim Amount and a Claimant was eligible for a cash award of Fifteen Dollars and No Cents ($15.00), that Claimant would be entitled to an additional Three Dollars and Seventy-Five Cents ($3.75), for a total cash award of Eighteen Dollars and Seventy-Five Cents ($18.75).

21

EXECUTION COPY

        b.      **Insufficient Funds**. If the total amount of the timely, valid, and approved Claims submitted by Settlement Class Members exceeds the available relief, considering any fees, payments, and costs set forth in this Agreement that must also be paid from the Settlement Fund, Venus shall contribute up to an additional Seventy-Five Thousand Dollars and No Cents ($75,000.00) to the Settlement Fund, in accordance with Section 2.33, to cover Settlement Class Members' Initial Claim Amount. If following the additional cash contribution, the total amount of timely, valid, and approved Claims submitted by Settlement Class Members exceeds the available relief, considering any fees, payments, and costs set forth in this Agreement that must also be paid from the Settlement Fund, each eligible Settlement Class Member's Initial Claim Amount shall be proportionately reduced on a *pro rata* basis, such that the aggregate value of the cash payments distributed does not exceed the Settlement Fund Balance. The Settlement Administrator shall determine each authorized Settlement Class member's *pro rata* share based upon each Settlement Class Member's Claim Form and the total number of valid Claims. Accordingly, the actual amount recovered by each Settlement Class Member will not be determined until after the Claim Period has ended and all Claims have been calculated. Examples include, but are not limited to:

        i.      If the total number of claims exceed the relief, following the additional cash contribution, such that there is a seventy-five percent (75%) *pro rata* reduction of the Settlement Member's Initial Claim Amount, and the Claimant was eligible for a cash award of Fifteen Dollars and No Cents ($15.00), that Claimant would be entitled to an Initial Claim Amount of Three Dollars and Seventy-Five Cents ($3.75).

        ii.      If the total number of claims exceed the relief, following the additional cash contribution, such that there is a twenty-five percent (25%) *pro rata* reduction of

EXECUTION COPY

the Settlement Member's Initial Claim Amount, and the Claimant was eligible for a cash award

of Fifteen Dollars and No Cents ($15.00), that Claimant would be entitled to an Initial Claim

Amount of Eleven Dollars and Twenty-Five Cents ($11.25).

        c.       It is the Parties intent to distribute all Settlement Funds to Settlement Class

Members. However, if there are any funds remaining in the Settlement Fund Balance following

the calculation pursuant to the above Sections 4.5(a)(i) or (ii) and any reduction in any

Supplemental Settlement Payment by Venus under Section 2.33 reflecting any credit for such

remaining funds, including any checks that were not cashed, then,  within seven (7) days after

the check cashing deadline in Section 5.1(f)(ii), the Settlement Administrator shall distribute the

Residual Funds to the following non-profit organization: Consumers Union.  The Residual Funds

will not be returned to Venus. Venus represents and warrants that any payment of Residual

Funds to any charities, non-profit organizations, or government entities shall not reduce any of

its donations or contributions to any entity, charity, charitable foundation or trust, and/or non-

profit organization.

        4.6.     **Injunctive Relief: Modification of Earth Friendly Products' Labels.**

       Venus agrees to make the following changes to its labeling on its Earth Friendly

Products, beginning within ninety (90) days after the Effective Date:

        a.       Venus shall refrain from placing the terms "100% Natural" or "All-

Natural" on the Earth Friendly Products' labels unless the claim is certified by a reputable third-

party active in the natural products area similar to the way in which Oregon Tilth Certified

Organic certifies food products as organic;

        b.       Any time the word "natural" is placed on the front label, Venus shall

qualify the term "natural" by describing the particular characteristic in the product that it

EXECUTION COPY

describes (e.g. from "Natural Detergent" to "Natural Cleaning Agent"), but only where the statement is true;

        c.      Venus shall remove the term "organic" from all labels of Earth Friendly Products unless the Product meets the U.S. Department of Agriculture standard for "organic," or the California Organic Products Act standard for "organic" or its equivalent in other states, if any such standards then exist that apply to Earth Friendly Products;

        d.      Venus shall continue to list the ingredients contained within the Product on the packaging of the Product;

        e.      Venus shall add explanatory parentheticals (e.g. "derived from coconut oil" or ".0095% preservative) after each ingredient on the ingredient lists for the Earth Friendly Products;

        f.      Venus shall place the following statement, or a substantially similar statement, on the back panel of each Product, depending on whether such product qualifies under the EPA's "Safer Choice" program, either "See www.ecos.com/ingredients for more information on our ingredients." or "See www.ecos.com/saferchoice/ingredients for more information on our ingredients.";

        g.      On the Earth Friendly Products website, www.ECOS.com, Venus shall add a webpage with a glossary generally describing the manufacturing process for each ingredient to the extent such ingredients are manufactured by Venus or Venus' ingredient suppliers provide such information to Venus; and

    4.7.    **<u>Injunctive Relief Related to Methylisothianzolinone.</u>**

24

EXECUTION COPY

Venus agrees to make the changes described below, beginning within ninety (90) days after the Effective Date or the specified date, whichever is later, but shall be able to continue to sell existing inventory pursuant to Section 4.8(c).

a.      Within twelve (12) months following the Effective Date, Venus shall cease using Methylisothianzolinone ("MIT") as an ingredient in all Dishmate Products.

b.      Beginning ninety (90) days after the Effective Date and continuing for at least twenty-four (24) months, Venus shall make good-faith efforts to study alternatives to the use of MIT in other Earth Friendly Products.

c.      Reporting.  Every six (6) months for a period of two (2) years after the Effective Date and following the commencement of the above-mentioned study, Venus will provide Class Counsel with a confidential report on its efforts to study alternatives to the use of MIT in other Earth Friendly Products;

d.      To the extent that Venus continues to use MIT in any of the Earth Friendly Products, it will include a disclosure on the Earth Friendly Products website, www.ECOS.com, that "hypoallergenic," "kind to sensitive skin" or similar statements on the packaging or advertising for such Earth Friendly Products do not mean that a product or ingredient will not cause any allergic reaction in any person and that a small percentage of individuals may have some form of allergic reaction to MIT.

4.8.      **Other Injunctive Relief Terms and Conditions.**

a.      Plaintiffs and the Settlement Class agree that the above modifications to the labeling, marketing, and advertising of the Earth Friendly Products are satisfactory to Plaintiffs and the Settlement Class and alleviate each and every alleged deficiency with regard to the labeling, packaging, advertising, and marketing of the Earth Friendly Products and their

25

EXECUTION COPY

ingredients (and similar deficiencies, if any, with regard to other or future Earth Friendly

Products) set forth in or related to the Complaint. This includes the allegations that Venus's

labeling and marketing of the Earth Friendly Products and its ingredients as "Natural," "All

Natural," or "100% Natural," and similar statements were false, deceptive, and misleading.

      b.    **Expiration.** The injunctive relief requirements by which Venus agrees to

abide as part of this Class Settlement Agreement and as described in Section 4.6 shall expire on

the date upon which there are any changes to any applicable federal or state statutes or

regulations that would allow Venus to label its Earth Friendly Products "natural" without the

labeling modifications set forth in this Agreement, including but not limited to changes in U.S.

Food and Drug Administration ("FDA"), Federal Trade Commission, U.S. Department of

Agriculture and other governmental agencies' regulations, guidance, or pronouncements.

      c.    For purposes of this Agreement, Venus shall not be required to destroy

any existing Products or components of such Products, remove any existing Products from the

marketplace, or change any labels on Products already labelled or in the process of being labelled

prior to the Effective Date.

## V.   NOTICE TO CLASS AND ADMINISTRATION OF PROPOSED SETTLEMENT

### 5.1.   <u>Duties and Responsibilities of the Settlement Administrator.</u>

Class Counsel and Venus recommend and retain Dahl Administration, LLC to be the

Settlement Administrator for this Agreement. The Settlement Administrator shall abide by and

shall administer the Settlement in accordance with the terms, conditions, and obligations of this

Agreement and the Orders issued by the Court in this Action.

      a.    **Class Notice Duties**. The Settlement Administrator shall, in cooperation

with the Parties, be responsible for consulting on and designing the Class Notice, Summary Class

EXECUTION COPY

Notice, and Claim Form. After the Court's Preliminary Approval of this Agreement and Appointment of the Settlement Administrator, the Settlement Administrator shall also be responsible for disseminating the Class Notice, substantially in the form as described in the Notice Plan attached as Exhibit C to this Agreement, as specified in the Preliminary Approval Order, and as specified in this Agreement. The Class Notice and Summary Class Notice will comply with all applicable laws, including, but not limited to, the Due Process Clause of the Constitution. Class Notice duties include, but are not limited to:

       i.      consulting on, drafting, and designing the Class Notice, Summary Class Notice, and Claim Form. Class Counsel and Venus's Counsel shall have input and joint approval rights, which shall not be unreasonably withheld, over these Notices and Form or any changes to the Notices and Form;

      ii.      developing a Notice Plan, attached as Exhibit C to this Agreement. Class Counsel and Venus's Counsel shall have input and joint approval rights, which shall not be unreasonably withheld, over this Notice Plan or changes to this Notice Plan;

      iii.      implementing and arranging for the publication of the Summary Settlement Notice and Class Notice via various forms of paper and electronic media, including implementing media purchases, all in substantial accordance with the Notice Plan, attached as Exhibit C. The implementation of the Notice Plan must begin no later than 21 days after the Court issues the Preliminary Approval Order. To the extent that the Settlement Administrator believes additional or different Notice should be undertaken than that provided for in the Notice Plan, Class Counsel and Venus's Counsel shall have input and joint approval rights, which shall not be unreasonably withheld, over any additional or different Notice;

27

EXECUTION COPY

        iv.        establishing and publishing a website that contains the Class Notice and related documents, including a Claim Form capable of being completed and submitted on-line. The website, including the Class Notice, shall remain available for one hundred twenty (120) days after the Effective Date;

        v.        sending the Class Notice and related documents, including a Claim Form, via electronic mail or regular mail, to any potential Settlement Class Member who so requests and sending such Class Notice and documents to the list of direct consumers provided by Venus;

        vi.        responding to requests from Class Counsel and Venus's Counsel; and

        vii.        otherwise implementing and assisting with the dissemination of the Notice of the Settlement.

        b.        **Class Action Fairness Act Notice Duties to State and Federal Officials**. No later than ten (10) calendar days after this Agreement is filed with the Court, Venus shall mail or cause the items specified in 28 U.S.C. § 1715(b) to be mailed to each State and Federal official, as specified in 28 U.S.C. § 1715(a).

        c.        **Claims Process Duties**. The Settlement Administrator shall be responsible for implementing the terms of the Claim Process and related administrative activities, including communications with Settlement Class Members concerning the Settlement, Claim Process, and the options they have. Claims Process duties include, but are not limited to:

        i.        executing any mailings required under the terms of this Agreement;

28

EXECUTION COPY

        ii.      establishing a toll-free voice response unit to which Settlement Class Members may refer for information about the Action and the Settlement;

        iii.      establishing a post office box for the receipt of Claim Forms, exclusion requests, and any correspondence;

        iv.      receiving and maintaining on behalf of the Court all correspondence from any Settlement Class Member regarding the Settlement, and forwarding inquiries from Settlement Class Members to Class Counsel or their designee for a response, if warranted; and

        v.      receiving and maintaining on behalf of the Court any Settlement Class Member correspondence regarding any opt-out requests, exclusion forms, or other requests to exclude himself or herself from the Settlement, and providing to Class Counsel and Venus's Counsel a copy within five (5) calendar days of receipt. If the Settlement Administrator receives any such forms or requests after the deadline for the submission of such forms and requests, the Settlement Administrator shall promptly provide Class Counsel and Venus's Counsel with copies.

        d.      **Claims Review Duties.** The Settlement Administrator shall be responsible for reviewing and approving Claim Forms in accordance with this Agreement. Claims Review duties include, but are not limited to:

        i.      reviewing each Claim Form submitted to determine whether each Claim Form meets the requirements set forth in this Agreement and whether it should be allowed, including determining whether a Claim by any Settlement Class Member is timely, complete, and valid;

EXECUTION COPY

        ii.      working with Settlement Class Members who submit timely claims to try to cure any Claim Form deficiencies;

        iii.     using all reasonable efforts and means to identify and reject duplicate and/or fraudulent claims, including, without limitation, maintaining a database of all Claims Form submissions;

        iv.     keeping an accurate and updated accounting via a database of the number of Claim Forms received, the amount claimed on each Claim Form, the name and address of the Settlement Class Members who made the claim, whether the claim has any deficiencies, and whether the claim has been approved as timely and valid; and

        v.      otherwise implementing and assisting with the Claim review process and payment of the Claims, pursuant to the terms and conditions of this Agreement.

        e.      **Periodic Updates**. The Settlement Administrator shall provide periodic updates to Class Counsel and Venus's Counsel regarding Claim Form submissions beginning within seven (7) business days after the commencement of the dissemination of the Class Notice or the Summary Settlement Notice and continuing on a monthly basis thereafter and shall provide such an update within seven (7) days before the Final Approval Hearing. The Settlement Administrator shall also provide such updates to Class Counsel or Venus's Counsel upon request, within a reasonable amount of time.

        f.      **Claims Payment Duties.** The Settlement Administrator shall be responsible for sending payments to all eligible Settlement Class Members with valid, timely, and approved Claims pursuant to the terms and conditions of this Agreement. Claim Payment duties include, but are not limited to:

EXECUTION COPY

i.      Within seven (7) days of the Effective Date, provide a report to Class Counsel and Venus's Counsel calculating the amount and number of valid and timely claims that requested refunds, including any to be paid pursuant to the Residual Funds described in Section 4.5;

ii.      Per Sections 4.3, 4.4, and 4.5, once the Settlement Fund has been funded, sending refund checks to Settlement Claim Members who submitted timely, valid, and approved Claim Forms, which checks shall have a deadline for negotiation of one hundred and eighty days (180) from the date of the refund check; and

iii.      Once refund payments have commenced to the Settlement Class pursuant to the terms and conditions of this Agreement, the Settlement Administrator shall provide a regular accounting to Class Counsel and Venus's Counsel that includes but is not limited to the number and amount of claims paid.

g.      **Reporting to Court**. Not later than ten (10) calendar days before the date of the Fairness Hearing, the Settlement Administrator and Notice Administrator shall file a declaration or affidavit with the Court that: (i) includes a list of those persons who have opted out or excluded themselves from the Settlement; and (ii) describes the scope, methods, and results of the notice program.

h.      **Duty of Confidentiality**. The Settlement Administrator shall treat any and all documents, communications, and other information and materials received in connection with the administration of the Settlement as confidential and shall not disclose any or all such documents, communications, or other information to any person or entity, except to the Parties or as provided for in this Agreement or by Court Order.

31

EXECUTION COPY

        i.     **Right to Inspect**. Class Counsel and Venus's Counsel shall have the right to inspect the Claim Forms and supporting documentation received by the Settlement Administrator at any time upon reasonable notice.

        j.     **Failure to Perform**. If the Settlement Administrator misappropriates any funds from the Administration or Settlement Funds or makes a material or fraudulent misrepresentation to, or conceals requested material information from, Class Counsel, Venus, or Venus's Counsel, then the Party who discovers the misappropriation or concealment or to whom the misrepresentation is made shall, in addition to any other appropriate relief, have the right to demand that the Settlement Administrator immediately be replaced. If the Settlement Administrator fails to perform adequately on behalf of the Parties, the Parties may agree to remove the Settlement Administrator. Neither Party shall unreasonably withhold consent to remove the Settlement Administrator. The Parties will attempt to resolve any disputes regarding the retention or dismissal of the Settlement Administrator in good faith. If unable to so resolve a dispute, the Parties will refer the matter to the Court for resolution.

## VI.   OBJECTIONS AND REQUESTS FOR EXCLUSION

     6.1.    A Settlement Class Member may either object to this Agreement pursuant to Section 6.2 or request exclusion from this Agreement pursuant to Section 6.3.

     6.2.    **Objections**. Settlement Class Members shall have the right to object to this settlement and to appear and show cause, if they have any reason why the terms of this Agreement should not be given Final Approval, pursuant to this paragraph:

        a.     A Settlement Class Member may object to this Agreement either on his or her own without an attorney, or through an attorney hired at his or her own expense.

EXECUTION COPY

      b.      Any objection to this Agreement must be in writing, signed by the Settlement Class Member (and his or her attorney, if individually represented), filed with the Court, with a copy delivered to Class Counsel and Venus's Counsel at the addresses set forth in the Class Notice, no later than thirty (30) days before the Fairness Hearing.

      c.      Any objection regarding or related to this Agreement shall contain information, including but not limited to, address and phone number, sufficient to identify and contact the objecting Settlement Class Member (or his or her individually-hired attorney, if any), as well as a clear and concise statement of the Settlement Class Member's objection, the facts supporting the objection, and the legal grounds on which the objection is based.

      d.      Any objection shall include documents sufficient to establish the basis for the objector's standing as a Settlement Class Member, such as (i) a declaration signed by the objector under penalty of perjury, with language similar to that included in the Claim Form attached hereto as Exhibit A, that the Settlement Class Member purchased at least one Earth Friendly Product during the Class Period of January 23, 2011 to the date of Preliminary Approval; or (ii) receipt(s) reflecting such purchase(s).

      e.      Class Counsel and Venus shall have the right to obtain reasonable discovery from any objecting class member and to respond to any objection no later than seven (7) days prior to the Fairness Hearing. The Party so responding shall file a copy of the response with the Court, and shall serve a copy, by regular mail, hand or overnight delivery, to the objecting Settlement Class Member or to the individually-hired attorney for the objecting Settlement Class Member; to all Class Counsel; and to Venus's Counsel.

      f.      If an objecting Settlement Class Member chooses to appear at the hearing, no later than fifteen (15) days before the Fairness Hearing, a Notice of Intention to Appear, either

33

EXECUTION COPY

In Person or Through an Attorney, must be filed with the Court and list the name, address and telephone number of the attorney, if any, who will appear.

6.3.    **Requests for Exclusion**. Settlement Class Members shall have the right to elect to exclude themselves, or "opt out," of the monetary portion of the this Agreement, relinquishing their rights to cash compensation under this Agreement and preserving their claims for damages that accrued during the Class Period, pursuant to this paragraph:

a.    A Settlement Class Member wishing to opt out of this Agreement must send to the Class Action Settlement Administrator by U.S. Mail a personally-signed letter including his or her name and address, and providing a clear statement communicating that he or she elects to be excluded from the Settlement Class.

b.    Any request for exclusion or opt out must be postmarked on or before the opt-out deadline date specified in the Preliminary Approval Order. The date of the postmark on the return-mailing envelope shall be the exclusive means used to determine whether a request for exclusion has been timely submitted.

c.    The Class Action Settlement Administrator shall forward copies of any written requests for exclusion to Class Counsel and Venus's Counsel, and shall file a list reflecting all requests for exclusion with the Court no later than ten (10) calendar days before the Settlement Hearing.

d.    The Request for Exclusion must be personally signed by the Settlement Class Member.

6.4.    Any Settlement Class Member who does not file a timely written request for exclusion as provided in the preceding Section 6.3 shall be bound by all subsequent proceedings, orders, and judgments, including, but not limited to, the Release in this Action, even if he or she

34

EXECUTION COPY

has litigation pending or subsequently initiates litigation against Venus relating to the claims and transactions released in this Action.

6.5.    Any Settlement Class Member who does not request exclusion from the Settlement has the right to object to the Settlement. Settlement Class Members may not both object and opt out of the Settlement. Any Settlement Class Member who wishes to object must timely submit an objection as set forth in Section 6.2 above. If a Settlement Class Member submits both an objection and a written request for exclusion, he or she shall be deemed to have complied with the terms of the procedure for requesting exclusion as set forth in Section 6.3 and shall not be bound by the Agreement if approved by the Court and the objection will not be considered by the Court.

**VII.   RELEASES**

7.1.    Upon the Effective Date of this Class Settlement Agreement, Plaintiffs and each member of the Settlement Class, and each of their successors, assigns, heirs, and personal representatives, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Persons. The Released Claims shall be construed as broadly as possible to effect complete finality over this litigation involving the advertising, labeling, and marketing of the Earth Friendly Products as set forth herein  The Releasing Parties further agree that compliance with the injunctive relief provisions of ¶¶4.7 and 4.8 alleviate each and every alleged deficiency with regard to the labeling, packaging, advertising and marketing of the Earth Friendly Products as set forth in the Complaint filed in the Action.

7.2.    Plaintiffs fully understand that the facts upon which this Class Settlement Agreement is executed may hereafter be other than or different from the facts now believed by

35

EXECUTION COPY

Plaintiffs and Class Counsel to be true and nevertheless agree that this Class Settlement

Agreement shall remain effective notwithstanding any such difference in facts.

7.3.    To the extent permitted by law, this Agreement may be pleaded as a full and

complete defense to, and may be used as the basis for an injunction against, any action, suit, or

other proceeding that may be instituted, prosecuted, or attempted in breach of or contrary to this

Agreement, including but not limited to any Related Actions.

## VIII.  ATTORNEYS' FEES AND EXPENSES AND CLASS REPRESENTATIVE INCENTIVE AWARDS

8.1.    At least fourteen (14) days prior to the deadline for any class members to file

objections to the Settlement, Class Counsel will petition the Court for an award of reasonable

attorneys' fees and expenses not to exceed an amount equal to thirty percent (30%) of the total

combined Settlement Fund and Supplemental Settlement Payment of Nine Hundred Twenty-Five

Thousand Dollars and No Cents ($925,000), which is Two Hundred Seventy Seven Thousand

Five Hundred Dollars and No Cents ($277,500.00). Class Counsel's application will be based on

the lodestar (time spent multiplied by hourly rate) and reasonable expenses expended in the

Action.  This shall be the sole compensation for Class Counsel representing the Class paid by

Venus. The ultimate award of Attorneys' Fees and Expenses will be determined by the Court.

8.2.    The Settlement Administrator shall wire to an account jointly established and

maintained by Class Counsel any Court-approved attorneys' fees and expenses to Class Counsel

within 5 days of the Effective Date.  Such payment shall be in full settlement of any claim for

any attorneys' fees and expenses by the Settlement Class, Plaintiffs McIntyre and Baharestan,

Class Counsel, or any other plaintiff's counsel in the Action. The parties also agree that the final

order on attorneys' fees submitted to the Court for approval shall state that the maximum amount

for which Venus will be liable to all Plaintiffs' counsel in the Action combined is the amount

36

EXECUTION COPY

approved by the Court, not to exceed Two Hundred Seventy Seven Thousand Five Hundred

Dollars and No Cents ($277,500.00).

8.3.    Class Counsel agrees that any award of Attorneys' Fees and Expenses from

Venus will be sought solely and exclusively in the Action.

8.4.    Venus will not appeal from any order with respect to the award of Attorneys' Fees

and Expenses provided that the order does not award Attorneys' Fees and Expenses in excess of

the amount stated in Section 8.1. Venus shall have the right to appeal in the event of an award of

Attorneys' Fees and Expenses in excess of such amount. Venus shall also have the right to

withdraw from the settlement in the event of an award of Attorneys' Fees and Expenses in excess

of such amount.

8.5.    Within ten (10) days after the Effective Date, the Settlement Fund shall pay

Incentive Awards of Two Thousand Dollars and No Cents ($2,000.00) to each of the named

plaintiffs, Plaintiffs McIntyre and Baharestan.

## IX.   NO ADMISSION OF LIABILITY

9.1.    Venus has denied and continues to deny that the labeling, advertising, or

marketing of its Earth Friendly Products is false, deceptive, or misleading to consumers or

violates any legal requirement, including but not limited to the allegations that Venus engaged in

unfair, unlawful, fraudulent, or deceptive trade practices, breached an express warranty, was

unjustly enriched, or that the Products or the ingredients in the Products caused any damage to

anyone. Venus is entering into this Class Settlement Agreement solely because it will eliminate

the uncertainty, distraction, burden, and expense of further litigation. The provisions contained in

this Class Settlement Agreement and the manner or amount of relief provided to Settlement

Class Members herein shall not be deemed a presumption, concession, or admission by Venus of

37

EXECUTION COPY

any fault, liability, or wrongdoing as to any facts or claims that have been or might be alleged or

asserted in the Action, or in any other action or proceeding that has been, will be, or could be

brought, and shall not be interpreted, construed, deemed, invoked, offered, or received into

evidence or otherwise used by any person in any action or proceeding, whether civil, criminal, or

administrative, for any purpose other than as provided expressly herein.

9.2.    In the event of any of the following: (i) the Court does not approve this Class

Settlement Agreement substantially in the form submitted (or in a modified form mutually

acceptable to the Parties), (ii) more than two hundred and fifty (250) Settlement Class Members

opt out of the Class Settlement Agreement pursuant to Section 6.3, or (iii) this Class Settlement

Agreement is terminated or fails to become effective or final in accordance with its terms, the

Plaintiffs and Venus shall be restored to their respective positions in the Action as of the date

hereof. In such event, the terms and provisions of this Class Settlement Agreement shall have no

further force and effect and shall not be used in the Action or in any other proceeding or for any

purpose, and the Parties will jointly make an application requesting that any Judgment entered by

the Court in accordance with the terms of this Class Settlement Agreement shall be treated as

vacated, *nunc pro tunc*.

9.3.    By entering into this Class Settlement Agreement, Venus is not consenting to or

agreeing to certification of the Settlement Class for any purpose other than to effectuate the

settlement of the Action. The parties agree that if the Court does not approve this Class

Settlement Agreement substantially in the form submitted (or in a modified form mutually

acceptable to the Parties), including, without limitation, if this Class Settlement Agreement is

terminated or fails to become effective or final in accordance with its terms, the Action shall

EXECUTION COPY

proceed as if no Party had ever agreed to such settlement, without prejudice to the right of any Party to take any and all action of any kind in the Action.

## X.    ADDITIONAL PROVISIONS

10.1.    Plaintiffs and Class Counsel warrant and represent to Venus that they have no present intention of initiating any other claims or proceedings against Venus, or any of its affiliates, or any entity that manufactures, distributes, or sells Earth Friendly Products or any other product that is marketed or labeled using the Earth Friendly Products brand name, and, except for the claims hereby settled, Plaintiffs and Class Counsel warrant and represent to Venus that they have no present knowledge and are not presently aware of any factual or legal basis for any such claims or proceedings, other than claims or proceedings that may already be pending against Venus.

10.2.    The Parties agree that information and documents exchanged in negotiating this Class Settlement Agreement were done so pursuant to Fed. R. Evid. 408, and no such confidential information exchanged or produced by either side may be revealed for any other purpose than this Settlement. This does not apply to publicly-available information or documents.

10.3.    The Parties agree to return or dispose of confidential documents and information exchanged in negotiating this Class Settlement Agreement within fifteen (15) days of the Effective Date. This does not apply to publically-available information or documents.

10.4.    The Parties agree that the terms of the Class Settlement Agreement were negotiated at arm's length and in good faith by the Parties and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

EXECUTION COPY

10.5.    The Parties and their respective counsel agree to use their best efforts and to cooperate fully with one another (i) in seeking preliminary and final Court approval of this settlement; and (ii) in effectuating the full consummation of the settlement provided for herein.

10.6.    Each counsel or other person executing this Class Settlement Agreement on behalf of any Party hereto warrants that such person has the authority to do so.

10.7.    This Class Settlement Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original but all of which together shall constitute one and the same instrument. Executed counterparts shall be deemed valid if delivered by mail, courier, electronically, or by facsimile.

10.8.    This Class Settlement Agreement shall be binding upon and inure to the benefit of the settling Parties (including all Settlement Class Members), their respective agents, attorneys, insurers, employees, representatives, officers, directors, partners, divisions, subsidiaries, affiliates, associates, assigns, heirs, successors in interest, and shareholders, and any trustee or other officer appointed in the event of a bankruptcy, as well as to all Released Persons as defined in Section 2.26. The waiver by any Party of a breach of this Class Settlement Agreement by any other Party shall not be deemed a waiver of any other breach of this Class Settlement Agreement.

10.9.    This Class Settlement Agreement and any exhibits attached to it constitute the entire agreement between the Parties hereto and supersede any prior agreements or understandings, whether oral, written, express, or implied between the Parties with respect to the settlement.  None of the Parties have relied on any written or oral representation not contained in this Agreement in deciding to enter this Agreement.

EXECUTION COPY

10.10.  No amendment, change, or modification of this Class Settlement Agreement or any part thereof shall be valid unless in writing, signed by all Parties and their counsel, and approved by the Court.

10.11.  The Parties to this Class Settlement Agreement each represent to the other that they have received independent legal advice from attorneys of their own choosing with respect to the advisability of making the settlement provided for in this Class Settlement Agreement, and with respect to the advisability of executing this Class Settlement Agreement, that they have read this Class Settlement Agreement in its entirety and fully understand its contents, and that each is executing this Class Settlement Agreement as a free and voluntary act.

10.12.  Except as otherwise provided herein, all notices, requests, demands, and other communications required or permitted to be given pursuant to this Class Settlement Agreement shall be in writing and shall be delivered personally, by facsimile, by e-mail, or by overnight mail, to the undersigned counsel for the Parties at their respective addresses.

10.13.  The titles and captions contained in this Class Settlement Agreement are inserted only as a matter of convenience and for reference, and shall in no way be construed to define, limit, or extend the scope of this Class Settlement Agreement or the intent of any of its provisions. This Class Settlement Agreement shall be construed without regard to its drafter, and shall be construed as though the Parties participated equally in the drafting of this Class Settlement Agreement.

10.14.  The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the Class Settlement Agreement and the Parties to the Class Settlement Agreement submit to the jurisdiction of the Court for those purposes.

EXECUTION COPY

**IN WITNESS WHEREOF**, Venus, Incorporated, and Jena McIntyre and Rebekah

Baharestan, on behalf of themselves and all others similarly situated, intending to be legally

bound hereby, have duly executed this Class Settlement Agreement as of the date set forth

below, along with their counsel.

Dated: 9 - 25 - 15                          By: _____

                                               Melissa W. Wolchansky, Esq.
                                               Halunen Law
                                               Attorney for Plaintiff Jena McIntyre
                                               and for the Settlement Class
                                               Members

Dated: _____          By: _____

                                               Mark Todzo, Esq.
                                             Lexington Law Group
                                               Attorney for Plaintiff Rebekah
                                             Baharenstan and for the Settlement
                                             Class Members

Dated: _____          By: _____

                                             Amber Enriquez, Esq.
                                             General Counsel
                                             Venus Laboratories, Inc.

Dated: _____          By: _____

                                             Daniel J. Delaney, Esq.
                                             Drinker, Biddle & Reath, LLP
                                             Attorney for Defendant Venus
                                             Laboratories, Inc.

Dated: _____          By: _____
                                             Plaintiff Jena McIntyre

Dated: _____          By: _____
                                             Plaintiff Rebekah Baharenstan

42

EXECUTION COPY

**IN WITNESS WHEREOF**, Venus, Incorporated, and Jena McIntyre and Rebekah

Baharestan, on behalf of themselves and all others similarly situated, intending to be legally

bound hereby, have duly executed this Class Settlement Agreement as of the date set forth

below, along with their counsel.

Dated:_____        By:_____

                                                Melissa W. Wolchansky, Esq.
                                                Halunen Law
                                                Attorney for Plaintiff Jena McIntyre
                                                and for the Settlement Class
                                                Members

Dated:___9/29/15___        By:_____

                                                Mark Todzo, Esq.
                                                Lexington Law Group
                                                Attorney for Plaintiff Rebekah
                                                Baharenstan and for the Settlement
                                                Class Members

Dated:_____        By:_____

                                                Amber Enriquez, Esq.
                                                General Counsel
                                                Venus Laboratories, Inc.

Dated:_____        By:_____

                                                Daniel J. Delaney, Esq.
                                                Drinker, Biddle & Reath, LLP
                                                Attorney for Defendant Venus
                                                Laboratories, Inc.

Dated:_____        By:_____

                                                Plaintiff Jena McIntyre

Dated:_____        By:_____

                                                Plaintiff Rebekah Baharenstan

42

EXECUTION COPY

**IN WITNESS WHEREOF**, Venus, Incorporated, and Jena McIntyre and Rebekah Baharestan, on behalf of themselves and all others similarly situated, intending to be legally bound hereby, have duly executed this Class Settlement Agreement as of the date set forth below, along with their counsel.

Dated:_____       By:_____

Melissa W. Wolchansky, Esq.
Halunen Law
Attorney for Plaintiff Jena McIntyre
and for the Settlement Class
Members

Dated: 9/25/15       By:_____

Mark Todzo, Esq.
Lexington Law Group
Attorney for Plaintiff Rebekah
Baharenstan and for the Settlement
Class Members

Dated: 9/24/15       By: _Amber M. Enriquez_

Amber Enriquez, Esq.
General Counsel
Venus Laboratories, Inc.

Dated: 9/25/15       By:_____

Daniel J. Delaney, Esq.
Drinker, Biddle & Reath, LLP
Attorney for Defendant Venus
Laboratories, Inc.

Dated:_____       By:_____

Plaintiff Jena McIntyre

Dated:_____       By:_____

Plaintiff Rebekah Baharenstan

42

EXECUTION COPY

    IN WITNESS WHEREOF, Venus, Incorporated, and Jena McIntyre and Rebekah

Baharestan, on behalf of themselves and all others similarly situated, intending to be legally

bound hereby, have duly executed this Class Settlement Agreement as of the date set forth

below, along with their counsel.


Dated:_____          By:_____

                                    Melissa W. Wolchansky, Esq.
                                    Halunen Law
                                    Attorney for Plaintiff Jena McIntyre
                                    and for the Settlement Class
                                    Members


Dated:_____          By:_____

                                    Mark Todzo, Esq.
                                    Lexington Law Group
                                    Attorney for Plaintiff Rebekah
                                    Baharestan and for the Settlement
                                    Class Members


Dated:_____          By:_____

                                    Amber Enriquez, Esq.
                                    General Counsel
                                    Venus Laboratories, Inc.


Dated:_____          By:_____

                                    Daniel J. Delaney, Esq.
                                    Drinker, Biddle & Reath, LLP
                                    Attorney for Defendant Venus
                                    Laboratories, Inc.


Dated:_9/25/2015_          By:_____
                                    (Plaintiff Jena McIntyre


Dated:_____          By:_____
                                    Plaintiff Rebekah Baharenstan


42

EXECUTION COPY

**IN WITNESS WHEREOF,** Venus, Incorporated, and Jena McIntyre and Rebekah Baharestan, on behalf of themselves and all others similarly situated, intending to be legally bound hereby, have duly executed this Class Settlement Agreement as of the date set forth below, along with their counsel.

Dated:_____     By:_____

Melissa W. Wolchansky, Esq.
Halunen Law
Attorney for Plaintiff Jena McIntyre
and for the Settlement Class
Members

Dated:_____     By:_____

Mark Todzo, Esq.
Lexington Law Group
Attorney for Plaintiff Rebekah
Baharenstan and for the Settlement
Class Members

Dated:_____     By:_____

Amber Enriquez, Esq.
General Counsel
Venus Laboratories, Inc.

Dated:_____     By:_____

Daniel J. Delaney, Esq.
Drinker, Biddle & Reath, LLP
Attorney for Defendant Venus
Laboratories, Inc.

Dated:_____     By:_____

Plaintiff Jena McIntyre

Dated: Sept. 29, 2015     By: _Rebekah Baharestan_

Plaintiff Rebekah Baharenstan

42

# Exhibit A

*Baharestan, et al. v. Venus Laboratories, Inc.*

| CLAIM FORM | | |
|---|---|---|
| **Must be <u>received online</u> or <u>postmarked</u> no later than [DATE].** | **VENUS EARTH FRIENDLY PRODUCTS SETTLEMENT C/O DAHL ADMINISTRATION PO BOX 3614 MINNEAPOLIS MN 55403-0614**<br>Toll-Free: 1-XXX-XXX-XXXX<br>Website: www.xxxxxxxxxxxxxxxx.com | This is a two-sided Claim Form. All four Sections of the Claim Form must be completed. |

**You can also file a claim online at:** www.xxxxxxxxxxxxxxxx.com.

## Section I - Class Member Information

**Claimant Name:**

**Street Address:**

**City:**                                         **State:**     **Zip Code:**

**Email:**

**Preferred Phone Number:**

## Section II – Earth Friendly Products Included in this Settlement

Products that may be included on a valid Claim Form are:

- any product from Venus Laboratories' Earth Friendly Products line of products that had a label containing the words "All-Natural," "100% Natural," "Naturally-derived," "Plant-based," "Plant-derived," or "Natural."

The products must have been purchased between January 23, 2011 and [DATE] in the United States by a United States resident for their household use or personal consumption and not for resale.

*[Please continue on the reverse side.]*

1

## Section III – Purchase and Product Information

### ECOS® Brand Laundry Detergent products purchased

| Number Purchased | Product Name | Location of Purchase | Date Range of Purchase (MO/YR to MO/YR) |
|---|---|---|---|
| _____ | _____ | _____ | __ / __ to __ / __ |
| _____ | _____ | _____ | __ / __ to __ / __ |
| _____ | _____ | _____ | __ / __ to __ / __ |
| _____ | _____ | _____ | __ / __ to __ / __ |
| _____ | _____ | _____ | __ / __ to __ / __ |

### <u>Other</u> Venus Earth Friendly products purchased

| | | | |
|---|---|---|---|
| _____ | _____ | _____ | __ / __ to __ / __ |
| _____ | _____ | _____ | __ / __ to __ / __ |
| _____ | _____ | _____ | __ / __ to __ / __ |
| _____ | _____ | _____ | __ / __ to __ / __ |
| _____ | _____ | _____ | __ / __ to __ / __ |

*Note:* A Settlement Class Member is eligible to obtain $1.50 for each ECOS® Laundry Detergent Product purchased and $1.00 for each Other Earth Friendly Product purchased between January 23, 2011 and [DATE] (up to $25 per person).  However, the actual amount paid to individual claimants will depend upon the number of valid claims made.

## Section IV – Required Affirmation

**With my signature below I declare, under penalty of perjury, that the information in this Claim Form is true and correct to the best of my knowledge, and that I purchased the Earth Friendly Product(s) claimed above during the Class Period of January 23, 2011 to [DATE] for personal or household use and not for resale. I understand that my Claim Form may be subject to audit, verification, and Court review.**

SIGNATURE: _____   DATE: _____

*Note: The Settlement Administrator has the right to request verification or more information regarding the claimed purchase of Venus Earth Friendly Products for purposes of preventing fraud.  If the Class Member does not timely comply or is unable to produce documents or information to substantiate the Claim Form and the Claim is otherwise not approved, the Settlement Administrator may disqualify the Claim.*

**All Claim Forms must be postmarked if mailed or electronically submitted online by [DATE], to:**

**VENUS EARTH FRIENDLY PRODUCTS SETTLEMENT**        **OR**   www.xxxxxxxxxxxxxxxxxxxxxxx.com
**C/O DAHL ADMINISTRATION**

**PO BOX 3614**
**MINNEAPOLIS MN 55403-0614**

# Exhibit B

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

**IF YOU PURCHASED A VENUS LABORATORIES'
"EARTH FRIENDLY" PRODUCT
YOU MAY BE ENTITLED TO A CASH PAYMENT**

*THIS NOTICE AFFECTS YOUR RIGHTS.*

*A Federal Court authorized this notice.*
*This is not a solicitation from a lawyer.*

**PLEASE READ THIS NOTICE AND THE ENCLOSED CLAIM FORM CAREFULLY.**

- If you purchased an Earth Friendly product between January 23, 2011 and [date], you may be a class member in a proposed settlement class of purchasers of Venus Laboratories' Earth Friendly products and may be entitled to participate in the proposed settlement.  The United States District Court for the Northern District of California (the "Court") has ordered the issuance of this notice in the lawsuit entitled *Baharestan, et al. v. Venus Laboratories, Inc.*  ("the Litigation").  Defendant Venus Laboratories ("Venus") denies any wrongdoing in this lawsuit.  The Court has not ruled on the merits of Plaintiffs' claims.

- You may be eligible for a cash payment if you qualify and timely submit a valid Claim Form.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM** | The only way to get a cash payment.  Postmark or submit your Claim Form by [DATE]. |
| **EXCLUDE YOURSELF** | Get no settlement benefits.  Remove yourself from both the settlement and the lawsuit.  Postmark your exclusion request by [DATE]. |
| **OBJECT** | Write to the Court about why you don't like the settlement.  File and serve your objection by [DATE]. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the settlement. |
| **DO NOTHING** | Get no cash payment.  Give up your rights. |

- Your rights and options — and the deadlines to exercise them — are explained in this notice.

- The Court in charge of this litigation still has to decide whether to approve the settlement of this case.  Distribution of settlement benefits will be made if the Court approves the settlement and after any appeals are resolved.  Please be patient.

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** .......................................................................................**3**
    1.  What is this lawsuit about?
    2.  Who is included in the settlement class?

**THE SETTLEMENT BENEFITS – WHAT YOU MAY GET** ...........................................**3**
    3.  Cash from the claim process.
    4.  What else does the settlement provide?

**HOW YOU GET A CLASH PAYMENT – SUBMITTING A CLAIM FORM** ......................**3-4**
    5.  How can I get a payment?
    6.  How do I send in a claim?
    7.  When is the Claim Form due?
    8.  Who decides my claim?
    9.  When would I get my payment?
    10.  What if the fund is too small?  Too large?
    11.  What happens if I do nothing at all?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** .................................................**5**
    12. How do I get out of the settlement?

**THE LAWYERS REPRESENTING YOU** .........................................................**5-6**
    13. Do I have lawyers in this case?
    14. How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** .....................................................................**6**
    15. In return for these settlement benefits, what am I giving up?

**THE FINAL APPROVAL HEARING** ......................................................................**7**
    16. When and where will the Court decide whether to approve the settlement?
    17. Do I have to come to the hearing?
    18. May I speak at the hearing?

**GETTING MORE INFORMATION** .........................................................................**8**
    23. Are there more details about the settlement?

## BASIC INFORMATION

### 1.   What is this lawsuit about?

A proposed settlement has been reached in a class action lawsuit about the labelling, marketing, and advertising of Venus's Earth Friendly Products.  The plaintiffs in the lawsuit allege the Earth Friendly Products are not "natural," and are inaccurately and deceptively labeled as "natural." The plaintiffs also allege that one of the allegedly unnatural ingredients, methylisothiazolinone ("MIT") is a powerful allergen and skin irritant. Venus denies all the plaintiffs' allegations and is entering into this settlement to avoid burdensome and costly litigation.  The settlement is not an admission of wrongdoing.

### 2.   Who is included in the Settlement Class?

You are a member of the Class if you purchased at least one Venus Earth Friendly Product from January 23, 2011 through [DATE].  Settlement Class Members must have both resided in the United States and purchased the product in the United States for their household use or personal consumption and not for resale.

The following persons are excluded from the Settlement Class: (a) Venus's board members or executive-level officers, including its attorneys; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes himself or herself from the Settlement Class in accordance with the procedures approved by the Court.

## SETTLEMENT BENEFTIS – WHAT YOU MAY GET

### 3.   Cash from the claims process.

Venus will create a fund of up to $925,000 to pay Class Members' claims, certain administrative costs, attorneys' fees and expenses, incentive awards, and other costs.  You may obtain a cash payment of up to $25 from the fund if you purchased one of the Earth Friendly Products.  The amount of your payment will depend on the statements in your Claim Form.  These awards may be subject to *pro rata* upward or downward adjustment depending on the number of claims approved.  Details appear below.

### 4.   What else does the settlement provide?

As part of the settlement, Venus has agreed to (1) make certain changes to the labels and advertising for the Products; (2) change the formulation of Dishmate to remove MIT as an ingredient; and (3) make certain changes to its website.

## HOW YOU GET A CASH PAYMENT – SUBMITTING A CLAIM FORM

### 5.   How can I get a payment?

You must return a Claim Form to get a cash payment.  A copy of the Claim Form is included in this Notice Package.  Claim Forms may be filed online at www.xxxxxxxxxxxxxxxxxxxxxxxxx.com or you may request a Claim Form by calling 1-8xx-xxx--xxxx.

## 6. How do I send in a claim?

The Claim Forms are simple and easy to complete.

The Claim Form requires that you provide:

1. Your name and mailing address;

2. The product names and type(s) of Earth Friendly Products you purchased, as well as the month(s) and year(s) and location of each purchase; and

3. Your signature affirming that the information provided is true and correct.

***Please return a Claim Form if you think that you have a claim. Returning a Claim Form is the only way to receive a cash payment from this settlement. Only one Claim Form is permitted for each household, and two or more claimants may not submit Claim Forms for the same alleged damage.***

The Claim Administrator may request verification or additional information if the Claim Form is insufficient to process your claim. Failure to provide any requested documentation may result in the denial of your claim and may limit the type of remedy you receive.

## 7. When is the Claim Form due?

If you mail your Claim Form, it must be postmarked no later than [DATE].

If you submit your Claim Form on the settlement website at www.xxxxxxxxxxxxxxxxxxxx.com, it must be submitted no later than [DATE].

## 8. Who decides my claim?

The Claim Forms will be reviewed by an independent Claim Administrator according to criteria agreed to by the parties.

The Claim Administrator may contact you or other persons listed in your Claim Form if he or she needs additional information or otherwise wants to verify information in your Claim Form.

## 9. When would I get my payment?

The Court will hold a Final Fairness Hearing at ____ a.m./p.m. on ________ in ________, California to decide whether to approve the settlement. If the Court approves the settlement, after that there may be appeals. It is always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year. If there are no appeals or other delays, you should be sent your cash payment in approximately 60 days.

## 10. What if the fund is too small? Too large?

If the total amount of timely and valid claims, administration costs, attorneys' fees and expenses, and incentive awards and other costs are more than $850,000, Venus will contribute up to an additional $75,000 to the Settlement Fund to cover the initial claim amounts of Settlement Class Members. If after this additional contribution, the total amount of timely, valid, and approved claims exceeds the available relief (considering any fees, payments, and costs as described above) the payments to Settlement Class Members will be reduced

*pro rata* such that each claimant would receive proportionally less than the amount he or she claimed.

If, after everyone sends in Claim Forms, the total of all approved claims and administration costs and attorneys' fees and expenses are less than $850,000, the payments to Settlement Class Members will be increased on a *pro rata* basis such that Settlement Class Members shall receive an increased payment of up to one hundred percent (100%) of the initial amount claimed.  If, after this distribution, monies still remain in the Settlement Fund, a payment will be made to a non-profit entity and will not be returned to Venus.

### 11. What happens if I do nothing at all?

You must return a Claim Form to receive a cash payment.  If you do nothing, you will get no money from the settlement.  But, unless you exclude yourself, you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Venus about the legal issues in this case.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

### 12. How do I get out of the settlement?

If you do not wish to be included in the Class and receive settlement benefits, you must send a letter stating that you want to be excluded from this lawsuit.  Be sure to include your name, address, telephone number, and your signature.  You must mail your exclusion request post-marked no later than [DATE] to:

<div align="center">

VENUS EARTH FRIENDLY PRODUCTS SETTLEMENT
c/o Dahl Administration
P.O. Box 3614
Minneapolis, MN 55403-0614

</div>

If you asked to be excluded, you will not get any settlement payment, and you cannot object to the settlement.  You will not be legally bound by anything that happens in this lawsuit.  You may be able to sue (or continue to sue) Venus in the future.

If you have a pending lawsuit against Venus, speak to your lawyer immediately.  You may need to exclude yourself from this lawsuit in order to continue your own lawsuit.  Remember, the exclusion date is [DATE].

## THE LAWYERS REPRESENTING YOU

### 13. Do I have lawyers in this case?

The Court appointed the law firms of [LIST COUNSEL] to represent you and other class members.  These lawyers are called Class Counsel.  If you want to be represented by your own lawyer, you may hire one at your own expense.

### 14. How will the lawyers be paid?

Class Counsel will ask the Court to award them attorneys' fees and expenses.  Venus has agreed to pay attorney's fees and expenses awarded by the Court up to $277,500.

The two named plaintiffs will also ask the Court to award them an amount not to exceed $2,000 each for their time and effort acting as plaintiffs and for their willingness to bring this litigation and act on behalf of consumers.  These amounts, if approved by the Court, will be paid from the Settlement Fund.

The costs to administer the settlement, to review Claim Forms, and notify Class Members about this settlement will be paid out of the Settlement Fund.

## OBJECTING TO THE SETTLEMENT

### 15. How do I tell the Court that I do not like the settlement?

If you are a Class Member, you can object to the settlement if you do not like any part of it and the Court will consider your views.  To object, you must file an objection with the Court saying that you object to the settlement in *Baharestan, et al. v. Venus Laboratories, Inc.*, [CASE NUMBER].  The written objection must include: (a) your address or phone number, or the address and phone number of any attorney you have hired; (b) a clear and concise statement of your objection, the facts supporting your objection, and the legal grounds for your objection; and (c) documents to establish your standing as a Settlement Class Member, such as (i) a signed declaration with language similar to that included in the Claim Form you purchased at least one Earth Friendly Product during the Class Period; or (ii) receipt(s) reflecting such purchase(s).

If an objecting Settlement Class Member chooses to appear at the hearing, no later than 15 days before the Fairness Hearing, a Notice of Intention to Appear must be filed with the Court and list the name, address and telephone number of the attorney, if any, who will appear.

The objection must be filed with the Court and served on Class Counsel no later than [DATE].  Send your objection to:

[COURT ADDRESS]

[CLASS COUNSEL ADDRESS]

[VENUS'S COUNSEL ADDRESS]

### 16.      What is the difference between objecting and excluding?

Objecting is telling the Court that you do not like something about the settlement.  You can object only if you stay in the Class.  Excluding yourself is telling the Court that you do not want to be part of the Class or the lawsuit.  You cannot request exclusion **and** object to the settlement.  If you exclude yourself, you have no basis to object because the case no longer affects you.

## RELEASE OF CLASS MEMBERS' CLAIMS AND DISMISSAL OF LAWSUIT

### 17.      In return for these benefits, what am I giving up?

If the Court approves the proposed settlement and you do not request to be excluded from the Class, you must release (give up) all claims that are subject to the Releases contained in Section VII of the Class Settlement

QUESTIONS?  CALL 1-8xx-xxx-xxxx TOLL-FREE, OR VISIT www.xxxxxxxxxxxxx.com.

- 6 -

Agreement, and the case will be dismissed on the merits and with prejudice.  **If you remain in the Class, you may not assert any of those claims in any other lawsuit or proceeding.  This includes any other lawsuit or proceeding already in progress.**

---

<div align="center"><span style="color:red">**THE FINAL APPROVAL HEARING**</span></div>

---

**18.      When and where will the Court decide whether to approve the settlement?**

The Judge will hold a Final Approval Hearing at [TIME] on [DATE] at the United States District Court for the Northern District of California, [COURT ADDRESS].  At this hearing, the Judge will consider whether the settlement is fair, reasonable and adequate.  If there are objections, the Judge will consider them. The Judge will listen to people who have asked to speak at the hearing.  After the hearing, the Judge will decide whether to approve the settlement.  We do not know how long this decision will take.

**19.      Do I have to come to the hearing?**

No.  Class Counsel will answer questions the Judge may have.  But, you are welcome to come at your own expense.  If you submit an objection, you do not have to come to the Court to talk about it.  As long as you deliver your written objection on time, the Judge will consider it.  You may also pay your own lawyer to attend, but it is not necessary.

**20.      May I speak at the hearing?**

You may ask the Court for permission to speak at the Final Approval Hearing.  To do so, you must file with the Court a "Notice of Intention to Appear in *Baharestan, et al. v. Venus Laboratories, Inc.*, [CASE NUMBER]." Be sure to include the name, address and telephone number of the attorney, if any, who will appear.  Your Notice of Intention to Appear must be filed with the Court no later than [DATE].

---

<div align="center"><span style="color:red">**GETTING MORE INFORMATION**</span></div>

---

**21. Are there more details about the settlement?**

This notice summarizes the proposed settlement.  More details are in the Class Settlement Agreement.  You can get a copy of the Class Settlement Agreement by writing to the Settlement Administrator or online at www.xxxxxxxxxxxxx.com.

If you have questions about how to complete a Claim Form, you can call the Claim Administrator at 1-8xx-xxx-xxxx.

<div align="center">**PLEASE DO NOT CALL OR WRITE TO THE COURT FOR INFORMATION OR ADVICE.**</div>

<div align="center">/s/ [JUDGE'S NAME]</div>

---

QUESTIONS?  CALL 1-8xx-xxx-xxxx TOLL-FREE, OR VISIT www.xxxxxxxxxxxxx.com.

- 7 -

BY ORDER OF THE U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

DATED:

_____

QUESTIONS?  CALL 1-8xx-xxx-xxxx TOLL-FREE, OR VISIT www.xxxxxxxxxxxxx.com.

- 8 -

# Exhibit C

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBEKAH BAHARESTAN and JENA MCINTYRE, on behalf of themselves and all others similarly situated ) )<br>) | No. 3:2015-cv-03578 |
| ) | CLASS ACTION |
| Plaintiffs, ) ) | |
| vs. ) ) | |
| VENUS LABORATORIES, INC., dba EARTH FRIENDLY PRODUCTS, INC., ) ) ) | |
| Defendant. ) ) | |

# AFFIDAVIT OF JEFFREY D. DAHL WITH RESPECT TO SETTLEMENT NOTICE PLAN

I, Jeffrey D. Dahl, being duly sworn and deposed, say:

1.    I am over 21 years of age and am not a party to this action.    This affidavit is based on my personal knowledge, information provided by the staff of Dahl Administration, LLC ("Dahl"), and information provided by Dahl's media partners.  If called as a witness, I could and would testify competently to the facts stated herein.

2.    I am Founder and a Principal of Dahl, which has been retained as the Notice Administrator and Settlement Administrator for the above-captioned action. I am a nationally-recognized expert with over 22 years of experience in class action

settlement administration. I have provided claims administration services and notice plans for more than 400 class actions involving securities, product liability, fraud, property, employment and discrimination. I have experience in all areas of settlement administration including notification, claims processing and distribution. I have also served as a Distribution Fund Administrator for the U.S. Securities and Exchange Commission.

3.     A true and correct copy of Dahl's firm background is attached hereto as Exhibit 1.

4.     I designed the Notice Plan for the Settlement in the above-captioned action. I am responsible for directing Dahl's execution of the Notice Plan.

5.     This affidavit describes (a) the methodology used to create the proposed Notice Plan; (b) the proposed Notice Plan; (c) the Notice design; (d) the direct mailed Notice; (e) the web-based Notice; (f) the web-based Notice targeted using keyword search terms; (g) the web-based Notice targeted using social media interest areas; (h) earned media; (i) the toll-free helpline; and (j) the Settlement website.

## METHODOLOGY

6.     Working with our media partner, FRWD, I designed a Notice Plan that utilizes mail, print, and web-based media to reach Settlement Class Members. In formulating the Notice Plan, we took account of the powerful data showing that individuals now spend far more time seeking and consuming information on the Internet than from print sources, and we will employ sophisticated methods of

reaching and exposing Settlement Class Members to the Notice that are available to marketers in the digital, online sphere.

7.     A true and correct copy of the Affidavit of John Grudnowski, the founder and CEO of FRWD, is attached hereto as Exhibit 2.

8.     The Affidavit of John Grudnowski in Support of the Settlement Notice Plan provides detailed information regarding online advertising in general and describes in detail the digital media technologies that are integral to the design and execution of the proposed Notice Plan.

9.     The proposed Notice Plan uses methods that have been and are currently used by the nation's largest advertising media departments to target and place billions of dollars in advertising.  These methods include the sophisticated targeting capabilities of digital marketing technologies to meet and reach Settlement Class Members at the websites they visit most frequently.

## PROPOSED NOTICE PLAN

10.     The objective of the proposed Notice Plan is to provide notice of the Proposed Settlement to members of the Proposed Settlement Class ("Settlement Class Members" or "Class") that satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

11.     I understand that the Settlement Class Members generally are persons residing in the United States who made a purchase from Venus Laboratories' Earth Friendly line of products ("Earth Friendly Products") in the United States for their household or personal use and not for resale during the Class Period.  It is not

possible to determine the Settlement Class size because no mechanism exists to track exactly how many households have purchased Earth Friendly Products. However, estimates from GfK MRI indicate that the total buying population for "green" or "natural" household items defined to include surface cleaners & laundry detergent is 15.08 million U.S. adults. As Venus Laboratories' product sales are predominantly at Walmart and club stores (e.g., Sam's Club, Costco, BJ's Wholesale Club), the total projected population of "green" or "natural" product purchasers at Walmart and club stores is 8.5 million U.S. adults.

12.     Thus, the best ballpark estimate for the size of the target audience that includes the members of the Settlement Class is approximately 15.08 million persons, with a particular focus on the subset of an estimated 8.5 million who purchase green/natural products at Walmart or club stores.

13.     Dahl and FRWD met with Venus Laboratories representatives to determine the characteristics of the Settlement Class, based upon known characteristics of Earth Friendly Product purchasers and known locations of purchases. Based on information provided, this Notice Plan has been aligned with the targeting done by Venus Laboratories for the Earth Friendly Product brands using similar channels and segmentation. Demographically, the Settlement Class is estimated to be 55% female and 45% male. The Settlement Class includes a 9% higher concentration of persons aged 55+ than other age segments. The highest concentration of the Settlement Class has an annual household income in the $50,000-$75,000 range. The Settlement Class shows a near even distribution of

media consumption, with no single media channel or media type showing more than 10% higher or lower than average. However, the Settlement Class is more than twice as likely to use Yahoo as the average consumer, 41% regularly use Weather.com and Accuweather.com, and 70% have accessed social media in the last 30 days. Using the demographic and psychographic information above, we have designed this Notice Plan to target a selection of websites, relevant search interest keywords, and specific social media interest areas that match the characteristics of the Settlement Class.

14.    We have designed a Notice Plan that includes seven elements:

a.    Direct mail or email Notice to any potential Settlement Class Members that can be identified from Venus Laboratories' records;

b.    Web-based Notice using paid banner ads on targeted websites;

c.    Additional web-based Notice using "keyword" searches displaying banner ads;

d.    Social media ads and postings targeting relevant interest areas;

e.    National earned media through the issuing of a press release distributed nationwide through PR Newswire;

f.    A dedicated, informational website through which Settlement Class Members can obtain more detailed information about the Settlement and access the Notice and case documents; and

g.    A toll-free telephone helpline by which Settlement Class Members can obtain additional information about the Settlement and request a copy of the Notice.

15.    The Notice Plan has been designed to obtain over 66 million individual digital impressions targeted to approximately 15.08 million persons in order to achieve sufficient scale and impression frequency to target Settlement Class Members.   Coverage and exposure will be further increased by the earned media campaign, the website, and the toll-free helpline.

16.    Dahl and FRWD estimate that the Notice Plan will effectively reach 75% of the projected 15.08 million buyers of green/natural household items at a projected frequency of 2.0x-2.5x.  The Notice Plan will provide an *additional* 1.0x-1.5x impressions to projected buyers of green/natural products at Walmart and club stores to further focus on the members of the Settlement Class.

17.    At the conclusion of the Notice Plan, Dahl will provide a final report verifying implementation of the Notice Plan and provide the final reach and frequency results.

## NOTICE DESIGN

18.    Rule 23(c)(2) of the Federal Rules of Civil Procedure requires that class action notices be written in "plain, easily understood language." The proposed Notices have been designed to be noticed, read, and understood by potential Settlement Class Members.  Both the Summary Notice and the Long Form Notice, which will be available to those who call the toll-free helpline or visit the website,

contain substantial, easy-to-understand descriptions containing all key information about the Settlement and Settlement Class Members' rights and options.  A copy of the proposed Summary Notice is attached to the Settlement Agreement as Exhibit D.  A copy of the proposed Long Form Notice is attached to the Settlement Agreement as Exhibit B.

## DIRECT MAILED NOTICE

19.    Upon Preliminary Approval, Venus Laboratories will provide Dahl with the names and addresses or email addresses for thousands of persons who are potential Settlement Class Members who purchased Earth Friendly Products from ECOS.com or for whom contact information is otherwise available.  Dahl will mail a Long-Form Notice and Claim Form or email a Summary Notice to each of these individuals.

## WEB-BASED NOTICE

20.    To reach as many of Settlement Class Members as possible, a web-based notice campaign utilizing banner-style notices with a link to the Settlement website will supplement the print notice.  Banner notices measuring 728 x 90 pixels and 300 x 250 pixels will appear on a subset of two groups of websites known as the FRWD Reach Channel and Lifestyle Channel.  The Reach Channel provides placements across the top 2,000 most trafficked websites, and provides the ability to reach the Settlement Class.  The Lifestyle Channel provides placement across the top beauty, fashion, lifestyle and related websites and provides higher-impact and more contextually-relevant placements with regard to this Settlement Class.  The

banner notices will run on websites when the site's demographics match our target audience.

21.    A true and correct list of the website domains that are included in the FRWD Reach Channel and Lifestyle Channel and will be utilized in this Notice campaign is attached hereto as Exhibit 3.

22.    True and correct samples of the banner ads that will be placed are attached hereto as Exhibit 4.

23.    The Grudnowski Affidavit attached as Exhibit 2 provides more detailed information about the technologies and methods that we will use to implement and track this component of the Notice Plan.

## USING KEYWORD SEARCH TERMS

24.    The proposed Notice Plan will include banner ads targeted to display in response to the entry of specific keywords related to Earth Friendly Products products and other similar products and interests on major search engine websites, including the keywords "Venus Class Action," "Venus Earth Friendly Lawsuit," and other similar terms.

## USING SOCIAL MEDIA INTEREST AREAS

25.    The proposed Plan will include banner ads that will be displayed to users of the Facebook social media network.  These banner ads will appear on Facebook web pages displayed to Facebook users who have previously expressed interest using Facebook "Likes" and otherwise in areas such as  "Household Cleaning   Items,"   "Detergent,"   "Countertop   Cleaner,"   "Environmental

Sustainability," "Green Products," etc. In previous consumer product class action settlement notification plans, this method of targeting has led to significant increases in overall claims.

26. In order to facilitate the sharing of settlement information on social media a Facebook Page will be created for the settlement and updates will be provided on the page and promoted to the news feeds of individuals likely to be Settlement Class Members. A Twitter Page and hashtag (#EarthFriendlySettlement) will also be created and updates about the settlement will be given and promoted.

## EARNED MEDIA

27. The proposed Notice Plan will also include earned media to supplement the paid media portion of the Plan and will be targeted to a national audience. "Earned media" refers to promotional efforts outside of direct, paid media placement. The earned media efforts will provide additional notice of the Settlement to potential Settlement Class Members, though the effect is not measurable as it is with the impressions accumulated with the paid media portion of the Notice campaign.

28. Concurrent with the launch of the online Notices, Dahl will release a national press release via PR Newswire. The press release will be distributed by PR Newswire to 5,815 newspapers, television stations, radio stations and magazines. In addition, PR Newswire will send the press release to approximately 5,400 websites and online databases, including all major search engines.

29.    A true and correct copy of the text of the proposed press release is attached hereto as Exhibit 5.

## TOLL-FREE HELPLINE

30.    Prior to the launch of the print and web-based media campaigns, Dahl will also establish a toll-free Settlement helpline to assist potential Settlement Class Members and any other persons seeking information about the Settlement.   The helpline will be fully automated and will operate 24 hours per day, seven days per week.   Callers will also have the option to leave a message in order to speak with the Settlement Administrator.

31.    The toll-free helpline will include a voice response system that allows callers to listen to general information about the Settlement, listen to responses to frequently asked questions ("FAQs"), or request a Long-Form Notice.

32.    Dahl will work with Counsel to prepare responses to the FAQs to provide accurate answers to anticipated questions about the Settlement.

## SETTLEMENT WEBSITE

33.    Prior to the launch of the print and web-based media campaigns, Dahl will coordinate and integrate into the Notice Plan a Settlement website.

34.    Dahl will work with Counsel to develop the content for the Settlement website.   The website will provide Settlement Class Members with general information about the Settlement, answers to frequently asked questions, a means to submit an electronic Claim Form or download a Claim Form, important dates and deadline information, a summary of Settlement benefits, a means by which to

10

review and print copies of certain Settlement documents (including the Long Form Notice), and a link to contact the Settlement Administrator via email.

## CONCLUSION

35.    The objective of the Notice program is to reach the highest possible percentage of potential Class Members, provide them with meaningful information to help them understand their legal rights and options under the terms of the settlement and provide a simple, open and easy method for them to file claims for settlement benefits.

36.    It is my opinion that the proposed Notice Plan, by producing more than 66 million digital impressions that are targeted using methods universally employed in the advertising industry at persons that match characteristics of Earth Friendly Product purchasers -- and thus the Settlement Class -- provides sufficient Notice to the members of the Settlement Class.

37.    It is also my opinion that the proposed Notice Plan is fully compliant with Rule 23 of the Federal Rules of Civil Procedure and meets the notice guidelines established by the Federal Judicial Center's Manual for Complex Litigation, 4th Edition (2004), as well the Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (2010), and is consistent with notice programs approved previously by both State and Federal Courts.

## EXHIBITS

38.    Attached hereto are true and correct copies of the following exhibits:

Exhibit 1:    Background information on Dahl Administration

Exhibit 2:    Affidavit of John Grudnowski in Support of the Settlement

                    Notice Plan

Exhibit 3:    List of Websites on which Banner Ads may be placed

Exhibit 4:    Sample Banner Ads

Exhibit 5:    Press Release text

I declare under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.  Executed this **25th** day of September, 2015 in Minneapolis, Minnesota.

Jeffrey D. Dahl
Founder and Principal
Dahl Administration, LLC

Sworn to and Subscribed before me
this 25th day of September, 2015.

Notary Public

NANCY A. BAKER
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan 31 201?

# Exhibit 1



## Firm Information
## and Selected References

# OUR FIRM



**OUR FIRM**

## OUR HISTORY

After more than 15 years of experience managing hundreds of settlements and distributing billions in settlement benefits, Jeff and Kristin returned to their roots as hands-on administrators providing innovative and cost-effective solutions. They created Dahl Administration to provide responsible, accountable, and transparent settlement administration services, and to become a trusted resource for class action counsel nationwide.

Dahl Administration has a history that stretches back to the beginnings of the class action settlement administration industry. Jeff Dahl was a founding partner of Rust Consulting and Kristin Dahl was Rust's second employee. During their time with Rust, the firm managed over 2,000 class action settlements.

Jeff and Kristin built Dahl Administration from the ground-up to provide the kind of service and expertise that complex claims administration projects demand, something that is too often lost within the corporate overhead and "turn-key solutions" that come with very large administrators. To do this, Dahl Administration combines advanced claims processing technology with expert project teams that are 100% focused on meeting client needs. This project team approach eliminates departmental "silos" that lack overall understanding of a client's project needs and lose the ability to communicate effectively when issues arise.

To focus on client needs, Jeff and Kristin created an organization that produces truly custom solutions, where project managers and principals actually answer their phones and emails, employees are empowered to resolve issues, and team members proactively communicate with clients to eliminate unwelcome surprises. The same people that consult and generate project proposals also attend weekly project update meetings and actively manage project work. This continuity ensures that project execution and costs meet or exceed the standards set in the proposal.

Dahl Administration is a full-service provider, with a staff of professionals experienced in class action administration, direct and media notice, process development, document and script development, data and image capture, claims processing, quality control review, accounting, project management, software development, and distribution. We also have sophisticated technology resources in place to implement solutions of any size and any level of complexity.

We are committed to managing successful projects that are completed on time, on budget, and with the highest level of quality in the industry.



**OUR FIRM**

**OUR PHILOSOPHY**

## Dahl's 6 Key Principles:

### Accountable

We are experts at what we do. When you hire us the work is done correctly and we stand behind it. No exceptions.

- **Immediate Resolution**
  When issues arise, we fix them. Dahl principals are actively involved in day-to-day client support and project management.

- **Project Team Responsibility**
  Our project managers are empowered to make decisions and resolve issues directly, guided by Dahl principals who actively monitor every project.

- **True Real-time Quality Assurance**
  We perform quality reviews continuously within the project processing cycle, not through a generic, detached auditing function.

### Responsive

Nothing is more frustrating than having issues arise and no one will answer the phone or respond to an email. Our managers and principals are required to answer their phone and check their email 24/7. We want you to call our mobile numbers in an emergency, that's why we give them to you. You can always call our president and he will be happy to assist you. We don't just say this, we do it.

- **Online, All the Time**
  We answer the telephone. We know your time is money, so when you have an issue, you can call or email your project manager, your project principal, or the company president to get it resolved promptly – day or night.

- **Empowered, Knowledgeable Staff**
  We don't forward you to different departments or park your issue with a ticketing system. Your assigned project manager is knowledgeable and empowered to provide solutions on your project. If they don't know the answer, they will get it – promptly and willingly.

- **Client Relationships Drive Our Business**
  We are about you. We strive to develop a long-term, successful partnership with you.



**OUR FIRM**

**Technology-Driven**

Sometimes it takes a custom technology solution to meet a unique settlement administration challenge. We have a dedicated information technology staff and a full menu of technology services to offer our clients. Whether you need a secure web-based claims submission portal, a custom IVR phone solution, innovative web-based class notice, or anything else, we will work with you to build the solution that works for your settlement and your budget.

- **Advanced Capabilities**

  We offer advanced print and mail solutions, custom IVR phone technology, online filing, "Quick Site" claim image access for clients, high-speed scanning, and flexible fund distribution alternatives.

- **Data Security**

  We provide secure physical facilities, proven technical infrastructure, and information-handling procedures to protect sensitive data.

- **Custom Technical Solutions**

  We custom configure solutions for each project, so you get innovative claims processing workflow that fits your needs.

- **Capacity and Sophistication**

  We have dedicated information technology staff and a high-capacity technology environment to support any size or type of case.

**Affordable**

In today's economic times, price is always a factor. At Dahl, we have eliminated a lot of unnecessary overhead by focusing our staffing on project-based needs. Dahl employees work on projects. This allows us to keep rates low and stay focused on our clients.

- **Best Service at the Best Price**

  We provide innovative and efficient services designed to administer your project correctly and cost-effectively.

- **Nimble and Right Sized**

  We have project-based teams focused on your case solutions. All of our employees do project work, eliminating non-essential corporate overhead.



**OUR FIRM**

## Custom Solutions

We don't provide 'turn-key' processing solutions. Over the years, we have found that our clients expect more from us. We customize our solutions to meet our clients' varied expectations and do it at a 'turn-key' price.

- **True Customization**
  We deploy our expertise and tools to fit your project's needs.

- **Your Project Your Way**
  We don't force your project into our process, we adjust our process to meet your requirements.

- **Adjustable and Adaptable**
  We are nimble and proactive, enabling us to make real-time processing changes to meet your deadlines and requirements.

## No Surprises

You should not have to deal with missed deadlines or surprise invoices that far exceed proposed costs. We anticipate issues and stay on top of your settlement schedule for you. Weekly processing updates and monthly budget updates eliminate unpleasant surprises. Clients tell us that their "no surprises" experience with Dahl is what keeps them coming back again and again.

- **Every Project Every Day**
  We anticipate issues. Our "every project, every day" philosophy means our project team is on top of your schedule and proactively addressing any issues.

- **Consistent Reporting**
  We deliver weekly processing updates and monthly budget updates on every project.

- **Active Communication**
  Our principals and project managers proactively track changes in project dynamics and communicate any issues to you



**OUR FIRM**

## OUR SERVICES

Dahl provides project management and settlement distribution services to attorneys, distribution agents, special masters, governmental agencies, and the courts.

Our services include:

- Settlement Administration Planning and Design
- Management Team
- Project Management
- Cost Analysis
- Pre-Settlement Consultation
- Claimant Notification
- Innovative Notice Planning and Execution
- Claim Document Development and Layout
- Website and Call Center Services
- Claimant Communication
- CAFA Notice
- Document Imaging and Data Capture
- Claim Evaluation and Processing
- Reporting
- Quality Assurance Review
- Problem Identification and Resolution
- Distribution Management



**OUR FIRM**

**INNOVATIVE NOTICE PLANNING AND EXECUTION**

Change in the media landscape is accelerating and it is imperative that class action notification planning and execution reflect these changes.  More people are now consuming news media via Internet sources than are reading even the most recognized print publications.  Given this sea change, it no longer makes sense for class action notification plans to reflexively purchase print advertisements in the same leading national or regional print publications without considering the reality of where class members are directing the bulk of their attention.  Print publication still has its place, often as a supplementary notice tactic, but that place will be less and less as the primary method of reaching unidentified class members.

With over 22 years of experience in class action notice and claims administration, Jeff Dahl recognized that class action notice plans were insufficiently utilizing the newly-available tools from the Internet marketing and communications industry.  To fill this gap, Dahl Administration reached out to a leading digital marketing agency, FRWD, to develop best practices in applying digital media strategies and execution programs to the class action notification arena.  The premise is simple:  reach class members using the same digital media tools that FRWD's clients—brands such as 3M, Coca-Cola, Best Buy, Proctor & Gamble, General Mills and more—use to reach their own customers.  In planning to provide "the best notice that is practicable under the circumstances" it is no longer acceptable to ignore the digital sphere where class members are now spending the bulk of their media consumption time and attention.

Dahl has deep experience in class action notification, and Dahl handles individual notice planning and execution more efficiently than anyone in the industry.  Whether the case involves direct postal mail or email, Dahl will handle the data cleansing, returned mail and tracing, and other standard or custom procedures such that as many of the reasonably identifiable class members get notice of the litigation as possible.

When it comes to publication notice, the Dahl-FRWD approach diverges from the rest of the class action notification industry.

- We reach class members using the same strategies and tactics that leading advertisers would use to reach the same target audience as customers.

- Where feasible, we meet with marketing staff from the defendant(s) along with plaintiff and defense counsel to determine customer demographic and psychographic profiles.
- The logic is unassailable:  where defendants have developed highly sophisticated knowledge about their customers and prospective customers, the class action notice process should seek out this knowledge and put it to use.



OUR FIRM

- Too often, this approach is overlooked in favor of the same print publication placements and, sometimes, a scattershot web banner ad campaign directed only by the broadest of demographic profiles.

## Targeting

First, we validate targeting parameters and align media buying with all parties.  This process includes hand selecting specific website domains, print publications, geographic targeting, audience interest targeting, and more.  By bringing the parties into the process, we are able to align more specifically on targeting needs and expectations in notification.

## Technology

Second, we begin technology systems alignment.  In delivering a modern notification plan, multiple technical systems must be aligned. This is done to ensure accuracy in delivery of media as well as verifying that delivery met expectations. In typical notification planning Dahl-FRWD will leverage data collection, ad serving, and verification technologies.  In parallel with finalizing media, Dahl-FRWD will install and set up all needed technology.  In a recent matter where U.S. nationwide notification was required, we structured 50 unique campaigns to ensure proper distribution and verification of notice in each U.S. state.  This often overlooked step is vital to ensuring proper notification as Dahl-FRWD can verify reach by state, country, and region.  Any notification plan overlooking this step is simply not leveraging available technology to the best practices level.

## Execution

The Dahl-FRWD approach involves much more than the mere use of "industry-standard methodology" for the placement of web banner ads.  In fact, class action notice "experts" often settle for buying blocks of surplus banner ads from wholesalers.  Our goal is to use the same targeting and execution methodology that leading brands use to reach their own customers when we seek to reach those same persons in their capacity as class members.  Our methodology of media planning and buying leads to greater accuracy, quality and control of media. The cost advantage is typically 20% to 30%, meaning we can typically reach 20% to 30% greater population base at the same media cost as traditional media notice plans.

# OUR PEOPLE

**CHRISTOPHER LONGLEY**
President

Chris is President of Dahl Administration. A former practicing attorney for the Minneapolis law firm of Hessian, McKasy & Soderberg, Chris has spent the last 25 years in the business sector.

Prior to joining Dahl, Chris was Managing Director and Vice President at SRS|Acquiom, a leading professional shareholder representative firm located in Denver and San Francisco. Prior to SRS Chris spent many years within Thomson Reuters running a global team focused on Mergers and Acquisitions.

A successful entrepreneur, Chris was part of the founding team of 10 start-up companies, and spent 11 years as Vice President of Business Development at a mid-size private equity firm in Minneapolis, where he ran sales and marketing operations for various portfolio companies from Florida to Ankara, Turkey.

Chris graduated from William Mitchell College of Law, and the University of St. Thomas. He is admitted to practice in Minnesota, The 8th circuit and the United States Supreme Court.


**JEFF DAHL**
Founder and Principal

Jeff co-founded Dahl Administration, LLC in early 2008 and was previously a founding partner and co-owner at Rust Consulting, Inc., one of the two largest class action claims administration firms in the country.

Jeff is a noted expert in all areas of settlement administration including notification, claims processing and distribution.  He is known for providing innovative solutions to resolve complex project issues.

Jeff was the court-appointed Neutral Expert tasked with providing final claim determinations for a $176 million settlement in Rhode Island, involving over 300 victims of a 2003 nightclub fire.

He served as the distribution agent for the U.S. Securities and Exchange Commission's $350 million settlement with Fannie Mae.

During Jeff's 19-year career with Dahl and Rust Consulting, his firms provided claims administration services for over 2,000 class action and regulated settlements including the $1.1 billion Microsoft California settlement; the $950 million PB Pipe settlement; the $850 million Masonite siding and roofing settlement; and they distributed over $2 billion from U.S. Securities & Exchange Commission Fair Funds.

Jeff graduated from Concordia College-Moorhead with a Bachelor of Arts degree in Business Administration and is a Certified Public Accountant.

**JOHN GRUDNOWSKI**

Media Expert

In May 2009, John founded FRWD. He brings 18 plus years of PR and digital marketing services experience that he gained over the course of his career at Accenture, General Mills, Carmichael Lynch and Vail Resorts.  John has developed digital strategies, provided expert training, counseled and advised marketing executives, led internal client innovation teams and led execution teams for a variety of Fortune 1,000 clients including: American Express, Discovery, 3M, General Mills, Deluxe, Target, Best Buy, Sony Pictures, Dairy Queen, Starz Entertainment and Ameriprise.

Prior to founding FRWD, John founded and led the modern media practice at space150, a Twin-Cities based ad agency, as well as led agency business development supporting revenue growth from under $1MM to over $12MM in four years. John has also co-founded the Minneapolis-based i612 media organization, and has served on multiple digital-based start-up boards of directors.

**KRISTIN DAHL**

Principal

Kristin co-founded Dahl Administration, LLC and leads the project management group.

She has worked on three U.S. Securities and Exchange Commission settlements including the $432 million Global Research Analyst Settlement, the $100 million HealthSouth Securities settlement, and the $26 million Banc of America Securities settlement on behalf of Distribution Fund Administrator Francis E. McGovern.

Kristin has eighteen years of project management experience solely in the field of class action claims administration.  In her career at both Dahl and Rust Consulting, she was the active project manager on over 150 settlements, including the groundbreaking Denny's race discrimination settlement during which over 1 million phone calls were answered and over 150,000 claims were processed.

Kristin holds a Bachelor of Science degree from the University of Wisconsin-River Falls.

**JEFF HOUDEK**
Director of Operations

Jeff Houdek is a Principal at Dahl and serves as Dahl's Director of Operations.  Among his duties is the management of the tax reporting function for Dahl's Qualified Settlement Funds.  A former Big 4 Auditor, he's built his career helping organizations develop effective and scalable accounting and operational systems to enable organizational growth while serving the needs of their customers.

Having worked in a number of heavily regulated industries, where both privacy and cost-effectiveness are paramount, he has helped with the design and development of several technology platforms and reporting applications.

Jeff is a graduate of St. John's University in Collegeville, Minnesota with Bachelor of Arts in Accounting.  A Certified Fraud Examiner, Jeff has also previously held CPA, Securities (FINRA) and Insurance licenses.

**NANCY BAKER**
Principal

Nancy is a Project Manager with over nine years' experience in securities and class action claims management. Prior to joining Dahl, Nancy was a project manager for Rust Consulting specializing in securities cases.  Nancy manages a variety of settlements for Dahl including property, insurance and consumer cases.  She also drafts notice documents, call scripts and other claimant communications for the firm's projects, handles our published notice campaigns, and coordinates special projects for clients. Nancy graduated with honors from Augsburg College with a Bachelor of Arts degree.

**KELLY KRATZ**
Principal

Kelly is a Senior Project Manager at Dahl with experience in the mortgage and financial services industries and more than eight years of Big 4 Public Accounting experience, including six years of consulting and project management, and two years of operations and resource management.  Prior to joining Dahl, Kelly worked as a tax consultant at Deloitte in the National Federal Tax Services Group managing numerous complex high-profile client engagements for several Fortune 100 companies, providing related project IRS audit defense, and preparing tax memorandums.

Kelly holds her Bachelor of Arts with a concentration in Financial Management from the University of St. Thomas.

**MARK FELLOWS**

Principal

Mark is an attorney whose work is focused on notice planning and project initialization for large or complex matters. He has particular expertise in drafting plain language notice and related documentation to comply with applicable legal standards. He also is experienced in working with counsel to create hybrid notice strategies using electronic media to meet due process standards in challenging situations.

He has more than ten years of experience serving as Legal Counsel and Manager of Legal Research and Education for a large claims adjudication and processing organization. Mark previously worked as a consultant in the data analytics and business intelligence industry. Mark earned his law degree from William Mitchell College of Law and his B.S. from Lewis and Clark College.

**DAN LEGIERSKI**

Principal

Dan Legierski is a Principal at Dahl who works closely with other Principals, Project Managers, and the Operations Team to ensure that our clients' needs are met. His professional experience includes over twenty years of effectively leveraging technology to better process legal, regulatory, and consumer claims.

Dan has spent time directing Finance/Accounting, Technology, and Operations Departments so he truly understands all aspects of claims processing and how the various functions work together to ensure quality and efficiency. During his tenure at Dahl, he has led the design and development of two major technology platforms that manage the administration of class action cases, promoting quality, accuracy, and cost effectiveness.

Dan graduated from the graduate Software Systems Program at the University of St. Thomas, and from St. Cloud State University with a Bachelors of Science in both Finance and Economics.

**DAVID HOFFMAN**

Vice President of Business Development

David Hoffman is National Director of Business Development at Dahl and is responsible for leading Dahl's efforts to provide expert consulting to aid clients in structuring the notice and claims administration processes. He has more than ten years of experience in providing consulting solutions to attorneys engaged in high-impact litigation. David takes pride in structuring engagement proposals for Dahl clients and prospective clients that accomplish settlement requirements as efficiently and reliably as possible. David studied Behavioral Science & Law at the University of Wisconsin at Madison and has actively pursued continuing education in client services and business development approaches from Miller-Heiman, FranklinCovey, Dale Carnegie, and others.

**BRYN BRIDLEY**
Project Initialization Manager

Serving as a Project Manager for more than five years, Bryn recently transitioned to the role of Project Initialization Manager. Bryn was a project manager for Rust Consulting prior to joining Dahl and has over nine years of experience in the claims administration industry. Bryn is responsible for the setup of each new Dahl project. After a thorough review of each project's case documents, she establishes a project timeline and works directly with Plaintiff and Defense Counsel to finalize notice documents, drafts telephone and website contents, cleanses data files for mailing, and transitions the project to the Dahl claims management team after notice is mailed.

Bryn graduated with honors from the University of Minnesota-Duluth with a Bachelor of Arts degree.

**SEAN COMBS**
Project Manager

Sean is a Project Manager with over eleven years' experience in consumer class action claims management. Prior to joining Dahl, Sean was a Project Coordinator for Rust Consulting, specializing in high volume claims processing and quality assurance.  Sean also has several years' experience in providing CAFA notice mailings.

**CARRIE O'CONNELL**
Project Manager

Carrie O'Connell joined the Dahl team after working for seven years as a Supervisor in a high-volume legal claim processing organization.   Carrie has eight years of experience in legal case management and quality control, which enables her to oversee a variety of settlements for Dahl and to lead our quality assurance team. Carrie earned a Bachelor of Science degree in History from Iowa State University and she received her Paralegal Certificate in 2004.

**ANN LINTON**
Project Manager

Ann joined Dahl after working for five years in the distribution business and was involved in chamber of commerce and a neighborhood business group. Previous to that she spent seven years working with juvenile delinquents at a day treatment program.

Ann earned a Masters in Social Work from Augsburg College and a Bachelors of Social Work from University of St. Thomas.

**JOHN SNYDER**
Director of Information Technology

John is the architect of Dahl's online claims portal, which allows parties to view and process cases over the internet using paperless workflow capabilities. He has over six years of information technology experience in legal claims processing and nearly 15 years of experience with information technology in general.

John possesses an MBA from the University of Minnesota Carlson School of Business and a law degree from the University of Wisconsin.

**GENNADIY KATSNELSON**
Web Interface/Custom Development

Gennadiy is a Software Developer and focuses primarily on web interface and custom software development.  He has more than 20 years of top-level website development, design and architecture experience.  His prior experience includes project management, website architecture, website design and hands-on development in which he successfully delivered large-scale systems to the market in a number of industries, including legal.  Gennadiy has knowledge and practical expertise in a wide range of software platforms and technologies. Gennadiy obtained a Masters Degree in Mathematics and Computer Science from Belarusian State University, Minsk, Belarus.

# OUR REFERENCES



**OUR REFERENCES**

**DEFENSE COUNSEL**

| **JOHN F. WARD, JR.** | **MICHAEL T. BRODY** | **NEIL M. BAROFSKY** |
|---|---|---|
| Partner, Jenner & Block LLP | Partner, Jenner & Block LLP | Partner, Jenner & Block LLP |

John Ward and Michael Brody are Defense counsel for the Hertz/ATS/PlatePass settlement (Ward) and the Hertz Equipment Rental Corporation LDW settlement (Brody). Neil Barofsky is Defense counsel representing CashCall in settlements between individual states and a consumer lender and related entities.

|  |  |
|---|---|
| Jenner & Block | Jenner & Block |
| 353 N. Clark Street | 919 Third Avenue |
| Chicago, IL  60654-3456 | New York, NY  10022-3908 |

| John F. Ward, Jr. | Michael T. Brody | Neil M. Barofsky |
|---|---|---|
| Work: (312) 923-2650 | Work: (312) 923-2711 | Work: (212) 891-1675 |
| jward@jenner.com | mbrody@jenner.com | nbarofsky@jenner.com |

---

**BRIAN R. ENGLAND**
Special Counsel, Sullivan & Cromwell LLP

Defense counsel for Philips BPA settlement and Philips TV settlement.

| Sullivan & Cromwell LLP | Brian R. England |
|---|---|
| 1888 Century Park East | Work: (310) 712-6672 |
| Los Angeles, CA 90067-1725 | englandb@sullcrom.com |

---

| **MARCI A. EISENSTEIN** | **PAULA J. MORENCY** |
|---|---|
| Partner, Schiff Hardin LLP | Partner, Schiff Hardin LLP |

Marci Eisenstein is Defense counsel in the Twin City Fire Insurance/Hartford Insurance settlement. Paula Morency is Defense counsel in the Suave 30-Day Smoothing Kit settlement.

Schiff Hardin LLP
233 South Wacker Drive, Suite 6600
Chicago, IL 60606-6473

| Marci A. Eisenstein | Paula J. Morency |
|---|---|
| Work: (312) 258-5545 | Work: (312) 258-5549 |
| meisenstein@schiffhardin.com | pmorency@schiffhardin.com |



**OUR REFERENCES**

**DEFENSE COUNSEL, CONTINUED**

---

**BRYAN O. BALOGH**
Partner, Burr & Forman LLP

---

Defense counsel in the Janoka v. Veolia Environmental Services settlement.

Burr & Forman LLP                          Bryan Balogh
420 North 20th Street          Work: (205) 458-5469
Suite 3400                                 bbalogh@burr.com
Birmingham, AL 35203

---

**WHITTY SOMVICHIAN**
Partner, Cooley LLP

---

Defense counsel representing eBay in the eBay Mobile and eBay Featured Plus settlements.

Cooley LLP                                 Whitty Somvichian
101 California Street                      Work: (415) 693-2061
5th Floor                      wsomvichian@cooley.com
San Francisco, CA 94111-5800

---

**ELIZABETH B. McREE**
Partner, Jones Day

---

Defense counsel representing Verizon in the Coie v. Verizon settlement.

Jones Day                                  Liz McRee
77 West Wacker                             Work: (312) 269-4374
Chicago, IL  60601-1692                    emcree@jonesday.com



**OUR REFERENCES**

**PLAINTIFF COUNSEL**

**JOE KRONAWITTER**

Partner, Horn Aylward & Bandy, LLC

Plaintiff counsel for the In Re: Motor Fuel Sales Practices Litigation settlements.

| | |
|---|---|
| Horn Aylward & Bandy, LLC | Joe Kronawitter |
| 2600 Grand Boulevard, Suite 1100 | Work: (816) 421-0700 |
| Kansas City, MO 64108 | jkronawitter@hab-law.com |

**RALPH K. PHALEN**                              **MITCHELL L. BURGESS**

Class co-counsel in numerous settlements administered by Dahl Administration.

Ralph K. Phalen, Esquire
Burgess & Lamb PC
1000 Broadway Street
Suite 400
Kansas City, MO 64105

| | |
|---|---|
| Ralph K. Phalen | Mitchell L. Burgess |
| Work: (816) 787-1626 | Work: (816) 471-1700 |
| phalenlaw@yahoo.com | mitch@burgessandlamb.com |

**MARK S. MANDELL**

Partner, Mandell, Schwartz & Bosclair, Ltd.

Lead Plaintiff Counsel for the Station Nightclub Fire settlement.

| | |
|---|---|
| Mandell, Schwartz & Boisclair, Ltd. | Mark S. Mandell |
| One Park Row | Work: (401) 273-8330 |
| Providence, RI 02903 | msmandell@msn.com |



**OUR REFERENCES**

**PLAINTIFF COUNSEL, CONTINUED**

**STEVEN JAFFE**
Farmer, Jaffe, Weissing, Edwards, Fistos & Lehrman, P.L.

Class Counsel in the Appel v. Liberty American Insurance Company settlement.

Farmer, Jaffe, Weissing, Edwards, Fistos & Lehrman, P.L.     Work: (214) 231-0555
425 North Andrews Avenue
Fort Lauderdale, FL 33301

**CHRISTOPHER S. POLASZEK**
Morgan & Morgan

Class Counsel in the Suave 30-Day Smoothing Kit settlement.

Morgan & Morgan                             Chris Polaszek
201 N. Franklin Street                      Work: 813-223-5505
7th Floor                                   cpolaszek@forthepeople.com
Tampa, Florida 33602

**MICHAEL COREN**
Cohen, Placitella & Roth, PC

Class Counsel in the Bower v. MetLife settlement.

Cohen, Placitella & Roth, PC                Michael Coren
Two Commerce Square                         Work: 215-567-3500
Suite 2900                                  mcoren@cprlaw.com
Philadelphia, PA  19103

# SELECTED CASES



**OUR CASES**

---

### STATION NIGHTCLUB FIRE SETTLEMENT - $176 MILLION

Dahl staff provided onsite claim evaluation services at 11 law firms in Providence, Rhode Island to determine claim validity and final claim values for over 300 death and personal injury claims. The review included analysis of authority documents and medical records by a staff of Registered Nurses and senior level project managers.  Jeff Dahl is the court-appointed Neutral Expert responsible for final determinations of all claims for this settlement.

Lead Counsel:  Mark S. Mandell, Law firm of Mandell, Schwartz & Boisclair, Providence, RI

---

### VEOLIA CLASS SETTLEMENT - 1.2 MILLION COMPLEX DATA RECORDS PROCESSED

Dahl was selected to provide Class Notice and Distribution for the Janoka v. Veolia Environmental Services class action.  Dahl analyzed and processed over 1.2 million complex data records, mailed notice to over 900,000 potential class members, and processed incoming correspondence and opt outs.  Dahl then managed complex claims processing procedures, including detailed analysis of class member invoices and other supporting documentation, and distributed settlement funds to eligible class members.

Plaintiff Counsel:  James M. Terrell, McCallum, Methvin & Terrell, P.C., Birmingham, AL

Defense Counsel:  Rik S. Tozzi and Brian O. Balogh, Burr Forman LLP

---

### METLIFE CLASS SETTLEMENT - NEARLY 1 MILLION CLASS MEMBER CHECKS DISTRIBUTED

Dahl was selected to provide Class Notice, Settlement, Notice, and Distribution for the Bower v. MetLife class action.  Dahl mailed notice to over 900,000 potential class members, and processed incoming correspondence and opt outs.  Dahl distributed nearly one million checks to eligible class members and handled all requests for re-issued checks. Dahl implemented innovative, cost-effective solutions to manage the distribution process.

Plaintiff Counsel:  Steven R. Jaffe, Farmer, Jaffe, Weissing, Edwards, Fistos & Lehrman, P.L., Fort Lauderdale, FL;  Stephen A. Dunn, Emanuel & Dunn PLLC, Raleigh, NC; and Michael Coren, Cohen, Placitella & Roth, P.C, Philadelphia, PA

Defense Counsel:  Ross Bricker and John F. Ward, Jr., Jenner & Block LLP and Robert D. Friedman and Scott H. Moskol, Burns & Levinson LLP



**OUR CASES**

---

**HERTZ PLATEPASS SETTLEMENT - 1.6 MILLION NOTICES MAILED**

Dahl was selected to provide Class Notice, Claims Processing, and Distribution for the Doherty and Simonson v. Hertz, ATS, and PlatePass class action. Dahl mailed notice to over 1.6 million potential class members, administered an efficient online claim filing procedure, and processed incoming correspondence and opt outs. Dahl processed incoming claims and distributed nearly 100,000 checks to eligible class members.

Plaintiff Counsel:  Jeffrey Goldenberg, Goldenberg Schneider LPA, Cincinnati, OH and Brian
Dershaw, Beckman Weil Shepardson LLC, Cincinnati, OH

Defense Counsel:  James Comodeca, Dinsmore & Shohl LLP and James Griffith, Jr., Akin Gump
Strauss Hauer & Feld LLP

---

**URBAN ACTIVE FITNESS SETTLEMENT - 600,000 CLASS MEMBERS**

Dahl was the Settlement Administrator for the Urban Active Fitness class action settlement and was responsible for the distribution of mailed notice to more than 600,000 class members, implementation of a published notice campaign, extensive data processing, online claim filing, and complex claims processing.

Plaintiff Counsel:  Thomas N. McCormick, Vorys Sater Seymour and Pease LLP, Columbus, OH

Defense Counsel:  V. Brandon McGrath, Bingham Greenebaum Doll PLLC, Cincinnati, OH

---

**RODENBAUGH V. CVS PHARMACY SETTLEMENT - 400,000 CLASS MEMBERS**

Dahl is the Settlement Administrator for the Rodenbaugh v. CVS Pharmacy class action settlement and was responsible for the distribution of mailed notice to more than 400,000 class members, implementation of a published notice campaign, operation of an informational phone line, processing of claim forms and correspondence submitted by class members, and providing claim review services.

Defense Counsel:  Roman Wuller, Thompson Coburn LLP, St. Louis, MO and Edward Hardin Jr.,
Burr & Forman LLP, Birmingham, AL

Plaintiff Counsel:  John Edgar, Edgar Law Firm LLC, Kansas City, MO and Carles McCallum III and
R. Brent Irby, McCallum, Hoaglund Cook & Irby LLP, Vestavia Hills, AL



**OUR CASES**

---

**COIE v. VERIZON WIRELESS SETTLEMENT- CUSTOM DIRECT NOTICE PROGRAM**

---

Dahl distributed the Class Notice and Opt-In Form to a large employment class, including a custom outer envelope including a "QR" matrix barcode which directed Class Members to the mobile-optimized settlement website when scanned by a mobile device.  Dahl implemented a comprehensive tracing and re-mail program to maximize the reach of the direct notice program.  Dahl managed a live telephone helpline that responded to thousands of phone calls, processed filed claims, and successfully distributed the settlement funds.

Defense Counsel:  Elizabeth McRee, Jones Day, Chicago, IL

Plaintiff Counsel:  Ilan Chorowsky, Progressive Law Group, Chicago, IL

**APPEL v. LIBERTY SETTLEMENT - COMPLEX CLAIM PROCESSING**

---

Dahl was the Settlement Administrator for the Appel v. Liberty settlement involving insurance coverage limits for mobile and manufactured homes suffering wind damage in Florida.  Dahl implemented a direct notice program, implemented a settlement website and live call center including Spanish-speaking representatives, processed received claims, implemented complex claim processing procedures, and distributed the settlement fund.

Defense Counsel:  Amy L. Brown, Squire Sanders, Washington D.C.

# OUR CASE EXPERIENCE



**CASE CITES**

**CURRENT CASES – DAHL**

## CONSUMER

**Aguiar v. Merisant Co.,** No. 2:14-CV-00670 (C.D. Cal.)

**Applewhite v. Capital One Bank,** No. 4:06-CV -69 (N.D. Miss.)

**Avalishvili v. Reussille Law Firm, LLC,** No. 3:12-CV-02772-TJB (D. N.J.)

**Banner v. Law Offices of David J. Stern,** No. 9:11-CV-80914 (S.D. Fla.)

**In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.,** No. 4:08-MD-1967 (W.D. Mo.)

**Boewer v. Chris Auffenberd Kirkwood Mitsubishi,** No. 09SL-CC05382 (Mo. Cir. Ct. St. Louis County)

**Bradley v. Sears, Roebuck & Co.,** No. 06-L-0095 (Ill. Cir. Ct. St. Clair County)

**Brandon v. Van Chevrolet-Cadillac, Inc.,** No. 1031-CV14654 (Mo. Cir Ct. Greene County)

**Brannon v. Capital One,** No. 3:07-CV -1016 (M.D. Fla.)

**Brewer v. Missouri Title Loans, Inc.,** No. 0722-CC-00015 (Mo. Cir. Ct. St. Louis County)

**Briggs v. Fletcher Auto. No. 7, LLC,** No. 10AO-CC003331 (Mo. Cir. Ct. Jasper County)

**Brown v. Suntrup Ford, Inc.,** No. 08SL-CC05103 (Mo. Cir. Ct. St. Louis County)

**Brown v. Zeiser Motors,** No. 0811-CV04298 (Mo. Cir. Ct. St. Charles County)

**Brunner v. Head Motor Co.,** No. 0811-CV04298 (Mo. Cir. Ct. Boone County)

**Bryant v. Motors Liquidation Co.,** No. 09-50026 (Bankr. S.D.N.Y.)

**Budeprion XL Mktg. & Sales Practices Litig.,** No. 2:09-CV-2811 (E.D. Pa.)

**Busby v. RealtySouth,** No. 2:04-CV -2799 (N.D. Ala.)

**Bush v. Cyber Asset Recovery, LLC,** No. MID-L-005132-10 (N.J. Middlesex County Ct.)

**Carlile v. Murfin Drilling Co., Inc.,** No. 13-CV-61 (Kan. Dist. Ct. Seward County)

**Charron v. Pinnacle Group, N.Y.,** No. 1:07-CV -6316 (S.D.N.Y.)

**Chulsky v. Hudson Law Offices, P.C.,** No. 3:10-CV-3058-FLW (D.N.J.)

**Conderman v. Jim Trenary Chevrolet, Inc.,** No. 0811-CV-11388 (Mo. Cir. Ct. St. Charles County)

**Cornett v. Samson Ress. Co.,** No. CJ-09-81 (Okla. Dist. Ct. Dewey County)

**Cox v. Max Motors II, LLC,** No. 09BS-CC00078 (Mo. Cir. Ct. Bates County)

**Cullan and Cullan, LLC, v. M-Qube, Inc.,** No. 8:13-CV-00172 (D. Ne.)

**Custom LED, LLC v. eBay Inc.,** No. 3:12-CV-00350 (N.D. Cal.)

**Davis Landscape, LTD. v. Hertz Equip. Rental Corp.,** No. 06-3830 (D.N.J.)

**DKW Constr., Co., Inc. & Brian Wood v. Southtown Dodge, Inc.,** No. 08SL-CC05106 (Mo. Cir. Ct. St. Louis County)



**CASE CITES**

## CONSUMER - CONTINUED

**Dobson v. Dave Cross Motors, Inc.,** No. 1016-CV-26853 (Mo. Cir. Ct. Jackson County)

**Doherty v. The Hertz Corp.,** No. 1:10-CV-00359 (D. N.J.)

**Dugan v. Lloyds TSB Bank, PLC,** No. 3:12-CV-02549 (N.D. Cal.)

**Farno v. Ansure Mortuaries of Indiana, LLC,** No. 41C01-0910-PL-7 (Ind. Cir. Ct. Johnson County)

**Friess v. Layne Energy, Inc.,** No. 11-CV-57 (Kan. Dist. Ct. Wilson County)

**Fritzinger v. Angie's List, Inc.,** No. 1:12-CV-1118 (S.D. Ind.)

**Frost v. Ohio E. Express, Inc.,** No. 3:12-CV-3016 (N.D. Ohio)

**Gaffney v. Autohaus West, Inc.,** No. 09SL-CC00430 (Mo. Cir. Ct. St. Louis County)

**Gascho v. Global Fitness Holdings, LLC,** No. 2:11-CV-436 (S.D. Ohio)

**Gentry v. Reliable Auto., Inc.,** No. 0831-CV06073 (Mo. Cir. Ct. Greene County)

**Grant v. Onyx Acceptance Corp.,** No. 07-20315 (Fla. Cir. Ct. Broward County)

**Green v. American Cleaners and Laundry Co., Inc.,** No. 12SL-CC03095 (Mo. Cir. Ct. St. Louis County)

**Green v. Major Infiniti, Inc.,** No. 1116-CV09583 (Mo. Cir. Ct. Jackson County)

**Gregg v. Check Into Cash of Missouri, Inc.,** No. 11-CV-368 (W.D. Mo.)

**Gumm v. Joe Machens Ford, Inc.,** No. 08BA-CV03153 (Mo. Cir. Ct. Boone County)

**Hamilton v. Cash Am. of Missouri, Inc.,** No. 1216-CV-10576 (Mo. Cir. Ct. Jackson County)

**Heien v. Archstone Communities, LLC,** No. 1:12-CV-11079-RGS (D. Mass.)

**Hermida v. ASN Reading LLC,** No. 10-CV-12083-WGY (D. Mass.)

**Herrera v. Check 'n Go of California, Inc.,** No. CGC-07-4627790 (Cal. Super. Ct. San Francisco County)

**Hershey v. ExxonMobil Oil Corp.,** No. 6:07-CV-01300 (D. Kan.)

**Hewitt v. Law Offices of David J. Stern,** No. 50-2009-CA-036046 (Fla. Cir. Ct. Palm Beach County)

**Hollins v. Capital Solutions Invs., Inc.,** No. 11SL-CC04216 (Mo. Cir. Ct. St. Louis County)

**Hooper v. Suntrup Buick-Pontiac-GMC Truck, Inc.,** No. 0811-CV10921 (Mo. Cir. Ct. St. Charles County)

**Hopler v. Sapaugh Motors, Inc.,** No. 09JE-CC00146 (Mo. Cir. Ct. Jefferson County)

**Horn v. Commercial Lending Capital, Inc.,** No. RIC10019819 (Cal. Super. Ct. Riverside County)

**Howerton v. Cargill, Inc.,** No. 1:13-CV-00336 (D. Haw.)

**In the Matter of Xacti LLC,** No. 13C20192 (Or. Cir. Ct. Marion County)

**Janicki v. Jeffrey L. Rosen and Trustmark Recovery Serv. Inc.,** No. 1:13-CV-06759 (N.D. Ill.)

**Janoka v. Veolia Envtl. Servs. N. Am. Corp.,** No. 69-CV-2011-900056 (Ala. Cir. Ct. Barbour County)

**Johnson v. Washington Univ.,** No. 2:10-CV-4170 (W.D. Mo.)

**Jones v. Wells Fargo, N.A.,** No. BC337821 (Cal. Super. Ct. L.A. County)



**CASE CITES**

## CONSUMER - CONTINUED

**Jones v. W. County BMW, Inc.,** No. 08SL-CC05222-01 (Mo. Cir. Ct. St. Louis County)

**Keirsey v. eBay, Inc.,** No. 12-Cv-01200-JST (N.D. Cal.)

**Khweye v. Leaders Fin. Co.,** No. ESX-L-5584-10 (N.J. Super. Ct. Essex County)

**Kreilich v. JL Autos, Inc.,** No. 09SL-CC0172 (Mo. Cir. Ct. St. Louis County)

**Lagas v. Verisma Sys., Inc.,** No. 4:13-CV-01082 (W.D. Mo.)

**Ledterman v. James Perse Enter., Inc.,** No. BC480530 (Cal. Super. Ct L.A. County)

**LeFever v. Am. Ear Hearing Aid & Audiology,** No. 11-CV-0832 (Ohio Comm. Pl. Licking County)

**Lewellen v. Reliable Imports and RV, Inc.,** No. 1031-CV11926 (Mo. Cir. Ct. Greene County)

**Lippert v. Edison Motor Cars, Inc.,** No. MID-L-6599-10 (N.J. Super. Ct. Middlesex County)

**Livingston v. Capital One,** No. 3:07-CV-266 (M.D. Fla.)

**Love v. LendingTree Claims Admin.,** No. 2009CV009598 (Wis. Cir. Ct. Milwaukee County)

**Lucero v. Love, Beal & Nixon, P.C.,** No. 4:12-CV-659 (N.D. Okla.)

**Lundsford v. Woodforest Nat'l Bank,** No. 1:12-CV-103-CAP (N.D. GA.)

**Lundy v. Check Into Cash of Missouri, Inc.,** No. 1216-CV10150 (Mo. Cir. Ct. Jackson County)

**Lundy v. Mid-America Credit, Inc.,** No. 1116-CV02060 (Mo. Cir Ct. Jackson County)

**Mayfield v. Thoroughbred Ford of Platte City, Inc.,** No. 08AE-CV00467 (Mo. Cir Ct. Platte County)

**Metcalf v. Marshall Ford Sales, Inc.,** No. 0811-CV11381 (Mo. Cir. Ct. St. Charles County)

**Mikale v. John Bommarito Oldsmobile-Cadillac, Inc.,** No. 08SL-CC05223 & 09SL-CC00167 (Mo. Cir. Ct. St. Louis County)

**Miller v. Capital One Bank,** No. 3:07-CV-265 (M.D. Fla.)

**Miller v. Nat'l Enter. Sys., Inc.,** No. 13 C 1720 (N.D. Ill.)

**Motor Fuel Temperature Sales Practices,** No. 07-MD-1840-KHV (D. Kan.)

**Mortgage Store, Inc. v. LendingTree Loans**, No. 06CC00250 (Cal. Super. Ct. Orange County)

**Moy v. Eltman, Eltman & Cooper, P.C.,** No. 12-CV-02382 (E.D.N.Y.)

**Naes v. Tom Pappas Toyota, Inc.,** No. 0711-CV09005 (Mo. Cir. Ct. St. Charles County)

**Neese v. Lithia Chrysler Jeep of Anchorage, Inc.,** No. 3AN-06-4815 (Alaska Super. Ct. Anchorage)

**North Star Capital Acquisitions v. King,** No. 3:07-CV-264 (M.D. Fla.)

**Omar v. 950 B14 DE, LLC,** No. CGC-13-530203 (Cal. Super. Ct. San Francisco County)

**Omohundro v. Glendale Chrysler-Jeep, Inc.,** No. 2107CC-03927 (Mo. Cir. Ct. St. Louis County)

**Padberg v. Dish Network, LLC,** No. 11-4035 (W.D. Mo.)

**Painter v. Ackerman Motor Company, Inc.,** No. 1022-CC10135 (Mo. Cir. Ct. City of St. Louis)



**CASE CITES**

## CONSUMER - CONTINUED

**Perkins v. Philips Oral Healthcare, Inc.,** No. 12-CV-1414H BGS (S.D. Cal.)

**Petersen v. Central Jersey Pool,** No. MON-L-4044-11 (N.J. Super. Ct. Monmouth County)

**In re Philips/Magnavox Television Litig.,** No. 2:09-CV-3072 (D. N.J.)

**Powers v. Fifth Third Mortg. Co.,** No. 1:09-CV-2059 (N.D. Ohio)

**Redd v. Suntrup Hyundai, Inc.,** No. 09SL-CC00173 (Mo. Cir. Ct. St. Louis County)

**Reid v. Unilever United States, Inc.,** No. 12-CV-6058 (N.D. Ill.)

**Rhodenbaugh v. CVS Pharmacy, Inc.,** No. 0916-CV09631 (Mo. Cir. Ct. Jackson County)

**Richards v. Lou Fusz Auto. Network, Inc.,** No. 08SL-CC04594 (Mo. Cir. Ct. St. Louis County)

**Richardson v. Weber Chevrolet Co.,** No. 09SL-CC00170 (Mo. Cir Ct. St. Louis County)

**Riley v. Northland Group, Inc.,** No. 2:12-CV-00950 (E.D. Wis.)

**Rizzo v. Hendrick Auto. Group.,** No. 4:08-CV-137 (W.D. Mo.)

**Roberts v. Source for Public Data,** No. 2:08-CV -4167 (W.D. Mo.)

**Robinson v. J & C Auto Outlet, LLC,** No. MID-L-1961-13 (N.J. Super. Ct. Middlesex County)

**S37 Management, Inc. v. Advance Refrigeration Co.,** No. 06-CH-20999 (Ill. Cir. Ct. Cook County

**Sams v. Adams Auto Corp.,** No. 0916-CV1521 (Mo. Cir. Ct. Jackson County)

**Seekamp v. It's Huge, Inc.,** No. 1:09-CV-00018 (N.D. N.Y)

**Serochi, Jr. v. Bosa Dev. Cal. II, Inc.,** No. 37-2009-00096686-CU-BT-CTL (Cal Super. Ct. San Diego County)

**Schuster v. Machens Enters., Inc.,** No. 11BA-CV01269 (Mo. Cir. Ct. Boone County)

**Shaffer v. Royal Gate Dodge,** No. 07SL-CC00949 (Mo. Cir Ct. St. Louis County)

**Sherrell v. Great S. Bank,** No. 1131-CV02280 (Mo. Cir. Ct. Greene County)

**Shirley v. Reliable Chevrolet, Inc.,** No. 0831-CV06082 (Mo. Cir Ct. Greene County)

**Silverberg v. Hotels.com, LP,** No. 12-01819 (Tex. Dist. Ct.)

**Sims v. Rosedale Cemetery Co.,** No. 03-C-506 (W. Va. Cir. Ct. Berkeley County)

**Soper v. American Traffic Solutions, Inc.,** No. CACE 10-046095 (17th Cir. Ct. Broward County)

**Stasko v. City of Chicago**, No. 09-CH17167 (Ill. Cir. Ct. Cook County)

**State of Texas v. Bluehippo,** No. D-1-GV-10-000102 (Tex. Dist. Ct. Travis County)

**State of Texas v. Cristo Vive,** No. D-1-GV-12-001092 (Tex. Dist. Ct. Travis County)

**Steiner v. Rawlings Sporting Goods Co., Inc.,** No. 2:12-CV-02531 (D. N.J.)

**Stevens v. Bommarito Nissan, Inc.** No. 09SL-CC00167 (Mo. Cir. Ct. St. Louis County)

**Strickland v. Fletcher Auto., No. 9,** No. 09AP-CC00091 (Mo. Cir. Ct. Jasper County)

**In re Surewest Comm'ns Shareholder Litig.,** No. SCV-0030665 (Cal. Super Ct. Placer County)



**CASE CITES**

## CONSUMER - CONTINUED

**Swires v. Glaxosmithkline,** No. 11-L-587 (Ill. Cir. Ct. St. Clair County)

**Thomas v. Tenet Healthsystems SL, Inc.,** No. 12SL-CC01811 (Mo. Cir. Ct. St. Louis County)

**Tortora v. Guardian Protection Servs., Inc.,** No. MID-L-1041-10 (N.J. Super. Ct. Middlesex County)

**Valley v. Johnny Londoff Chevrolet, Inc.,** No. 10SL-CC00523 (Mo. Cir. Ct. St. Louis County)

**Van Loo v. Capitol City Chrysler-Nissan, Inc.,** No. 11AC-CC00324 (Mo. Cir. Ct. Cole County)

**In re Voluntary Dissolution of Nexus Fiduciary Trust Corp.,** No. 29D03-1003-CC-323 (Ind. Super. Ct. Hamilton County)

**Wade v. Thoroughbred Ford, Inc.,** No. 10AE-CV04323 (Mo. Cir. Ct. Platte County)

**Walczak v. ONYX Acceptance Corp.,** No. 03 CH 0693 (Ill. Cir. Ct. Lake County)

**Wallace B. Roderick Revocable Living Trust, Trustee Amanda Roderick v. Noble Energy, Inc.,** No. 2009CV2 (Kan. Dist. Ct. Kearny County)

**Wallace B. Roderick Revocable Living Trust, Trustee Amanda Roderick v. Osborn Heirs Co., Ltd.,** No. 2009CV15 (Kan. Dist. Ct. Kearny County)

**Welsh v. John Youngblood Motors, Inc.,** No. 0931-CV14259 (Mo. Cir. Ct. Greene County)

**Westman v. Rogers Family Funeral Home, Inc.,** No C 98-03165 (Cal. Super. Ct. Contra Costa County)

**Wenger v. South Brunswick Furniture, Inc.,** No. MID-L-000479-12 (N.J. Middlesex County Ct.)

**Wiles v. S.W. Bell Tel. Co.,** No. 2:09-CV-4236 (W.D. Mo.)

**Wogoman v. Worth Harley Davidson N., Inc.,** No. 09CY-CV9090 (Mo. Cir. Ct. Clay County)

**Wood v. Plaza Tire Servs.,** No. 11SL-CC01507 (Mo. Cir. Ct. St. Louis County)

**Woods v. QC Fin.l Servs., Inc.,** No. 11-148-01395-09 (Am. Arb. Ass'n)

**Woodward v. Ozark Kenworth, Inc.,** No. 1031-CV02203 (Mo. Cir Ct. Greene County)

**Yarde v. Ed Napleton St. Louis Imports, Inc.,** No. 09SL-CC00171 (Mo. Cir. Ct. St. Louis County)

**Zaromb v. SSM Health Care Corp.,** No. 12SL-CC00654 (Mo. Cir. Ct. St. Louis County)

## INSURANCE

**Abrahams-Goullub v. United Servs. Auto. Assoc.,** No. 3AN-09-6693CI (Alaska Super. Ct. Anchorage)

**Appel v. Liberty Am. Ins. Co.,** No. 1:08-CV-20385 (S.D. Fla.)

**Besecker v. Peerless Indem. Ins. Co.,** No. 2:09-CV-05513-TJS (E.D. Pa.)

**Bower v. MetLife,** No. 1:09-CV-351 (S.D. Ohio)

**Casey v. Coventry Health Care of Kansas, Inc.,** No. 4:08-cv-201 (W.D. Mo.)

**Childs v. Unified Life Ins. Co.,** No. 4:10-CV-23 (N.D. Okla.)



**CASE CITES**

## INSURANCE - CONTINUED

**Cressy v. Fidelity & Guaranty Life Ins. Co.,** No. BC514340 (Cal. Super. Ct. L.A. County)

**Douglass v. Am. United Life Ins. Co.,** No. 29D03-9810-CP-00568 (Ind. Super. Ct. Hamilton County)

**Holling-Fry v. Coventry Health Care of Kansas, Inc.,** No. 4:07-CV-0092 (W.D. Mo.)

**Lujan v. Hallmark Ins. Co.,** No. D-101-CV-2012-01429 (N.M. Santa Fe County)

**Martin v. Twin City Fire Ins. Co.,** No. 3:08-CV-5651 (W.D. Wash.)

**Newendorp v. United Servs. Auto. Assoc.,** No. CJ-04-195S (Ok. Dist. Ct. Cleveland County)

**Poutsch v. USAA Cas. Ins. Co.,** No. CV-2011-01210 (N.M. Dist. Ct. Bernalillo County)

**Scott v. United Servs. Auto. Assoc.,** No. 2:11-CV-01422-JCC (U.S. Dist. Ct. W.D. Wash.)

**San Allen v. Stephan Buehrer, Admin. of Ohio BWC,** No. CV-07-644950 (Ohio C.P. Cuyahoga County)

**Walker v. Life Ins. Co. of the Sw.,** No. 10-CV-9198-JVS (C.D. Cal.)

**Waterman v. USAA Cas. Ins. Co.,** No. 10-5016-TJS (E.D. Pa.)

**Welschmeyer v. St. Luke's Health Sys., Inc.,** No. 1316-CV19250 (Mo. Cir. Ct. Jackson County)

## EMPLOYMENT

**Agatep v. Forest Lawn Mortuary**, No. BC433744 (Cal. Super. Ct. L.A. County)

**Alexander v. Chevron Stations,** No. C11-00896 (Cal. Super. Ct. Contra Costa County)

**Anzaldo v. The Original Mowbray's Tree Serv., Inc.,** No. S-1500-CV-274897 WDP (Cal. Super. Ct. Kern County)

**Ayon v. Cintas Corp., Inc.,** No. BC310696 (Cal. Super. Ct. L.A. County)

**Balderas v. Massage Envy Franchising, LLC,** No. 3:12-CV-06327 (N.D. Cal.)

**Barbosa v. Cargill Meat,** No. CV F 11-00275 SKO (E.D. Cal.)

**Bayard v. Veruzon W. Va., Inc.,** No. 1:11-CV-00132 (N.D. W. Va.)

**Bedoya v. Rubio's Rests.,** No. BC463799 (Cal. Super. Ct. L.A. County)

**Bell v. Delta Air Lines, Inc.,** No. 4:13-CV-01199 (N.D. Cal.)

**Bendana v. Custom Air Trucking, Inc.,** No. BC456055 (Cal. Super. Ct. L.A. County)

**Berg v. Zumiez Inc.,** No. BC408410 (Cal. Super. Ct. L.A. County)

**Binissia v. ABM Indusies., Inc.,** No. 13-CV-1230 (N.D. Ill.)

**Bonilla v. Agri-Empire,** No. RIC1209556 (Cal. Super. Ct. Riverside County)

**Borja v. TNT Plastic Molding,** No. 30-2012-00423018-CU-OE-CXC (Cal. Super. Ct. Orange County)

**Bradley v. Networkers, Inc.,** No. GIC 862417 (Cal. Super. Ct. San Diego County)



**CASE CITES**

## EMPLOYMENT - CONTINUED

**Brooks v. U.S. Bank, N.A.,** No. 12-CV-4935 EMC (N.D. Cal.)

**Brown v. Abercrombie & Fitch Co.,** No. 2:14-CV-01242 (C.D. Cal.)

**Bult-Ito v. Univ. of Alaska,** No. 3AN 09-7875CI (Alaska Super. Ct. Anchorage)

**Burden v. SelectQuote,** No. C10-05966 SBA (N.D. Cal.)

**Bustos v. Massage Envy Spa - Mission Valley,** No. 37-2012-00104022-CU-OE-CTL (Cal. Super. Ct. San Diego County)

**Byard v. Verizon W. Va., Inc.,** No. 1:11-CV-132 (N.D. W. Va.)

**Calhoun v. Gen. Petroleum Corp.,** No. BC425216 (Cal. Super. Ct. L.A. County)

**Caracoza v. Ephonamation.com, Inc.,** No. 30-2013-006892690-CU-CR-CXC (Cal. Super. Ct. Orange County)

**Cardenas v. Crothall Healthcare,** No. 11-4145 (C.D. Cal.)

**Carothers v. Lawry's The Prime Rib, Inc.,** No. 12-CV-10048 (N.D. Ill.)

**Cassidy v. Aldo U.S., Inc.,** No. 1:13-CV-04858 (N.D. Ill.)

**Castro v. Seaton, LLC,** No. BC516824 (Cal. Super. Ct. L.A. County)

**Chambers v. Chase Bank USA,** No. 1:11-CV-6014 (N.D. Ill.)

**Chavez v. Hat World, Inc.,** No. 1:12-CV-05563 (N.D. Ill.)

**Cherry v. Mayor and City Council of Baltimore,** No. 1:10-CV-01447 (D. Md.)

**Cioe v. Verizon Wireless,** No. 1:11-CV-1002 (N.D. Ill.)

**Cisneros v. Oasis South Ins. Servs.,** No. 37-2012-00103109-CU-OE-CTL (Cal. Super Ct. San Diego County)

**Clarke v. Insight Global, Inc.,** No. 3:13-CV-00357 (S.D. Cal.)

**Copi v. Brainfuse,** No. 11-CV-05195 (S.D.N.Y.)

**Crosby v. California Healthcare Medical Billing, Inc.,** No. 37-2011-00087583-CU-OE-CTL (Cal. Super Ct. San Diego County)

**D'Ambrosia v. Claro Italian Mkts.,** No. BC497301 (Cal. Super. Ct. L.A. County)

**Deliz v. Miller's Ale House, Inc.,** No. 13-CA-005176 (Fla. 13th Cir. Ct. Hillsborough County)

**Diaz v. Alco Iron & Metal Co.,** No. HG10517616 (Cal. Super. Ct. Alameda County)

**Diego v. JMS Prop. LLC,** No. 37-2013-00056177-CU-OE-CTL (Cal. Super. Ct. San Diego County)

**Dilts v. Penske Logistics, LLC,** No. 3:08-CV-00318 (S.D. Cal.)

**Dunlap v. Universal Sec. Corp.,** No. 10 CH 18197 (Ill. Cir. Ct. Cook County)

**Echeverria v. Adir Int'l,** No. BC395380 (Cal. Super. Ct. L.A. County)

**Epton v. AIS Servs., LLC,** No. 3:11-CV-00856-JM-POR (S.D. Cal.)

**Erickson v. QSP & TI Media Solutions, L.A.S.C.,** No. BC469830 (Cal. Super. Ct. L.A. County)



**CASE CITES**

## EMPLOYMENT - CONTINUED

**Escoto-Miranda v. Evans Tire & Serc. Cents., Inc.,** No. 37-2012-00103102-CU-OE-CTL (Cal. Super. Ct. San Diego County)

**Fabela v. Micro World Corp.,** No. BC509643 (Cal. Super. Ct. L.A. County)

**Fischer v. Nat'l Distrib. Ctr. LP,** No. RIC1114952 (Cal. Super. Ct. Riverside County)

**Fitts v. Designed Metal Connections, Inc.,** No. TC027097 (Cal. Super. Ct. L.A. County)

**Flournoy v. 3S Network, Inc.,** No. C09-00113 (Cal. Super. Ct. Contra Costa County)

**Garner v. Primedia, Inc.,** No. 30-2012-00619014-CU-06-CXC (Cal. Super. Ct. Orange County)

**Gonzales v. Downtown LA Motors LP,** No. BC350769 (Cal. Super. Ct. L.A. County)

**Gonzalez v. RC Packing, LLC,** No. M108764 (Cal. Super. Ct. Monterey County)

**Grant v. Convergys Corp.,** No. 4:12-cv-000496-CEJ (E.D. Mo.)

**Haro v. Cotti Foods Corp.,** No. BC407056 (Cal. Super. Ct. L.A. County)

**Hobbs v. Ace Industrial Supplies, Inc.,** No. BC466122 (Cal. Super. Ct. L.A. County)

**Holsted v. R.J. Noble Co.,** No. 30-2010-00379770 (Cal. Super. Ct. Orange County)

**Jones v. TNT Self-Storage Mgmt., Inc.,** No. 30-2011-00513903-CU-OE-CXC (Cal. Super. Ct. Orange County)

**Kavousy v. The Western and Southern Life Ins. Co.,** No. 8:12-CV-2109 AG (C.D. Cal.)

**Kay v. Asian Rehabilitation Servs. Inc.,** No. BC442795 (Cal. Super. Ct. L.A. County)

**Khweye v. Leaders Fin. Co.,** No. ESX-L-5584-10 (N.J. Super. Ct. Essex County)

**King v. Build.com, Inc.,** No. 159985 (Cal. Super. Ct. Butte County)

**Kinney v. Harvest Al Mgmt. Sub, LLC,** No. 2:12-CV-02716-TLN-CKD (E.D. Cal.)

**Kulvicki v. Pick-N-Pull Auto Dismantlers,** No. RG11560441 (Cal. Super. Ct. Alameda County)

**Las v. ABM Indus. Inc.,** No. 1:11-CV-05644 (N.D. Ill.)

**Las v. District Towing, Inc.,** No. 12-CV-5538 (N.D. Ill.)

**Lopez v. Pioneer Med. Group, Inc.,** No. BC496710 (Cal. Super. Ct. L.A. County)

**Macias v. Sun Grown Organic Distrib., Inc.,** No. 37-2012-00095817-CU-OE-CTL (Cal. Super. Ct. San Diego County)

**Magee v. Am. Residential Servs., LLC,** No. BC423798 (Cal. Super. Ct. L.A. County)

**Martinez v. John Morrell & Co.,** No. 1-11-CV-198307 (Cal. Super. Ct. Santa Clara County)

**Myart v. AutoZone, Inc.,** No. 05CC03219 (Cal. Super. Ct. Orange County)

**Neponoceno v. El Puerto Berry Farms, LLC,** No. 56-2014-00451373-CU-OE-VTA (Cal. Super. Ct. Ventura County)

**Nimely v. Randstad Gen. Partner (US), LLC,** No. 1:12-CV-10431 (N.D. Ill.)



**CASE CITES**

## EMPLOYMENT - CONTINUED

**O'Brien v. Cathy Jean, Inc.,** No. 37-2011-00085539-CU-OE-CTL (Cal. Super. Ct. San Diego County)

**Office of Fed. Contract Compliance Programs, U.S. Dep't of Labor v. Cargill Meat Solutions Corp.,** No. 2012-OFC-00001 (DOLOALJ)

**Ortiz v. CVS Caremark Corp.,** No. 12-CV-05859-EDL (N.D. Cal.)

**Park v. Staples the Office Superstore LLC,** No. BC449815 (Cal. Super. Ct. L.A. County)

**Pina v. Con-way Freight,** No. C10-00100 (N.D. Cal.)

**Recendez v. Tidwell,** No. 56-2011-00404761-CU-OE-VTA (Cal. Super. Ct. Venture County)

**Robinson v. Defender Sec. Co.,** No. RG10505016 (Cal. Super. Ct. Alameda County)

**Rocha v. Royal Oaks,** No. 5:12-CV-01303 (N.D. Cal.)

**Rodriguez v. Fred Loya Ins.,** No. BC491770 (Cal. Super. Ct. L.A. County)

**Roque v. Pick-N-Pull Auto Dismantlers,** No. 34-2012-00118782 (Cal. Super. Ct. Sacramento County)

**Rosero v. East L.A. Doctors Hosp., LP,** No. BC505483 (Cal. Super. Ct. L.A. County)

**Rothberg v. Crunch LLC,** No. CGC 12-519740 (Cal. Super. Ct. San Francisco County)

**Russell v. EF International Language Schs,** No. BC481435 (Cal. Super. Ct. L.A. County)

**Saba Mungaray v. Corovan Moving & Storage Co.,** No. 30-2012-00618398-CU-OE-CXC (Cal. Super. Ct. Orange County)

**Sano v. Southland Mgmt. Group, Inc.,** No. BC489112 (Cal Super. Ct. L.A. County)

**Salazar v. Adir Int'l,** No. BC398402 (Cal. Super. Ct. L.A. County)

**Salgado v. Shik Do Rak, Inc.,** No. BC432841 (Cal. Super. Ct. L.A. County)

**Sanchez v. St. Mary Med. Ctr.,** No. CIVDS 1304898 (Cal. Super. Ct. San Bernardino County)

**Scaglione v. M.O. Dion & Sons, Inc.,** No. BC425216 (Cal. Super. Ct. San Bernardino County)

**Schmaltz v. O'Reilly Automotive Stores, Inc.,** No. 4:12-CV-01056 (E.D. Mo.)

**Scott v. RailCrew Xpress, LLC,** No. 10C-000546 (Kan. Dist. Ct. Shawnee County)

**Shackleford v. Cargill,** No. 12-CV-4065-FJG (W.D. Mo.)

**Solorio v. Angelica Textile Servs, Inc.,** No. 5:12-CV- 03569 (N.D. Cal.)

**Sotelo v. Universal Indus. Finishing, Inc.,** No. 1-13-CV-239771 (Cal. Super. Ct. Santa Clara)

**Sparks v. FPI Mgmt., Inc.,** No. BC465773 (Cal. Super. Ct. L.A. County)

**Stevenson v. Falcon Critical Care Transp.,** No. CIVMSC09-00862 (Cal. Super. Ct. Contra Costa County)

**Studley v. Alliance Healthcare Servs., Inc.,** No. 8:10-CV-00067-CJC-AN (C.D. Cal)

**Tapia v. Pro's Ranch Mkts.,** No. S-1500-CV-274898 (Cal. Super. Ct. Kern County)

**Tula v ABM Indus. Inc.,** No. 1:12-CV-054-LY (W.D. Tex.)



**CASE CITES**

## EMPLOYMENT - CONTINUED

**Tuter, Bauer v. King's Seafood Co.,** No. 37-2011-00084756-CU-OE-CTL (Cal. Super. Ct. San Diego County)

**Vaca v. Famarock, Inc.,** No. BC494504 (Cal. Super. Ct. L.A. County)

**Valencia v. Mobile Mini. Inc.,** No. RG-13-684308 (Cal. Super. Ct. Alameda County)

**Valencia v. SCIS Air Sec. Corp.,** No. BC421485 (Cal. Super. Ct. L.A. County)

**Valenzuela v. United Natural Foods W., Inc.,** No. BC450168 (Cal. Super. Ct. L.A. County)

**Veliz v. Cintas Corp.,** No. 5:03-CV-1180 (N.D. Cal.)

**Villarreal v. Source Refrigeration & HVAC, Inv.,** No. 1:12-CV-00243 (W.D. Tex.)

**Vincent v. Cent. Purchasing, LLC,** No. BC458544 (Cal. Super. Ct. L.A. County)

**Warren v. SCS-Chicago,** No. 10 CH 8380 (Ill. Cir. Ct. Cook County)

**Williams v. Ill. Title Loans, Inc.,** No. 13 CH 24303 (Ill. Cir. Ct. Cook County)

**Wilson v. Continental Vending, Inc.,** No. 30-2012-00585315-CU-OE-CXC (Cal. Super. Ct. Orange County)

**Wynn v. Express, LLC,** No. 1:11-CV-04588 (N.D. Ill.)

**Zaniewski v. PRRC Inc.,** No. 3:11-CV-01535 (D. Conn.)

## BELAIRE-WEST PRIVACY NOTICE MAILINGS

**Alegria v. Student Transp. Of America, Inc.,** No. RIC1209792 (Cal. Super. Ct. Riverside County)

**Anderson v. Gulf S. Safety Consultants, LLC,** No. BC537452 (Cal. Super. Ct. L.A. County)

**Angeles v Hofs Hut Rests. Inc.,** No. BC495624 (Cal. Super. Ct. L.A. County)

**Barajas v. WHM, LLC,** No. BC491045 (Cal. Super. Ct. L.A. County)

**Bradley v. Networkers, Inc.,** No. GIC 862417 (Cal. Super. Ct. San Diego County)

**Brueske v. DHSE, Inc.,** No. RIC1205382 (Cal. Super. Ct. Riverside County)

**Castellanos v. Faro Serv. Inc.,** No. BC509830 (Cal. Super. Ct. L.A. County)

**Davis v. St. Jude Hospital,** No. 30-2012-00602596-CU-OE-CXC (Cal. Super. Ct. Orange County)

**East v. Aces,** No. 11CECG04226 (Cal. Super. Ct. Fresno County)

**Erickson v. QSP & TI Media Solutions, L.A.S.C.,** No. BC469830 (Cal. Super. Ct. L.A. County)

**Fitts v. Designed Metal Connections, Inc.,** No. TC027097 (Cal. Super. Ct. L.A. County)

**Franco v. Flight Line Products, Inc.,** No. BC497382 (Cal. Super. Ct. L.A. County)

**Gonzales v. Corsair Elec. Connectors, Inc.,** No. 30-2012-00594399-CU-OE-CXC (Cal. Super. Ct. Orange County)

**Gutierrez v. Commerce Casino,** No. BC360704 (Cal. Super. Ct. L.A. County)

**Huizar v. Newport Serv. Corp.,** No. 30-2010-00430372-CY-OE-CXC (Cal. Super. Ct. Orange County)



**CASE CITES**

## BELAIRE-WEST PRIVACY NOTICE MAILINGS - CONTINUED

**Jaramillo-Tabar v. Nakase Bros. Wholesale Nursery,** No. 30-2012-00587417 (Cal. Super. Ct. Orange County)

**Krajec v. Mission Hospital Regional Medical Cent.,** No. 30-2012-00602596-CU-OE-CXC (Cal. Super. Ct. Orange County)

**Linares v. PCAM, LLC,** No. BC487188 (Cal. Super. Ct. L.A. County)

**Murray v. Ralph's Grocery Co.,** No. RIC1105977 (Cal. Super. Ct. Riverside County)

**Navarro v. KJ Beck's, Inc.,** No. BC509096 (Cal. Super. Ct. L.A. County)

**Ornelas v. RVGC Partners, Inc.,** No. BC500123 (Cal. Super. Ct. L.A. County)

**Read v. Howroyd-Wright Emp't Agency, Inc.,** No. BC449744 (Cal. Super. Ct. L.A. County)

**Robinson v. Airgas On-Site Safety Servs., Inc.,** No. BC523502 (Cal. Super. Ct. L.A. County)

**Rodriguez v. E.M.E., Inc.,** No. BC518692 (Cal. Super. Ct. L.A. County)

**Rodriguez v. Equinox Holdings, Inc.,** No. BC437283 (Cal. Super. Ct. L.A. County)

**Sanchez v. CPG Foods, LLC,** No. BC487187 (Cal. Super. Ct. L.A. County)

**Scott-George v. PVH Corp.,** No. 13-CV-00441-TLN-DAD (E.D. Cal.)

**Serrano v. Triumph Structures-Los Angeles, Inc.,** No. BC507112 (Cal. Super. Ct. L.A. County)

**Shiferaw v. Sunrise Senior Living Mgmt., Inc.,** No. 2:13-CV-02171-JAK-PLA (C.D. Cal.)

**Smith v. Space Exploration Technologies Co., Inc.,** No. BC486776 (Cal. Super. Ct. L.A. County)

**Vagle v. Archstone Cmtys., LLC,** No. 2:13-CV-9044 RGK (C.D. Cal)

**Vidales v. Windset Farms (Cal.), Inc.,** No. 1456106 (Cal. Super. Ct. Santa Barbara County)

**Walsh v. Pacific Bell Tel. Co.** No. 30-2011-00498062-CY-OE-CXC (Cal. Super. Ct. Orange County)

**Wilson v. Rock-Tenn Co., Inc.,** No. BC488456 (Cal. Super. Ct. L.A. County)

**Zamora v. Cardenas Markets, Inc.,** No. BC505451 (Cal. Super. Ct. L.A. County)

## GOVERNMENT

**Lopez-Venegas v. Jeh Johnson,** No. 2:13-CV-03972 (C.D. Cal.)

## PRIVACY

**Avery v. Boyd Bros. Transp., Inc.,** No. 4:13-CV-00579 (W.D. Mo.)

**Caffarello v. ADS Logistics Co., LLC,** No. 1:12-CV-08300 (N.D. Ill.)

**Diparvine v. A.P.S, Inc. d/b/a Car Quest Auto Parts,** No. 11-CV-6116 (N.D. Ill.)

**Edwards v. Impairment Res., LLC,** No. 112CV220583 (Cal. Super. Ct. Santa Clara County)



**CASE CITES**

---

## PRIVACY - CONTINUED

**Fun Servs. of Kansas City, Inc. v. Hertz Equip. Rental Corp.,** No. 08-CV-03944 (Kan. Dist. Ct. Johnson County)

**Gordon v. Feinstein Raiss Kelin & Booker, LLC,** No. 3:13-CV-00089 (D. N.J.)

**Johnson v. Midwest Logistics Systems, Ltd.,** No. 2:11-CV-1061 (S.D. Ohio)

**Schulz v. Rushmore Service Center, LLC,** No. 2:13-CV-00105 (E.D. Wis.)

**Yaakoby v. EagleRider,** No. 1:09-CV-5772 (N.D. Ill.)

---

## ANTITRUST

**Kansas City Urology Care, PA, v. Blue Cross Blue Shield of Kansas City, Inc.,** No. 0516-CV-04219 (Mo. Cir. Ct. Jackson County)

---

## SECURITIES

**Capgrowth v. Franklin Elec. Publishers, Inc.,** No. BUR-C-043-09 (N.J. Super. Ct. Ch. Div. Burlington County)

**Waterford Twp. General Emps. Ret. System v. Bankunited Fin. Corp.,** No. 1:08-CV-22572-MGC (S.D. Fl.)

**Williams v. Colonial Prop. Trust,** No. 01-CV-2013-902416.00 (Ala. Cir. Ct. Jefferson County)

---

## PERSONAL INJURY

**Gray v. Derderian,** No. 1:04-CV-312 (D. R.I.)



**CASE CITES**

PREVIOUS CASES – JEFF AND KRISTIN DAHL

## CONSUMER

**Aks v. Southgate Trust Co.**, No. 92-2193-L (D. Kan.)

**Alachua Gen. Hosp. v. Greene**, No. 90-3359-CA (Fla. Cir. Ct. Alachua County)

**Gray v. Derderian**, No. 04-312L (D. R.I.)

**Arscott v. Humana Hosp. Daytona Beach**, No. 91-2478-CI-CI (Fla. Cir. Ct. Volusia County)

**Benacquisto v. Am. Express Fin. Corp.**, No.00-1980 DSD (D. Minn.)

**Bokusky v. Edina Realty, Inc.**, No. 3-92--223 (D. Minn.)

**Bonilla v. Trebol Motors Corp.**, No. 92-1795(JP) (D. P.R.)

**Bunch v. Rent-A-Center, Inc.**, No. 00-0364-CV-W-3 (W.D. Mo.)

**Burney v. Thorn Ams., Inc.**, No. 97-CV.-1596 (Wis. Cir. Ct. Racine County)

**Circle Plumbing v. Ferguson**, No. 92-036478 (Tex. Dist. Ct. Harris County)

**Cook v. LADA**, No. 94-1730 (W.D. La.)

**Crocker v. Sunshine Corp.**, No. 93-2224-H/A (W.D. Tenn.)

**Dismuke v. Edina Realty, Inc.**, No. 92-8716 (Minn. Dist. Ct. Hennepin County)

**Dyson v. Flagstar Corp.**, No. DKC93-1503 (D. Md.)

**Fed. Trade Comm'n v. Mylan Labs., Inc.**, No. 1:98-CV-3114 (TFH) No. 990276 (TFH/JMF)

**Garcia v. Houston Nw. Medical Ctr., Inc.**, No. H-94-2276, (S.D. Tex.)

**George v. BancOhio Nat'l Corp.**, No. C2-92-314 (S.D. Ohio)

**Gutterman v. Am. Airlines, Inc.**, No. 95 CH 982 (Ill. Cir. Ct. Cook County)

**Hartings v. Am. Express Co.**, No. 88-0744 (W.D. Pa.)

**Hinton v. ColorTyme Inc.**, No. 94-CV. 5198 (Wis. Cir. Ct. Milwaukee County)

**In re Compact Disc Minimum Advertised Price Antitrust Litig.**, No. 1361 (D. Me.)

**In re Toys R Us Antitrust Litig.**, No. 98 M. D. L. 1211 (NG) (JLC) (E.D. N.Y.)

**LaMontagne v. Hurley State Bank**, No. 97-30093-MAP (D. Mass.)

**Nitti v. Edina Realty, Inc.**, No. 3-92--386 (D. Minn.)

**Ridgeway v. Denny's California**, No. C93-20202 JW (PV.T) (N.D. Cal.)

**Rowland v. Goldkist, Inc.**, No. CV. 94-106 (Ala. Cir. Ct. Walker County)

**Sparano v. Southland Corp.**, No. 04 C 2098 (N.D. Ill.)

**Connecticut v. Mylan Labs., Inc.**, No. 1:98-CV-3115 (TFH) Misc. No. 990276 (TFH/JMF) (D.D.C.)

**Thomas v. Charles Schwab & Co., Inc.**, No. 66,7000 (La. Dist. Ct. Natchitoches Parish)



**CASE CITES**

## CONSUMER – CONTINUED

Toledo Fair Hous. Ctr. v. Nat'l Mut. Ins. Co., No. 93-1685 (Ohio C.P. Lucas County)

U.S. v. Am. Family Mut. Ins., No. 90-C-0759 (E.D. Wis.)

Weiss v. Washington, No. 99-2-11807-3 KNT (Wash. Super. Ct. King County)

Weissberg v. Delta Air Lines, Inc., No. 88 CH 4846 (Ill. Cir. Ct. Cook County)

Whitson v. Heilig-Meyers Furniture Co., No. CV. 94-PT-0309-E (N.D. Ala.)

Wolens v. Am. Airlines, Inc., No. 88CH 7554 (Ill. Cir. Ct. Cook County)

Woosley v. California, No. CA 000499 (Cal. Super. Ct. L.A. County)

Yoel v. N.J. Nat'l Bank, No. 94-4675 (MLP) (D. N.J.)

## EMPLOYMENT

Allen v. Thorn Ams., Inc., Case No. 97-1159-CV.-W-SOW (W.D. Mo.)

Babbitt v. Albertson's Inc., No. C92-1883 WHO (N.D. Cal.)

Berquist v. Am. Family Mut. Ins. Co., No. 96CV (Wis. Cir. Ct. St. Croix County)

Borja v. Wal-Mart Stores, Inc., No.98-CV-119 (Colo. Dist. Ct. Las Animas County)

Brunson v. City of New York, No. 94 Civ. 4507 (LAP) (S.D.N.Y.)

Forbush v. J. C. Penney Co., No. 3:90-2719-X, No. 3:92-0109-X (N.D. Tex.)

Hofer v. Capitol Am. Life Ins. Co., No. 336 (Wyo. Dist. Ct. Goshen County)

Hoffman v. Sbarro, Inc., No. 982 F. Supp. 249 (S.D.N.Y.)

Khan v. Denny's Holdings, Inc., No. BC 177254 (Cal. Super. Ct. L.A. County)

Merk v. Jewel Foods, No. 85 C 7876 (N.D. Ill.)

OCAW v. Am. Home Prods., No. 92-1238 (JP) (D.P.R.)

Stender v. Lucky Stores, Inc., No. 88-1467 (N.D. Cal.)

Taylor v. O' Charley's, No. 3-94-0489 (M.D. Tenn.)

Wooten v. Dillard's Inc., No. 99-0990-CV-W-3-ECF (W.D. Mo.)



**CASE CITES**

## INSURANCE

Barnicle v. Am. Gen. Corp., No. EC 011 865 (Cal. Super. Ct. San Diego County)

Beavers v. Am. Gen. Fin., Inc., No. CV.-94-174 (Ala. Cir. Ct. Walker County)

Blanke v. Lincoln Nat'l Life Ins. Co., No. 512,048 Div. K (La. Dist. Ct. Jefferson Parrish)

Bussie v. Allmerica, No. 97-40204 (D. Mass.)

Danko v. Erie Ins. Exch., No. 298 1991 G.D. (Pa. C.P. Fayette County)

Elkins v. Equitable Life Ins. Co. of Iowa, No. 96-296-CIV.-T-17B (M.D. Fla.)

Garst v. Franklin Life Ins. Co., No. 97-C-0074-S (N.D. Ala.)

Green v. Metro. Ins., No. 969547 (Cal. Super. Ct. S.F. County)

Hearth v. First Nat'l Life Ins. Co. of Am., No. 95-818- T-21A (M.D. Fla.)

In re Lutheran Bhd. Variable Ins. Prods. Co., No. 99-MD-1309 (PAM/JGL)

In re Metro. Life Ins. Co., No. 96-179 MDL No. 1091 (W.D. Pa.)

In re Nat'l Life Ins. Co., No. 2-97-CV.-314 (D. Vt.)

Jordan v. State Farm Life Ins., No. 97 CH 11 (Ill. Cir. Ct. McLean County)

Kolsrud v. Equitable Life Ins. Co. of Iowa, No. 320838 (Ariz. Super. Ct. Pima County)

Kreidler v. W.-S. Life Assurance Co., No. 95-CV-157 (Ohio C.P. Erie County)

Lee v. USLIFE Corp., No. 1:97CV. -55-M (W.D. Ky.)

Levin v. Am. Gen. Life Ins. Co., No. 3-98-0266 (M.D. Tenn.)

Ludwig v. Gen. Am. Life Ins. Co., No. 4:97CV.18920 CDP (E.D. Mo.)

McNeil v. Am. Gen. Life & Accident Co., No. 3-99-1157 (M.D. Tenn.)

Reyes v. Country Life Ins. Co., No. 98 CH 16502 (Ill. Cir. Ct. Cook County)

Thompson v. Metro. Life Ins. Co., No. 00 Civ. 5071 (HB) Also applies to No.00 Civ., 9068, No.01-2090 & No. 01 Civ. 5579 (U.S. Dist. Ct. S.D. N.Y.)

Woodley v. Protective Life Ins. Co., No. CV. 95-005 (Ala. Cir. Ct. Fayette County)



**CASE CITES**

## PRODUCT LIABILITY

**Ahearn v. Fibreboard, No. 6:93cv.526 (E.D. Tex.)**

**Cox v. Shell Oil Co., No. 18,844 (Tenn. Ch. Ct. Obion County)**

**Garza v. Sporting Goods Props. Inc., No. SA 93-CA-1082 (W.D. Tex.)**

**Hart v. Central Sprinkler Corp., No. BC176727 (Cal.Super. Ct. L.A. County)**

**In re Louisiana-Pacific Corp. Inner-Seal Oriented Strand Bd. Trade Practices Litig., No. C96-2409 VRW (Mellett), No. C96-2468 VRW (Stewart) No. C95-3178 VRW(Aguis)**

**In re Rio Hair Naturalizer Prods. Liab. Litig., No. 1055 (E.D. Mich.)**

**Ruff v. Parex, Inc., No. 96-CV.-500-59 (E.D.N.C.)**

**Salah v. Consolidated Indus., Inc., No. CV 738376 (Cal. Super. Ct. Santa Clara County)**

## PROPERTY

**Anderson v. Cedar Grove Composting, Inc., No. 97-2-22820-4SEA (Wash. Super. Ct. King County)**

**Black v. Fag Bearings Corp., No. CV.396-264CC (Mo. Cir. Ct. Newton County)**

**Branin v. Asarco, Inc., No. C93-5132 (B) WD (W.D. Wash.)**

**Brighton v. Cedar Grove Composting, No. 97-2-21660-5 SEA (Wash. Super. Ct. King County)**

**Campbell v. Paducah & Louisville Ry., Inc., No. 93-CI-05543 (Ky. Cir. Ct. Jefferson County)**

**Comfort v. Kimberly-Clark Corp., No. DV. -90-616 (Ala. Cir. Ct. Shelby County)**

**Vicwood v. Skagit, No. 00-2-00665-6 (Wash. Super. Ct. Thurston County)**

## BANKRUPTCY

**In re Celotex Corp., No. 90-10016-8B1, 90-10017-8B1 (M.D. Fla.)**

**In re Raytech Corp., Case No. 89-00293 (Bankr. Ct. Conn.)**

**In re the Babcock & Wilcox Co., No. 00-0558 Bankr Case No. 00-10992 Sect: "R" (5) (U.S. Dist. Ct. E.D. La.)**

**In re U.S. Brass Corp., No. 94-40823S (Bankr. Ct. E.D. Tex.)**

**In re W.R. Grace & Co., No. 01-01139 (Bankr. Ct. Del.)**



**CASE CITES**

## SECURITIES

**Eilers Furs of Rapid City v. US West Commc'ns, Inc., No. 92-5121 (D.S.D.)**

**Finucan v. Egghead, Inc., No. C93-1268WD (W.D. Wash.)**

**Global Research Analyst Settlement, (M.D. N.Y.)**

**In re Chambers Dev. Corp. Sec. Litig., No. 982 (W.D. Pa.)**

**United States Sec. Exch. Comm'n v. HealthSouth Corp., No. CV-03-J-06515S (N.D. Ala.)**

**In re Banc of America Sec. LLC, File No. 3-12591 (Secs. Exch. Comm'n)**

**United States Sec. Eexch. Comm'n v. MBIA, No. 07Civ. 658 (LLS)  (S.D.N.Y.)**

**United States Sec. Exch. Comm'n v. Fed. Nat'l Mortg. Assoc., No. 1:06-CV-00959 (RJL) (D.D.C.)**

## BELAIRE-WEST PRIVACY NOTICE MAILINGS

**Berg v. Zumiez, Inc., No. BC408410 (Cal. Super. Ct. L.A. County)**

# Exhibit 2

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| REBEKAH BAHARESTAN and JENA MCINTYRE, on behalf of themselves and all others similarly situated | ) ) ) | No. 3:2015-cv-03578 |
| | ) | CLASS ACTION |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| VENUS LABORATORIES, INC., dba EARTH FRIENDLY PRODUCTS, INC., | ) ) ) | |
| Defendant. | ) ) | |

## AFFIDAVIT OF JOHN GRUDNOWSKI IN SUPPORT OF SETTLEMENT NOTICE PLAN

I, John Grudnowski, being duly sworn and deposed, say:

1.     I am over 21 years of age and am not a party to this action.  I have personal knowledge of the facts stated herein and, if called as a witness, could and would testify competently thereto.

2.     I am Founder and CEO of FRWD Co. ("FRWD"), a digital marketing firm based in Minneapolis, Minnesota.  My firm has been asked by Dahl Administration, LLC ("Dahl") to partner in the design and execution of the Notice Plan for the settlement in the above-captioned action (the "Settlement").

3.     I have more than 18 years of experience in marketing and public relations. In the past 13 years, I have focused exclusively on digital media.  In addition to founding FRWD in 2009, I co-founded a Minneapolis-based media organization, i612, which

provides educational content to the Minneapolis/St. Paul marketing community.  I also serve as an Adjunct Professor in Digital Marketing at the University of Minnesota's Carlson School of Management.

4.     My work has involved designing, executing, and validating traditional and digital media advertising and communications campaigns.  The technologies and tools described herein are well-accepted, leading practices in the digital advertising world and are directly transferable and applicable to the execution of an effective class action notice plan.

5.     This affidavit describes advertising industry trends and practices as well as the media approach and methodology for the Notice Plan for the Settlement.

6.     FRWD and Dahl constructed the Notice Plan to be consistent with, and to take advantage of, how individuals consume media and locate information today. Specifically, we are leveraging digital components including desktop web banners, mobile web banners, and social media, as described in the Affidavit of Jeffrey D. Dahl. Leveraging how today's consumer accesses media enables us to construct a more robust, action-oriented notification plan.  In addition, as we constructed the Notice Plan, we focused on demographic information provided by Defendants specific to their customer base.  This information enables us to better target our Notice Plan and reach potential Class Members.  Specifically, our Notice efforts will target a nationwide audience of 15.08 million buyers of "green" or "natural" household items defined to include surface cleaners & laundry detergent, and more intensively target 8.5 million purchasers of green/natural products at Walmart and club stores (e.g., Sam's Club, Costco, BJ's

Wholesale Club). These audiences were selected based on demographic information, detailed audience purchase information provided by Nielsen Catalina Solution as well as through research gained from Venus Laboratories staff, as well as through tools provided by Gfk MRI, comScore and Google. Our Notice Plan will focus on the 15.08 million green/natural product purchasers and will even more intensively target 8.5 million purchasers of green/natural products at WalMart and club stores as the vast majority of buyers purchased through Walmart and club stores.

7.    Between the online components of the Notice Plan, our tools indicate we will produce over 66 million impressions that are targeted to reach an audience with the characteristics of the Settlement Class. I estimate that the Notice Plan will effectively reach 75% of the projected 15.08 million buyers of green/natural household items at a projected frequency of 2.0x-2.5x, and will provide an *additional* 1.0x-1.5x impressions to projected buyers of green/natural products at Walmart and club stores to further focus on the members of the Settlement Class.

## **FRWD BACKGROUND**

8.    Over the past six years, my company has planned, managed, executed, and reported on thousands of individual digital & traditional (TV, Print, Radio, Out of Home (OOH)) executions for some of the world's largest brand advertisers and business-to-business organizations.   FRWD clients have included American Express, L'Oreal, Proctor & Gamble, Best Buy, Disney, General Mills, Colgate, and 3M.

9.    "Digital media executions" are advertising, communications, or marketing activities directed at the online audience.  Digital media executions can be a single event

or a more coordinated, long-term campaign, and are done using online advertising tactics such as paid search, display, video, social media, and other forms of paid media.  Each of these approaches is designed to reach a defined target audience in the online spaces where people increasingly seek and obtain information. In executing this Notice Plan, FRWD will employ display tactics—specifically, placing banner advertisements on specific websites—to reach our intended audience.

10.     In my past six years as CEO of FRWD, and in my previous twelve years in marketing, I have overseen all aspects of digital & traditional media executions, ranging from strategic and creative design, to planning, to identification of technology partners, to integration of technology, to media buying, to optimizations of media executions. I have personally managed more than $120 million in digital and traditional media executions.  I have been hired by Fortune 500 clients to train their internal teams on digital media technology and management.  I have hired and trained more than 100 employees and personally integrated third-party, industry-leading technologies such as DoubleClick DFA, comScore, Terminal One, Nielsen and others which enable greater control of reach/frequency management, audience targeting, and verification, all of which will be applied in this case to implement an effective class action Notice Plan.  In addition to digital media executions, I have personally overseen advertising programs that included digital and print as well as and digital and television.  In 1999-2000, I personally managed newspaper and Outdoor advertising placements for Northwest Airlines.  This experience at all stages of a media campaign, from planning through execution and

training, provides a solid foundation of experience that informs my work on this Notice Plan.

11.    As part of FRWD's execution of multimedia campaigns, we have planned, designed, built, placed, and reported on thousands of individual web-based creative assets such as banner ads, websites, keyword search ads, Facebook landing pages, and other forms of content development.

12.    Areas of special expertise and focus for FRWD include local (city and state level) and national advertising focused on achieving specific reach and frequency targets. We use all of the digital tactics listed above.  Over the past six years, FRWD has completed more than 1,000 individual digital media campaigns focused on a specific locale (geo-footprint), combined with audience targeting and very specific reach and frequency goals.  We have done so for brands including Cheerios, Wheaties, Yoplait, Covergirl, Olay, Charmin, and Colgate.

## ADVERTISING TRENDS

13.    In the past decade, and specifically within the past few years, consumers have significantly shifted their consumption of media from print-based consumption to online-based consumption.   In response to this consumer shift in consumption, advertisers have shifted their spending from print-based to online-based advertising.

14.    The major driver behind these shifts is technology and its impact on consumers' time with media each day.  As reported by eMarketer,[1] U.S. adults in 2008

---

[1] eMarketer aggregates more than 4,000 sources of digital marketing and media research and publishes objective analysis of internet market trends.  For more than a decade,

spent a combined 63 minutes every day reading magazines and newspapers.[2]  In 2011, that number had declined to 44 minutes per day, a decline in usage of 30%. In 2015, that number has declined to 21 minutes, a decline of 109% in the last 4 years alone.[3] During that same time period (from 2011 to 2015), daily time spent on digital media (online and mobile) has increased from 232 minutes per day to 338 minutes per day, a 50% increase. Thus, the average U.S. adult in 2015 now spends 16 times more time each day consuming media and information online than reading newspapers and magazines.

**Average Time Spent per Day with Major Media by US Adults, 2011-2015**
hrs:mins and CAGR

| | 2011 | 2012 | 2013 | 2014 | 2015 | CAGR (2011-2015) |
|---|---|---|---|---|---|---|
| **Digital** | 3:40 | 4:20 | 4:51 | 5:15 | 5:38 | 11.4% |
| —Desktop/laptop* | 2:33 | 2:27 | 2:19 | 2:22 | 2:22 | -1.8% |
| —Mobile (nonvoice) | 0:48 | 1:35 | 2:16 | 2:34 | 2:51 | 37.2% |
| —Other connected devices | 0:18 | 0:18 | 0:17 | 0:19 | 0:25 | 7.8% |
| **TV\*\*** | 4:34 | 4:38 | 4:31 | 4:22 | 4:15 | -1.8% |
| **Radio\*\*** | 1:34 | 1:32 | 1:30 | 1:28 | 1:27 | -2.0% |
| **Print\*\*** | 0:44 | 0:38 | 0:32 | 0:26 | 0:21 | -17.0% |
| —Magazines | 0:18 | 0:16 | 0:14 | 0:12 | 0:10 | -13.5% |
| —Newspapers | 0:26 | 0:22 | 0:18 | 0:14 | 0:11 | -19.8% |
| **Other\*\*** | 0:39 | 0:38 | 0:31 | 0:26 | 0:24 | -11.7% |
| **Total** | 11:11 | 11:46 | 11:55 | 11:57 | 12:04 | 1.9% |

Note: ages 18+; time spent with each medium includes all time spent with that medium, regardless of multitasking; for example, 1 hour of multitasking on desktop/laptop while watching TV is counted as 1 hour for TV and 1 hour for desktop/laptop; *includes all internet activities on desktop and laptop computers; **excludes digital
Source: eMarketer, April 2015

188127                                                                www.eMarketer.com

15.    The data on the total percentage of the average U.S. adult's interaction with media are similar.  Time online (mobile and traditional Internet) in 2010 made up

---

leading brands and agencies have relied on eMarketer as a recognized resource for data, analysis, and insights on digital marketing, media, and commerce.  eMarketer clients include Google, General Motors, and Kimberly Clark.  FRWD is also a client.
[2] eMarketer, Dec., 2011.
[3] eMarketer, April, 2015.

33.3% of the average person's total media consumption each day. In 2015 time online is now 44.6%. In 2010, time with newspapers and magazines combined for 8.2% of the average person's consumption, down from 10.8% in 2008.[4] In 2015, time spent with newspapers and magazines is at 1.7%.

16.     This shift in consumer consumption of media has led to widespread adoption of online advertising and a concurrent decline in reliance on print media. Industry-wide, this impact is evident from another eMarketer study.  In the year 2000, advertisers spent a collective $72.68 billion on magazine and newspaper advertising.[5]  In 2005, this number increased to $74.14 billion.  It has since been on a significant and steady decline, totaling $51.54 billion in 2009 and projecting to $31.6 billion in 2015.[6]

17.     Unsurprisingly, advertisers have shifted their expenditures to meet consumers where they are: online.  In 2000, advertisers spent $6.0 billion online.  In 2005, that number increased to $10.0 billion.  In 2009, the amount dedicated to online advertising reached $20.3 billion.[7]  In 2012, the amount dedicated to online advertising reached $36.8 billion and is projected to reach $52.5 billion in 2015.[8]

---

[4] *Id.*
[5] ZenithOptimedia, Apr. 7, 2010; provided to eMarketer by StarcomMediaVest Group, June 1, 2010.
[6] eMarketer, April, 2015.
[7] Internet Advertising Bureau Revenue Report, http://www.iab.net/AdRevenueReport.
[8] eMarketer ,April, 2015.

**US Total Media Ad Spending, by Media, 2011-2017**
*billions*

| | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 |
|---|---|---|---|---|---|---|---|
| TV | $60.7 | $64.5 | $66.4 | $68.5 | $70.0 | $73.1 | $75.3 |
| Digital | $32.0 | $36.8 | $42.3 | $47.6 | $52.5 | $57.3 | $61.4 |
| —Mobile | $1.6 | $4.4 | $8.5 | $13.1 | $18.6 | $24.7 | $31.1 |
| Print | $35.8 | $34.1 | $32.9 | $32.2 | $31.6 | $31.3 | $31.2 |
| —Newspapers* | $20.7 | $18.9 | $17.8 | $17.1 | $16.6 | $16.2 | $16.1 |
| —Magazines* | $15.2 | $15.2 | $15.1 | $15.1 | $15.1 | $15.1 | $15.2 |
| Radio** | $15.2 | $15.4 | $15.6 | $15.9 | $16.0 | $16.0 | $16.1 |
| Outdoor | $6.4 | $6.7 | $7.0 | $7.2 | $7.4 | $7.6 | $7.8 |
| Directories* | $8.2 | $7.5 | $6.9 | $6.4 | $5.9 | $5.5 | $5.3 |
| Total | $158.3 | $165.0 | $171.0 | $177.8 | $183.4 | $190.9 | $197.0 |

*Note: eMarketer benchmarks its US newspaper ad spending projections against the NAA, for which the last full year measured was 2012, and its US outdoor ad spending projections against the OAAA, for which the last full year measured was 2011; numbers may not add up to total due to rounding; *print only; **excludes off-air radio & digital*
*Source: eMarketer, Aug 2013*

161679                                                    www.**eMarketer**.com

18.     I have personally participated in this evolution from print to digital advertising and understand advantages that digital media tools offer.  It is my opinion that using digital advertising in this Notice Plan offers an effective route to reach Settlement Class Members and inform them about the Settlement.

## DEFINITION OF TARGET: AUDIENCE TARGETING AND VERIFICATION

19.     Online advertising affords multiple options to reach and verify that the Settlement Class Members were exposed to the Notice.  In the course of targeting, FRWD worked with Dahl to balance targeting and efficiency in reaching Settlement Class Members most effectively.

20.     We have the ability to target individuals according to specific demographic and psychographic (lifestyle and interest) characteristics.  This is done by focusing our notification advertising on specific websites (domains) which index highly against our core target.  As indicated in Paragraph 6 above, this notification plan is focused primarily on a nationwide audience of green/natural household product buyers.  Leveraging industry leading digital tools such as comScore and Google, FRWD has selected

hundreds of websites on which our audience visits at a rate of 50% greater than the typical Internet population.  These custom lists are a best practice in consumer advertising and will further strengthen our ability to provide notice to Settlement Class Members in this plan.   In this case, control of the websites that show the Notice, and where the Notice banner will appear on those websites, provides a higher likelihood of successfully exposing Settlement Class Members to the Notice.

21.     A full list of specific website domains on our list of potential targets is included as Exhibit 4 to the Affidavit of Jeffrey D. Dahl.

22.     In addition to selecting specific websites, we are leveraging Facebook Interest Targeting[9] which provides the opportunity to reach Settlement Class Members based on information they have added to their Facebook timelines.  This considers information such as the Facebook Pages they like, apps they use, and other information they have added to their timelines.

## CONNECTION TO THE NOTICE WEBSITE

23.     All digital communication in the form of web-based banners, keyword search and content syndication will be connected to our notice website.  Social media (Facebook) notice ad responses will be connected to our notice website. This will provide the ability to connect Settlement Class Members directly to online communication providing greater detail on this Settlement Notice.   Specifically, our banner advertisements will list the Settlement website, and users who click on our banner advertisements will be routed directly to the Settlement website, where they will find

---

[9] Facebook, https://www.facebook.com/help/131834970288134/.

information in greater detail.  This combination of reaching our audience and connecting to greater detail via the Settlement website provides us with a comprehensive approach to reaching Settlement Class Members.

24.    In addition, FRWD will leverage Google Analytics [10] ("GA") on the Settlement website.  By using GA, FRWD can showcase reporting on the engagement of the Settlement Class Members on our Settlement website.  Specifically, GA will measure the most highly trafficked content and the total number of Settlement Class Members performing specific actions, such as the number of visitors, the number of pages viewed, the time spent, and the number of documents downloaded by type.

## **CONCLUSION**

25.    Based on my experience in designing and executing digital outreach and marketing plans, as well as best practices in the digital marketing industry, it is my opinion that the digital media component of the Notice Plan will effectively reach Settlement Class Members.

---

[10] Google Analytics is a service offered by Google that generates detailed statistics about the visitors to a website.  GA can track visitors from all referring websites, including search engines, display advertising, pay-per-click networks, email marketing, and other traffic sources.

I declare under penalty of perjury, that the foregoing is true and correct to the best of my knowledge. Executed this 25th day of September, 2015 in Minneapolis, Minnesota.


John Grudnowski
CEO
FRWD Co.


Sworn to and Subscribed before me
this 25th day of September, 2015.

Notary Public

NANCY A. BAKER
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2017

# Exhibit 3

**Women's lifestyle Channel**

101cookbooks.com
247moms.com
5dollardinners.com
9jafoodie.com
a-crock-cook.com
addapinch.com
afamilyfeast.com
afewshortcuts.com
againstallgrain.com
alanskitchen.com
aliciasrecipes.com
allcookingandrecipes.com
alldayidreamaboutfood.com
allmenus.com
allrecipes.com
allrecipestried.com
amandascookin.com
amandathevirtuouswife.com
amazingrecipez.com
amazingribs.com
ambitiouskitchen.com
ameessavorydish.com
anniesrecipes.com
aroundmyfamilytable.com
backtoherroots.com
bbq-brethren.com
beautyandbedlam.com
befoodsmart.com
bestfondue.com
betterrecipes.com
bhg.com
biggirlssmallkitchen.com
bigredkitchen.com
blessthismessplease.com
bonappetit.com
budgetbytes.com
budgetgourmetmom.com
budgetsavvydiva.com
bunsinmyoven.com
cafemom.com
cdkitchen.com
celebrating-family.com

chaosinthekitchen.com
cheapcooking.com
cheftalk.com
chow.com
christinacooks.com
christinesrecipes.com
closetcooking.com
collegerecipes.com
cookbook-recipes.org
cookeatdelicious.com
cookeatshare.com
cookfoodeat.com
cookingcache.com
cookingchanneltv.com
cookingclub.com
cookinglight.com
cookingrecipecentral.com
cookpad.com
cooks.com
cooksinfo.com
cooksrecipes.com
cookyourfood.org
coolmompicks.com
crazyfood.net
creativekidsnacks.com
crockingirls.com
crockpotladies.com
crystalandcomp.com
culinaryadventuresinthekitchen.com
cupcakerecipes.com
cutefoodforkids.com
damndelicious.net
daydreamkitchen.com
dedemed.com
deliaonline.com
delish.com
delishmish.com
detoxinista.com
deviledeggs.com
dineanddish.net
dinerestaurantcom.com
dinnersdishesanddesserts.com
discusscooking.com

dishtip.com
divascancook.com
diypinterest.com
dwellonjoy.com
easy-cookbook-recipes.com
easy-french-food.com
eatathomecooks.com
eatbetteramerica.com
eatbydate.com
eatdrinkbetter.com
eatdrinkeat.com
eat-drink-love.com
eater.com
eatgood4life.com
eating-made-easy.com
eatingwell.com
eatliverun.com
eatsalem.com
eat-yourself-skinny.com
eatyourworld.com
ellenskitchen.com
Emeril.com
endlessappetizers.com
epicmealtime.com
epicurious.com
fabulousfoods.com
familycookbookproject.com
familycorner.com
familyfreshmeals.com
familyoven.com
fatfreevegan.com
fauziaskitchenfun.com
feastie.com
finecooking.com
finedinings.com
fingerlickinrecipes.com
food-4tots.com
foodandwine.com
foodbanter.com
Foodbuzz.com
foodbycountry.com
foodchannel.com
food.com

foodepix.com
foodgawker.com
foodieportal.com
foodista.com
foodloveswriting.com
foodlve.com
foodndrecipe.com
foodnetwork.com
foodnetworkfans.com
foodnetworkgossip.com
foodonthetable.com
foodpantries.org
foodpicstime.com
foodrandom.com
foodrepublic.com
foodsubs.com
foodterms.com
foodvannet.com
foodvee.com
fortheloveofcooking.net
fourmarrsonevenus.com
freefood.org
funandfoodcafe.com
gastronomyblog.com
gimmesomeoven.com
girlmakesfood.com
globalgourmet.com
goodrecipesonline.com
GOURMANDIA.COM
gourmetsleuth.com
greatpartyrecipes.com
great-salsa.com
grocerybudget101.com
grocerysmarts.com
grouprecipes.com
gwens-nest.com
halfhourmeals.com
healthierhabits.net
healthy-delicious.com
healthyfoodhouse.com
heandsheeatclean.com
heathersdish.com
helpwithcooking.com

hillbillyhousewife.com
holycowvegan.net
homemadesimple.com
howdoesshe.com
howsweeteats.com
hungryhealthyhappy.com
hungrymonster.com
ice-cream-recipes.com
ichef.com
Ifood.tv
inmamaskitchen.com
innatthecrossroads.com
iowagirleats.com
jamieoliver.com
jdaniel4smom.com
jeanetteshealthyliving.com
justapinch.com
justfruitrecipes.com
justgetoffyourbuttandbake.com
justherfood.com
justvegetablerecipes.com
katheats.com
khanapakana.com
kidskubby.com
kidsstuffworld.com
kitchendaily.com
kitchenmeetsgirl.com
kitchentreaty.com
kraftrecipes.com
kuali.com
laurainthekitchen.com
lifesambrosia.com
lilluna.com
lisasdinnertimedish.com
livemoredaily.com
living-foods.com
lorisculinarycreations.com
lovefoodies.com
lovingmynest.com
lynnskitchenadventures.com
makedinnereasy.com
mamaslebanesekitchen.com
manjulaskitchen.com

mealplanning101.com
mealplanningmagic.com
mealsforyou.com
mealtrain.com
melskitchencafe.com
midwestliving.com
minimalistbaker.com
modernmom.com
modernparentsmessykids.com
momsconfession.com
monthlymealplanner.com
mostlyhomemademom.com
MRFOOD.COM
myfridgefood.com
myhealthydish.com
myhoneysplace.com
myrecipemagic.com
myrecipes.com
mywebgrocer.com
nancyskitchen.com
navywifecook.com
nomnompaleo.com
noobcook.com
ochef.com
onceuponachef.com
pachakam.com
panlasangpinoy.com
partypinching.com
party-recipes-and-ideas.com
petitchef.com
plainchicken.com
pocketchangegourmet.com
portuguesediner.com
preventionrd.com
quick-and-easy-dinner.com
rachaelraymag.com
rachaelrayshow.com
rawfoodsupport.com
realcajunrecipes.com
realmomkitchen.com
realsimple.com
recipage.com
recipe4all.com

recipe4living.com
recipebest.com
recipebyphoto.com
recipechart.com
recipecircus.com
recipe.com
recipegirl.com
recipehub.com
recipekey.com
recipelink.com
reciperecommendations.com
reciperehab.com
recipes4cakes.com
RECIPESECRETS.NET
recipesgawker.com
recipesource.com
recipetips.com
RELISH.COM
ricardocuisine.com
roadfood.com
runningtothekitchen.com
saharrestaurant.com
sandralee.com
sanjeevkapoor.com
SAVEUR.COM
savorysweetlife.com
secondchancetodream.com
semihomemade.com
seriouseats.com
shrinkingkitchen.com
simplyrecipes.com
sixsistersstuff.com
skinnymom.com
skinnyms.com
skinnytaste.com
slenderkitchen.com
slowandsimple.com
smilecooking.com
snack-girl.com
sortedfood.com
southernliving.com
spendwithpennies.com
staceysnacksonline.com

stacymakescents.com
supercook.com
superhealthykids.com
surefoodsliving.com
susieqtpiescafe.com
sweetiepiess.com
tablefeast.com
tammysrecipes.com
tasteofhome.com
tastespotting.com
tastingpoland.com
tastytreat.org
texascooking.com
thatsmyhome.com
theendlessmeal.com
thefreshloaf.com
thegraciouspantry.com
thehungrymouse.com
the-italian-food.com
THEKITCHN.COM
themarathonmom.com
themediterraneankitchen.org
thenibble.com
therecipecritic.com
theslowroasteditalian.com
theworldwidegourmet.com
thrivinghomeblog.com
titlisbusykitchen.com
topdinnerrecipes.net
topinspired.com
topsecretrecipes.com
traditional-foods.com
twopeasandtheirpod.com
vahrehvah.com
veryculinary.com
vietnamese-recipes.com
wearychef.com
webekitchen.com
weekly-dinner-ideas.com
wellcooked.net
whats4eats.com
whatscookingamerica.com
whatsfordinner.net

womenworldblog.com
yesiwantcake.com
yummly.com
yummyhealthyeasy.com
yumsugar.com

## comScore 2000 (Reach Channel)

1-800-FLOWERS.COM
9NEWS.COM
AAA.COM
AARP.ORG
ABC.COM
ABC7CHICAGO.COM
ABCNEWS.COM
ABOUT.COM
ACADEMY.COM
ACCESSHOLLYWOOD.COM
ACCUWEATHER.COM
ACER.COM
ACESHOWBIZ.COM
ACROBAT.COM
ACTIVE.COM
ACTSTUDENT.ORG
ADDICTINGGAMES.COM
ADDICTIVETIPS.COM
ADSUPPLY.COM
ADULTSWIM.COM
AE.COM
AETV.COM
AGAME.COM
AIM.COM
AJC.COM
AL.COM
ALIBABA.COM
ALLEGIANTAIR.COM
ALLMENUS.COM
ALLMUSIC.COM
ALLPOSTERS.COM
ALLRECIPES.COM
ALLVOICES.COM
ALOT.COM
ALTERNET.ORG
ALWAYSDOWNLOADS.COM

AMAZON.CO.UK
AMAZON.COM
AMCTHEATRES.COM
AMCTV.COM
AMD.COM
AMERICANFAMILY.COM
AMERICANGREETINGS.COM
AMERICANIDOL.COM
AMERICANLISTED.COM
AMERICANPROFILE.COM
AMERICANTOWNS.COM
ANCESTRY.COM
ANDERSONCOOPER.COM
ANDROIDCENTRAL.COM
ANDROIDFORUMS.COM
ANGIESLIST.COM
ANGRYBIRDS.COM
ANNUALCREDITREPORT.COM
ANSWERBAG.COM
ANSWERS.COM
AOL.COM
AOLANSWERS.COM
AP.ORG
APARTMENTFINDER.COM
APARTMENTGUIDE.COM
APARTMENTHOMELIVING.COM
APARTMENTRATINGS.COM
APARTMENTS.COM
APPLES4THETEACHER.COM
AQ.COM
ARCADEWEB.COM
ARCHIVE.ORG
ARCHIVES.COM
ARCOT.COM
AREACONNECT.COM
ARMORGAMES.COM
ARMY.MIL
ARSTECHNICA.COM
ART.COM
ARTICLESBASE.COM
ASK.CO.UK
ASK.COM
ASKMEFAST.COM

ASKMEHELPDESK.COM
ASKMEN.COM
ASOS.COM
ASSOCIATEDCONTENT.COM
ASUS.COM
ATT.COM
ATT.NET
ATTRAKT.COM
AUDIBLE.COM
AUTHORIZE.NET
AUTO-PRICE-FINDER.COM
AUTOANYTHING.COM
AUTOBLOG.COM
AUTODESK.COM
AUTOPARTSWAREHOUSE.COM
AUTOTRADER.COM
AUTOZONE.COM
AVAST.COM
AVCLUB.COM
AVERY.COM
AVG.COM
AVIS.COM
AVON.COM
AVS4YOU.COM
AVVO.COM
AZCENTRAL.COM
AZLYRICS.COM
BABBLE.COM
BABIESRUS.COM
BABYCENTER.COM
BABYLON.COM
BACKCOUNTRY.COM
BACKPAGE.COM
BADOO.COM
BAIDU.COM
BALTIMORESUN.COM
BANANAREPUBLIC.COM
BANDCAMP.COM
BANKRATE.COM
BARBIE.COM
BARNESANDNOBLE.COM
BARRONS.COM
BARSTOOLSPORTS.COM

BASEBALL-REFERENCE.COM
BASSPRO.COM
BATHANDBODYWORKS.COM
BBB.ORG
BBC.CO.UK
BBT.COM
BEACHBODY.COM
BEAUTYOFTHEWEB.COM
BECOME.COM
BEDBATHANDBEYOND.COM
BEEMP3.COM
BEESQ.NET
BEHANCE.NET
BELK.COM
BERRIES.COM
BESO.COM
BEST-DEAL.COM
BESTBUY.COM
BESTWESTERN.COM
BET.COM
BETTYCROCKER.COM
BHG.COM
BHPHOTOVIDEO.COM
BIBLE.CC
BIBLEGATEWAY.COM
BIGCARTEL.COM
BIGFISHGAMES.COM
BIGLOTS.COM
BILLBOARD.COM
BILLMATRIX.COM
BILLMELATER.COM
BING.COM
BIOGRAPHY.COM
BITBERRYUPDATES.COM
BITRHYMES.COM
BITSHARE.COM
BITSNOOP.COM
BITTORRENT.COM
BIZJOURNALS.COM
BIZRATE.COM
BJS.COM
BKSTR.COM
BLACKBERRY.COM

BLACKBOARD.COM

BLACKPLANET.COM

BLASTRO.COM

BLEACHERREPORT.COM

BLEKKO.COM

BLINKX.COM

BLISS.COM

BLIZZARD.COM

BLOCKBUSTER.COM

BLOCKSHOPPER.COM

BLOGGER.COM

BLOGS.COM

BLOGSPOT.CA

BLOGSPOT.CO.UK

BLOGSPOT.IN

BLOGTALKRADIO.COM

BLOOMBERG.COM

BLOOMINGDALES.COM

BLS.GOV

BLUEHOST.COM

BLUEMOUNTAIN.COM

BLUESHELLGAMES.COM

BOARDREADER.COM

BOATTRADER.COM

BODYBUILDING.COM

BOINGBOING.NET

BOOKING.COM

BOOKINGBUDDY.COM

BOOKIT.COM

BOOKRAGS.COM

BOOSTMOBILE.COM

BORED.COM

BOSSIP.COM

BOSTON.COM

BOSTONGLOBE.COM

BOSTONHERALD.COM

BOX.COM

BOX10.COM

BOXOFFICEMOJO.COM

BRADFORDEXCHANGE.COM

BRADSDEALS.COM

BRAINYQUOTE.COM

BRASSRING.COM

BRAVOTV.COM

BREAK.COM

BREITBART.COM

BRIGHT.COM

BRIGHTHUB.COM

BRITANNICA.COM

BROTHERSOFT.COM

BUDGET.COM

BUFFALO-GGN.NET

BULBAGARDEN.NET

BUSINESSINSIDER.COM

BUSINESSWEEK.COM

BUSTEDCOVERAGE.COM

BUY.COM

BUYATOYOTA.COM

BUYCHEAPR.COM

BUZZFEED.COM

BUZZLE.COM

BUZZYA.COM

BYINTER.NET

CA.GOV

CABELAS.COM

CAFEMOM.COM

CAFEPRESS.COM

CALIBEX.COM

CALLOFDUTY.COM

CALOTTERY.COM

CAMPUSCORNER.COM

CAMPUSEXPLORER.COM

CAPITALONE.COM

CARANDDRIVER.COM

CARDOMAIN.COM

CARE.COM

CARE2.COM

CAREERBUILDER.COM

CARFAX.COM

CARGURUS.COM

CARIBBEANNEWSNOW.COM

CARID.COM

CARING.COM

CARINGBRIDGE.ORG

CARMAX.COM

CARNIVAL.COM

CARS.COM

CARSDIRECT.COM

CARSFORSALE.COM

CARTOONNETWORK.COM

CARTOWN.COM

CBC.CA

CBS.COM

CBSLOCAL.COM

CBSNEWS.COM

CBSSPORTS.COM

CCBILL.COM

CDC.GOV

CDUNIVERSE.COM

CELEBRITY-GOSSIP.NET

CELEBSPIN.COM

CELEBUZZ.COM

CENSUS.GOV

CENTURY21.COM

CENTURYLINK.COM

CENTURYLINK.NET

CHACHA.COM

CHANGE.ORG

CHARLOTTEOBSERVER.COM

CHARLOTTERUSSE.COM

CHARTER.COM

CHARTER.NET

CHASE.COM

CHATROULETTE.COM

CHEAPFLIGHTS.COM

CHEAPOAIR.COM

CHEAPTICKETS.COM

CHEATCC.COM

CHEEZBURGER.COM

CHEGG.COM

CHEVROLET.COM

CHICAGOTRIBUNE.COM

CHILDRENSPLACE.COM

CHINAFLIX.COM

CHOICEHOTELS.COM

CHOW.COM

CHRISTIANBOOK.COM

CHRISTIANPOST.COM

CHRON.COM

CIGNA.COM
CINEMABLEND.COM
CINEMARK.COM
CIRCLEOFMOMS.COM
CISCO.COM
CITI.COM
CITICARDS.COM
CITIZENSBANK.COM
CITRIXONLINE.COM
CITY-DATA.COM
CITYSEARCH.COM
CLARIDADPUERTORICO.COM
CLASSESUSA.COM
CLASSIFIEDADS.COM
CLASSMATES.COM
CLEVELAND.COM
CLIFFSNOTES.COM
CLIPARTOF.COM
CLUBPENGUIN.COM
CMT.COM
CNBC.COM
CNET.COM
CNETTV.COM
CNN.COM
CNNMONEY.COM
CNSNEWS.COM
COACH.COM
COLDWATERCREEK.COM
COLDWELLBANKER.COM
COLLEGEBOARD.COM
COLLEGECONFIDENTIAL.COM
COLLEGEHUMOR.COM
COLLIDER.COM
COMCAST.COM
COMCAST.NET
COMEDYCENTRAL.COM
COMENITY.NET
COMICBOOKMOVIE.COM
COMICVINE.COM
COMPLEX.COM
COMPUTERWORLD.COM
COMPUTING.NET
CONDUIT.COM

CONSTANTCONTACT.COM
CONSUMERAUTOSOURCE.COM
CONSUMERREPORTS.ORG
CONSUMERSEARCH.COM
CONTACTMUSIC.COM
CONTENKO.COM
CONVERGENTCARE.COM
CONVIO.COM
COOKINGLIGHT.COM
COOKS.COM
COOLMATH-GAMES.COM
COOLMATH.COM
COOLMATH4KIDS.COM
COOLROM.COM
COREL.COM
CORNELL.EDU
CORPORATIONWIKI.COM
CORTERA.COM
COSMOPOLITAN.COM
COSTCO.COM
COUPONALERT.COM
COUPONS.COM
COWBOYLYRICS.COM
COX.COM
COX.NET
CRACKED.COM
CRACKLE.COM
CRAIGSLIST.ORG
CRATEANDBARREL.COM
CRAVEONLINE.COM
CREDITKARMA.COM
CREDITONEBANK.COM
CREDITREPORT.COM
CRUNCHYROLL.COM
CRUTCHFIELD.COM
CSMONITOR.COM
CUNY.EDU
CUSTHELP.COM
CUSTOMINK.COM
CVS.COM
CWTV.COM
CYCLETRADER.COM
DAILYCALLER.COM

DAILYFINANCE.COM
DAILYGLOW.COM
DAILYKOS.COM
DAILYMAIL.CO.UK
DAILYMOTION.COM
DAILYRX.COM
DALLASNEWS.COM
DAVESGARDEN.COM
DAVIDSBRIDAL.COM
DEADLINE.COM
DEADSPIN.COM
DEALTIME.COM
DEGREELINK.NET
DELISH.COM
DELL.COM
DELTA.COM
DENVERPOST.COM
DEPOSITFILES.COM
DETNEWS.COM
DEVRY.EDU
DEXKNOWS.COM
DHGATE.COM
DICKSSPORTINGGOODS.COM
DICTIONARY.COM
DIGG.COM
DIGITALTRENDS.COM
DILLARDS.COM
DIRECTORSLIVE.COM
DIRECTV.COM
DISCOVERBING.COM
DISCOVERCARD.COM
DISCOVERMAGAZINE.COM
DISCOVERY.COM
DISCOVERYEDUCATION.COM
DISH.COM
DIVINECAROLINE.COM
DIYFASHION.COM
DIYNETWORK.COM
DMV.ORG
DOCSTOC.COM
DOCTOROZ.COM
DOGBREEDINFO.COM
DOITYOURSELF.COM

DOMAINTOOLS.COM
DOMINOS.COM
DRAGONETERNITY.COM
DREAMJOBBER.COM
DREAMSTIME.COM
DRUDGEREPORT.COM
DRUGSTORE.COM
DSWSHOES.COM
DUMMIES.COM
DVDVIDEOSOFT.COM
E-REWARDS.COM
EA.COM
EARTHLINK.NET
EASTBAY.COM
EASYBIB.COM
EATINGWELL.COM
EBAUMSWORLD.COM
EBAY.CO.UK
EBAY.COM
EBAYCLASSIFIEDS.COM
EBAYSTORES.COM
ECOLLEGE.COM
ECONOMIST.COM
ECRATER.COM
EDIBLEARRANGEMENTS.COM
EDLINE.NET
EDMODO.COM
EDMUNDS.COM
EDUCATION-PORTAL.COM
EDUCATION.COM
EDUCATIONASSISTANCE.ORG
EDUCATIONCONNECTION.COM
EGOTASTIC.COM
EHARMONY.COM
EHEALTHFORUM.COM
EHOW.COM
ELEXPRESSO.COM
ELLE.COM
ELNUEVODIA.COM
ELNUEVODIA.COM
ELYRICS.NET
EMEDICINEHEALTH.COM
EMEDTV.COM

EMPOWHER.COM
ENCYCLOPEDIA.COM
ENGADGET.COM
ENOTES.COM
ENTERPRISE.COM
ENTREPRENEUR.COM
EONLINE.COM
EPA.GOV
EPICURIOUS.COM
EPINIONS.COM
EPRIZE.NET
EQUIFAX.COM
ESPN.COM
ESPNRADIO.COM
ESPNSOCCERNET.COM
ESQUIRE.COM
ESSENCE.COM
ESSORTMENT.COM
ETEAMZ.COM
ETONLINE.COM
ETRADE.COM
ETSY.COM
EVENTBRITE.COM
EVENTFUL.COM
EVENUE.NET
EVERYDAYHEALTH.COM
EVITE.COM
EW.COM
EXAMINER.COM
EXPEDIA.COM
EXPERIAN.COM
EXPERIENCEPROJECT.COM
EXPOSAY.COM
EXPRESS.COM
EZINEARTICLES.COM
FAB.COM
FACEBOOK.COM
FAILBLOG.ORG
FAMILY.COM
FAMILYBUILDER.COM
FAMOUSFOOTWEAR.COM
FANDANGO.COM
FANFICTION.NET

FANNATION.COM
FANPOP.COM
FANTAGE.COM
FAQS.ORG
FARK.COM
FARMVILLE.COM
FASTCOMPANY.COM
FATWALLET.COM
FAVIM.COM
FC2.COM
FEDEX.COM
FIDELITY.COM
FILE.ORG
FILEBOX.COM
FILECROP.COM
FILEFACTORY.COM
FILEHIPPO.COM
FILESERVE.COM
FILESONIC.COM
FILESTUBE.COM
FILMANNEX.COM
FINANCIAL-NET.COM
FINDARTICLES.COM
FINDLAW.COM
FINDTHEBEST.COM
FINDTHERIGHTJOB.COM
FINECOMB.COM
FINGERHUT.COM
FINISHLINE.COM
FIRESTONECOMPLETEAUTOCARE.COM
FIRSTROWSPORTS.EU
FITNESSMAGAZINE.COM
FITSUGAR.COM
FIXYA.COM
FLALOTTERY.COM
FLICKR.COM
FLICKRIVER.COM
FLIXSTER.COM
FLY.COM
FODORS.COM
FOOD.COM
FOODANDWINE.COM
FOODNETWORK.COM

FOOL.COM
FOOTLOCKER.COM
FORBES.COM
FORCE.COM
FORD.COM
FOREVER21.COM
FORLOCATIONS.COM
FORMSPRING.ME
FORUMOTION.COM
FOTOSEARCH.COM
FOURSQUARE.COM
FOX.COM
FOXBUSINESS.COM
FOXNEWS.COM
FOXSPORTS.COM
FOXSPORTSFLORIDA.COM
FOXSPORTSSOUTHWEST.COM
FOXSPORTSWEST.COM
FOXSPORTSWISCONSIN.COM
FREECAUSE.COM
FREECREDITREPORT.COM
FREECREDITSCORE.COM
FREEFLYS.COM
FREEONLINEGAMES.COM
FREESHIPPING.COM
FROMMERS.COM
FRONTIER.COM
FROSTWIRE.COM
FRYS.COM
FT.COM
FTC.GOV
FTD.COM
FULLSAIL.EDU
FUNBRAIN.COM
FUNNYJUNK.COM
FUNNYORDIE.COM
FUNTRIVIA.COM
G4TV.COM
GADLING.COM
GAMEFAQS.COM
GAMEFLY.COM
GAMEHOUSE.COM
GAMEINFORMER.COM

GAMERCLICK.COM
GAMES-VILLAGE.COM
GAMES.COM
GAMESGAMES.COM
GAMESPOT.COM
GAMESRADAR.COM
GAMESTOP.COM
GAMESXITE.COM
GAMETRAILERS.COM
GAMINGWONDERLAND.COM
GAP.COM
GARDENGUIDES.COM
GARDENWEB.COM
GARMIN.COM
GATHER.COM
GAWKER.COM
GEICO.COM
GETGLUE.COM
GIANTBOMB.COM
GIFTS.COM
GIGAOM.COM
GILT.COM
GIRLSGOGAMES.COM
GIZMODO.COM
GLAM.COM
GLAMOUR.COM
GLASSDOOR.COM
GLOBALGRIND.COM
GLOGSTER.COM
GMC.COM
GNC.COM
GO.COM
GODADDY.COM
GODVINE.COM
GOFREE.COM
GOGECAPITAL.COM
GOGOANIME.COM
GOLF.COM
GOLFLINK.COM
GOOD.IS
GOODCHOLESTEROLCOUNT.COM
GOODHOUSEKEEPING.COM
GOODREADS.COM

GOOGLE.CA
GOOGLE.CO.UK
GOOGLE.COM
GOOGLE.COM.MX
GOOGLE.ES
GOOGLE.NL
GORILLALEAK.COM
GOSSIPCENTER.COM
GOSSIPCOP.COM
GOTHAMIST.COM
GOTOMEETING.COM
GOURMANDIA.COM
GOVERNMENTJOBS.COM
GQ.COM
GRADESAVER.COM
GRAINGER.COM
GRANTLAND.COM
GRASSCITY.COM
GREATSCHOOLS.ORG
GREENDOT.COM
GREYHOUND.COM
GRINDTV.COM
GROOVESHARK.COM
GROUPON.COM
GROUPRECIPES.COM
GSN.COM
GUAMPDN.COM
GUARDIAN.CO.UK
GUITARCENTER.COM
GUYISM.COM
HALF.COM
HALLMARK.COM
HAMPTON-INN.COM
HARBORFREIGHT.COM
HARK.COM
HARVARD.EDU
HASBRO.COM
HAUTELOOK.COM
HBO.COM
HBOGO.COM
HEALTH.COM
HEALTHBOARDS.COM
HEALTHCENTRAL.COM

HEALTHGRADES.COM
HEALTHGURU.COM
HEALTHLINE.COM
HEAVY.COM
HELIUM.COM
HERDAILY.COM
HERTZ.COM
HEWITT.COM
HGTV.COM
HGTVREMODELS.COM
HHS.GOV
HIGHBEAM.COM
HILLSHIREFARM.COM
HILTON.COM
HISTORY.COM
HLNTV.COM
HM.COM
HOBBYLOBBY.COM
HODESIQ.COM
HOLIDAYINN.COM
HOLLISTERCO.COM
HOLLYSCOOP.COM
HOLLYWIRE.COM
HOLLYWOOD.COM
HOLLYWOODLIFE.COM
HOLLYWOODREPORTER.COM
HOMEAWAY.COM
HOMEDEPOT.COM
HOMEFINDER.COM
HOMES.COM
HOMESTEAD.COM
HOMETOWNLOCATOR.COM
HONDA.COM
HOODAMATH.COM
HOOVERS.COM
HOTELPLANNER.COM
HOTELS.COM
HOTELSONE.COM
HOTPADS.COM
HOTTOPIC.COM
HOTWIRE.COM
HOUSEHOLDBANK.COM
HOUZZ.COM

HOWSTUFFWORKS.COM
HOWTOGEEK.COM
HP.COM
HRDEPARTMENT.COM
HRSACCOUNT.COM
HRW.COM
HSBC.COM
HSBCCREDITCARD.COM
HSN.COM
HTC.COM
HUBPAGES.COM
HUFFINGTONPOST.CA
HUFFINGTONPOST.CO.UK
HUFFINGTONPOST.COM
HULKSHARE.COM
HUMORSWITCH.COM
HYATT.COM
HYPSTER.COM
HYUNDAIUSA.COM
IAMCATWALK.COM
IAPPLICANTS.COM
IBM.COM
IBTIMES.COM
ICANHASCHEEZBURGER.COM
ICHOTELSGROUP.COM
ICIMS.COM
ICLOUD.COM
ICONTACT.COM
IEGALLERY.COM
IFOOD.TV
IFUNNY.MOBI
IGN.COM
IHEART.COM
IHOTELIER.COM
IKEA.COM
ILLINOIS.EDU
IMDB.COM
IMESH.COM
IMGFAVE.COM
IMGUR.COM
IMINENT.COM
IMOTORS.COM
IMVU-CUSTOMER-SANDBOX.COM

IMVU.COM
IN.COM
IN.GOV
INBOX.COM
INBOXDOLLARS.COM
INC.COM
INCREDIBAR.COM
INDEED.COM
INDEPENDENT.CO.UK
INDIATIMES.COM
INDYSTAR.COM
INFO.COM
INFOPLEASE.COM
INFORMER.COM
INGDIRECT.COM
INQUISITR.COM
INSIDERPAGES.COM
INSTAGR.AM
INSTAGRAM.COM
INSTANTCHECKMATE.COM
INSTRUCTABLES.COM
INSTYLE.COM
INTEL.COM
INTELIUS.COM
INTELLICAST.COM
INTERIORCOMPLEX.COM
INTUIT.COM
INVESTOPEDIA.COM
INVESTORS.COM
IO9.COM
IOFFER.COM
IPLAY.COM
IREPORT.COM
IRS.GOV
ISOHUNT.COM
ISSOLUTIONS.INFO
ISSUU.COM
ISTOCKPHOTO.COM
ITIBITIPHONE.COM
ITT-TECH.EDU
IVILLAGE.COM
IWASTESOMUCHTIME.COM
IWIN.COM

JACKHENRY.COM
JALOPNIK.COM
JANGO.COM
JAVA.COM
JCPENNEY.COM
JCWHITNEY.COM
JEST.COM
JETBLUE.COM
JEZEBEL.COM
JOANN.COM
JOB.COM
JOBAMATIC.COM
JOBRAPIDO.COM
JOBS-TO-CAREERS.COM
JOBSONLINE.NET
JOBSRADAR.COM
JOIN.ME
JOYSTIQ.COM
JR.COM
JSONLINE.COM
JSTOR.ORG
JUSTANSWER.COM
JUSTFAB.COM
JUSTIA.COM
JUSTIN.TV
JUSTJARED.COM
K12.CA.US
K12.FL.US
K12.GA.US
K12.IN.US
K12.NC.US
K12.NJ.US
K12.OH.US
KABAM.COM
KABOODLE.COM
KABOOSE.COM
KANSASCITY.COM
KARMALOOP.COM
KAT.PH
KAYAK.COM
KBB.COM
KEEPVID.COM
KELLOGGS.COM

KHANACADEMY.ORG
KICKSTARTER.COM
KIDSHEALTH.ORG
KIZI.COM
KMART.COM
KNOWYOURMEME.COM
KODAK.COM
KODAKGALLERY.COM
KOHLS.COM
KOMONEWS.COM
KONGREGATE.COM
KOTAKU.COM
KRAFTRECIPES.COM
KROGER.COM
KRONOSTM.COM
KSL.COM
KTLA.COM
KUAM.COM
KUDZU.COM
LANDSEND.COM
LANEBRYANT.COM
LAST.FM
LATIMES.COM
LDS.ORG
LEAGUEOFLEGENDS.COM
LEAWO.COM
LEGACY.COM
LEGO.COM
LENOVO.COM
LEVI.COM
LG.COM
LIFEHACKER.COM
LIFESCRIPT.COM
LIGHTINTHEBOX.COM
LIJIT.COM
LINKEDIN.COM
LISTVERSE.COM
LIVE.COM
LIVEJOURNAL.COM
LIVELEAK.COM
LIVENATION.COM
LIVESCIENCE.COM
LIVESTREAM.COM

LIVESTRONG.COM
LIVINGSOCIAL.COM
LLBEAN.COM
LOC.GOV
LOCAL.COM
LOCALBUZZ.US
LOCALGUIDES.COM
LOCALHEALTH.COM
LOCALPAGES.COM
LOCKERZ.COM
LOGITECH.COM
LOGMEIN.COM
LOLZBOOK.COM
LONELYPLANET.COM
LOOPNET.COM
LOVETOKNOW.COM
LOWERMYBILLS.COM
LOWES.COM
LOWFARES.COM
LUMOSITY.COM
LYCOS.COM
LYRICS007.COM
LYRICSFREAK.COM
LYRICSMANIA.COM
LYRICSMODE.COM
LYRICSTIME.COM
MAC-FORUMS.COM
MACRUMORS.COM
MACWORLD.COM
MACYS.COM
MADAMENOIRE.COM
MADE-IN-CHINA.COM
MADEMAN.COM
MAGICJACK.COM
MAHALO.COM
MAKERS.COM
MAKEUSEOF.COM
MANAGEYOURLOANS.COM
MANDATORY.COM
MANTA.COM
MANUALSONLINE.COM
MAPQUEST.COM
MAPS4PC.COM

MAPSGALAXY.COM
MAPSOFWORLD.COM
MARKETWATCH.COM
MARRIOTT.COM
MARTHASTEWART.COM
MARVEL.COM
MASHABLE.COM
MATCH.COM
MATHSISFUN.COM
MATHXL.COM
MATTEL.COM
MAXGAMES.COM
MAXIM.COM
MAXPREPS.COM
MAYOCLINIC.COM
MCAFEE.COM
MCDONALDS.COM
MCGRAW-HILL.COM
MEDHELP.ORG
MEDIAFIRE.COM
MEDIAITE.COM
MEDIATAKEOUT.COM
MEDICALNEWSTODAY.COM
MEDICINENET.COM
MEDSCAPE.COM
MEETME.COM
MEETUP.COM
MEFEEDIA.COM
MEGAMILLIONS.COM
MEGAUPLOAD.COM
MEIJER.COM
MEMEBASE.COM
MEMECENTER.COM
MENARDS.COM
MENSHEALTH.COM
MENSHEALTHBASE.COM
MENTALFLOSS.COM
MENUISM.COM
MENUPAGES.COM
MERCHANTCIRCLE.COM
MERCURYNEWS.COM
MERRIAM-WEBSTER.COM
METACAFE.COM

METACRITIC.COM
METAFILTER.COM
METRIC-CONVERSIONS.ORG
METROLYRICS.COM
METROMIX.COM
METROPCS.COM
MEVIO.COM
MGID.COM
MIAMIHERALD.COM
MICHAELS.COM
MICHIGAN.GOV
MICROSOFT.COM
MICROSOFTONLINE.COM
MICROSOFTSTORE.COM
MICROSOFTTRANSLATOR.COM
MILB.COM
MILITARY.COM
MINECRAFT.NET
MINECRAFTFORUM.NET
MINECRAFTWIKI.NET
MINICLIP.COM
MINT.COM
MIRROR.CO.UK
MIT.EDU
MLB.COM
MLIVE.COM
MLXCHANGE.COM
MMO-CHAMPION.COM
MNN.COM
MO.GOV
MOBILEPHONESURVEY.NET
MOCOSPACE.COM
MODCLOTH.COM
MODELMAYHEM.COM
MODERNHOMEMODERNBABY.COM
MOM.ME
MOMMYMIXING.COM
MOMSWHOTHINK.COM
MOMTASTIC.COM
MONEYNEWS.COM
MONKEYQUEST.COM
MONSTER.COM
MORNINGSTAR.COM

MOSHIMONSTERS.COM
MOTIFAKE.COM
MOTORTREND.COM
MOVIEFONE.COM
MOVIEROOMREVIEWS.COM
MOVIES.COM
MOVIESTARPLANET.COM
MOVIETICKETS.COM
MOVIEWEB.COM
MOZILLA.ORG
MRMOVIETIMES.COM
MSN.COM
MSNBC.COM
MTA.INFO
MTV.COM
MULTIPLY.COM
MUSICIANSFRIEND.COM
MUSICNOTES.COM
MUZY.COM
MVGUAM.COM
MYCOKEREWARDS.COM
MYCRICKET.COM
MYDAILYMOMENT.COM
MYDISH.COM
MYFITNESSPAL.COM
MYFLORIDA.COM
MYFOXNY.COM
MYFRIENDSGREETINGS.COM
MYFUNCARDS.COM
MYHOMEMSN.COM
MYLIFE.COM
MYLIFETIME.COM
MYNEWPLACE.COM
MYNEWSLETTERBUILDER.COM
MYPCBACKUP.COM
MYPODSTUDIOS.COM
MYPOINTS.COM
MYRECIPES.COM
MYSANANTONIO.COM
MYSPACE.COM
MYSTART.COM
MYSTORE411.COM
MYVIEW.COM

MYVOICENATION.COM
MYWEBGROCER.COM
MYWEBSEARCH.COM
MYXER.COM
MYYEARBOOK.COM
NADAGUIDES.COM
NARUTOGET.COM
NASA.GOV
NASCAR.COM
NASDAQ.COM
NATIONALGEOGRAPHIC.COM
NATIONALJOURNAL.COM
NATIONALPOST.COM
NATURALNEWS.COM
NATURE.COM
NAVER.COM
NAVY.MIL
NAVYFCU.ORG
NBA.COM
NBAHOOPTROOP.COM
NBC.COM
NBCNEWYORK.COM
NBCSPORTS.COM
NCAA.COM
NCH.COM.AU
NCHSOFTWARE.COM
NEIMANMARCUS.COM
NEOPETS.COM
NEOSEEKER.COM
NESN.COM
NETDOCTOR.CO.UK
NETFLIX.COM
NETSUITE.COM
NEWCOUPONSFOR.ME
NEWEGG.COM
NEWGROUNDS.COM
NEWSBUSTERS.ORG
NEWSDAY.COM
NEWSER.COM
NEWSMAX.COM
NEWYORKER.COM
NEXON.NET
NEXTAG.COM

NEXTSPORTSTAR.COM
NFL.COM
NHL.COM
NICK.COM
NICKJR.COM
NIH.GOV
NIKE.COM
NING.COM
NINTENDO.COM
NISSANUSA.COM
NJ.COM
NME.COM
NOAA.GOV
NOLA.COM
NOMORERACK.COM
NORDSTROM.COM
NORTHERNTOOL.COM
NOTDOPPLER.COM
NOTEBOOKREVIEW.COM
NOVAMOV.COM
NPR.ORG
NPS.GOV
NVIDIA.COM
NY.GOV
NYC.GOV
NYDAILYNEWS.COM
NYMAG.COM
NYPOST.COM
NYTIMES.COM
OCREGISTER.COM
ODDEE.COM
OFFICEDEPOT.COM
OFFICEMAX.COM
OHIO.GOV
OKCUPID.COM
OLDNAVY.COM
OLIVEGARDEN.COM
OLX.COM
OMEGLE.COM
ONEKINGSLANE.COM
ONETRAVEL.COM
ONLINE-REFERENCE-TOOLS.COM
ONSUGAR.COM

ONTHEREDCARPET.COM
OODLE.COM
OPENTABLE.COM
OPERA.COM
OPINIONPLACE.COM
OPM.GOV
OPRAH.COM
OPTIMUM.NET
ORACLE.COM
ORBITZ.COM
ORCHARDBANK.COM
OREGONLIVE.COM
OREILLYAUTO.COM
ORLANDOSENTINEL.COM
ORON.COM
ORTSBOABC.COM
OSU.EDU
OURSTAGE.COM
OURWORLD.COM
OVERDRIVE.COM
OVERSTOCK.COM
OVGUIDE.COM
PACSUN.COM
PALMBEACHPOST.COM
PANDORA.COM
PANERABREAD.COM
PANORAMIO.COM
PAPAJOHNS.COM
PARENTING.COM
PARENTS.COM
PARENTSCONNECT.COM
PARTYCITY.COM
PASSPORT.COM
PASTEBIN.COM
PATCH.COM
PAWNATION.COM
PAYLESS.COM
PAYPAL.COM
PBS.ORG
PBSKIDS.ORG
PBWORKS.COM
PCGAMER.COM
PCH.COM

PCHGAMES.COM
PCMAG.COM
PCPOWERSPEED.COM
PCWORLD.COM
PENNY-ARCADE.COM
PEOPLE.COM
PEOPLECLICK.COM
PEOPLEFINDERS.COM
PEOPLEPETS.COM
PEOPLESMART.COM
PEPBOYS.COM
PEREZHILTON.COM
PERSONALIZATIONMALL.COM
PETCO.COM
PETFINDER.COM
PETSMART.COM
PGATOUR.COM
PHILLY.COM
PHOENIX.EDU
PHONEARENA.COM
PHOTOBUCKET.COM
PHYS.ORG
PHYSICSFORUMS.COM
PICMONKEY.COM
PICNIK.COM
PILLSBURY.COM
PINGER.COM
PINTEREST.COM
PIPL.COM
PIRIFORM.COM
PIXLR.COM
PIZAP.COM
PIZZAHUT.COM
PLANETMINECRAFT.COM
PLAYHUB.COM
PLAYLIST.COM
PLAYSTATION.COM
PNC.COM
POEMHUNTER.COM
POF.COM
POG.COM
POGO.COM
POKEMON.COM

POLITICO.COM
POLYVORE.COM
POPCAP.COM
POPSUGAR.COM
POPTROPICA.COM
POPULARMECHANICS.COM
POST-GAZETTE.COM
POSTINI.COM
POTTERYBARN.COM
PREVENTION.COM
PREZI.COM
PRICEGRABBER.COM
PRICELINE.COM
PRIMARYGAMES.COM
PRLOG.ORG
PRNEWSWIRE.COM
PROACTIV.COM
PROBOARDS.COM
PRODUCTMADNESS.COM
PRODUTOOLS.COM
PROFLOWERS.COM
PROGRESSIVE.COM
PRONTO.COM
PRWEB.COM
PSU.EDU
PSYCHCENTRAL.COM
PSYCHOLOGYTODAY.COM
PUBLICRECORDS.COM
PUBLIX.COM
PURDUE.EDU
PURPLEMATH.COM
PUTLOCKER.COM
QUALITYHEALTH.COM
QUESTBASIC.COM
QUICKBOOKS.COM
QUICKMEME.COM
QUIZLET.COM
QUIZNOS.COM
QUORA.COM
QUOTEGARDEN.COM
QVC.COM
RADARONLINE.COM
RADIO.COM

RADIOSHACK.COM
RALPHLAUREN.COM
RANKER.COM
RANKINGSANDREVIEWS.COM
RAPGENIUS.COM
RAPIDGATOR.NET
RAPIDLIBRARY.COM
RAPIDSHARE.COM
RATEMYPROFESSORS.COM
READERSDIGEST.COM
REAL.COM
REALAGE.COM
REALCLEARPOLITICS.COM
REALSIMPLE.COM
REALTOR.COM
RECIPE.COM
REDBALCONY.COM
REDBOX.COM
REDBUBBLE.COM
REDDIT.COM
REDENVELOPE.COM
REDFIN.COM
REFERENCE.COM
REGALCINEMAS.COM
REGIONS.COM
REI.COM
RELISH.COM
REMAX.COM
RENT.COM
RENTALS.COM
REPLY.COM
RESEARCH.NET
RESEARCHNOW.COM
RESERVEAMERICA.COM
RESTAURANT.COM
RETAILMENOT.COM
REUTERS.COM
REVERBNATION.COM
RHAPSODY.COM
RHYMEZONE.COM
RIGHTDIAGNOSIS.COM
RITEAID.COM
RIVALGAMING.COM

RIVALS.COM
ROADRUNNER.COM
ROBLOX.COM
ROCKETLAWYER.COM
ROCKYOU.COM
RODALE.COM
ROLLINGSTONE.COM
ROTTENTOMATOES.COM
RUNESCAPE.COM
RUNNERSWORLD.COM
RUSHCARD.COM
RXLIST.COM
SACBEE.COM
SAFEWAY.COM
SAIPANTRIBUNE.COM
SAKSFIFTHAVENUE.COM
SALARY.COM
SALESFORCE.COM
SALLIEMAE.COM
SALON.COM
SAMOANEWS.COM
SAMOAOBSERVER.WS
SAMSCLUB.COM
SAMSUNG.COM
SAVINGSTAR.COM
SBNATION.COM
SCHOLASTIC.COM
SCHOOLFEED.COM
SCHOOLLOOP.COM
SCHWAB.COM
SCIENCEDAILY.COM
SCIENCEDIRECT.COM
SCOTTRADE.COM
SCOUT.COM
SCRABBLEFINDER.COM
SCREENRANT.COM
SCRIBD.COM
SEARCH-RESULTS.COM
SEARCHCOMPLETION.COM
SEARCHQUOTES.COM
SEARS.COM
SEARSPARTSDIRECT.COM
SEATTLEPI.COM

SEATTLETIMES.COM
SEAWORLDPARKS.COM
SEEKINGALPHA.COM
SEEKYSEARCH.NET
SELF.COM
SENDEARNINGS.COM
SENDORI.COM
SENDSPACE.COM
SEPHORA.COM
SERIOUSEATS.COM
SERVICEMAGIC.COM
SEVENFORUMS.COM
SEVENTEEN.COM
SFGATE.COM
SGSAPPS.COM
SHAPE.COM
SHAREBEAST.COM
SHARECARE.COM
SHEKNOWS.COM
SHMOOP.COM
SHOCKWAVE.COM
SHOEBUY.COM
SHOEDAZZLE.COM
SHOPATHOME.COM
SHOPAUTOWEEK.COM
SHOPLOCAL.COM
SHOPPING.COM
SHOPSTYLE.COM
SHOPWIKI.COM
SHOPZILLA.COM
SHUTTERFLY.COM
SHUTTERSTOCK.COM
SI.COM
SI.EDU
SIDEREEL.COM
SILKROAD.COM
SIMON.COM
SIMPLYHIRED.COM
SIMPLYRECIPES.COM
SINA.COM.CN
SING365.COM
SIRIUSXM.COM
SIXFLAGS.COM

SKYPE.COM
SLACKER.COM
SLASHDOT.ORG
SLASHGEAR.COM
SLATE.COM
SLICKDEALS.NET
SLIDESHARE.NET
SMARTER.COM
SMARTERLIFESTYLES.COM
SMARTMOMSTYLE.COM
SMARTMONEY.COM
SMARTSHOPPINGINFO.COM
SMARTSOURCE.COM
SMILEBOX.COM
SMOSH.COM
SMUGMUG.COM
SNAGAJOB.COM
SNAPFISH.COM
SNOPES.COM
SOCIALSECURITYDISABILITYBENEFITS.CC
SOCKSHARE.COM
SODAHEAD.COM
SOFT32.COM
SOFTONIC.COM
SOFTPEDIA.COM
SOHU.COM
SOLARMOVIE.EU
SOMEECARDS.COM
SONGKICK.COM
SONGLYRICS.COM
SONGMEANINGS.NET
SONY.COM
SOUNDCLOUD.COM
SOURCEFORGE.NET
SOUTHERNLIVING.COM
SOUTHPARKSTUDIOS.COM
SOUTHWEST.COM
SPACE.COM
SPANISHDICT.COM
SPARKNOTES.COM
SPARKPEOPLE.COM
SPEEDPAY.COM
SPELLINGCITY.COM

SPIKE.COM
SPINNER.COM
SPORCLE.COM
SPORTINGNEWS.COM
SPORTSAUTHORITY.COM
SPOTIFY.COM
SPREADSHIRT.NET
SPRINGERLINK.COM
SPRINT.COM
SPRINTPCS.COM
SPRYLIVING.COM
SQUARESPACE.COM
SQUIDOO.COM
SSA.GOV
STACKEXCHANGE.COM
STACKOVERFLOW.COM
STANFORD.EDU
STAPLES.COM
STAR-TELEGRAM.COM
STARBUCKS.COM
STARDOLL.COM
STARFALL.COM
STARPULSE.COM
STARSJOURNAL.COM
STARTRIBUNE.COM
STARWOODHOTELS.COM
STATE.FL.US
STATE.GOV
STATE.IL.US
STATE.MD.US
STATE.MI.US
STATE.MN.US
STATE.NJ.US
STATE.NY.US
STATE.PA.US
STATE.TX.US
STATEFARM.COM
STCROIXSOURCE.COM
STEADYHEALTH.COM
STEAMCOMMUNITY.COM
STEAMPOWERED.COM
STICKPAGE.COM
STJOHNSOURCE.COM

STLTODAY.COM
STLYRICS.COM
STORIFY.COM
STRAIGHTTALK.COM
STTHOMASSOURCE.COM
STUBHUB.COM
STUDENTLOANS.GOV
STUDYISLAND.COM
STUMBLEUPON.COM
STYLEBISTRO.COM
STYLEBLAZER.COM
STYLELIST.COM
SUALIZE.US
SUBWAY.COM
SUDDENLINK.NET
SUITE101.COM
SUN-SENTINEL.COM
SUNTIMES.COM
SUNTRUST.COM
SUPERCHEATS.COM
SUPERPAGES.COM
SUPERSAVINGSNOW.COM
SURVEYGIZMO.COM
SWAGBUCKS.COM
SWITCHBOARD.COM
SYMANTEC.COM
SYMPTOMFIND.COM
SYRACUSE.COM
T-MOBILE.COM
TAGGED.COM
TALEO.NET
TAMPABAY.COM
TAMU.EDU
TARGET.COM
TARINGA.NET
TASTEOFHOME.COM
TBO.COM
TDAMERITRADE.COM
TDBANK.COM
TECHBARGAINS.COM
TECHCRUNCH.COM
TECHGUY.ORG
TECHRADAR.COM

TECHREPUBLIC.COM
TED.COM
TEENNICK.COM
TELEFLORA.COM
TELEGRAPH.CO.UK
TELEVISIONFANATIC.COM
THEATLANTIC.COM
THEATLANTICWIRE.COM
THEBLAZE.COM
THEBOOMBOX.COM
THEBOOT.COM
THEBUMP.COM
THECARCONNECTION.COM
THECELEBRITYCAFE.COM
THECHIVE.COM
THEDAILYBEAST.COM
THEDAILYSHOW.COM
THEFASHIONSPOT.COM
THEFIND.COM
THEFREEDICTIONARY.COM
THEFRISKY.COM
THEGLOBEANDMAIL.COM
THEGRIO.COM
THEHILL.COM
THEHOLLYWOODGOSSIP.COM
THEKITCHN.COM
THEKNOT.COM
THELADDERS.COM
THEOATMEAL.COM
THEONION.COM
THEPIONEERWOMAN.COM
THEPIRATEBAY.SE
THEPOSTGAME.COM
THEROOT.COM
THERUGGED.COM
THESAURUS.COM
THESIMS3.COM
THESLAP.COM
THESMOKINGGUN.COM
THESTAR.COM
THESTREET.COM
THESUN.CO.UK
THESUPERFICIAL.COM

THEVERGE.COM

THEWEEK.COM

THEWORKBUZZ.COM

THINKEXIST.COM

THINKGEEK.COM

THINKQUEST.ORG

THIRDAGE.COM

THISOLDHOUSE.COM

TICKETLIQUIDATOR.COM

TICKETMASTER.COM

TICKETS.COM

TIGERDIRECT.COM

TIME.COM

TIMEANDDATE.COM

TIMEOUT.COM

TIMESUNION.COM

TIMEWARNERCABLE.COM

TINYCHAT.COM

TINYPIC.COM

TIRERACK.COM

TMZ.COM

TNTDRAMA.COM

TOLUNA.COM

TOMS.COM

TOMSHARDWARE.COM

TOOFAB.COM

TOPIX.COM

TOPTENREVIEWS.COM

TORRENTCRAZY.COM

TORRENTHOUND.COM

TORRENTREACTOR.NET

TORRENTZ.EU

TOSHIBA.COM

TOTALBEAUTY.COM

TOTALRECIPESEARCH.COM

TOTALREWARDS.COM

TOYOTA.COM

TOYSRUS.COM

TRACTORSUPPLY.COM

TRAILS.COM

TRANSLATEYE.COM

TRANSUNION.COM

TRAVEL-TICKER.COM

TRAVELANDLEISURE.COM

TRAVELCHANNEL.COM

TRAVELMATH.COM

TRAVELOCITY.COM

TRAVELZOO.COM

TRENDMICRO.COM

TRIPADVISOR.COM

TRULIA.COM

TRUTV.COM

TRYSENSA.COM

TUBEPLUS.ME

TUDOU.COM

TUMBLR.COM

TUNEIN.COM

TURBOBIT.NET

TURBOTAX.COM

TURNITIN.COM

TV.COM

TVDUCK.EU

TVFANATIC.COM

TVGUIDE.COM

TVLINE.COM

TVTROPES.ORG

TWITCH.TV

TWITPIC.COM

TWITTER.COM

TYPEPAD.COM

UBI.COM

UCLA.EDU

UCOMPAREHEALTHCARE.COM

UFC.COM

UFL.EDU

UHAUL.COM

ULINE.COM

ULTA.COM

ULTIMATE-GUITAR.COM

ULTIRECRUIT.COM

UMICH.EDU

UMN.EDU

UNCOVERTHENET.COM

UNITED.COM

UNIVISION.COM

UOL.COM.BR

UPENN.EDU

UPICKEM.NET

UPLOADED.TO

UPLOADING.COM

UPROMISE.COM

UPROXX.COM

UPS.COM

UPTAKE.COM

URBANDICTIONARY.COM

URBANOUTFITTERS.COM

URBANSPOON.COM

US.COM

USA.GOV

USAA.COM

USAIRWAYS.COM

USAJOBS.GOV

USATODAY.COM

USBANK.COM

USCELLULAR.COM

USCIS.GOV

USDA.GOV

USGS.GOV

USMAGAZINE.COM

USNEWS.COM

USPS.COM

USSEARCH.COM

USTREAM.TV

UTAH.GOV

UTEXAS.EDU

UTORRENT.COM

V2CIGS.COM

VA.GOV

VACATIONRENTALS.COM

VANGUARD.COM

VANITYFAIR.COM

VENTUREBEAT.COM

VEOH.COM

VERIZON.COM

VERIZON.NET

VERIZONWIRELESS.COM

VEVO.COM

VH1.COM

VIBE.COM

VICE.COM
VICTORIASSECRET.COM
VIDDLER.COM
VIDEO2MP3.NET
VIDEOBASH.COM
VIDEOFRAG.COM
VIDEOSURF.COM
VIDEOWEED.ES
VIMEO.COM
VIRGINIA.GOV
VIRGINISLANDSDAILYNEWS.COM
VIRGINMOBILEUSA.COM
VIRTUALLYTHERE.COM
VIRTUALTOURIST.COM
VISTAPRINT.COM
VITALS.COM
VOLUSION.COM
VONAGE.COM
VRBO.COM
VULTURE.COM
VUREEL.COM
WA.GOV
WAHOHA.COM
WAJAM.COM
WALGREENS.COM
WALLSTCHEATSHEET.COM
WALMART.COM
WALMARTMONEYCARD.COM
WALMARTSTORES.COM
WARNERBROS.COM
WASHINGTON.EDU
WASHINGTONEXAMINER.COM
WASHINGTONPOST.COM
WASHINGTONTIMES.COM
WATCHCARTOONONLINE.COM
WATCHSERIES.EU
WAYFAIR.COM
WAYPORT.NET
WE-CARE.COM
WEATHER.COM
WEATHER.GOV
WEATHERBUG.COM
WEBCRAWLER.COM

WEBKINZ.COM
WEBMD.COM
WEBPRONEWS.COM
WEBS.COM
WEBSHOTS.COM
WEDDINGBEE.COM
WEDDINGCHANNEL.COM
WEDDINGWIRE.COM
WEEBLY.COM
WEEKLYSTANDARD.COM
WEHEARTIT.COM
WEIGHTWATCHERS.COM
WELLHABITS.COM
WELLNESS.COM
WELLSFARGO.COM
WESTERNUNION.COM
WETPAINT.COM
WETSEAL.COM
WFAA.COM
WHATTOEXPECT.COM
WHERE2GETIT.COM
WHITEHOUSE.GOV
WHITEPAGES.COM
WHOSAY.COM
WIKIA.COM
WIKIHOW.COM
WIKIMEDIA.ORG
WIKIMEDIAFOUNDATION.ORG
WIKIPEDIA.ORG
WIKIQUOTE.ORG
WIKISPACES.COM
WIKITRAVEL.ORG
WIKTIONARY.ORG
WILEY.COM
WIMP.COM
WINDOWSMEDIA.COM
WINZIP.COM
WIRED.COM
WISC.EDU
WIZARD101.COM
WN.COM
WND.COM
WNLOADS.NET

WOMANSDAY.COM
WOMENSFORUM.COM
WOMENSHEALTHBASE.COM
WOMENSHEALTHMAG.COM
WONDERHOWTO.COM
WOOT.COM
WORDPRESS.COM
WORDREFERENCE.COM
WORLDATLAS.COM
WORLDSTARHIPHOP.COM
WORLDWINNER.COM
WORTHPOINT.COM
WOWHEAD.COM
WSJ.COM
WTHR.COM
WTSP.COM
WUFOO.COM
WUNDERGROUND.COM
WWE.COM
XBOX.COM
XE.COM
XEGEN.COM
XFINITY.COM
XFINITYTV.COM
XKCD.COM
Y8.COM
YAHOO.CA
YAHOO.CO.IN
YAHOO.CO.KR
YAHOO.CO.UK
YAHOO.COM
YAHOO.COM.AU
YAHOO.COM.CN
YAHOO.COM.MX
YAHOO.COM.PH
YAHOO.COM.SG
YAHOO.ES
YAKAZ.COM
YARDBARKER.COM
YARDSELLR.COM
YELLOWBOOK.COM
YELLOWBOT.COM
YELLOWNOW.COM

YELLOWPAGES.COM
YELP.COM
YEPI.COM
YFROG.COM
YIDIO.COM
YOLASITE.COM
YOUBEAUTY.COM
YOUKU.COM
YOURAVON.COM
YOURDICTIONARY.COM
YOURTANGO.COM
YOUSENDIT.COM
YOUTUBE-MP3.ORG
YOUTUBE.COM
YUKU.COM
YUMMLY.COM
ZAP2IT.COM
ZAPPOS.COM
ZAZZLE.COM
ZBIDDY.COM
ZDNET.COM
ZENDESK.COM
ZILLOW.COM
ZIMBIO.COM
ZIPPYSHARE.COM
ZIPREALTY.COM
ZMOVIE.TV
ZOCDOC.COM
ZOOSK.COM
ZULILY.COM
ZUMIEZ.COM
ZYNGA.COM

# Exhibit 4

728x90 Banner

Did You Purchase Venus Earth Friendly Products?

**A Class Action Settlement May Affect Your Rights.**



CLICK HERE FOR MORE INFORMATION

300x250 Banner

Did You Purchase Venus Earth Friendly Products?

**A Class Action May Affect Your Rights.**

**Click Here**

Social (Facebook)



CLICK HERE

**Venus Earth Friendly Lawsuit**
www.EarthFriendlySettlement.com
Did You Purchase Venus Earth Friendly
Products? Your rights may be affected.

Keyword Search

**Earth Friendly Lawsuit**
www.EarthFriendlySettlement.com
 Buy Venus Earth Friendly products?
Your rights may be affected

# Exhibit 5

**Settlement Administrator Dahl Administration Announces Class Action Settlement in the** *Baharestan v. Venus Laboratories, Inc.* **Litigation**

MINNEAPOLIS, <<DATE>> /PRNewswire/ -- A proposed settlement has been reached in a class action lawsuit about the labelling, marketing, and advertising of Venus Laboratories "Earth Friendly" products ("Products"). The plaintiffs in the lawsuit claim that Venus Laboratories mislabeled its Products by describing them as "natural." Venus Laboratories denies all the plaintiffs' allegations and is entering into this settlement to avoid burdensome and costly litigation. The settlement is not an admission of wrongdoing.

*Am I a Class Member?* You are a member of the Class if you purchased at least one Venus Laboratories Earth Friendly Product from January 23, 2011 through [DATE], for household use or personal consumption and not for resale. Excluded from the Class are Venus Laboratories and its board members, officers, and attorneys; governmental entities; the Court presiding over the settlement, and those persons who timely and properly request exclusion from the Settlement Class.

*What Can I Get From the Settlement?* A fund of $850,000 will be created to pay Class Members' claims, certain administrative costs, attorneys' fees and expenses, incentive awards, and other costs. Venus Laboratories will also make changes to the labels for the Products and to its website.

Settlement Class Members may submit a properly completed Claim Form and be eligible to receive a cash payment of up to $25. These awards may be subject to pro rata upward or downward adjustment depending on the number of claims approved. A detailed Class Notice and copies of the Claim Form are available at www.xxxxxxxxxxxxxxx.com or by calling 1-8xx-xxx-xxxx.

*What are My Options?* To ask for a cash payment and stay in the Class, you must send in a Claim Form by [DATE]. If you do not wish to participate in the settlement, you may exclude yourself from the Class by [DATE]. The detailed notice available at www.xxxxxxxxxxxxxxx.com or by calling 1-8xx-xxx-xxxx explains how to exclude yourself from the settlement. If you exclude yourself, you can't get money from this settlement if it is approved. If you're a Class Member, you may object to any part of the settlement you don't like, and the Court will consider your views. Your objection must be timely, in writing and must provide documents to establish your membership in the Class. Procedures for submitting objections are set out in the detailed notice available at www.xxxxxxxxxxxxxxx.com or by calling 1-8xx-xxx-xxxx.

The Court will hold a Final Fairness Hearing at _____ a.m./p.m. on _____ in _____, California. At this hearing, the Court will consider whether the settlement is fair, reasonable and adequate and whether to approve the named plaintiffs' incentive awards of up to $2,000 each and attorneys' fees and expenses up to $277,500. You may attend the hearing, and you may hire your own lawyer, but you are not required to do either. The Court will consider timely written

objections and will listen to people who have made a prior written request to speak at the hearing. After the hearing, the Court will decide whether to approve the settlement.

*What If I Have Questions?* This Notice is just a summary. Detailed notice, as well as the Settlement Agreement and other documents filed in this lawsuit can be found online at www.xxxxxxxxxxxxxxxx.com.  For more information, you may call or write to the Settlement Administrator at 1-8xx-xxx-xxxx, Venus Earth Friendly Products Settlement, c/o Dahl Administration, P.O. Box 3614, Minneapolis, MN 55403-0614 or info@xxxxxxxxxxxxxxxxxx.com.

QUESTIONS? CALL 1-8xx- xxx-xxxx or VISIT www.xxxxxxxxxxxxxxx.com

MEDIA: Jeff Dahl, 952-562-3601

SOURCE: DAHL ADMINISTRATION, LLC

RELATED LINKS: www.xxxxxxxxxxxxxxx.com

# Exhibit D

## LEGAL NOTICE

## IF YOU PURCHASED A VENUS LABORATORIES' "EARTH FRIENDLY PRODUCTS" PRODUCT, YOU MAY BE ENTITLED TO A CASH PAYMENT

A proposed settlement has been reached in a class action lawsuit about the labelling, marketing, and advertising of Venus Laboratories' "Earth Friendly Products "("Products"). The plaintiffs in the lawsuit claim that Venus Laboratories ("Venus") mislabeled its Products by describing them as "natural." Venus denies all the plaintiffs' allegations and is entering into this settlement to avoid burdensome and costly litigation. The settlement is not an admission of wrongdoing.

**Am I a Class Member?** You are a member of the Class if you purchased at least one of Venus' Earth Friendly Products from January 23, 2011 through [DATE], for household use or personal consumption and not for resale. Excluded from the Class are Venus and its board members, officers, and attorneys; governmental entities; the Court presiding over the settlement, and those persons who timely and properly request exclusion from the Settlement Class.

**What Can I Get From the Settlement?** A fund of up to $925,000 will be created to pay Class Members' claims, certain administrative costs, attorneys' fees and expenses, incentive awards, and other costs. Venus will also make changes to the labels for some of the Products, to its website, and to the formulation for Dishmate.

Settlement Class Members may submit a properly completed Claim Form and be eligible to receive a cash payment of up to $25. These awards may be subject to pro rata upward or downward adjustment depending on the number of claims approved. A detailed Class Notice and copies of the Claim Form are available at www.xxxxxxxxxxxxxxx.com or by calling 1-8xx-xxx-xxxx.

**What are My Options?** To ask for a cash payment and stay in the Class, you must send in a Claim Form by [DATE]. If you do not wish to participate in the settlement, you may exclude yourself from the Class by [DATE]. The detailed notice available at www.xxxxxxxxxxxxxxx.com or by calling 1-8xx-xxx-xxxx explains how to exclude yourself from the settlement. If you exclude yourself, you can't get money from this settlement if it is approved. If you're a Class Member, you may object to any part of the settlement you don't like, and the Court will consider your views. Your objection must be timely, in writing and must provide documents to establish your membership in the Class. Procedures for submitting objections are set out in the detailed notice available at www.xxxxxxxxxxxxxxx.com or by calling 1-8xx-xxx-xxxx.

The Court will hold a Final Fairness Hearing at ____ a.m./p.m. on _____ in _____, California. At this hearing, the Court will consider whether the settlement is fair, reasonable and adequate and whether to approve the named plaintiffs' incentive awards of up to $2,000 each and attorneys' fees and expenses up to $277,500. You may attend the hearing, and you may hire your own lawyer, but you are not required to do either. The Court will consider timely written objections and will listen to people who have made a prior written request to speak at the hearing. After the hearing, the Court will decide whether to approve the settlement.

**What If I Have Questions?** This Notice is just a summary. Detailed notice, as well as the Settlement Agreement and other documents filed in this lawsuit can be found online at www.xxxxxxxxxxxxxxx.com. For more information, you may call or write to the Settlement Administrator at 1-8xx-xxx-xxxx, Venus Earth Friendly Products Settlement, c/o Dahl Administration, P.O. Box 3614, Minneapolis, MN 55403-0614 or info@xxxxxxxxxxxxxxxxxx.com.

---

**CLAIM FORMS MUST BE RETURNED BY [MONTH DAY, YEAR].**
**QUESTIONS? VISIT** www.xxxxxxxxxxxxxxx.com **OR CALL 1-8XX-XXX-XXXX**