LEXINGTON LAW GROUP
Mark N. Todzo, State Bar No. 168389
Abigail Blodgett, State Bar No. 278813
503 Divisadero Street
San Francisco, CA  94117
Telephone: (415) 913-7800
Facsimile: (415) 759-4112
mtodzo@lexlawgroup.com
ablodgett@lexlawgroup.com

HALUNEN LAW
Melissa W. Wolchansky (*admitted pro hac vice*)
Charles D. Moore (*pro hac vice pending*)
80 South Eighth Street, Suite 1650
Minneapolis, MN 55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099
wolchansky@halunenlaw.com
moore@halunenlaw.com

*Court Appointed Class Counsel*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| REBEKAH BAHARESTAN and JENA MCINTYRE, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>VENUS LABORATORIES, INC., dba EARTH FRIENDLY PRODUCTS, INC.,<br><br>        Defendant. | Case No. 3:15-cv-03578-EDL<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND REQUEST FOR ENTRY OF FINAL JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:     March 15, 2016<br>Time:     9:00 a.m.<br>Location: Courtroom E<br>Judge:   Hon. Elizabeth D. Laporte |

Case No. 3:15-cv-03578-EDL

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT AND REQUEST
FOR ENTRY OF FINAL JUDGMENT

1

## TABLE OF CONTENTS

2

Page

3
TABLE OF AUTHORITIES ................................................................................... iii

4
INTRODUCTION ............................................................................................. 1

5
STATEMENT OF FACTS .................................................................................. 1

6
   I. PROCEDURAL AND FACTUAL BACKGROUND........................................ 1

7
   II. SETTLEMENT.......................................................................................... 3

8

9
     A. Venus Must Change the Labeling and Marking of the Products.................. 3

10
     B. Venus Must Remove MIT from the Dishmate Products and Will Strive to
       Remove MIT from All the Products ............................................................ 4

11

12
     C. Venus must Contribute a Substantial Sum to a Settlement Fund to
       Compensate Those Persons Allegedly Harmed by Its Allegedly Deceptive

13
       Labeling, Advertising, And Marketing Practices.......................................... 4

14
   III. NOTICE TO THE SETTLEMENT CLASS ..................................................... 5

15

16
ARGUMENT ................................................................................................... 7

17
   I.  THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE
     SETTLEMENT ........................................................................................... 7

18

19
     A. The Applicable Legal Standard ................................................................. 8

20
     B. The Strength of Plaintiffs' Case and Risk, Expense, Complexity, and Likely
       Duration of Further Litigation.................................................................... 9

21

22
     C. The Risk of Maintaining Class Action Status through Trial........................ 11

23
     D. The Amount Offered in Settlement............................................................ 11

24
     E. The Extent of Discovery Completed and the Stage of the Proceedings....... 13

25
     F. The Experience and Views of Class Counsel .............................................. 14

26
     G. The Presence of a Governmental Participant............................................. 14

27

28

                              Case No. 3:15-cv-03578-EDL

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT AND REQUEST FOR ENTRY OF FINAL JUDGMENT**

H. The Reaction of the Class Members to Settlement ...................................... 15

I. The Settlement is the Product of Serious, Informed, and Arm's-Length
    Negotiations .............................................................................................. 16

II. THE COURT SHOULD CONFIRM CERTIFICATION OF THE
    SETTLEMENT CLASS .................................................................................. 17

A. The Criteria for Class Certification Under Rule 23(a) are Satisfied............ 17

1. Joinder of All Members is Impracticable ................................................. 17

2. Common Issues of Law and Fact Exist .................................................... 18

3. The Named Plaintiffs' Claims are Typical of the Settlement Class
    Claims ...................................................................................................... 19

4. The Named Plaintiffs and Their Counsel Will Adequately
    Represent the Class .................................................................................. 20a

B. The Settlement Class Meets the Requirements of Rule 23(b)(3) ................. 20

III. THE CLASS NOTICE SATISFIES THE REQUIREMENTS OF DUE
    PROCESS ..................................................................................................... 23

A. The Method of Notice is Appropriate .......................................................... 23

B. The Contents of the Notice are Adequate .................................................... 24

CONCLUSION .................................................................................................... 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

Page

**Cases**

Ahdoot v. Babolat VS N. Am., Inc.,
    No. CV 13-07898-VAP (VBKx), 2015 U.S. Dist. LEXIS 45551
    (C.D. Cal. Apr. 6, 2015) ........................................................................................... 24

Amchem Prods. v. Windsor,
    521 U.S. 591 (1997) ................................................................................................. 21

Astiana v. Kashi Co.,
    No. 11-CV-1967-H (BGS), 2014 U.S. Dist. LEXIS 127624
    (S.D. Cal. Sept. 2, 2014) ............................................................................... 20, 21, 22

Barbosa v. Cargill Meat Solutions Corp.,
    297 F.R.D. 431 (E.D. Cal. 2013) ............................................................................. 14

Beck-Ellman v. Kaz USA, Inc.,
    No. 3:10-CV-02134-H-DHB, 2013 U.S. Dist. LEXIS 60182 (S.D. Cal. Jan. 7, 2013) ......... 24

Bjustrom v. Tr. One Mortg. Corp.,
    199 F.R.D. 346 (W.D. Wash. 2001) .......................................................................... 19

Brazil v. Dole Packaged Foods, L.L.C.,
    No. 12-CV-01831-LHK, 2014 U.S. Dist. LEXIS 157575 (N.D. Cal. Nov. 6, 2014) ............ 11

Bruno v. Quten Research Inst.,
    280 F.R.D. 524 (C.D. Cal. 2011) .............................................................................. 21

Chavez v. Blue Sky Nat. Bev. Co,
    268 F.R.D. 365 (N.D. Cal. 2010) ............................................................................. 19

Churchill Vill. v. GE,
    361 F.3d 566 (9th Cir. 2004) ............................................................... 8, 15, 16, 24

Cicero v. DirecTV, Inc.,
    No. EDCV 07-1182, 2010 U.S. Dist. LEXIS 86920 (C.D. Cal. July 27, 2010) ................. 16

Delarosa v. Boiron, Inc.,
    275 F.R.D. 582 (C.D. Cal. 2011) ................................................................. 18, 19, 22

Gaudin v. Saxon Mortg. Servs.,
    No. 11-cv-01663-JST, 2015 U.S. Dist. LEXIS 95720 (N.D. Cal. July 21, 2015) ............... 24

Gen. Tel. Co. of the Sw. v. Falcon,
    457 U.S. 147 (1982) ............................................................................................ 11, 19

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT AND REQUEST
FOR ENTRY OF FINAL JUDGMENT

Hanlon v. Chrysler Corp.,
    150 F.3d 1011 (9th Cir. 1998) ..................................................... 8, 18, 19, 20, 21, 22

Hopson v. Hanesbrands Inc.,
    No. CV-08-0844 EDL, 2009 U.S. Dist. LEXIS 33900
    (N.D. Cal. Apr. 3, 2009) ............................................................. 18, 19, 21, 22

Immigrant Assistance Project of the L.A. Cty. Fed'n of Labor v. INS,
    306 F.3d 842 (9th Cir. 2002) ................................................................ 18

In re Immune Response,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) ................................................. 16

In re Mego Fin. Corp. Sec. Litig.,
    213 F.3d 454 (9th Cir. 2000) ................................................................... 8

In re Pac. Enters. Sec. Litig.,
    47 F.3d 373 (9th Cir. 1995) ................................................................... 14

In re Tableware Antitrust Litig.,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................. 24

In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act Litig.,
    295 F.R.D. 438 (C.D. Cal. 2014) ............................................................ 24

In re Wells Fargo,
    No. MDL Docket No. C-07-1841 (EMC), 2011 U.S. Dist. LEXIS 84541 (N.D. Cal. Aug. 2,
    2011) ................................................................................................. 20, 25

Johnson v. Gen. Mills, Inc.,
    No. SACV 10-00061-CJC(ANx), 2013 U.S. Dist. LEXIS 90338
    (S.D. Cal. June 17, 2013) ........................................................................ 8

Jordan v. Cnty of L.A.,
    669 F.2d 1311 (9th Cir.) ........................................................................ 18

Lagarde v. Support.com, Inc.,
    No. No.: C12-0609 JSC, 2013 U.S. Dist. LEXIS 42725 (N.D. Cal. Mar. 25, 2013) ......... 9, 11

Larsen v. Trader Joe's Co.,
    No. 11-cv-05188-WHO, 2014 U.S. Dist. LEXIS 95538
    (N.D. Cal. July 11, 2014) .......................................................... 9, 11, 13, 14, 15, 16

Lozano v. AT&T Wireless Servs.,
    504 F.3d 718 (9th Cir. 2007) ................................................................. 19

McClellan v. Chase Home Fin. L.L.C.,
    No. SACV 12-1331-JGB (JEMx), 2015 U.S. Dist. LEXIS 118005
    (C.D. Cal. Aug. 31, 2015) .................................................................. 14, 15

iv

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT AND REQUEST
FOR ENTRY OF FINAL JUDGMENT

Miller v. Ghirardelli Chocolate Co.,
No. C 12-04936 LB, 2014 U.S. Dist. LEXIS 141111, (N.D. Cal. Oct. 2, 2014) .................... 17

Misra v. Decision One Mortg. Co.,
No. SA CV 07-0994 DOC (RCx), 2009 U.S. Dist. LEXIS 119468
(C.D. Cal. Apr. 13, 2009) ....................................................................................................... 9, 13

Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,
221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................... 10, 12, 14, 15

Nigh v. Humphreys Pharmacal, Inc.,
No. 12cv2714-MMA-DHB, 2013 U.S. Dist. LEXIS 161215
(S.D. Cal. Oct. 23, 2013) ........................................................................... 11, 12, 14, 16, 24

O'Donovan v. Cashcall, Inc.,
278 F.R.D. 479 (N.D. Cal. 2011) ............................................................................... 20, 22

Officers for Justice v. Civil Serv. Com.,
688 F.2d 615 (9th Cir. 1982) ......................................................................................... 8, 11

Rodriguez v. W. Publ'g,
563 F.3d 948 (9th Cir. 2009) ............................................................................. 8, 9, 16,  25

Torres v. Pet Extreme,
No. 1:13-cv-01778-LJO-SAB, 2015 U.S. Dist. LEXIS 5136 (E.D. Cal. Jan. 14, 2015) ....... 23

Wal-Mart Stores, Inc. v. Dukes,
131 S. Ct. 2541 (2011) ...................................................................................................... 18

Zeisel v. Diamond Foods, Inc.,
No. C 10-01192 JSW, 2011 U.S. Dist. LEXIS 60608 (N.D. Cal. June 7, 2011) ............. 19, 20

**Rules**

Fed. R. Civ. P. 23(a) ........................................................................................................... 17

Fed. R. Civ. P. 23(a)(1) ...................................................................................................... 17

Fed. R. Civ. P. 23(a)(3) ...................................................................................................... 19

Fed. R. Civ. P. 23(b)(3) ...................................................................................................... 20

Fed. R. Civ. P. 23(e)(2) ................................................................................................... 8, 16

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................................. 23

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT AND REQUEST
FOR ENTRY OF FINAL JUDGMENT**

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND REQUEST FOR ENTRY OF FINAL JUDGMENT**

**PLEASE TAKE NOTICE THAT** Plaintiffs Rebekah Baharestan and Jena McIntyre ("Plaintiffs") hereby respectfully move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for the entry of an Order: (i) granting final approval of the Settlement Agreement filed as Exhibit 1 to the Declaration of Mark N. Todzo (ECF No. 15-2); (ii) confirming certification of the Settlement Class, and (iii) entering an Order and Final Judgment in this action.  The fairness hearing on this Motion is presently set for March 15, 2016 at 9:00 a.m. in the Courtroom of the Honorable Elizabeth D. Laporte, United States Magistrate Judge, at the United States District Court, Northern District of California, Courtroom E, 15th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102.

This Motion is based on the Memorandum of Points and Authorities, the Declaration of Melissa W. Wolchansky, the Declaration of Jeffrey D. Dahl and corresponding exhibits, the other papers filed in this action, and such oral and documentary evidence as may be presented at the fairness hearing on this Motion.

Case No. 3:15-cv-03578-EDL

## MEMORANDUM OF POINTS AND AUTHORITIES

## <u>INTRODUCTION</u>

Plaintiffs Rebekah Baharestan and Jena McIntyre ("Plaintiffs") on behalf of the Class as defined herein, respectfully apply to this Court for entry of an order (i) granting final approval of the settlement set forth in the Class Settlement Agreement[1] (the "Settlement") (ECF No. 15-2); (ii) confirming certification of the Class for purposes of such settlement; and (iii) entering an Order and Final Judgement in this action ("Final Judgement").

The Settlement resolves the claims by Plaintiffs against Venus Laboratories, Inc., d/b/a Earth Friendly Products, Inc.'s, ("Venus" or "Defendant"). Through the diligent efforts of Plaintiffs and Venus (collectively, the "Parties"), the Parties were able to reach the Settlement presently before this Court. Plaintiffs' main objective in filing their lawsuit was to remedy the alleged deception in Venus' marketing and labeling of its Earth Friendly brand household cleaning products ("Earth Friendly Products" or "Products"); which they have achieved. As a result of the Settlement, Venus will make substantive changes to the advertising of the Products, reformulate certain Products, and provide reimbursement to consumers for past purchases.

The Settlement was reached after thorough investigation by Plaintiffs, substantial informal discovery, and rigorous and informed negotiations overseen by a seasoned, neutral mediator. Plaintiffs submit their Unopposed Motion for Final Approval of Class Action Settlement and Request for Entry of Final Judgment to bring closure to this matter.

## <u>STATEMENT OF FACTS</u>

## I.   PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs provided a full summary of the allegations in Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement Agreement. (ECF No. 15.) The facts provided therein are incorporated here, and the following

---

[1] Herein after, all capitalized terms have the same meaning as used in the Settlement Agreement. (Todzo Decl. Ex. 1, ECF No. 15-2.)

merely provides a brief background for the Court's convenience.

This case arises out of alleged deceptive and misleading marketing of the Products as "natural." *Baharestan v. Venus Laboratories, Inc.*, Case No. 3:15-cv-03578-EDL ("Complaint"), ¶ 6 (ECF No. 1). Plaintiffs allege that despite Venus' representations, all of the Products are in fact composed of certain ingredients that are non-natural. *Id.* ¶ 4. For example, many of the Products include Methylisothiazolinone ("MIT") – a chemical that is a severe allergen for between 2 and 10 percent of the population, with more people becoming sensitized every day. *Id.* ¶ 5. Plaintiffs allege that consumers suffered injury as a result of Defendant's conduct and that such conduct violated consumer protection statues in Illinois, Washington, and California, among other laws. *Id.* ¶ 7.

On November 3, 2014, Plaintiff Jena McIntyre sent a letter notifying Venus of her intent to pursue consumer protection claims on behalf of herself and a nationwide class of purchasers of the Products. *See* Declaration of Melissa W. Wolchansky in Support of Plaintiffs' Motion For Final Approval of Class Action Settlement and Request for Entry of Final Judgment ("Wolchansky Decl."), ¶ 8. Upon Venus' receipt of Plaintiff McIntyre's threatened action, counsel for Plaintiff McIntyre and counsel for Venus engaged in pre-litigation discovery and contentious merits discussions. *Id.* ¶ 10.

On March 25, 2015, independently of Plaintiff McIntyre, Plaintiff Rebekah Baharestan sent a letter to Venus informing it of Plaintiff Baharestan's intent to represent a nationwide class of purchasers of the Products. *Id.* ¶ 13. Venus informed Plaintiff McIntyre of Plaintiff Baharestan's threatened action, and counsel for the Plaintiffs decided to work together to see if they could obtain relief on behalf of the Class. *Id.*

After months of discovery and settlement discussions, on June 1, 2015, the Parties attended an all-day, in person, mediation before the Honorable Morton Denlow (Ret.) in Chicago, Illinois. *Id.* ¶ 14. The Parties' negotiated at arm's length, had productive and difficult negotiations, and ultimately were able to reach a settlement that provide significant relief for the Class. *Id.* ¶ 16.

On August 4, 2015, Plaintiffs filed their Class Action Complaint in United States District Court for the Northern District of California. *See* Complaint, (ECF No. 1).  On September 29, 2015, Plaintiffs' filed their Motion for Preliminary Approval of Class Action Settlement Agreement. (ECF No. 15.)

On November 5, 2015, the Court entered an Order Preliminarily Approving the Class Settlement Agreement, Conditionally Certifying the Settlement Class, Providing For Notice, and Scheduling Order ("Approval Order"), (ECF No. 23). In the Approval Order, the Court appointed Rebekah Baharestan and Jena McIntyre as the Class Representatives. *Id.* ¶ 3. Additionally, the Court named Halunen Law and The Lexington Law Group ("Class Counsel") as counsel for the Settlement Class. *Id.* ¶ 4.

## II.     THE SETTLEMENT

The Settlement remedies Venus' alleged misconduct and provides significant monetary compensation to the Class Members. In exchange for a release of Plaintiffs' and the Class' claims, Venus has agreed to undertake several important remedial measures, including modifying its labels, ingredients, and website. Venus will also provide monetary compensation to the Class pursuant to the Settlement's terms.

### A.     Venus Must Change the Labeling and Marketing of the Products.

In consideration for the release of Plaintiffs' and the Class's claims, Venus will make the following changes to the labels and ingredient descriptions on the Products.

First, Venus must refrain from using the term "natural" to refer to the Products, unless the word is accompanied by an accurate description of the particular characteristic of the Product it describes (*e.g.* "natural detergent" or "natural cleaning agent"). Settlement, ¶ 4.6(b).Venus is also prohibited from placing the phrases "100% Natural" or "All-Natural" on the labels of the Products, unless such claims are certified by a reputable third-party, in the natural products industry. *Id.* ¶ 4.6(a).

Second, the Settlement requires Venus to remove the term "organic" from the Products' labels, unless the Product meets the United States Department of Agriculture's standard for

"organic," the California Organic Product Act's standard for "organic," or another states' equivalent standard for "organic." *Id.* ¶ 4.6(c).

Third, Venus must continue to list all ingredients on the Products, while including explanatory parentheticals after each ingredient (*e.g.* "derived from coconut oil" or ".0095% preservative"). *Id.* ¶ 4.6(d)-(e).

Fourth, the Earth Friendly Product labels must include the statement "See www.ECOS.com/ingredients for more information on our ingredients," or a substantially similar statement, on the back panel of the Products. *Id.* ¶ 4.6(f). This website will now include a glossary that generally describes the manufacturing process for each ingredient used in the Products. *Id.* ¶ 4.6(g).

### B.     Venus Must Remove MIT from the Dishmate Products and Will Strive to Remove MIT from All the Products.

In addition to the labeling changes described above, the Settlement requires Venus to stop using MIT as an ingredient in all the Dishmate Products. *Id.* ¶ 4.7(a). The Settlement also requires Venus to make good faith efforts to study alternatives to MIT in its other Products, and provide reports to Class Counsel regarding these efforts. *Id.* ¶ 4.7(b)-(c). If Venus continues to use MIT in any of the Products, Venus must disclose on its website that "hypoallergenic" does not mean a Product or ingredient will not cause any allergic reactions in any person and a small percentage of individuals may have some form of allergic reaction to MIT. *Id.* ¶ 4.7(d).

### C.     Venus must Contribute a Substantial Sum to a Settlement Fund to Compensate Those Persons Allegedly Harmed by Its Allegedly Deceptive Labeling, Advertising, And Marketing Practices.

Venus will contribute no less than $850,000, and no more than $925,000, into an independently-administered Settlement Fund, which will mainly be used to compensate Settlement Class Members. *Id.* ¶ 4.1(d). Settlement Class Members who submit valid claims are eligible to recover $1.50 for each ECOS® Laundry Detergent Product they purchased, or $1 for each other Product purchased; up to $25 per Settlement Class Member. *Id.* ¶ 4.3(c). In addition, up to $230,000 of the Settlement Fund will be used to administer the Settlement and to

disseminate notice to the Class, such that affected persons may avail themselves of this remedial monetary payment. *Id.* ¶ 4.1(a)(iii). Finally, the Settlement Fund will pay for attorneys' fees and costs of up to $277,500, and to pay modest service awards of $2,000 to each class representative for their time and efforts on behalf of the Class. *Id.* ¶¶ 8.1, 8.5.

If the total of the Class claims, notice and administrative costs and attorneys' fees and costs exceeds $850,000, Venus is required to contribute an additional $75,000 to the Settlement Fund to cover the claims. *Id.* ¶ 4.5(b). Following the additional cash contribution, if the total amount of claims submitted by Settlement Class Members exceeds the available relief, each eligible Claim shall be proportionately reduced on a *pro rata* basis so the aggregate value of the cash payments do not exceed the Settlement Fund balance. *Id.*

In the event there are excess Settlement Funds, the Settlement does not permit the reversion of any portion of the Settlement Fund to Venus. *Id.* ¶ 4.5(c). If the amounts ultimately paid for claims, notice and administration expenses, class representative incentive awards, and attorneys' fees and costs do not equal or exceed the Settlement Fund, the remainder of the Settlement Fund shall be distributed to eligible Settlement Class Members on a *pro rata* basis, up to 100% of the Settlement Class Member's Initial Claim Amount. *Id.* ¶ 4.5(a). Any remaining Settlement Funds following the *pro rata* adjustment shall be distributed to Consumers Union, a non-profit organization that serve the interest and needs of the Class. *Id.* ¶ 4.5(c); *see also* Supplemental Declaration of Mark N. Todzo in Support of Motion for Preliminary Approval of Class Action Settlement Agreement (ECF Nos. 22, 22-1) .

The Settlement Fund is administered by Dahl Administration, LLC, an independent and highly qualified company selected by the Parties (the "Settlement Administrator"). *Id.* ¶ 5.1. The Settlement Administrator will approve claims submitted by affected Settlement Class Members in accordance with a specified procedure and subject to verification. *Id.* ¶ 4.2.

### III.   NOTICE TO THE SETTLEMENT CLASS

The Notice Plan was implemented in accordance with the terms the Court approved. Approval Order, ¶ 10. The Notice Plan was developed using targeted methods universally

1   employed in the advertising industry to ensure adequate reach to the Settlement Class Members

2   based on how the public consume media in today's world. *See* Declaration of Jeffrey D. Dahl

3   With Respect to Implementation of the Notice Plan and Performance of Required Settlement

4   Administration Activities ("Dahl Decl."), ¶ 32. On November 10, 2015, the Settlement Website

5   went live. *Id.*¶ 22. Following the establishment of the Settlement Website, on November 25,

6   2015, direct notice was provided to known Settlement Class Members by mailing them the

7   Long-Form Notice and Claim Form. *Id.* ¶ 11.

8       The Settlement was publicized through Web-Based Notice, utilizing banner-style notices

9   with a link to the Settlement Website. *Id.* ¶ 13. The Web-Based Notice took advantage of

10  specific keyword search terms in major search engines and also appeared on Facebook. *Id.* ¶¶ 16-

11  19. Internet based ads appeared on the Reach Channel and Lifestyle Channel website networks

12  from November 25, 2015 to December 22, 2016. *Id.* ¶ 14. The Web-Based Notice campaign has

13  thus far delivered over 66 million impressions, *i.e.*, opportunities for potential Settlement Class

14  Members to click to view the Settlement Website. *Id.* ¶ 21. The Notice Plan also publicized the

15  Settlement through press releases distributed over PR Newswire, reaching approximately 5,800

16  media outlets and 5,400 websites. *Id.* ¶ 20.

17      The Settlement Website address appeared on all of the printed notice pieces and was

18  hyperlinked where a notice piece appears on the Internet. *Id.* ¶ 22. The Settlement Website

19  provides Settlement Class Members with general settlement information, news about the

20  settlement, a list of important dates and deadlines, a list of frequently asked questions and

21  responses, downloadable versions of settlement documents, including the Long Form Notice,

22  Settlement Agreement, and Preliminary Approval Order detailed instructions on how to submit a

23  claim online as well as a downloadable Claim Form, and information on how to contact the

24  Settlement Administrator via email, U.S. Mail, or phone. *Id.* ¶ 23.

25      In addition, on November 25, 2015, a toll-free phone number was established allowing

26  Settlement Class Members to call and request that a Long-Form Notice be mailed to them or

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT AND REQUEST
FOR ENTRY OF FINAL JUDGMENT**

listen to frequently asked questions. *Id.* ¶ 25. As of January 2, 2016, there have been 65 calls to the toll free number. *Id.* ¶ 27.

The details of the Notice Plan, including the methodology underlying its design, were explained in detail in the Affidavit of Jeffry D. Dahl with Respect to Settlement Notice Plan, (ECF No. 15-2, Ex. C). Use of the Internet and traditional methods of publication maximized the effect of the dollars spent to contact the Settlement Class Members. Publication through the Internet had the further advantage of immediately linking the reader to the Settlement Website and the Claim Form.

The claims data reflects the success of the Notice Plan: as of January 13, 2016, over 32,000 individuals had visited the Settlement Website and 14,036 Settlement Class Members have submitted a Claim. Dahl. Decl., ¶¶ 23, 29.[2]

## ARGUMENT

### I. THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT.

The Settlement is fair, adequate, and reasonable, as it requires changes in Venus' labeling and marketing practices and secures just compensation for the Settlement Class Members. The Settlement accomplishes this while avoiding both the uncertainty and the delay that would be associated with further litigation. It represents a fair compromise of the Parties' respective positions in the litigation, and enables each Party to end to the litigation, thus avoiding its costs and risks. Importantly, the Settlement provides Settlement Class Members with monetary relief it may not otherwise be entitled to if this case was litigated to its conclusion. Finally, the Settlement was reached through arm's-length negotiations as part of a supervised mediation process. Class Counsel, whom have significant experience in litigating class actions, support the

---

[2] Given that the claims period is not completed, this data is preliminary and incomplete. Plaintiffs will provide the Court with final claims data together with their reply papers, which are due following the close of the claims period.

Settlement as fair and providing reasonable relief to the Settlement Class Members.

### A.   The Applicable Legal Standard.

"The Ninth Circuit has a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *Johnson v. General Mills*, No. SACV 10-00061-CJC(ANx), 2013 U.S. Dist. LEXIS 90338, at *7 (S.D. Cal. June 17, 2013) (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)). "The Ninth Circuit recognized 'an overriding public interest in settling and quieting litigation,' and 'has long deferred to the private consensual decision of the parties' to settle." *Id.* (quoting *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)). Nevertheless, "[the] decision to approve or reject a settlement is committed to the sound discretion of the trial judge because [s]he is exposed to the litigants, and their strategies, positions, and proof." *In re Mego Fin. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)(citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

A district court may approve a class action settlement only after determining it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this determination, a court should consider:

> (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575-76 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).

### B. The Strength of Plaintiffs' Case and Risk, Expense, Complexity, and Likely Duration of Further Litigation.

"It can be difficult to ascertain with precision the likelihood of success at trial. The Court cannot and need not determine the merits of the contested facts and legal issues at this stage, and to the extent courts assess this factor, it is to 'determine whether the decision to settle is a good value for a relatively weak case or a sell-out of an extraordinarily strong case.'" *Misra v. Decision One Mortg. Co.*, No. 07-cv-0994-DOC, 2009 U.S. Dist. LEXIS 119468, at *20 (C.D. Cal. Apr. 13, 2009).

In determining "the probability of Plaintiffs' success on the merits, there is no 'particular formula by which that outcome must be tested." *Lagarde v. Support.com, Inc.*, No. C12-0609 JSC, 2013 U.S. Dist. LEXIS 42725, at *10 (N.D. Cal. Mar. 25, 2013) (quoting *Rodriguez*, 563 F.3d at 965). "Rather, the Court's assessment of the likelihood of success is 'nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Id.* "'In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value." *Id.* "Moreover, settlement is favored where . . . significant procedural hurdles remain, including class certification and an anticipated appeal." *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 U.S. Dist. LEXIS 95538, at *12 (N.D. Cal. July 11, 2014).

In the absence of a settlement now, the Parties would continue to expend a great deal of time and money to litigate this case. Plaintiffs are confident they could obtain nationwide certification of the class, survive summary judgment, win at trial, and prove an appropriate measure of damages. *See* Wolchansky Decl., ¶ 28. However, Plaintiffs recognize the potential uncertainties in any litigation. Venus continues to deny that the labels are misleading, and has indicated that, should this matter proceed, it will vigorously oppose class certification on ascertainability, individual reliance, and predominance grounds, as well as vigorously defend the overall merits. *Id.* ¶ 30. Moreover, even if the case were to proceed to judgment on the merits, any final judgment would likely be appealed which would take significant time and resources. *Id.*

9                                    Case No. 3:15-cv-03578-EDL

¶ 29. These litigation efforts would be costly to all parties and would require significant judicial oversight. *Id.* More importantly, further litigation presents no guarantee for recovery, let alone a recovery greater than that provided by the Settlement. *Id.*

Litigation to date has been costly, and certainly further litigation would be yet more costly, complex, and time-consuming. *Id.* Such litigation could include dispositive motions; contested class certification proceedings and appeals; costly nationwide discovery, including dozens of depositions, interrogatories, and requests for admission and voluminous document production; costly merits and class expert reports and discovery; and trial. *Id.* Each step towards summary judgment and trial would be subject to Venus' vigorous opposition and appeal. *Id.*

One of the hotly contested issues in this action would be consumers' perception of "natural"; a necessary predicate to determine the materiality and deceptiveness of Venus' labels. *Id.* Such issues would be the subject of competing expert testimony subject to *Daubert* motions. *Id.* The costs and risks associated with continuing to litigate this action would require extensive resources and Court time. *Id.* Furthermore, the Parties would likely spend significant time and resources on damage calculations. Venus has maintained that the Products are of the lowest price in their category, and both Parties would spend significant resources in expert discovery producing competing damage analyses. *Id.*

"Avoiding such a trial and the subsequent appeals in this complex case strongly militates in favor of settlement rather than further protracted and uncertain litigation." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004). Thus, "'unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Id*. at 526. The Settlement confers an excellent result on the Settlement Class Members, as such approval is preferable to undeniably costly and lengthy litigation with an uncertain outcome.

By reaching this Settlement, the Parties will avoid protracted litigation and will establish a means for prompt resolution of the Settlement Class Members' claims. The avenue of relief provided by the Settlement ensures meaningful benefits to Settlement Class Members. Given the

1    alternative of long and complex litigation, the availability of prompt relief under the Settlement

2    is highly beneficial to the Class and favors final approval.

3                    **C.      The Risk of Maintaining Class Action Status through Trial.**

4         This case settled before the Court ruled on class certification, and the current certification

5    is for settlement purposes only. Approval Order, ¶ 1. Defendant has stated that, but for a

6    settlement, it would vigorously contest class certification. Wolchansky Decl., ¶ 30. Further, even

7    if the class is certified, such certification is not set in stone. *Gen. Tel. Co. of Sw. v. Falcon*, 457

8    U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to

9    modify it in the light of subsequent developments in the litigation"); *see Brazil v. Dole Packaged

10   Foods, Inc.,* NO. 12-CV-01831-LHK, 2014 U.S. Dist. LEXIS 157575, at *45 (N.D. Cal. Nov. 6,

11   2014) (decertifying a class of consumers). Given the risks, this factor weighs in favor of final

12   approval. *See, e.g.*, *Larsen,* 2014 U.S. Dist. LEXIS 95538, at *13 (finding this factor weighed in

13   favor of approval where action settled prior to class certification); *Lagarde*, 2013 U.S. Dist.

14   LEXIS 42725, at *13-14 (finding this factor weighed in favor of approval where settlement

15   occurred prior to class certification, but if given the opportunity the defendant would contest

16   certification); *Nigh v. Humphreys Pharmacal, Inc.*, No. 12-cv-2714-MMA-DHB, 2013 U.S. Dist.

17   LEXIS 161215, at *19 (S.D. Cal. Oct. 23, 2013) (finding this factor favored approval where

18   defendants represented they would vigorously contest class certification).

19                         **D.      The Amount Offered in Settlement.**

20        "[T]he very essence of a settlement is compromise, 'yielding of absolutes and an

21   abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624. According to the Ninth

22   Circuit, "'it is the very uncertainty of outcome in litigation and avoidance of wasteful and

23   expensive litigation that induce consensual settlements. The proposed settlement is not to be

24   judged against a hypothetical or speculative measure of what *might* have been achieved by the

25   negotiators.'" *Id.* at 625 (emphasis added). Thus, "[i]t is well-settled law that a cash settlement

26   amounting to only a fraction of the potential recovery will not per se render the settlement

27   inadequate or unfair." *Id.* at 628. "This is particularly true in cases, such as this, where monetary

28

relief is but one form of the relief requested by the plaintiffs." *Id.* "It is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Id.*; *Nigh*, 2013 U.S. Dist. LEXIS 161215, at *22; *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 527.

The Settlement provides Settlement Class Members with a significant refund related to purchases during the Class Period. Given the price premium model that would likely be employed if the matter were resolved at trial, the refund provided under the Settlement is significant. Settlement, ¶ 4.3(d). Venus has maintained that its Products are the lowest priced in its category, and thus have maintained the Settlement Class Members have suffered little or no monetary damage. Wolchansky Decl. ¶ 30. If this matter proceeded to litigation, Plaintiffs would contest Venus' damage calculation, however, even if Plaintiffs were successful, it is likely Settlement Class Members would be entitled to some percentage of the purchase price. Wolchansky Decl. ¶ 29. Further, Settlement Class Members' ability to recoup funds is not limited by or dependent on their ability to provide proof of purchase. Settlement, ¶ 4.2(d). Finally, none of the value of the Settlement reverts to Venus. *Id.* ¶ 4.5(c). This substantial relief weighs heavily in favor of final approval of the Settlement.

In addition to monetary relief, the Settlement specifically addresses the alleged deceptive practices. First, Venus must refrain from using the term "natural" to refer to the Products, unless the word is accompanied by an accurate description of the particular characteristic of the Product it describes. *Id.* ¶ 4.6(b). Venus is also prohibited from placing the phrases "100% Natural" or "All-Natural" on the labels of the Products, unless such claims are certified by a reputable third-party, in the natural products industry. *Id.* ¶ 4.6(a).

Second, Venus must remove the term "organic" from the Products' labels, unless the Product meets the United States Department of Agriculture's standard for "organic," the California Organic Product Act's standard for "organic," or another states' equivalent standard for "organic." *Id.* ¶ 4.6(c).

Third, Venus must continue to list all ingredients on the Products, while including

explanatory parentheticals after each ingredient (*e.g.* "derived from coconut oil" or ".0095% preservative"). *Id.* ¶ 4.6(d)-(e).

Fourth, the Earth Friendly Product labels must include the statement "See www.ECOS.com/ingredients for more information on our ingredients," or a substantially similar statement, on the back panel of the Products. *Id.* ¶ 4.6(f). This website shall include a glossary that generally describes the manufacturing process for each ingredient used in the Products. *Id.* ¶ 4.6(g).

In total, these changes include labeling changes at the point of sale and reference and access to additional information, which are sufficient to prevent consumers from being deceived by the "natural" claims.

Finally, the Settlement requires Venus to stop using MIT as an ingredient in all the Dishmate Products, which are the subset of the Products that come into direct contact with skin. *Id.* ¶ 4.7(a). The Settlement also requires Venus to make good faith efforts to study alternatives to MIT for the remaining Products, and provide reports to Class Counsel regarding these efforts. *Id.* ¶ 4.7(b)-(c). If Venus continues to use MIT in any of the Products, Venus must disclose on its website that "hypoallergenic" does not mean a Product or ingredient will not cause any allergic reactions in any person and a small percentage of individuals may have some form of allergic reaction to MIT. *Id.* ¶ 4.7(d).

Given the clarification of the labels through the agreed-upon injunctive relief, the meaningful ingredient changes, as well as the significant monetary relief, the Settlement provides substantial benefits to the Class while avoiding the risk and expense of further litigation. Thus, this factor weighs in favor of final approval.

### E. The Extent of Discovery Completed and the Stage of the Proceedings.

"This factor evaluates whether 'the parties have sufficient information to make an informed decision about settlement." *Larsen*, 2014 U.S. Dist. LEXIS 95538, at *14 (quoting *Linney*, 151 F.3d at 1239). Formal discovery is unnecessary "where there has been sufficient information sharing and cooperation in providing access to necessary data[.]" *Misra*, 2009 U.S.

1  Dist. LEXIS 119468, at *23. "What is required is that 'sufficient discovery has been taken or

2  investigation completed to enable counsel and the court to act intelligently.'" *Barbosa v. Cargill*

3  *Meat Solutions Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013) (citing Herbert B. Newberg,

4  *Newberg on Class Actions* § 11.41 (4th ed. 2013)).

5      Class Counsel conducted thorough pre-litigation investigations of the matter and

6  exchanged extensive settlement-related discovery prior to the mediation and throughout the

7  settlement process. *See* Wolchansky Decl., ¶ 6-7, 9-12. Through that discovery, Class Counsel

8  obtained a greater understanding of the marketing, labeling, and manufacturing of Products as

9  well as their pricing and sales. *Id.* ¶ 10. Finally, Class Counsel extensively investigated the

10  ingredients in the Products, including: Alcohol Denat; Caprylyl/Myristyl Glucoside;

11  Cocamidopropyl Betaine; Cocamidoprpylamin Oxide; Lauryl Glucoside; Methylisothiazolinone;

12  Phenoxyethanol; Potassium Cocoate; Potassium Sorbate; and Sodium Coco-Sulfate. *Id.* ¶ 6. It

13  was against this backdrop of extensive discovery that Class Counsel negotiated and agreed to the

14  Settlement. *Id.* ¶ 16. Thus, this factor also weighs in favor of final approval. *See, e.g.*, *Larsen*,

15  2014 U.S. Dist. LEXIS 95538, at *14; *Nigh*, 2013 U.S. Dist. LEXIS 161215, at *21.

16          **F.    The Experience and Views of Class Counsel.**

17      "'Great weight' is accorded to the recommendation of counsel, who are most closely

18  acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D.

19  at 528 (citing *In re Paine Webber Ltd. P'ships Litig.*, 171 F.R.D 104, 125 (S.D.N.Y. 1997)); *see*

20  *McClellan v. Chase Home Fin., LLC.*, SACV 12-1331-JGB (JEMx), 2015 U.S. Dist. LEXIS

21  118005, at *17 (C.D. Cal. Aug. 31, 2015). "Parties represented by competent counsel are better

22  positioned than courts to produce a settlement that fairly reflects each party's expected outcome

23  in litigation." *In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

24      Class Counsel are experienced class action litigators with a history of success in similar

25  false advertising litigation. *See* Declaration of Mark N. Todzo in Support of Motion for

26  Preliminary Approval of Class Action Settlement Agreement ("Todzo Decl."), ¶¶ 15-16 (ECF

27  No. 15-1); *see also* Todzo Decl., Exs. 3, 4 (ECF Nos. 15-4, 15-5). Class Counsel worked

28

1  diligently to secure the best possible result for the Settlement Class Members. It is the

2  unambiguous opinion of all counsel that this Settlement is fair, reasonable and adequate and ask

3  that it be finally approved. Wolchansky Decl., ¶ 29. Thus, this factor weighs in favor of final

4  approval.

5                       **G.**     **The Presence of a Governmental Participant.**

6        This factor does not apply to the Court's analysis as there has been no government action

7  in this matter. *See McClellan*, 2015 U.S. Dist. LEXIS 118005, at *18; *Nat'l Rural Telecomm.*

8  *Coop.*, 221 F.R.D. at 528.

9                       **H.**     **The Reaction of the Class Members to the Settlement.**

10        Courts have recognized that a favorable reaction by class members strongly supports final

11  approval of the settlement. *See Larsen*, 2014 U.S. Dist. LEXIS 95538, at *16 (quoting *Create-A-*

12  *Card, Inc. v. Intuit, Inc.*, No. CV-07-6452-WHA, 2009 U.S. Dist. LEXIS 93989, at *15 (N.D.

13  Cal. Sept. 22, 2009)) ("A court 'may appropriately infer that a class action settlement is fair,

14  adequate, and reasonable when few class members object to it'"); *Nat'l Rural Telecomm. Coop.*,

15  221 F.R.D. at 529 ("[T]he absence of a large number of objections to a proposed class action

16  settlement raises a strong presumption that the terms of a proposed settlement action are

17  favorable to the class members").

18        The reaction of the Settlement Class Members has been overwhelmingly positive. As of

19  January 13, 2016, only three Settlement Class Member have opted out, and there have been no

20  objections. Dahl Decl., ¶ 30-31.[3] The response of the Settlement Class Members strongly

21  supports final approval. *See e.g.*, *Churchill Vill.,* 361 F.3d at 577 (affirming approval of a class

22  settlement where 90,000 class members were given notice and only 45 objected); *Larsen*, 2014

23  U.S. Dist. LEXIS 95538, at *16-17 (approving class settlement about natural foods where 23

24  _____

25  [3] The deadline for submission of objections is February 12, 2016. (ECF No. 23, at 10.)

26  Discussion of the issues raised in any objections will be briefed in Class Counsel's response, which is due on March 7, 2016. *Id.* at 11.

27

28                                         15                        Case No. 3:15-cv-03578-EDL

class members opted out, and 17 objected).

## I.   The Settlement is the Product of Serious, Informed, and Arm's-Length Negotiations.

In addition to the *Churchill* factors discussed above, courts also look to whether the settlement was arrived at in arms-length negotiations. *Larsen*, 2014 U.S. Dist. LEXIS 95538, at *25.

The courts of this Circuit "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution . . . and have never prescribed a particular formula by which the outcome must be tested." *Rodriguez*, 563 F.3d at 965 (9th Cir. 2009). A presumption of fairness arises when a settlement is negotiated at arm's length by well-informed counsel. *Nigh*, 2013 U.S. Dist. LEXIS 161215, at *20-21; *see Cicero v. DIRECTV, Inc.*, No. EDCV 07-1182, 2010 U.S. Dist. LEXIS 86920, at *9 (C.D. Cal. July 27, 2010) ("where a class settlement has been reached after meaningful discovery, 'after arm's length negotiation, conducted by capable counsel, it is presumptively fair.'") (internal quotations omitted).

Here, the Parties' negotiations were conducted at arm's length over several months; including a mediation with the Honorable Morton Denlow, a well-respected mediator in Illinois. *See* Wolchansky Decl., ¶ 14; Todzo Decl., ¶ 9. Counsel for Plaintiffs have considerable experience in class action litigation in general, and with the legal and factual issues of this case in particular. Wolchansky Decl. ¶ 2; Todzo Decl., ¶¶ 15-16.

"[T]he fact that the settlement agreement was reached in arm's length negotiations after relevant discovery [has] taken place create[s] a presumption that the agreement is fair." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007). Through the Parties' lengthy and comprehensive settlement discussions, and through substantial informal discovery, Venus provided Plaintiffs with vital information pertaining to the legitimacy and scope of Plaintiffs' claims—including information regarding the Products' labeling and ingredients. *See* Wolchansky Decl., ¶ 10; Todzo Decl., ¶ 8. This exchange of information ensured sophisticated and meaningful settlement negotiations, conducted with the assistance of a well-respected neutral

mediator. In short, the Parties were fully informed of all relevant facts at the time they reached the Settlement. As such, this factor weighs in favor of final approval.

In sum, all of the *Churchill* factors support a finding that the settlement is "fair, reasonable, and adequate" pursuant to Fed. R. Civ. P. 23(e)(2). Accordingly, the Court should finally approve the Settlement.

## II. THE COURT SHOULD CONFIRM CERTIFICATION OF THE SETTLEMENT CLASS.

For settlement purposes only, Plaintiffs request that the Court confirm the certification of the Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure. The Settlement Class is defined as:

> All persons who, during the Class Period, both resided in the United States and purchased in the United States any of the Earth Friendly Products for their household use or personal consumption and not for resale. Excluded from the Settlement Class are: (a) Venus's board members or executive-level officers, including its attorneys; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes himself or herself from the Settlement Class in accordance with the procedures approved by the Court.

Approval Order, ¶ 1.

As discussed below, the Settlement Class satisfies all of the Rule 23 certification requirements.

### A. The Criteria for Class Certification Under Rule 23(a) are Satisfied.

To justify class certification under Rule 23(a), Plaintiffs must show: (1) the class is so numerous that joinder is impracticable; (2) questions of law or fact are common to the class; (3) the claims of the representative plaintiffs are typical of the claims of the class; and (4) the class representatives will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Each of these criteria is met here.

#### 1. Joinder of All Members Is Impracticable.

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Often, a large number of class members by itself establishes the impracticability of

1  joining them as plaintiffs. *See Jordan v. Cnty of L.A.*, 669 F.2d 1311, 1319 (9th Cir. 1982),

2  *vacated on other grounds*, 459 U.S. 810 (1982); *Miller v. Ghirardelli Chocolate Co.*, No. C 12-

3  04936 LB, 2014 U.S. Dist. LEXIS 141111, at *6-7 (N.D. Cal. Oct. 2, 2014), *certification*

4  *confirmed*, 2015 U.S. Dist. LEXIS 20725, at *6 (N.D. Cal. Feb. 20, 2015) (where sales were in

5  the millions, numerosity was satisfied to certify the class). Impracticability does not mean

6  impossibility. *See, e.g.*, *Immigrant Assistance Project of L.A. Cnty Fed'n of Labor v. I.N.S.*, 306

7  F.3d 842, 869 (9th Cir. 2002) (noting that classes numbering 39, 64, and 71 met the numerosity

8  criterion); *Hopson v. Hanesbrands, Inc.*¸ No. CV-08-0844 EDL, 2009 U.S. Dist. LEXIS 33900,

9  at *7 (N.D. Cal. Apr. 3, 2009) (217 class members was a sufficient number to meet the

10  numerosity requirement); *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 587 (C.D. Cal. 2011) ("as a

11  general rule, classes of forty or more are considered sufficiently numerous.") (citation omitted).

12  More than 14,000 class members have already submitted claims confirming that there are

13  thousands of class members. Dahl Decl., ¶29.  As such, joinder of all of these individuals is

14  impractical, if not entirely impossible, and thus the numerosity requirement is satisfied.

15  ### 2.        Common Issues of Law and Fact Exist.

16  The Ninth Circuit construes Rule 23(a)(2)'s commonality requirement permissively.

17  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). As such, the commonality

18  requirement is less rigorous than the "companion requirements" of Rule 23(b)(3). *Id.* "All

19  questions of fact and law need not be common to satisfy the [commonality] rule. The existence

20  of shared legal issues with divergent factual predicates is sufficient . . . ." *Id.*; *Hopson,* 2009 U.S.

21  Dist. LEXIS 33900, at *8. Indeed, "even a single common question will do," so long as that

22  question has the capacity to generate a common answer "apt to drive the resolution of the

23  litigation." *Wal-Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 2551 (2011) (citations and internal

24  quotations omitted).

25  Plaintiffs' claims involve common questions applicable to every Settlement Class

26  Member. Plaintiffs challenge the labeling, advertising, and marketing of the Products, which

27  uniformly claimed to be "natural" and/or "organic," yet contained at least one ingredient that was

28

highly processed, synthetic, non-natural, and/or not organic. *See* Complaint, ¶ 2. Determining whether these material representations were violations of several state consumer protection laws is common to Plaintiffs and Settlement Class Members. Thus, the commonality requirement is satisfied. *See, e.g., Zeisel v. Diamond Foods, Inc.*, No. C 10-01192 JSW, 2011 U.S. Dist. LEXIS 60608, at *24 (N.D. Cal. June 7, 2011); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 377 (N.D. Cal. 2010); *Delarosa*, 275 F.R.D. at 589; *Bjustrom v. Trust One Mgmt. Corp.*, 199 F.R.D. 346, 348 (W.D. Wash. 2001).

### 3. The Named Plaintiffs' Claims are Typical of the Settlement Class Claims.

Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Representative claims are typical if they are "reasonably coextensive with those of the absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *Hopson,* 2009 U.S. Dist. LEXIS 33900, at *8. "[T]he claims of the purported class representative need not be identical to the claims of other class members, but the class representative 'must be part of the class and possess the same interest and suffer the same injury as the class members." *Hopson,* 2009 U.S. Dist. LEXIS 33900, at *9 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982)).

"[A] named plaintiff's claim is typical if it stems from the same event, practice or course of conduct . . . and is based upon the same legal or remedial theory." *Jordan*, 669 F.2d at 1321; *see also Hanlon*, 150 F.3d at 1019-20; *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 734 (9th Cir. 2007); *Hopson,* 2009 U.S. Dist. LEXIS 33900, at *9.

The requirements for typicality are met in this case as Plaintiffs and the Settlement Class Members assert claims which arise from the same course of conduct; Venus' alleged deceptive and misleading labeling, marketing, and advertising of the Products as "natural" or "organic." Additionally, typical of all members of the Settlement Class, Plaintiffs purchased one or more of the Products. Further, for each putative class member to recover under the consumer protection and breach of warranty claims, each must prove the same elements as Plaintiffs. *See Chavez*, 268

F.R.D. at 378. Thus, the Plaintiffs' claims and those of the Settlement Class Members are reasonably coextensive to satisfy the typicality requirement. *See O'Donovan v. CashCall, Inc.*, 278 F.R.D. 479, 491-92 (N.D. Cal. 2011); *Zeisel*, 2011 U.S. Dist. LEXIS 60608, at *26.

### 4.    The Named Plaintiffs and Their Counsel Will Adequately Represent the Class.

The adequacy requirement is satisfied if (1) the representative plaintiffs do not have conflicts with the class, and (2) the plaintiffs are represented by qualified and competent counsel who will vigorously prosecute the action on behalf of the class. *See Hanlon,* 150 F.3d at 1020.

There are no conflicts between Plaintiffs and the Settlement Class Members. All Settlement Class Members purchased the Products, as did Plaintiffs. As such, Plaintiffs claims are reflective of those of the Settlement Class Members, and the relief sought is identical. *See O'Donovan*, 278 F.R.D. at 492.

Plaintiffs' counsel are qualified and experienced in litigating, certifying, settling, and administering nationwide class actions like the one at bar. *See* Todzo Decl., ¶¶ 15-16, Exs. 3, 4. Class Counsel are committed to the vigorous prosecution of this action. To date, Class Counsel have demonstrated an understanding of the issues in this case and competence to conduct this litigation. For all of these reasons, Plaintiffs and their counsel readily satisfy the requirements of Rule 23(a)(4).

### B.    The Settlement Class Meets the Requirements of Rule 23(b)(3).

Plaintiffs seek to confirm the certification of the Settlement Class pursuant to Rule 23(b)(3), as "questions of law and fact predominate over any questions that may affect only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "These requirements are referred to as the 'predominance' and 'superiority' tests." *Astiana v. Kashi Co*., No. 11-CV-1967-H (BGS), 2014 U.S. Dist. LEXIS 127624, at *22 (S.D. Cal. Sept. 2, 2014).

"'The main concern in the predominance inquiry [is] the balance between individual and common issues.'" *Astiana*, 2014 U.S. Dist. LEXIS 127624, at *23 (quoting *In re Wells Fargo*

1 | *Home Mortg. Overtime Pay Litig.*, 571 F.3d 953 (9th Cir. 2009)). "'[W]hen common questions

2 | present a significant aspect of the case and they can be resolved for all members of the class in a

3 | single adjudication, there is clear justification for handling the dispute on a representative rather

4 | than on an individual basis.'" *Hopson*, 2009 U.S. Dist. LEXIS 33900, at *11-12 (quoting

5 | *Hanlon*, 150 F.3d at 1022).

6 | Predominance is often readily met in cases alleging consumer fraud. *Amchem Products,*

7 | *Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *Bruno v. Quten Research Inst., LLC,* 280 F.R.D. 524,

8 | 537 (C.D. Cal. 2011). "Courts have found that common factual issues involving a single

9 | advertisement seen by all class members can predominate over individual issues." *Astiana*, 2014

10 | U.S. Dist. LEXIS 127624, at *23 ("For the purpose of class certification, it is sufficient that the

11 | statements regarding the 'All Natural' and "Nothing Artificial' products were part of common

12 | advertising to which the entire class was exposed, and is a sufficiently definite representation

13 | whose accuracy has been legitimately called into question").

14 | Here, the overarching legal and factual questions in this case—which do not vary among

15 | Settlement Class Members and which may be determined without reference to the individual

16 | circumstances of any Settlement Class Member—include, but are not limited to:

- whether Venus labels, advertises, markets and sells the Products by representing the Products are natural;

- whether Plaintiffs and the other members of the Class are likely to be misled by Venus' use of the natural claims on the Products' labels;

- whether the Products are composed of natural ingredients;

- whether Venus' conduct of selling the Products as natural when such Products are not composed entirely of natural ingredients is likely to deceive the members of the Class;

- whether Venus' conduct in advertising and marketing the Products constitutes an unfair or deceptive act or practice in the conduct of trade or commerce;

- whether Plaintiffs and the other members of the Class are entitled to injunctive and other equitable relief based on Venus' violations of state

21 | Case No. 3:15-cv-03578-EDL

and District of Columbia consumer protection laws;

- whether Venus' representations concerning the Products constitute express warranties with regard to the Products pursuant to the laws of almost every state and the District of Columbia;

- whether Venus breached the express warranties it has made with regard to the Products;

- whether Plaintiffs and the other members of the Class are entitled to damages resulting from Venus' breach of the express warranties made regarding the Products in almost every state and the District of Columbia;

As this list demonstrates, each of Plaintiffs' contentions can be proven with "generalized evidence . . . on a class-wide basis." *O'Donovan*, 278 F.R.D. at 493. In other words, a determination that Venus misrepresented the Products as natural to Plaintiffs will necessarily determine whether Venus misrepresented the Products as natural to all Settlement Class Members. *See Delarosa*, 275 F.R.D. at 594. Indeed, each of these "common question[s]" has the capacity to generate a common answer "apt to drive the resolution of the litigation." *Dukes,* 131 S.Ct. 2541, 2551 (2011) (citations and internal quotations omitted).

Additionally, "[t]he test for superiority of the class action vehicle requires 'determination of whether the objectives of the particular class action procedure will be achieved in the particular case,' which 'necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution.'" *Hopson*, 2009 U.S. Dist. LEXIS 33900, at *12 (quoting *Hanlon*, 150 F.3d at 1023). "[T]he class action method is considered to be superior if 'class-wide litigation of common issues will reduce litigation costs and promote greater efficiency.'" *Astiana*, 2014 U.S. Dist. LEXIS 127624, at *24 (quoting *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996.)). In cases where the claims involve relatively small amounts of money and absent class members do not evidence a desire to pursue the action individually, a class action is considered superior. *See Astiana*, 2014 U.S. Dist. LEXIS 127624, at *24-25; *Hopson*, 2009 U.S. Dist. LEXIS 33900, at *12-13.

Here, the cost of a single Product is often less than $10, thus the potential recovery for any individual class member is relatively small. As a result, the expense and burden of litigation

make it virtually impossible for the Settlement Class Members to seek redress on an individual basis. However, in a class action, the cost of litigation is spread across the entire class, thereby making litigation viable. Moreover, while over 14,000 Settlement Class Members have submitted claims, only 3 Settlement Class Members requested to be excluded from the settlement. Dahl Decl., 29. Thus the absent Settlement Class Members have shown nearly no desire to prosecute their actions on an individual basis. As the amount of an individual recovery is relatively small, and the Settlement Class Members have shown nearly no desire to prosecute their actions individually, a class action is superior to other methods of dispute resolution.

In sum, "questions of law and fact predominate over any questions that may affect only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," therefore the Settlement Class  meets the requirements of Rule 23(b)(3).

For the reasons stated above, the Court should confirm certification of the Settlement Class under Rule 23(a) and (b)(3).

## III.    THE CLASS NOTICE SATISFIES THE REQUIREMENTS OF DUE PROCESS.

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Complex Litig.* § 21.312. The Settlement Agreement provides for notice that easily satisfies Rule 23 and due process considerations.

### A.    The Method of Notice is Appropriate.

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "Notice by publication has been found to be adequate where identification of individual class members is not possible through reasonable effort." *Torres v. Pet Extreme*, NO. 1:13-cv-01778-LJO-SAB, 2015 U.S.

Dist. LEXIS 5136, at *10 (E.D. Cal. Jan. 15, 2015); *see In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act Litig.*, 295 F.R.D. 438, 449 (C.D. Cal. 2014) ("When the court certifies a nationwide class of persons whose addresses are unknown, notice by publication is reasonable").

As detailed in Mr. Dahl's declaration, the Settlement Administrator provided notice to the Class via six methods:

- mailing a long-form notice and a claim form or emailing a summary notice to potential Settlement Class Members;

- using a web-based notice campaign with banner-style notices on targeted websites with a link to a Settlement Website;

- employing social media to target Settlement Class Members;

- publishing a national press release for the Settlement via PR Newswire;

- establishing a toll-free Settlement helpline; and

- creating a Settlement website.

*See* Dahl Decl., ¶¶ 9-26.

Courts routinely find similarly comprehensive notice programs meet the requirements of due process and Rule 23. *See, e.g., Gaudin v. Saxon Mortg. Servs.*, No. 11-cv-01663-JST, 2015 U.S. Dist. LEXIS 95720, at *19-20 (N.D. Cal. July 21, 2015); *In re Toys "R" Us*, 295 F.R.D. at 449 (C.D. Cal. 2014); *Beck-Ellman v. Kaz USA, Inc.,* No. 3:10-CV-02134-H-DHB, 2013 U.S. Dist. LEXIS 60182, at *21-23 (S.D. Cal. January 7, 2013); *Nigh* , 2013 U.S. Dist. LEXIS 161215; *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). Therefore, the method used to provide notice to Settlement Class Members was reasonable and practicable under the circumstances, and should be approved.

### B.    The Contents of the Notice are Adequate.

"The notice must explain in easily understood language the nature of the action, definition of the class, class claims, issues and defenses, ability to appear through individual counsel, procedure to request exclusion, and binding nature of a class judgment. *Ahdoot v.*

*Babolat VS N. Am., Inc.*, Nos. CV 13-02823-VAP (VBKx); CV 13-07898-VAP (VBKx), 2015 U.S. Dist. LEXIS 45551, at *24 (C.D. Cal. Apr. 6, 2015).

Here, the notices defined the Settlement Class, explained all Settlement Class Member rights, releases, and applicable deadlines, and described in detail the injunctive and monetary terms of the settlement, including the procedures for allocating and distributing Settlement Funds. They plainly indicated the time and place of the hearing to consider approval of the Settlement, the ability to appear through individual counsel, and the method for objecting to or opting out of the Settlement. Finally, the notices detailed the provisions for payment of attorneys' fees and incentive awards to the class representatives, as well as provided contact information for Class Counsel. *See* Dahl Decl., Exs. A-F.

This content comports with settlement notices upheld in other cases. *See, e.g.*, *In re Wells Fargo Loan Processor Overtime Pay Litig.*, No. C-07-1841, 2011 U.S. Dist. LEXIS 84541, at *13 (N.D. Cal. Aug. 2, 2011); *see also Rodriguez*, 563 F.3d at 962-963. As such, the Notice Plan was adequate and met the requirements of Rule 23.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the Settlement, confirm certification of the Settlement Class, and enter an Order and Final Judgement in this action.

DATED: January 15, 2016                    Respectfully submitted,

                                           HALUNEN LAW

                                           /s/Melissa W. Wolchansky
                                           Melissa W. Wolchansky (*admitted pro hac vice*)
                                           Charles D. Moore (*pro hac vice pending*)
                                           80 South Eighth Street, Suite 1650
                                           Minneapolis, MN 55402
                                           Telephone: (612) 605-4098
                                           Facsimile: (612) 605-4099
                                           wolchansky@halunenlaw.com
                                           moore@halunenlaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LEXINGTON LAW GROUP
Mark N. Todzo, State Bar No. 168389
Abigail Blodgett, State Bar No. 278813
503 Divisadero Street
San Francisco, CA  94117
Telephone: (415) 913-7800
Facsimile: (415) 759-4112
mtodzo@lexlawgroup.com
ablodgett@lexlawgroup.com

*Court Appointed Class Counsel*

Case No. 3:15-cv-03578-EDL

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT AND REQUEST FOR ENTRY OF FINAL JUDGMENT**