LEXINGTON LAW GROUP
Mark N. Todzo, State Bar No. 168389
Abigail Blodgett, State Bar No. 278813
503 Divisadero Street
San Francisco, CA  94117
Telephone: (415) 913-7800
Facsimile: (415) 759-4112
mtodzo@lexlawgroup.com
ablodgett@lexlawgroup.com

HALUNEN LAW
Melissa W. Wolchansky
Charles D. Moore (pro hac vice pending)
80 South Eighth Street, Suite 1650
Minneapolis, MN 55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099
wolchansky@halunenlaw.com
moore@halunenlaw.com

*Court Appointed Class Counsel*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| REBEKAH BAHARESTAN and JENA MCINTYRE, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>VENUS LABORATORIES, INC., DBA EARTH FRIENDLY PRODUCTS, INC.,<br><br>                    Defendant. | Case No. 3:15-cv-03578-EDL<br><br>**NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, AND REIMBURSEMENT FOR COSTS AND SERVICE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:      March 15, 2016<br>Time:      9:00 a.m.<br>Location: Courtroom E 15th Floor<br>Judge:     Hon. Elizabeth D. Laporte<br><br>[Filed concurrently with Declarations of Mark N. Todzo, Melissa W. Wolchansky, Rebekah Baharestan, Jena McIntyre, and Jeffrey D. Dahl] |

**PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS**

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION............................................... vii

MEMORANDUM OF POINTS AND AUTHORITIES................................. 1

INTRODUCTION................................................................... 1

BACKGROUND.................................................................... 2

I.    The Investigation, Litigation, and Settlement. ............................... 2

    A.    Class Counsel Conducted an Extensive Factual and Legal
       Investigation Prior to Filing this Action.................................. 2

    B.    After Completing Their Investigation Regarding Venus' Alleged
       Violations, Class Counsel Sent Notices of Their Intent to Sue. .............. 3

    C.    Class Counsel Engaged in Intensive Settlement Efforts and
       Informal Discovery with Venus to Further the Settlement. ................. 4

    D.    Once the General Terms of the Settlement Were Negotiated,
       Class Counsel Worked to Finalize the Settlement and Submit
       It to the Court for Approval............................................. 4

II.   Class Counsel's Time and Expenses. ....................................... 5

III.  The Injunctive and Monetary Benefits of the Settlement to the Class................ 6

ARGUMENT...................................................................... 7

I.    The Attorneys' Fees and Cost Award Requested by Plaintiffs is Reasonable........... 7

    A.    Plaintiffs' Fees and Costs Request is Governed by Ninth Circuit Case Law. ..... 7

    B.    The Reasonableness of the Requested Fees and Costs Award is
       Confirmed by Class Counsel's Lodestar. ................................. 7

        1.    Class Counsel's Rates Are Consistent With the Predominate
           Market Rates for Comparable Attorneys and Reasonable Based on
           Class Counsel's Skill and Expertise. .............................. 9

        2.    The Estimated 599 Hours Class Counsel Spent On this Case Are
           Well Documented and Reasonable in Light of the Case's Novelty
           and Complexity. ............................................... 10

    C.    The Fee Award is Also Reasonable under the Percentage of the
       Fund Method. ......................................................... 11

        1.    The Value of the Common Fund Includes the Benefits from
           the Injunctive Relief in Addition to the Cash Fund Created by
           the Settlement................................................. 12

        2.    A Fee Equaling Slightly Over the 25 Percent Benchmark for

**PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS**

Fee Awards Is Reasonable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      3.    The Relevant Factors under Ninth Circuit Precedent Further
Support the Award. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

          a.    Class Counsel Obtained Exceptional Results for the Class. . . . . . 15

          b.    This Case Was Risky for Class Counsel and Recovery of
Class Counsel's Fees and Litigation Expenses Was Entirely
Contingent on Counsel's Success. . . . . . . . . . . . . . . . . . . . . . . . . 15

          c.    Class Counsel Are Skilled Attorneys that Produce High
Quality Work. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

          d.    The Requested Fee Award Is Comparable to Fee Awards
in Similar Class Action Cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

          e.    The Positive Reaction of the Class Supports Payment
of the Fee Award. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

II.    Class Counsel Should be Reimbursed for Their Out-of-Pocket Litigation Expenses. . . . 18

III.    The Class Representatives Should Receive Reasonable Service Awards for
Their Efforts in Securing the Settlement for the Benefit of the Class. . . . . . . . . . . . . . . 18

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS**

1

## TABLE OF AUTHORITIES

2

### CASES

3

*Barbosa v. Cargill Meat Solutions Corp.,*
  No. 1:11-cv-00275-SKO, 2013 WL 3340939 (E.D. Cal. July 2, 2013).. . . . . . . . . . . . . 19

4

*Behrens v. Wometco Enters., Inc.,*
  118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). . . . . . . . . . . . . . 15

5

6

*Chun-Hoon v. McKee Foods Corp.,*
  716 F. Supp. 2d 848 (N.D. Cal. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

7

*Citizens for Better Forestry v. U.S. Dep't of Agric.,*
  No. 01-0728, 2006 WL 5692819 (N.D. Cal. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

8

9

*Cunningham v. Cnty. of Los Angeles,*
  879 F.2d 481 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

10

*Fischel v. Eq. Life Assur. Socy. of U.S.,*
  307 F.3d 997 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

11

12

*Garner v. State Farm Ins.,*
  No. CV 08-1365 CW, 2010 WL 1687829 (N.D. Cal. April 22, 2010) . . . . . . . . . . . . . . 14

13

*Goldkorn v. County of San Bernardino,*
  No. EDCV 06-707, 2012 WL 476279 (C.D. Cal. Feb. 13, 2012). . . . . . . . . . . . . . . . . . 13

14

15

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

16

*Harris v. Marhoefer,*
  24 F.3d 16 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

17

18

*Hensley v. Eckerhart,*
  461 U.S. 424 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

19

*In re Activision Secs. Litig.,*
  723 F. Supp. 1373 (N.D. Cal. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

20

21

*In re BankAtlantic Bancorp, Inc. Sec. Litig.,*
  No. 07-61542-CIV., 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011). . . . . . . . . . . . . . . . . 16

22

*In re Bluetooth Headset Products Liab. Litig.,*
  654 F.3d 935 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

23

24

*In re General Motors Corp. Pick-Up Truck Fuel Tank,*
  55 F.3d 768 (3rd Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

25

*In re Heritage Bond Litig.,*
  Case Nos. 02-ML-1475 DT *et al.*, 2005 WL 1594403 (C.D. Cal Jun. 10, 2005). . . . 14, 16

26

27

*In re King Res. Co. Sec. Litig.,*
  420 F. Supp. 610 (D. Colo. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

28

**PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS**

*In re Media Vision Tech. Sec. Litig.,*
913 F. Supp. 1362 (N.D. Cal. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Mego Fin. Corp. Sec. Litig.,*
213 F.3d 454 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Omnivision Techs., Inc.,*
559 F. Supp. 2d 1036 (N.D. Cal. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 17

*In re Pacific Enterprises Sec. Litig.,*
47 F.3d 373 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Rite Aid Corp. Sec. Litig.,*
396 F.3d 294 (3d Cir. 2005).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Wash. Pub. Power Supply Sys. Sec. Litig.,*
19 F.3d 1291 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11, 13, 16

*Johnson v. Gen. Mills, Inc.,*
No. SACV 10-0061-CJC(ANx), 2013 U.S. Dist. LEXIS 90338
(C.D. Cal. June 17, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 17

*Jordan v. Paul Fin., LLC,*
No. C 07-04496 SI, 2013 WL 6086037 (N.D. Cal. Nov. 19, 2013) . . . . . . . . . . . . . . . . 19

*Lealao v. Beneficial California, Inc.,*
82 Cal. App. 4th 19 (Cal Ct. App. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Lilly v. Jamba Juice Co.,*
No. 13-cv-02998-JST, 2015 U.S. Dist. LEXIS 57637 (N.D. Cal. May 1, 2015).. . . . . . 2, 8

*Linney v. Cellular Alaska P'ship,*
Nos. C-96-3008 DLJ *et al.*, 1997 WL 450064 (N.D. Cal. July 18, 1997). . . . . . . . . . . . 14

*Loring v. City of Scottsdale,*
721 F.2d 274 (9th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Lytle v. Carl,*
382 F.3d 978 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*McCown v. City of Fontana,*
565 F.3d 1097 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Miller v. Ghiradelli Chocolate Co.,*
No. 12-cv-04936-LB, 2015 U.S. Dist. LEXIS (N.D. Cal. Feb. 20, 2015). . . . . . . . . . . . 2, 9

*Mills v. Electric Auto-Lite Co.,*
396 U.S. 375 (1970).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Minor v. Christie's, Inc.,*
No. C 08-05445 WHA, 2011 WL 902235 (N.D. Cal. Jan. 29, 2011),
*report and recommendation adopted* No. C 08-05445 WHA, 2011 WL 902033
(N.D. Cal. Mar. 14, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS**

*Moreno v. City of Sacramento,*
 534 F.3d 1106 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Paul, Johnson, Alston & Hunt v. Graulty,*
 886 F.2d 268 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13

*Powers v. Eichen*,
 229 F.3d 1249 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Prison Legal News v. Schwarzenegger,*
 608 F.3d 446 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Serrano v. Unruh,*
 32 Cal.3d 621 (Cal. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Six Mexican Workers v. Ariz. Citrus Growers,*
 904 F. 2d 1301 (9th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Staton v. Boeing Co.*,
 327 F.3d 938 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12, 18

*Torrisi v. Tucson Elec. Power Co.,*
 8 F.3d 1370 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United Steelworkers of Am. v. Phelps Dodge Corp.,*
 896 F.2d 403 (9th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Vincent v. Hughes Air W., Inc.,*
 557 F.2d 759 (9th Cir. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11

*Vizcaino v. Microsoft Corp.,*
 290 F.3d 1043 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Walsh v. Kindred Healthcare,*
 No. C 11-00050 JSW, 2013 WL 6623224 (N.D. Cal. Dec. 16, 2013). . . . . . . . . . . . 2, 12

*Wehlage v. Evergreen at Arvin LLC,*
 No. 4:10-cv-05839-CW, 2012 WL 4755371 (N.D. Cal. Oct. 4, 2012). . . . . . . . . . . . . . 13

*Wren v. RGIS Inventory Specialists*,
 No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011). . . . . . . . . . . . . . . . . 9

*Zeisel v. Diamond Foods, Inc.,*
 No. 10-01192-JSW, 2012 WL 4902970 (N.D. Cal. Oct. 16, 2012). . . . . . . . . . . . . . 17, 19

## STATUTES

Cal. Bus. & Prof. Code § 17200. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Cal. Bus. & Prof. Code § 17580. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Cal. Bus. & Prof. Code § 17581. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Cal. Health & Safety Code § 110810. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS**

Cal. Civil Code § 1750. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Wash. Rev. Code § 19.86.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS**

1

## NOTICE OF MOTION AND MOTION

2

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3 **PLEASE TAKE NOTICE THAT** on March 15, 2016 at 9:00 a.m., or as soon thereafter as this

4 matter may be heard in the Courtroom of the Hon. Elizabeth D. Laporte, located at the United

5 States District Court for the Northern District of California, San Francisco Courthouse, Courtroom

6 E, 15th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs Rebekah Baharestan

7 and Jena McIntyre, on behalf of the class, will respectfully apply to this Court for an award of

8 attorneys' fees and litigation expenses in the total amount of $277,500 and modest service awards

9 to the class representatives in the total amount of $4,000.

10       This Motion is based on this Notice of Motion and Motion, the Memorandum of Points

11 and Authorities, the accompanying Declarations of Mark N. Todzo and Melissa W. Wolchansky

12 and the exhibits attached thereto, the Declarations of Rebekah Baharestan and Jena McIntyre, the

13 other papers on file in this action, and such other submissions or arguments that may be

14 presented before or at the hearing on this Motion.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS**

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiffs Rebekah Baharestan and Jena McIntyre ("Plaintiffs") hereby move the Court for entry of an order awarding attorneys' fees and costs and modest service awards for the class representatives. Plaintiffs seek attorneys' fees and litigation costs of $277,500.  (ECF No. 15-2.)

The reasonableness of the $277,500 fees and costs award is established by comparing the award to Halunen Law's ("Halunen") and The Lexington Law Group's ("Lexington") (collectively "Class Counsel") presumptively reasonable lodestar, which is substantially less than the requested award. To date, Class Counsel have spent approximately 630 hours working on behalf of the class to investigate, prosecute, and settle this important case. As detailed below, these hours were all necessary to achieve the widespread injunctive and monetary relief provided by the Class Settlement Agreement (the "Settlement"). (ECF No. 15-2.) Furthermore, Class Counsel achieved excellent results for the Class and at the same time, incurred a relatively small lodestar due to their ability to quickly resolve the case. Considering Class Counsel's hourly rates, which are typical of attorneys' with similar skill and experience, Class Counsel have incurred a total lodestar of over $340,000. This total lodestar does not include a multiplier, which is justified in this case based on the quality of representation, the benefits obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment. For all of these reasons, the Court should conclude that the $277,500 fees and costs award is reasonable and appropriate in this case.

The $277,500 fees and costs award is also eminently reasonable if the Court applies the percentage of the fund method to evaluate the award. In this case, the requested $265,176.99 in attorneys' fees constitutes 29 and 31 percent of the $850,000 or $925,000 settlement fund, depending on whether the $850,000 settlement fund is sufficient to cover the class' claims.[1]

---

[1] If the Class claims, notice and administrative costs, and attorneys' fees and costs exceed $850,000, Venus is required to contribute an additional $75,000 to the settlement fund to cover the additional claims of class members, which would raise the settlement fund $925,000. *See* Settlement, ¶ 4.5.

Considering the significant injunctive relief together with the value of the Settlement's monetary terms, the fee award sought in this case is comparable to those awarded in similar actions. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir. 2002); *Lilly v. Jamba Juice Co.*, No. 13-cv-02998-JST, 2015 U.S. Dist. LEXIS 57637, at *19-20 (N.D. Cal. May 1, 2015) (awarding $410,637.73 in fees and $5,000 to each representative in an injunctive relief only settlement in a "natural" products litigation); *Miller v. Ghiradelli Chocolate Co.*, No. 12-cv-04936-LB, 2015 U.S. Dist. LEXIS, at *16-17 (N.D. Cal. Feb. 20, 2015) (finding 30% to be reasonable percentage of the fund to award in attorney fees in a "All Natural" product mislabeling case); *Johnson v. Gen. Mills, Inc.*, No. SACV 10-0061-CJC(ANx), 2013 U.S. Dist. LEXIS 90338, at *18-20 (C.D. Cal. June 17, 2013) (awarding 30% of the fund in attorney fees in a product mislabeling case); *Walsh v. Kindred Healthcare*, No. C 11-00050 JSW, 2013 WL 6623224, at *3 (N.D. Cal. Dec. 16, 2013). Therefore, the Court should grant the requested award in full.

## BACKGROUND

### I.      The Investigation, Litigation, and Settlement.

Over the last year and a half, Class Counsel have engaged in extensive investigations regarding Venus Laboratories, Inc. d/b/a Earth Friendly Products, Inc.'s ("Venus") false and misleading labeling of its Earth Friendly brand household cleaning products ("Earth Friendly Products" or "Products"), including Venus' use of the harmful allergen Methylisothiazolinone ("MIT") as an ingredient in its Products. Following this investigation, Class Counsel initiated this case and participated in detailed settlement discussions and productive informal discovery with Venus, resulting in a settlement that provides widespread injunctive and substantial monetary relief for Plaintiffs and the class. Since this action is the first case ever to seek reformulation of products to remove MIT, Plaintiffs faced significant legal hurdles in order to prevail.

### A.      Class Counsel Conducted an Extensive Factual and Legal Investigation Prior to Filing this Action.

Before commencing this action, Class Counsel conducted a comprehensive examination and evaluation of the relevant law and facts to assess the merits of the claims and to determine how to best serve the interests of class members. Declaration of Mark N. Todzo ("Todzo Decl.") ¶

**PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS**

4; Declaration of Melissa N. Wolchansky ("Wolchansky Decl.") ¶¶ 6-7. This pre-suit investigation included interviewing and communicating with potential class members, consulting with expert witnesses, and researching the factual and legal basis for Plaintiffs' claims. Todzo Decl. ¶ 4; Wolchansky Decl. ¶ 7. The investigation also included extensive research regarding Venus' marketing, labeling, and promotional efforts for the Earth Friendly Products. Todzo Decl. ¶ 4; Wolchansky Decl. ¶ 6.

When this investigation began, there were no reported cases alleging false and misleading marketing, advertising, and labeling of products containing MIT. Todzo Decl. ¶ 5. Because of the novelty of the factual and legal issues, Class Counsel were required to conduct significant research prior to filing the action. *Id.*

### B. After Completing Their Investigation Regarding Venus' Alleged Violations, Class Counsel Sent Notices of Their Intent to Sue.

On November 3, 2014, Plaintiff Jena McIntyre sent a letter notifying Venus of her intent to pursue consumer protection claims on behalf of herself and a nationwide class of purchasers of the Earth Friendly Products throughout the United States based on her allegations that Venus misrepresented the nature of the Products. Wolchansky Decl. ¶ 8. After receiving this letter, Venus began discussing a possible resolution of Plaintiff McIntyre's claims. *Id.* ¶ 9.

On March 25, 2015, independently of Plaintiff McIntyre, Plaintiff Rebekah Baharestan sent a letter to Venus alleging that Venus' marketing, advertising, and labeling of the Products are false and misleading. *Id.* ¶ 13. This letter also informed Venus of Plaintiff Baharestan's intent to represent a nationwide class of purchasers of the Earth Friendly Products in a class action lawsuit. *Id.*

After sending their notice letters to Venus, the two Plaintiffs consolidated their efforts and agreed to jointly pursue the case. *Id.* On August 4, 2015, Plaintiffs Rebekah Baharestan and Jena McIntyre, on behalf of themselves and all other similarly situated persons, filed their Class Action Complaint in the Northern District of the United States District Court, *Baharestan v. Venus Laboratories, Inc.*, Case No. 3:15-cv-03578-EDL (N.D. Cal.) ("Complaint") (ECF No. 1). Plaintiffs' Complaint seeks relief on behalf of a proposed nationwide class of purchasers of the

**PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS**

Products pursuant to the express warranty laws of all states and the District of Columbia. The Complaint also seeks relief on behalf of two proposed sub-classes: one of California purchasers, and one of Washington purchasers, pursuant to the consumer protection and false advertising laws of those states. *See* Cal. Civil Code § 1750, *et seq.*; Cal. Bus. & Prof. Code § 17200, *et seq.*; Cal. Bus. & Prof. Code §§ 17580-17581; Wash. Rev. Code § 19.86, *et seq*. In addition, the Complaint seeks relief on behalf of the California sub-class for Venus' alleged violations of the California Organic Products Act's ("COPA") restrictions on selling, labeling, or representing cosmetic products as organic or made with organic ingredients unless the products contain a minimum of 70 percent organically produced ingredients. *See* Cal. Health & Safety Code § 110810, *et seq*.

**C.    Class Counsel Engaged in Intensive Settlement Efforts and Informal Discovery with Venus to Further the Settlement.**

As with other aspects of this litigation, the negotiations that ultimately led to the settlement of Plaintiffs' claims required significant attorney time and skill. The Parties' settlement negotiations began early in the litigation, shortly after Venus received Plaintiffs' pre-suit notice letters. Todzo Decl. ¶ 8; Wolchansky Decl. ¶¶ 9-12. After engaging in lengthy settlement discussions, the Parties attended an all-day, in person, mediation before the Honorable Morton Denlow (Retired) in Chicago, Illinois on June 1, 2015. Wolchansky Decl. ¶ 14. During the mediation, the Parties were able to reach agreement regarding the general settlement terms. *Id.* ¶¶ 15-16.

Throughout the settlement discussions, Venus provided Plaintiffs with information about the Products and facts at issue. Todzo Decl. ¶¶ 10-12, 16. The Settlement was eventually reached after considering, among other things: (1) the substantial benefits available to the class under the terms of the Settlement; (2) the risks and uncertainty of litigation, as well as the difficulties and delays inherent in such litigation; and (3) the desirability of promptly completing the Settlement to provide timely and effective relief to Plaintiffs and the class without incurring unnecessary litigation costs. *Id.* ¶ 10.

**D.    Once the General Terms of the Settlement Were Negotiated, Class Counsel Worked to Finalize the Settlement and Submit It to the Court for Approval.**

Following finalization of the general terms of the Settlement, much work remained for

Class Counsel. Class Counsel had to draft and reach agreement with Venus regarding the final terms of the Settlement, the class notices, the claim form, and the detailed notice program. Todzo Decl. ¶ 11.

Once the Settlement was signed, Class Counsel worked together to prepare and file the Motion for Preliminary Approval, which included numerous supporting documents and declarations. *Id.* ¶ 13; *see* (ECF Nos. 15 to 15-6). Class Counsel appeared at the November 3, 2015 hearing and argued in support of preliminary approval, which the Court ultimately granted after reviewing Class Counsel's supplemental declaration and exhibits. *Id.* ¶ 13; *see* (ECF Nos. 22 to 23).

Since the Court preliminarily approved the Settlement, Class Counsel have worked closely with Venus' counsel and the Claim Administrator to supervise dissemination of notice to class members and to oversee the claims process. *Id.* ¶ 14. This work continues at the time of this filing. *Id.* Class Counsel also prepared this Motion and the companion Motion for Final Approval of the Settlement. *Id.*

## II.   Class Counsel's Time and Expenses.

Class Counsel have expended significant professional time and out-of-pocket expenses litigating this case and securing the Settlement for the benefit the class. To date, Class Counsel have spent nearly 600 hours litigating this case. Todzo Decl. ¶ 20; Wolchansky Decl. ¶ 33. This resulted in a lodestar in excess of $326,000 through the end of December 31, 2015. *Id.* It is worth noting that this lodestar figure is extremely conservative as Class Counsel anticipate spending significant additional time working on this case up through final distribution of the settlement fund. Todzo Decl. ¶ 22; Wolchansky Decl. ¶ 36. In addition, the out-of-pocket litigation expenses incurred by Class Counsel to date are $12,323.01. Todzo Decl. ¶ 39; Wolchansky Decl. ¶ 50. Thus, Class Counsel's total lodestar and costs will be in significant excess of its current $338,000 amount at the conclusion its work on behalf of Plaintiffs and the class. These lodestar and litigation costs amounts are eminently reasonable for a class action case of this scope and complexity. Todzo Decl. ¶ 23; Wolchansky Decl. ¶ 37. The Declarations of Mark N. Todzo and

1  Melissa W. Wolchansky set forth detailed summaries of Class Counsels' lodestar and costs,

2  including a description of each member of the firms' hourly rate and total hours spent by each

3  member of each firms. Todzo Decl. ¶¶ 18-39; Wolchansky Decl. ¶¶ 31-50.

4  **III.    The Injunctive and Monetary Benefits of the Settlement to the Class.**

5          The Settlement confers substantial benefits on the Class through both its injunctive and

6  monetary terms. First, the injunctive relief provided by the Settlement is wide-ranging and directly

7  beneficial to class members. To Class Counsel's knowledge, Venus is the first company to agree

8  to make its Products safer for consumers by reformulating some of its Products to remove the

9  allergen MIT. Settlement, ¶ 4.7. Venus also agreed to change its labeling and marketing practices

10 by not using the terms "natural" and "organic" if such claims are not certified or in compliance

11 with the applicable regulations. *Id.* ¶ 4.6(a)-(c). In addition, the Settlement requires Venus to list

12 all ingredients in its Products with explanatory parentheticals that describe each ingredient and

13 maintain a website with additional information about ingredients. *Id.* ¶¶ 4.6(d)-(g). All of this

14 injunctive relief will result in the elimination of the alleged misrepresentations at the heart of this

15 lawsuit and, as such, will ensure that Class Members and other consumers will not be subjected to

16 false and misleading claims on the Earth Friendly Products in the future.

17          Second, the settlement requires Venus to contribute no less than $850,000 and no more

18 than $925,000 to an independently-administered settlement fund that will directly benefit the

19 class. *Id.* ¶ 4.1(d). Class members who submit valid claims are eligible to recover $1.50 for each

20 ECOS® Laundry Detergent Product they purchased or $1 for each other Earth Friendly Product

21 purchased, up to $25 for each class member. *Id.* ¶ 4.3(c). If the Class claims, notice and

22 administrative costs, and attorneys' fees and costs exceed $850,000, Venus is required to

23 contribute an additional $75,000 to the settlement fund to cover the additional claims of class

24 members. *Id.* ¶ 4.5.  If there is any money left over in the settlement fund following the claims

25 process, such funds will be distributed to eligible class members on a *pro rata* basis, up to 100

26 percent of such class members' initial claim amounts. *Id.* ¶ 4.5(a). If there are additional

27 Settlement Funds following the *pro rata* adjustment, these Residual Funds shall be distributed to a

28

non-profit organization that serve the interest and needs of the class. *Id.* ¶ 4.5(c).

<u>**ARGUMENT**</u>

**I.     The Attorneys' Fees and Cost Award Requested by Plaintiffs is Reasonable.**

**A.     Plaintiffs' Fees and Costs Request is Governed by Ninth Circuit Case Law.**

The monetary portion of the Settlement is a single fund from which all Class Members' claims, attorneys' fees, class representative service awards, and other costs are to be paid. Thus, the Settlement is a common fund settlement. *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).

In this Circuit, it is well established that the District Court has discretion to award attorneys' fees from a common settlement fund by applying either the lodestar method or the percentage of the fund method. *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method"); *Vizcaino*, 290 F.3d at 1047 (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295-1296 (9th Cir. 1994) ("*WPPSS*"); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Regardless of which of the two methods is used, the award must be reasonable when considered in light of the circumstances of a particular case. *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000); *WPPSS*, 19 F.3d at 1294 n. 2. Here, under either the lodestar or the percentage of the fund analysis, the requested fees award of $265,176.99, which is either 29 or 31 percent of the settlement fund depending on the total funds needed to compensate the class, is reasonable and appropriate given the significant injunctive and monetary relief conferred on the nationwide class and the significant risks to Class Counsel in achieving these results.

**B.     The Reasonableness of the Requested Fees and Costs Award is Confirmed by Class Counsel's Lodestar.**

Under the lodestar method, a court calculates the fee award by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate for the region and for the experience of the lawyer. *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). It is

appropriate to use the lodestar method when the relief sought and obtained is primarily injunctive in nature and thus not easily monetized, such as class actions brought pursuant to fee-shifting statutes. *See, e.g.*, *Hanlon*, 150 F.3d at 1029. Even though a lodestar figure is "presumptively reasonable," a court may adjust it upward or downward by an appropriate multiplier, reflecting a host of "reasonableness" factors, "including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Cunningham v. Cnty. of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988); *Hanlon*, 150 F.3d at 1029. Foremost among these considerations, however, is the benefit obtained for the class. *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (ultimate reasonableness of the fee "is determined primarily by reference to the level of success achieved by the plaintiff"). Moreover, "[i]t must . . . be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees . . . . By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). "While extensive detail about how an attorney or paralegal spends their time is not necessary, plaintiff's counsel should 'identify the general subject matter of [their] time expenditures.'" *Lilly,* 2015 U.S. Dist. LEXIS 57637 at *13 (*citing Lytle v. Carl*, 382 F.3d 978, 989 (9th Cir. 2004)).

In this case, Plaintiffs' counsels' $277,500 fee request is significantly less than their total lodestar of $326,087.50. To achieve the widespread injunctive and monetary relief provided by the Settlement, Class Counsel worked approximately 599 hours, all on a contingency basis with no guarantee of success or ever being paid. *See* Todzo Decl. ¶ 20; Wolchansky Decl. ¶ 33. The requested fee award reflects the risk taken by Class Counsel, as well as the excellent results achieved in a relatively short amount of time. Also, as established below, Class Counsels' hourly rates are comparable to rates charged by similarly qualified counsel, and the hours expended on this litigation are well-documented and necessary to achieve the substantial injunctive and monetary relief provided by the Settlement. Finally, even though a multiplier would likely be

**PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS**

appropriate in this case due to the excellent results achieved by Class Counsel for the class, Class Counsel agreed accept less than its lodestar in order to efficiently and successfully reach a settlement with Venus, which it believes it necessary and of significant value to the Class Members. Todzo Decl. ¶ 24; Wolchansky Decl. ¶ 38.

### 1. Class Counsel's Rates Are Consistent With the Predominate Market Rates for Comparable Attorneys and Reasonable Based on Class Counsel's Skill and Expertise.

The hourly rates requested by Class Counsel are based on the rates charged by attorneys of comparable skill, reputation, and experience for similarly complex litigation. Todzo Decl. ¶ 29; Wolchansky Decl. ¶ 43. Declarations from a fee applicant's attorney regarding the prevailing fees in a community and rate determinations in other cases are satisfactory evidence of the prevailing market rate. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *Minor v. Christie's, Inc.*, No. C 08-05445 WHA, 2011 WL 902235, at *4 (N.D. Cal. Jan. 29, 2011), *report and recommendation adopted* No. C 08-05445 WHA, 2011 WL 902033 (N.D. Cal. Mar. 14, 2011). Class Counsel may claim their current hourly rates to account for the "deferred and contingent nature of counsel's compensation." *Miller,* 2015 U.S. Dist. LEXIS at *18. Since Class Counsel brought both expertise and skill to their successful prosecution of this case, Class Counsel's rates are fully justified.

In addition to Class Counsel's declarations, Class Counsel's rates are supported by case law in this District. In 2011, Judge Spero conducted a thorough review of the prevailing hourly rates for attorneys' practicing complex litigation in the Northern District based on a substantial amount of evidence submitted by the parties in *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011). Judge Spero determined that $650 for a partner with 17 years of experience, $450 for associates with 6 to 7 years of experience, and $150 for paraprofessionals with 3 to 5 years of experience were consistent with the prevailing market rates in the Northern District. *Id.* at *17-22. Likewise, in 2010, the Ninth Circuit found the district court did not abuse its discretion in awarding 2008 hourly rates for San Francisco Bay Area attorneys of $875 for a partner, $700 for an attorney with 23 years of experience, $425 for an

attorney with approximately five years of experience, and $190 for paralegals. *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010). More recent decisions by courts in this District also demonstrate that Class Counsel's hourly rates are in line with the predominate rates for attorneys with comparable experience. Todzo Decl. ¶ 30.

Here, Class Counsel are all experienced and skilled attorneys, which resulted in their successful prosecution of this case. One of Plaintiffs' lead counsel, Mark N. Todzo, has over 22 years of experience in complex consumer protection and environmental public interest cases. Todzo Decl. ¶ 31. His $750 hourly rate is well within the range of market rates charged by reasonably comparable attorneys for reasonably comparable work. *Id.* ¶¶ 30-31. Plaintiffs' other counsel are all similarly well-qualified for the specific and defined roles they played in this litigation. *Id.* ¶¶ 32-38; Wolchansky Decl. ¶ 46-49. These attorneys' rates, ranging from $750 to $335, are comparable to market rates for similarly experienced attorneys in their respective location. Todzo Decl. ¶¶ 29-30. Given their expertise, experience, and skill, Class Counsel's hourly rates are reasonable.

### 2. The Estimated 599 Hours Class Counsel Spent On this Case Are Well Documented and Reasonable in Light of the Case's Novelty and Complexity.

The number of hours worked on the investigation, litigation, and settlement of this case is also reasonable. Class Counsel is entitled to be compensated for all hours reasonably spent litigating this case "absent facts rendering the award unjust." *Serrano v. Unruh*, 32 Cal.3d 621, 632-633 (Cal. 1982). Hours are reasonably spent if "a reasonable attorney would have believed the work to be reasonably expended in pursuit of success" at the time the work was performed, regardless of whether, in hindsight, fewer hours could have been spent. *Citizens for Better Forestry v. U.S. Dep't of Agric.*, No. 01-0728, 2006 WL 5692819, at *8 (N.D. Cal. 2006) (citation omitted).

The 599 hours incurred by Class Counsel to date are thoroughly documented by their declarations, which include a breakdown of the lodestar by each timekeeper and detailed summaries of the work performed from the inception of the litigation to the filing of the instant

**PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS**

Motion. *See* Todzo Decl. ¶ 21; Wolchansky Decl. ¶ 35. Class Counsel was required to spend a considerable amount of time to investigate, prepare, litigate the case, and negotiate the Settlement. *Id*. As detailed above, Class Counsel spent substantial time investigating the class claims, confirming their findings through informal discovery, negotiating the Settlement with Venus, drafting the preliminary approval papers, and overseeing the claims process. *Id*. The services provided by Class Counsel were reasonable and necessary to bring this case to a successful conclusion and should be compensated. Todzo Decl. ¶ 23; Wolchansky Decl. ¶ 37. Further, Class Counsel exercised reasonable billing judgment: any time that might be considered excessive, redundant, or otherwise unnecessary has not been claimed. *Id.* For all of these reasons, the Court should find that the requested fee award is reasonable pursuant to the lodestar method.

### C.   The Fee Award is Also Reasonable under the Percentage of the Fund Method.

In addition to applying the lodestar method to determine the reasonableness of a fee award, courts have discretion to use a percentage of the fund analysis to "cross-check" the propriety of a lodestar fee award. *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 49 (Cal. Ct. App. 2000); *see also In re General Motors Corp. Pick-Up Truck Fuel Tank*, 55 F.3d 768, 820 (3rd Cir. 1995) ("it is sensible for a court to use a second method of fee approval to cross check its conclusion under the first method"). It is well established that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent*, 557 F.2d at 769. The purpose of this doctrine is to avoid unjust enrichment so that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *WPPSS*, 19 F.3d at 1300.

In this case, Class Counsel negotiated a benefit to the Class such that the $277,500 fees would constitute 30 percent of the settlement fund. Settlement, ¶ 4.5. While this award is slightly above the Ninth Circuit's benchmark, it is reasonable considering the benefits provided by the Settlement's injunctive terms, the risky nature of the representation, the contingent nature of the fee, the attorney skill required and the quality of work, awards made in similar cases, and the

1  positive reaction of the class to the Settlement to date.

2         **1.**    **The Value of the Common Fund Includes the Benefits from the Injunctive Relief in Addition to the Cash Fund Created by the Settlement.**

3

4        The Settlement requires Venus to provide significant and unprecedented non-monetary

5  relief which, while not readily quantifiable, provides real and substantial benefits to the Class.

6  When properly considering the injunctive relief together with the monetary terms of the

7  Settlement, the requested fee and cost award is reasonable.

8        In evaluating the value of the common fund of benefits conferred on the class under a

9  settlement, courts should consider not only the monetary benefits that are reflected in direct sums

10  paid immediately to the class as part of the settlement, but also less tangible and less immediately

11  obvious benefits, including modifications to a defendant's business practices. For example, Judge

12  White recently held that an attorneys' fee award of 30 percent of a settlement's cash fund is

13  reasonable because "the parties . . . negotiated substantial injunctive relief, and when the Court

14  considers the value of that injunction, it reduces the overall percentage of fees that counsel will

15  receive." *Walsh*, 2013 WL 6623224 at \*3. Similarly, the Ninth Circuit recognizes that

16  nonmonetary benefits to class members are to be taken into account by district courts evaluating

17  fee awards. *Loring v. City of Scottsdale*, 721 F.2d 274, 275 (9th Cir. 1983); *see also Mills v.*

18  *Electric Auto-Lite Co.*, 396 U.S. 375, 392 (1970); *Vizcaino*, 290 F.3d at 1049 (considering that

19  "counsel's performance generated benefits beyond the cash settlement fund" in awarding fees

20  greater than 25 percent of that fund); *Staton*, 327 F.3d at 974 (the difficulty of quantifying

21  injunctive relief is "a 'relevant circumstance' in determining what percentage of the common fund

22  class counsel should receive as attorneys' fees").

23        Here, the injunctive relief will fully remedy Venus' alleged misrepresentations and false

24  advertising by requiring it to – among other things – cease using the allergen MIT in some of its

25  Products, remove the terms "natural" and "organic" from the Products if such claims are not

26  certified or in compliance with the applicable regulations and provide full explanations for the

27  ingredients used in the Earth Friendly Products. Settlement, ¶¶ 4.6, 4.7. This meaningful and

28

**PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS**

widespread injunctive relief provides substantial benefits to the Class and should be taken into account when assessing Plaintiffs' fee request. In fact, in many instances, class-wide injunctive relief alone is sufficient to warrant an award of attorneys' fees and costs that is equal to, or even in excess of, counsel's incurred lodestar. *See, e.g. Wehlage v. Evergreen at Arvin LLC*, No. 4:10-cv-05839-CW, 2012 WL 4755371, at **1-2 (N.D. Cal. Oct. 4, 2012) (awarding $1,835,857.82 in attorneys' fees to class counsel for a class-wide injunctive relief settlement regarding staffing at skilled nursing facilities, with no monetary award to the class); *Goldkorn v. County of San Bernardino*, No. EDCV 06-707, 2012 WL 476279, at **9-10 (C.D. Cal. Feb. 13, 2012) (awarding class counsel $690,000 in attorneys' fees and costs in a settlement for injunctive and declaratory relief only, without any monetary award to the class).

Furthermore, the benefits that the Settlement's injunctive terms provide to Class Members are concrete and definite. Venus' agreement to fully remedy the allegedly false and misleading natural and organic representations on its Products ensures that each Class Member will receive the very real economic benefit of never again spending money on Earth Friendly Products they wrongly believe to be natural or organic. Similarly, Venus' commitment to improving the safety of its Products by removing MIT as an ingredient from its Dishmate Products will provide Class Members who suffer from MIT allergies with soap products they can safely use. Venus' promise to describing the ingredients in its Products will also provide substantial health benefits by ensuring that Class Members always know what Venus' Products contain. Therefore, the additional value of the Settlement's injunctive terms provides strong support for the requested fee award.

### 2. A Fee Equaling Slightly Over the 25 Percent Benchmark for Fee Awards Is Reasonable.

The Ninth Circuit has established 25 percent of the fund as the "benchmark" award for attorneys' fees. *Paul, Johnson, Alston & Hunt*, 886 F.2d at 272. However, the guiding principle in this Circuit is that a fee award be "reasonable under the circumstances." *WPPSS*, 19 F.3d at 1295 n. 2. Here, a fee award in excess of the 25 percent benchmark is reasonable. As discussed above, the value of the injunctive relief alone is sufficient to justify the additional 5 or 7.6 percent of the

monetary relief as an award. Moreover, it is well established that the benchmark percentage should be adjusted, or replaced by a lodestar calculation, when the percentage recovery would be too small in light of the hours devoted to the case or other relevant factors. *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F. 2d 1301, 1311 (9th Cir. 1990). In this case, 25 percent of settlement fund would substantially undercompensate Class Counsel by cutting their lodestar and affording no value to the Settlement's injunctive relief.

There are many common fund cases in this District where the ultimate award exceeds the 25 percent benchmark. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) (*citing In re Activision Secs. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("This court's review of recent reported cases discloses that nearly all common fund awards range around 30%")); *Vizcaino*, 290 F.3d at 1050 (awarding attorneys' fees in the amount of 28 percent of the claim fund); *In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming a fee award equal to 33 percent of the settlement fund); *Garner v. State Farm Ins.*, No. CV 08-1365 CW, 2010 WL 1687829, at **1-2 (N.D. Cal. April 22, 2010) (awarding a 30 percent common fund fee); *In re Activision Sec. Litig.*, 723 F. Supp. at 1375 (awarding a 32.8 percent common fund fee); *Linney v. Cellular Alaska P'ship*, Nos. C-96-3008 DLJ *et al.*, 1997 WL 450064, at *7 (N.D. Cal. July 18, 1997) (awarding a 33.3 percent fee); *In re Heritage Bond Litig.*, Case Nos. 02-ML-1475 DT *et al.*, 2005 WL 1594403, at *18 n. 12 (C.D. Cal Jun. 10, 2005) (noting that more than 200 federal cases have awarded fees higher than 30 percent of the common fund). These cases show that the Court has an abundance of authority to award Class Counsel the requested fees and costs award.

### 3.   The Relevant Factors under Ninth Circuit Precedent Further Support the Award.

Assessing an appropriate fee based on a percentage of the fund involves taking into account "all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. The Ninth Circuit has outlined factors to be considered in setting a reasonable percentage of the common fund: (1) the results achieved, including the benefits generated for the class in the case "beyond the cash

settlement fund;" (2) the risky nature of the representation; (3) the contingent nature of the fee and the financial burden carried by class counsel; (4) the attorney skill required and the quality of work; (5) awards made in similar cases; and (6) the reaction of the class to the settlement. *See id.* at 1048-1049; *Omnivision Tech.*, 559 F. Supp. 2d at 1046-1048. An application of these factors to this case supports the requested fee award.

### a.    Class Counsel Obtained Exceptional Results for the Class.

The result achieved by the litigation is one of the most important factors to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (the "most critical factor is the degree of success obtained"); *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 630 (D. Colo. 1976) ("the amount of the recovery, and end result achieved are of primary importance, for these are the true benefit to the client"); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-548 (S.D. Fla. 1988), *aff'd,* 899 F.2d 21 (11th Cir. 1990) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained").

Here, Class Counsel's efforts produced exceptional results. As explained above, Class Counsel successfully negotiated a number of important injunctive terms that are a part of the Settlement. Settlement, ¶¶ 4.6, 4.7. Class Counsel also obtained for class members a settlement fund of no less than $850,000, which may be increased to $925,000 if necessary to cover all claims, which is a certain, immediate, and suitable return for the Class. Settlement ¶ 4.1(d).

### b.    This Case Was Risky for Class Counsel and Recovery of Class Counsel's Fees and Litigation Expenses Was Entirely Contingent on Counsel's Success.

Class Counsel's fee request is supported by the risks they faced by representing the Class in this Action. Although the Action was resolved early in the litigation, this early resolution resulted from Class Counsel's skill and does not negate the risk associated with pursuing the case.

The Settlement in this case is the first successful resolution of class claims premised on false and misleading representations of allegedly "natural" and "organic" household products that contain MIT. As a first-of-its kind complex consumer class action on behalf of a nationwide class, Class Counsel had no idea whether the case could or would be successful. Todzo Decl. ¶ 5.

Also, in taking this case on a contingency-fee basis, Class Counsel assumed the significant risk of never being paid for their efforts on behalf of the class. *Id.* Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. *WPPSS*, 19 F.3d at 1301-1302 (district court abused discretion by failing to account for contingent risk in awarding common fund fee award); *see also Fischel v. Eq. Life Assur. Socy. of U.S.*, 307 F.3d 997, 1008-1010 (9th Cir. 2002). These risks are not illusory. There are numerous class actions in which plaintiffs' counsel expended thousands of hours, and yet received no remuneration whatsoever despite their diligence and expertise. In fact, even when a plaintiff is successful at trial, payment is not guaranteed. *See generally In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07-61542-CIV., 2011 WL 1585605, at **8-24 (S.D. Fla. Apr. 25, 2011) (granting judgment as a matter of law for defendants after jury returned verdict for plaintiffs). As in the cases cited above, the fee in this matter was entirely contingent with the only certainty being that there would be no fee without a successful result. Indeed, Class Counsel have received no compensation for their efforts during the course of this litigation. Todzo Decl. ¶ 19; Wolchansky Decl. ¶ 32. Absent this Settlement, there was a sizeable risk that at the end of the day, Class Members and Class Counsel would obtain no recovery. Therefore, the risks associated with this case support finding that the requested fee is reasonable.

>            **c.      Class Counsel Are Skilled Attorneys that Produce High Quality Work.**

Class Counsel were only able to bring and resolve this case so effectively and efficiently by virtue of their considerable skill and experience in this area of the law. *See Heritage Bond*, 2005 WL 1594389, at *12 ("The experience of counsel is also a factor in determining the appropriate fee award."). Class Counsel specialize in consumer class actions, and have served as counsel for classes of plaintiffs in a variety of substantive areas. Todzo Decl. ¶ 18; Wolchansky Decl. ¶ 31. In particular, Class Counsel have significant experience representing aggrieved consumers in class action cases alleging that that cosmetic products are falsely advertised as "natural" and "organic." *Id.* By combining their efforts and working together, Class Counsel were able to obtain the maximum recovery for the class early in the litigation. The skill demonstrated

**PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS**

by Class Counsel in litigating and ultimately settling this action thus supports the requested fee. *Omnivision Techs.,* 559 F. Supp. 2d at 1047 (the "prosecution and management of a complex national class action requires unique legal skills and abilities.").

### d.    The Requested Fee Award Is Comparable to Fee Awards in Similar Class Action Cases.

Courts often look at fees awarded in comparable cases to determine if a requested fee is reasonable. *Vizcaino*, 290 F.3d at 1050 n. 4. A review of attorney fee awards in similar cases supports the award requested here. Indeed, the requested fee represents an almost identical percentage of the common fund awarded in several similar cases:

- *Zeisel v. Diamond Foods, Inc.,* No. 10-01192-JSW, 2012 WL 4902970, at *4 (N.D. Cal. Oct. 16, 2012) (awarding fees amounting to "a bit more than 30% of the settlement amount" in a case alleging false advertising of food products);

- *Johnson*, 2013 U.S. Dist. LEXIS 90338, at **18-20 (awarding fees equaling 30 percent of the total settlement fund in a consumer class action alleging false advertising of food products); and

- *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457-458, 463 (9th Cir. 2000) (upholding an award of 33.3 percent of a $1.725 million settlement in a securities class action).

All of the attorneys' fee awards in these public interest class actions support the award requested by Plaintiffs in the present action.

### e.    The Positive Reaction of the Class Supports Payment of the Fee Award.

As of January 14, 2016, over 14,036 class members have submitted claims,[2] yet there have been no objections to the Settlement and only three requests for exclusion from the Settlement have been submitted. Dahl Decl. ¶¶ 29-31. This de minimis number of requests for exclusion indicates a highly positive response to the Settlement. *Mego Fin. Corp.*, 213 F.3d at 459. Moreover, an absence of objections, as here, is a "rare phenomenon." *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005). The lack of any meaningful negative response to the

---

[2] Given that this filing is being made in order to afford class members with time to review it well in advance of the deadline for objecting to the Settlement, the claims period remains open for another month. While the 14,036 claims to date is substantial, Class Counsel anticipates that this number will increase considerably prior to the close of the claim period.

Settlement shows the quality and value of the Settlement. Class Counsel will provide a final tally of the exclusions and objections and respond fully to their substance at the upcoming hearing for this Motion. However, to date, the claims data indicates significant support for the Settlement from the class. Class Counsel should be appropriately rewarded for their achievement.

## II. Class Counsel Should be Reimbursed for Their Out-of-Pocket Litigation Expenses.

In addition to an award of attorneys' fees, attorneys who create a common fund for the benefit of a class are also entitled to payment of their reasonable litigation expenses. *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996). Class Counsel in this case have incurred expenses in the total amount of $12,323.01 while investigating, prosecuting, and settling this action. These expenses are set forth with particularity in the Declarations of Mark N. Todzo and Melissa W. Wolchansky. *See* Todzo Decl. ¶ 39; Wolchansky Decl. ¶ 50.

Litigation expenses are recoverable where they are of the type typically billed by attorneys to paying clients in the marketplace. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'"); *see also Media Vision Tech.*, 913 F. Supp. at 1366. The categories of expenses for which Class Counsel seek reimbursement are the same types of expenses routinely charged to hourly paying clients, including online legal research, mediation fees, copying expenses, and filing fees. *See* Todzo Decl. ¶ 39; Wolchansky Decl. ¶ 50. These expenses were all necessarily incurred and, therefore, should be reimbursed from the settlement fund as provided by the Settlement.

## III. The Class Representatives Should Receive Reasonable Service Awards for Their Efforts in Securing the Settlement for the Benefit of the Class.

Incentive awards are appropriate to compensate named plaintiffs for work done in the interest of the class. *See Staton.*, 327 F.3d at 976-977; *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010). The efforts of the class representatives in this case were instrumental in achieving the Settlement on behalf of the class and justify the awards requested here. *See* Todzo Decl. ¶ 40; Wolchansky Decl. ¶ 42; Declaration of Rebekah Baharestan ¶¶6-9. ("Baharestan Decl."); Declaration of Jena McIntyre ¶¶6-9 ("McIntyre Decl.").

Plaintiffs and Class Counsel request that the Court authorize incentive awards of $2,000 each for Plaintiffs Rebekah Baharestan and Jena McIntyre. Both Plaintiffs have performed a number of tasks that greatly assisted in the preparation, prosecution, and settlement of the case. *Ibid* Among other things, these Plaintiffs consulted with Class Counsel on a number of occasions, made themselves available as needed, provided factual background to assist in the development of the case and in responding to Venus' informal discovery requests, reviewed pleadings and correspondence in the case, and evaluated the settlement papers and terms. *See id.*

These incentive awards – recognizing the class representatives' services to the class – are modest under the circumstances, and well in line with and less than awards approved by federal courts in California. *Jordan v. Paul Fin., LLC*, No. C 07-04496 SI, 2013 WL 6086037, at *3 (N.D. Cal. Nov. 19, 2013) ("In general, courts have found incentive awards of $5,000 for service to a class to be presumptively reasonable"); *Barbosa v. Cargill Meat Solutions Corp.*, No. 1:11–cv–00275-SKO, 2013 WL 3340939, at *22 (E.D. Cal. July 2, 2013) (awarding $5,000 incentive awards); *Zeisel*, 2012 WL 4902970 (awarding $3,000 incentive award). Accordingly, Class Counsel respectfully requests that the incentive awards provided for in the Settlement be approved.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant this request for attorneys' fees and litigation expenses in the amount of $277,500 and modest service awards to the class representatives in the total amount of $4,000.

DATED: January 15, 2016                     Respectfully submitted,

                                            LEXINGTON LAW GROUP

                                            By:   /s/ Mark N. Todzo
                                                  Mark N. Todzo, State Bar No. 168389
                                                  Abigail Blodgett, State Bar No. 278813
                                                  503 Divisadero Street
                                                  San Francisco, CA  94117
                                                  Telephone: (415) 913-7800
                                                  Facsimile: (415) 759-4112
                                                  mtodzo@lexlawgroup.com
                                                  ablodgett@lexlawgroup.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HALUNEN LAW

By:  /s/ Melissa W. Wolchansky_____

    Melissa W. Wolchansky
    Charles D. Moore (pro hac vice pending)
    80 South Eighth Street, Suite 1650
    Minneapolis, MN 55402
    Telephone: (612) 605-4098
    Facsimile: (612) 605-4099
    wolchansky@halunenlaw.com
    moore@halunenlaw.com

*Court Appointed Class Counsel*

**PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS**