LEXINGTON LAW GROUP
Mark N. Todzo, State Bar No. 168389
Abigail Blodgett, State Bar No. 278813
503 Divisadero Street
San Francisco, CA 94117
Telephone: (415) 913-7800
Facsimile: (415) 759-4112
mtodzo@lexlawgroup.com
ablodgett@lexlawgroup.com

HALUNEN LAW
Melissa W. Wolchansky *(admitted pro hac vice)*
Charles D. Moore (*pro hac vice pending*)
80 South Eighth Street, Suite 1650
Minneapolis, MN 55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099
wolchansky@halunenlaw.com
moore@halunenlaw.com

*Court Appointed Class Counsel*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

REBEKAH BAHARESTAN and JENA MCINTYRE, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

VENUS LABORATORIES, INC., dba EARTH FRIENDLY PRODUCTS, INC.,

Defendant.

Case No. 3:15-cv-03578-EDL

**DECLARATION OF MARK N. TODZO IN SUPPORT OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, AND REIMBURSMENT FOR COSTS AND SERVICE AWARDS**

Date: March 15, 2016
Time: 9:00 a.m.
Location: Courtroom 5, 15th Floor
Judge: Hon. Elizabeth D. Laporte

[Filed concurrently with Declarations of Melissa W. Wolchansky, Rebekah Baharestan, Jena McIntyre, and Jeffrey D. Dahl; and Notice of Motion and Motion for Award of Attorneys' Fees, and Reimbursement for Costs and Service Awards]

I, Mark N. Todzo, declare:

1. I am a partner at the Lexington Law Group ("LLG"), and I represent Plaintiff Rebekah Baharestan in the above-captioned action. I respectfully submit this declaration in support of Plaintiffs' Motion for Attorney Fees and Costs. I have been working together with Melissa Wolchansky and Charles Moore of Halunen Law, who represent plaintiff Jena McIntyre in this action. The Court appointed LLG and Halunen Law ("Halunen") as Class Counsel for Plaintiffs and the class members. Ms. Wolchansky and I have co-led the investigation, prosecution, and settlement negotiations in this case, culminating in the Stipulation of Settlement (the "Settlement Agreement" or "Settlement") that is before the Court for final approval [ECF No. 15-2]. I have personal knowledge of the matters set forth below and, if called upon, I could and would competently testify thereto.

**Investigation, Litigation, and Settlement of the Case**

2. Defendant Venus Laboratories, Inc., d/b/a Earth Friendly Products, Inc.'s, ("Venus" or "Defendant") manufactures, sells, and distributes the Earth Friendly line of household cleaning products, including dozens of laundry detergents, odor removers, dishwashing fluids, and other home cleaning products (the "Products" or "Earth Friendly Products"). These Products are sold through third party retailers to consumers in all 50 states and the District of Columbia. Plaintiffs allege they were induced to purchase the Earth Friendly Products by Venus' false and misleading representations that the Products were natural, derived from plants, free from harmful chemicals, organic, and/or gentle. However, each Earth Friendly Product contains at least one chemical that is, in fact, highly processed, synthetic, and/or not organic or natural. These chemicals include: MIT, Alcohol Denat, Caprylyl/Myristyl Glucoside, Cocamidopropyl Betaine, Cocamidoprpylamine Oxide, Lauryl Glucoside, Phenoxyethanol, Potassium Cocoate, Potassium Sorbate, or Sodium Coco-Sulfate.

3. In particular, MIT, a biocide used for controlling microbial growth in water-containing solutions, is neither natural nor made from plants since it is produced by the controlled chlorination of dimethyldithiodipropionamide (DPAM) in solvent, followed by neutralization and

extraction into water. MIT has been linked to what is called an "epidemic" of painful skin allergies, including rashes, blistering, swelling, redness, and hives. The rapidly increasing rates of allergic reactions to MIT resulted in the American Contact Dermatitis Society naming MIT as the contact allergen of the year in 2013. Numerous studies from countries all over the world quantify the epidemic of allergic reactions to MIT as being so serious as to occur in 2 to 10 percent of individuals exposed to the chemical.

4. Before commencing this action, LLG conducted an examination and evaluation of the relevant laws and facts to assess the merits of the claims and to determine how to best serve the interests of the members of the class. This pre-suit investigation included interviewing and communicating with potential class members, consulting with expert witnesses, and researching the factual and legal basis for Plaintiff Rebekah Baharestan's claims. The investigation also included extensive research regarding Venus' marketing, labeling, and promotional efforts for the Earth Friendly Products.

5. When this investigation began, there were no reported cases alleging false and misleading marketing, advertising, and labeling of products containing MIT. Because of the novelty of the factual and legal issues, LLG attorneys were required to conduct significant research prior to filing the action. As a first-of-its kind complex consumer class action on behalf of a nationwide class, LLG attorneys had no idea whether the case could or would be successful. Despite this fact, my firm took this case on a contingency-fee basis, assumed the significant risk of never being paid.

6. On November 3, 2014, Plaintiff Jena McIntyre sent a letter notifying Venus of her intent to pursue consumer protection claims on behalf of herself and a nationwide class of purchasers of the Earth Friendly Products throughout the United States based on allegations that Venus misrepresented the nature of the Products. After receiving this letter, Venus began discussing a possible resolution of Plaintiff McIntyre's claims.

7. On March 25, 2015, independently of Plaintiff McIntyre, Plaintiff Rebekah Baharestan sent a letter to Venus alleging that Venus' marketing, advertising, and labeling of the

Products false and misleading. This letter informed Venus of Plaintiff Baharestan's intent to represent a nationwide class of purchasers of the Earth Friendly Products in a class action lawsuit.

8. After sending their notice letters to Venus, the two Plaintiffs consolidated their efforts and agreed to jointly pursue the case. The Parties engaged in lengthy, comprehensive, and arm's-length settlement discussions over several months. The Parties' settlement negotiations began early in the litigation, shortly after Venus received Plaintiffs' pre-suit notice letters.

9. During the Parties' lengthy and comprehensive settlement discussions, the Parties engaged in substantial informal discovery. Through this discovery, Venus provided Plaintiffs with vital information pertaining to the legitimacy and scope of Plaintiffs' claims – including information regarding the Products' labeling and ingredients. This exchange of information ensured sophisticated and meaningful settlement negotiations.

10. The Parties' settlement discussions culminated in an all-day, in person, mediation before the Honorable Morton Denlow (Ret.) in Chicago, Illinois on June 1, 2015. The Honorable Morton Denlow, who is a former Magistrate Judge for the United States District Court, Northern District of Illinois, has decades of experience in the resolution of complex commercial litigation, including class actions and product liability cases. A true and correct copy of the Honorable Morton Denlow's general biography is attached as Exhibit 2 to my Declaration in Support of Preliminary Approval of the Settlement [ECF No. 15-3]. Based upon Plaintiffs' investigation and evaluation of the facts and law relating to the matters alleged in this case, the Parties agreed to settle this action pursuant to the general terms of the Settlement. Such agreement was reached after considering, among other things: (1) the substantial benefits available to the class under the terms of the Settlement; (2) the attendant risks and uncertainty of litigation – especially in complex actions such as this – as well as the difficulties and delays inherent in such litigation; and (3) the desirability of promptly completing the Settlement to provide effective relief to Plaintiffs and the class.

11. Following finalization of the general terms of the Settlement, much work remained. For instance, Ms. Wolchansky and I had to draft and reach agreement with Venus regarding the final terms of the Settlement, the class notices, the claim form, and the detailed notice program.

12. On August 4, 2015, Plaintiffs Rebekah Baharestan and Jena McIntyre, on behalf of themselves and all other similarly situated persons, filed their Class Action Complaint in the Northern District of the United States District Court, *Baharestan v. Venus Laboratories, Inc*., Case No. 3:15-cv-03578-EDL [ECF No. 1]. Plaintiffs' Complaint seeks relief on behalf of a proposed nationwide class of purchasers of the Products pursuant to the express warranty laws of all states and the District of Columbia. The Complaint also seeks relief on behalf of two proposed sub-classes: one of California purchasers, and one of Washington purchasers, pursuant to the consumer protection and false advertising laws of those states. *See* Cal. Civil Code § 1750, *et seq.;* Cal. Bus. & Prof. Code § 17200, *et seq.*; Cal. Bus. & Prof. Code §§ 17580-17581; Wash. Rev. Code § 19.86, *et seq*. In addition, the Complaint seeks relief on behalf of the California sub-class for Venus' alleged violations of the California Organic Products Act ("COPA's") restrictions on selling, labeling, or representing cosmetic products as organic or made with organic ingredients unless the products contain a minimum of 70 percent organically produced ingredients. *See* Cal. Health & Safety Code § 110810, *et seq.*

13. After filing the Complaint and once the Settlement was fully negotiated and signed, Ms. Wolchansky and I worked together to prepare and file the Motion for Preliminary Approval, which included numerous supporting documents and declarations [ECF Nos. 15 to 15-6]. Ms. Wolchansky and I appeared at the November 3, 2015 hearing and argued in support of preliminary approval, which the Court ultimately granted after reviewing my supplemental declaration and exhibits [ECF Nos. 22 to 23].

14. Since the Court preliminarily approved the Settlement, Ms. Wolchansky and I have worked closely with the Claims Administrator to supervise dissemination of notice to class members and to oversee the claims process. This work continues at the time of the filing of the present Motions. Ms. Wolchansky and I, along with other attorneys at our firms, also spent a

significant amount of time preparing the Motion for Attorneys' Fee and Costs, and the companion Motion for Final Approval of the Settlement.

15.  Plaintiffs McIntyre and Baharestan have both performed a number of tasks that greatly assisted in the preparation, prosecution, and settlement of the case. Among other things, Plaintiffs have consulted with me and other Class Counsel on a number of occasions, made themselves available as needed, provided factual background to assist in the development of the case and the pre-suit letters notifying Defendant of their intent to bring a suit for violations of consumer protection statutes, and reviewed pleadings and correspondence in the case and evaluated the Settlement papers. To date, neither Plaintiff has received any compensation whatsoever for their efforts on behalf of the class.

**The Benefits and Value of the Settlement**

16.  The Settlement confers substantial benefits on the class through both its injunctive and monetary terms. First, the injunctive relief provided by the Settlement is wide-ranging and directly beneficial to class members. Venus is the first company to agree to make its Products safer for consumers by reformulating some of its Products to remove the allergen MIT [ECF No. 15-2 at ¶ 4.7]. Venus also agreed to change its labeling and marketing practices by not using the terms "natural" and "organic" if such claims are not certified or in compliance with the applicable regulations [ECF No. 15-2 at ¶ 4.6(a)-(c)]. In addition, the Settlement requires Venus to list all ingredients in its Products with explanatory parentheticals that describe each ingredient and maintain a website with additional information about ingredients [ECF No. 15-2 at ¶ 4.6(d)-(g)]. All of this injunctive relief will result in the elimination of the alleged misrepresentations at the heart of this lawsuit and, as such, will ensure that class members and other consumers will not be subjected to false and misleading claims on the Earth Friendly Products in the future.

17.  Second, the settlement requires Venus to contribute no less than $850,000 and no more than $925,000 to an independently-administered settlement fund that will directly benefit the class [ECF No. 15-2 at ¶ 4.1(d)]. Class members who submit valid claims are eligible to recover $1.50 for each ECOS® Laundry Detergent Product they purchased or $1 for each other Earth

Friendly Product purchased, up to $25 for each class member [ECF No. 15-2 at ¶ 4.3(c)]. If the class claims, notice and administrative costs, and attorneys' fees and costs exceed $850,000, Venus is required to contribute an additional $75,000 to the settlement fund to cover the additional claims of class members [ECF No. 15-2 at ¶ 4.5]. If there is any money left over in the settlement fund following the claims process, such funds will be distributed to eligible class members on a *pro rata* basis, up to 100 percent of such class members' initial claim amounts [ECF No. 15-2 at ¶ 4.5(a)]. If there are additional Settlement Funds following the *pro rata* adjustment, these Residual Funds shall be distributed to a non-profit organization that serve the interest and needs of the class [ECF No. 15-2 at ¶ 4.5(c)].

**<u>LLG's Background and Lodestar</u>**

18. LLG is a public interest law firm specializing in complex consumer class actions and environmental litigation. LLG has significant experience representing aggrieved consumers in class action cases alleging that products were falsely advertised. LLG presently has seven attorneys on staff with a combined total of over 90 years of litigation experience. A true and correct copy of LLG's firm resume was previously submitted to the Court with Plaintiffs' Motion for Preliminary Approval of the Settlement [ECF No. 15-4].

19. Ms. Wolchansky and I, as well as others at our firms, spent numerous hours investigating and researching the facts of this case, conferring with Plaintiffs, researching the applicable law, drafting pleadings, reviewing and analyzing documents and data produced by Venus, and negotiating the Settlement Agreement. This work was performed on a pure contingency basis with no guarantee of success or ever being paid. Neither LLG nor Halunen have received compensation for their efforts during the course of this litigation. Throughout the litigation I coordinated with members of my firm to divide up work in an efficient and cost effective manner, thereby ensuring that all work was performed without unnecessary duplication.

20. Based on my firm's contemporaneous time records, LLG attorneys and staff have spent over 278.4 hours litigating this case resulting in a lodestar in excess of $166,227. This lodestar includes time spent by the following timekeepers from the case inception through December 31, 2015:

| ***NAME*** | | ***HOURS*** | ***RATE*** | ***LODESTAR*** |
|---|---|---|---|---|
| Mark N. Todzo | (P) | 154.3 | $750 | $115,725.00 |
| Eric S. Somers | (P) | 3.8 | $770 | $2,926.00 |
| Howard Hirsch | (P) | 2.8 | $650 | $1,820.00 |
| Donna Solen | (A) | 10.2 | $590 | $6,018.00 |
| Joseph Mann | (A) | 0.8 | $570 | $456.00 |
| Lisa Burger | (A) | 0.9 | $460 | $414.00 |
| Lucas Williams | (A) | 0.7 | $430 | $301.00 |
| Abigail Blodgett | (A) | 84.4 | $400 | $33,760.00 |
| Jill Karjian | (PL) | 0.7 | $250 | $175.00 |
| John Banister | (PL) | 17.7 | $235 | $4,159.50 |
| Casey Fisher | (PL) | 2.1 | $225 | $472.50 |
| **TOTAL:** | | **278.4** | | **$166,227.00** |

(P) Partner, (A) Associate, (PL) Paralegal

21. In order to facilitate the review and determination of the reasonableness of the attorneys' fees incurred in this matter, we have also reviewed and categorized by general task descriptions all of the time spent by members of my firm on this case. Although this categorization is not an exact science, it reflects our best professional judgment to allocate each time entry to a specific task category. Pursuant to this procedure, which I personally helped develop and implement, we allocated each time entry to one of the following seven task categories:

a. Case development;

b. Experts;

c. Pleadings and law and motion;

d. Settlement;

e. Case management and litigation strategy;

f. Factual discovery; and

g. Trial.

Since the Parties reached a settlement early in this action, attorneys at my firm did not incur any time in the "factual discovery," "experts," or "trial" categories. While the major tasks performed in this case within the applicable categories are described in detail above (¶¶ 4-14), the following

is a chart summarizing the time spent by LLG (through December 31, 2015) by general category of tasks performed:

| LODESTAR BY GENERAL CATEGORY | | | |
|---|---|---|---|
| Category | Description | Hours | Lodestar |
| 1 | **Case Development** (*e.g.*, researching Venus' advertising and marketing of the Products, legal research to support potential claims, communicating with potential class members, preparing pre-suit notice) | 37.5 | $21,908.00 |
| 3 | **Pleadings and law and motion** (*e.g.*, drafting the complaint, drafting and responding to pleadings and law and motion matters, preparing for and appearing at hearings, legal research) | 10.3 | $4,868.00 |
| 4 | **Settlement** (*e.g.*, reviewing and exchanging relevant information and informal discovery with defense counsel to facilitate case evaluation and settlement, preparing the mediation brief and attending the mediation, preparing and reviewing proposed settlement agreements, negotiating settlement terms, preparing supporting documents for settlement, communicating with Claims Administrator and defense counsel regarding notice to the Class and claims process, preparing preliminary approval, attorneys' fees and costs, and final approval motions) | 188.7 | $116,181.50 |
| 5 | **Case management and litigation strategy** (*e.g.*, conferring with defense counsel regarding case management and scheduling issues, drafting the initial case management statement, internal strategy meetings) | 41.9 | $23,269.50 |
| **TOTAL:** | | **278.4** | **$166,227.00** |

22. LLG's $166,227 lodestar does not reflect any time and costs incurred after December 31, 2015, which includes significant attorney time spent preparing the Motion for Final Approval of the Settlement and Motion for Attorneys' Fees and Costs. Nor does this lodestar include any time and costs spent preparing the motion for final approval of the Settlement, preparing for and attending the final approval hearing, overseeing the ongoing claims administration process, responding to any further inquiries from class members, or any of the other significant amount of work I anticipate will be necessary to finalize and effectuate the Settlement. Accordingly, LLG's total lodestar increase significantly prior to the conclusion of its

work on behalf of the class.

23. All of the services provided by myself and other attorneys at my firm were reasonable and necessary to bring this case to a successful conclusion. Also, Class Counsel have exercised reasonable billing judgment: any time that might be considered excessive, redundant, or otherwise unnecessary has not been claimed. For example, Class Counsel are not seeking to recover a substantial portion of its general time that it spent investigating MIT and the potential legal claims related to selling products that contain MIT without a warning.

24. Furthermore, even though a multiplier would likely be appropriate in this case due to the excellent results achieved by Class Counsel for the class, Class Counsel agreed to forego a multiplier for its lodestar in order to efficiently and successfully reach a settlement with Venus.

**LLG's Timekeeping Practices**

25. My firm keeps detailed time records and maintains complete documentation of all the attorneys' fees and costs that Plaintiffs have incurred in pursuing this matter. The time records are kept contemporaneously with time delineated by timekeeper to the tenth of an hour. These detailed time records are kept by my firm according to its usual timekeeping practices, which are designed to ensure that our time records are detailed, accurate and complete. I personally helped develop, implement and monitor compliance with this timekeeping policy. All new billing employees are trained on LLG's timekeeping procedures.

26. LLG's timekeeping practices require every professional employee to keep his or her time contemporaneously. An individual time entry is required for every case-related task completed by an attorney, para-professional or investigator. My office uses a custom-designed Excel spreadsheet to initially record time entries. An entry is made by first selecting the case to which the work was performed from a drop-down menu. The spreadsheet allows for the selection of only one case, and it is not possible to assign a given billable entry to more than one case. After the case selection is made, a detailed description of the task performed is composed by the timekeeper by typing it into the spreadsheet entry. This allows the timekeeper to fully explain the task performed. We encourage use of uniform task descriptions to create bills that are more

consistent and readable. After the task is completed, the timekeeper must record the time spent on the task. All time records are recorded in tenth of an hour (six minute) increments.

27. Pursuant to LLG's standard timekeeping procedures, the timekeeping information from the Excel spreadsheets is then uploaded to the Timeslips time and expense software program by LLG's bookkeeper. The Timeslips program then generates reports and bills that are sent to clients and used internally for practice management. Every month, I review several reports generated by the Timeslips program. One such report summarizes all of the time each timekeeper has spent on every case they have worked on for that given month, sorted by timekeeper. Another report summarizes all of the time billed in every active case, sorted by case. I review these reports for completeness, accuracy, and reasonableness. My partners and I also periodically review the underlying time entries to ensure that LLG's timekeeping policies are being followed and to exercise billing judgment by writing off any time that appears inefficient or unreasonable. Specific time and expense reports requested are forwarded to the client periodically for review.

28. Because of LLG's rigorous timekeeping practices, LLG's billing records reflect the hours that are reasonably necessary to achieve Plaintiffs' goals in this litigation. I have carefully reviewed the time records in this case and can attest that, in my professional judgment, all of the time spent to date was: (a) spent in furtherance of necessary investigation, litigation and settlement activities; (b) of measured duration appropriate to each task; and (c) billed cost-effectively by a person of appropriate skill and experience for the task.

**LLG's Hourly Rates**

29. Through my practice in consumer protection actions, my review of attorneys' fee awards by other California courts in my own consumer protection cases and in other consumer protection cases, and my review of the declaratory evidence submitted in support of those awards, I am aware of the market rates charged by other firms for attorneys with similar levels of experience. The billing rates of my firm's attorneys are commensurate with prevailing market rates for attorneys of similar skill and experience in the San Francisco Bay Area, as detailed below. My firm's billing rates have already been consistently approved by state and federal courts

in the scores of settlement approval and other motions regarding attorneys' fees we have filed in state and federal courts, including the following cases:

- *Golloher v. Todd Christopher International, Inc. dba Vogue International*, Case No. 12-cv-06002 RS (ND Cal. 2014), Order and Final Judgment Approving Class Action Settlement, Awarding Attorneys' Fees and Expenses, and Awarding Class Representative Service Awards (entered April 25, 2014) (awarding attorneys' fees based on LLG's 2014 rates, which are identical to those sought herein);

- *In re: Comcast Corporation Peer-to-Peer (P2p) Transmission Contract Litigation*, MDL No. 1992, Case No. 2:08-MD-1992-LDD (E.D. Penn. 2010), Order Granting Motion for Approval of Attorneys' Fees (entered June 29, 2010) (awarding attorneys' fees based on LLG's 2010 rates);

- *Center for Environmental Health v. Food Market Management, Inc.*, San Francisco County Superior Court, Case No. CGC-12-526395, Order re: Discovery Issues (entered June 24, 2015) (awarding attorneys fees' based on LLG's 2015 rates); and

- *Center for Environmental Health v. Space Jam Juice LLC*, Alameda County Superior Court, Case No. RG15770932, Order Granting Plaintiff's Motion for Court Approval and Entry of Consent Judgments (entered October 6, 2015) (awarding attorneys' fees based on LLG's 2015 rates).

30. I often compare LLG's rates to those of other San Francisco and California firms that do similar work. LLG's rates are in line with such other firms' rates. Indeed, my comparison is supported by recent decisions by courts in this District:

- In *Wynn v. Chanos*, 14-CV-04329-WHO, 2015 WL 3832561, at *2 (N.D. Cal. June 19, 2015), on a motion for attorneys' fees following a successful anti-SLAPP motion, the court found reasonable hourly rates of (among others) $920/875 for partners with 20 years of experience, $710/645 for associates with 6 years of experience and $170 for litigation support staff and paralegals.

- In *O'Bannon v. Natl. Collegiate Athletic Assn.*, 09-CV-03329-CW (NC), 2015 WL 4274370, at *3 (N.D. Cal. July 13, 2015), an antitrust action, the court approved hourly rates of (among others) $610/510 for partners with 15 years of experience, $490 for associates with 7 years of experience, $370 for associates with 3 years of experience and $300-320 for paralegals.

- In *Gutierrez v. Wells Fargo Bank, N.A.*, C 07-05923 WHA, 2015 WL 2438274, at *5 (N.D. Cal. May 21, 2015), a consumer class action against a bank for unfair practices, the court approved hourly rates of (among others) $700-$850 for partners with 17 years of experience, $300-$490 for associates with 2 to 12 years of experience, and $150-$430 for litigation support and paralegals; and

- In *G. F. v. Contra Costa County*, 13-CV-03667-MEJ, 2015 WL 7571789, at *13 (N.D. Cal. Nov. 25, 2015), a class action discrimination action, the court approved hourly rates of $975 to $325 for attorneys who graduated from law school between 1961 and 2012.

31. The principal LLG attorneys working on this matter are my associate Abigail Blodgett and myself. Other LLG attorneys performed billable work as needed, on a less extensive basis. I graduated from Hastings College of Law and was admitted to the California Bar in 1993. I have been practicing law for 22 years. Since joining LLG in 1998, my practice has been devoted exclusively to representing plaintiffs in complex consumer protection class actions and environmental litigation. My current hourly rate is $750.

32. My associate Abigail Blodgett graduated from University of Oregon School of Law in 2010, and was admitted to the California Bar in 2011. Prior to joining LLG in January 2014, Ms. Blodgett was an associate and legal fellow with a nonprofit organization where she specialized in enforcing clean water laws and developing environmental policies. Ms. Blodgett has also clerked and volunteered for various public interest organizations and law firms, litigating a wide range of environmental, consumer protection, and land use cases. Ms. Blodgett's current hourly rate is $400 an hour.

33. My partner Howard Hirsch graduated from Boalt Hall School of Law in 1996, and was admitted to the Massachusetts Bar in 1996 and the California Bar in 2001. Mr. Hirsch has practiced law for over nineteen years, almost the entirety of which has been spent exclusively representing plaintiffs in environmental and consumer protection litigation. Before joining LLG in 2003, Mr. Hirsch worked for five years at a national, non-profit environmental law firm prosecuting citizen suits under federal environmental statutes, and for two years prior to that as a litigation associate at a nationally recognized law firm based in Boston. Mr. Hirsch's current hourly rate is $650 an hour.

34. My partner Eric S. Somers graduated from Hastings College of the Law in 1988, was admitted to the California Bar in 1989, and has been practicing law for over twenty-six years. Upon admission, Mr. Somers worked for several years at a large nationally recognized San Francisco law firm. In 1996, Mr. Somers founded LLG, and since then has specialized in representing public entities, non-profit organizations, and individual plaintiffs in environmental and consumer protection litigation. Mr. Somers has presented and taught at numerous law conferences and seminars. Mr. Somers current hourly rate is $770.

35. Joseph Mann is an associate who graduated from New York University School of Law in 1999, and was admitted to the California Bar in 2000. Mr. Mann has practiced law for over 15 years, all of which have been spent exclusively representing plaintiffs in environmental and consumer protection litigation. Before joining LLG in September 2012, Mr. Mann spent over a decade as a litigation attorney for the National Environmental Law Center, a nonprofit organization specializing in the enforcement of federal environmental laws, and a year as a Law Clerk to U.S. District Court Judge Irma E. Gonzalez in the Southern District of California. Mr. Mann's current hourly rate is $570 an hour.

36. Donna F. Solen is a former associate who graduated from the University of Florida College of Law in 1997. She was admitted to the Florida Bar in 1997, the District of Columbia Bar in 1999, and the California Bar in 2014. She has been practicing law for over 18 years, specializing in complex consumer fraud, environmental, products liability, and antitrust class

actions. Ms. Solen's current rate is $590 an hour.

37. Lisa Burger is an associate who graduated from Notre Dame Law School in 2005, and was admitted to the California Bar that same year. Ms. Burger has practiced law for ten years, all of which have been spent exclusively representing plaintiffs in civil rights, environmental and consumer protection litigation. Before joining LLG, Ms. Burger was a litigation fellow with Disability Rights Advocates, a non-profit law center in Berkeley, California, that specializes in class action litigation on behalf of people with disabilities. Ms. Burger's current hourly rate is $460 an hour.

38. Lucas Williams is an associate who graduated from Golden Gate University School of Law in 2008, and was admitted to the California Bar in 2009. Mr. Williams has practice law for over 6 years. Before joining LLG in January 2011, Mr. Williams was an attorney with a nonprofit environmental law clinic, where he specialized in enforcing air quality and clean energy laws on behalf of low-income communities of color. Mr. Williams' work as an environmental justice advocate included significant experience securing and defending attorneys' fee awards for non-profit environmental organizations. Mr. Williams' current hourly rate is $430.

**LLG's Out-of-Pocket Litigation Expenses**

39. Based on my firm's contemporaneously maintained expense records, LLG has incurred $5,589.62 in costs in this matter as of December 31, 2015. LLG's costs include Westlaw research, mediation fees, copying expenses, postage, express deliveries, travel costs, and court fees. My firm is seeking recovery of these costs as part of the $277,500 fees and costs award.

**Plaintiff's Critical Role in the Litigation**

40. Ms. Baharestan played a crucial role throughout the case. She provided important background information regarding the chemicals at issue in the Products and their effects on her and other class members. She also spent a significant amount of time working together with me and the other attorneys working on the case. In addition to providing important background research, Ms. Baharestan reviewed all pleadings and was available for consultation and consulted with me throughout the mediation and settlement process.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on January 15, 2016, at San Francisco, California.

/s/ Mark N. Todzo____________________
MARK N. TODZO

15 Case No. 3:15-cv-03578-EDL
DECL. OF MARK N. TODZO IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS